DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 355-3308
Facsimile: (415) 437-4644
E-Mail: karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
E-Mail: tony.lopresti@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSÉ, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, CITY OF ST. PAUL, CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100,<br><br>Defendants. | Case No. 3:25-cv-1350-WHO<br><br>**DECLARATION OF MATTHEW BOWER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

# DECLARATION OF MATTHEW BOWER

I, Matthew Bower, hereby declare as follows:

1. I have personal knowledge of the facts set out in this affirmation and, if called as a witness, could and would testify competently to the matters set out below.

2. I am employed by the City of Minneapolis ("Minneapolis" or the "City") as the Manager, Resource Coordination, in the Controllers Division of the Department of Finance & Property Services. I have been in this position more than ten years.

3. The Finance and Property Services Department provides essential financial services, resource and asset management, and guides policy and management decisions for Minneapolis. I report to the City's Controller, who reports to the City's Chief Financial Officer.

4. In my position I supervise the Grants Office, which works with City departments to secure external grants for enterprise programming initiatives and to support the enterprise's grant programming, financial accountability procedures, and oversight of compliance activities.

5. Federal grants play an important role in funding the City's public safety and other operations. In 2024, direct and pass-through funds from the U.S. Department of Justice ("DOJ") financed almost $1.8 million of Minneapolis's expenditures.

6. The City used DOJ funds to do each of the following:

   a. Fund recruitment of community members and college-aged candidates to pursue careers in the Minneapolis Police Department (Police Recruitment Through Pathways Encouraging Active Community Engagement);

   b. Fund the inventorying, DNA testing, tracking and reporting of sexual assault kits inclusive of training, investigation and victim engagement and support activities (National Sexual Assault Kit Initiative);

   c. Pay the salary and fringe benefits of one attorney who serves as direct legal advisor to Minneapolis Police Department officers in police precincts, fund the addition and upgrading of police department equipment, and pay overtime costs for officers to address emerging or special enforcement (Edward Byrne Memorial Justice Assistance Grant); and

        d.        Fund an opioid addiction treatment program including medication, clinical care, and wrap-around services (Comprehensive Opioid, Stimulant, and Substance Abuse Program).

7.       To date, in 2024, federal funding from many federal agencies including the Departments of Housing and Urban Development, Health and Human Services, Labor, and Transportation, financed approximately $54,360,000 of Minneapolis's programs and services, including essential programs like critical infrastructure improvements, creation and preservation of low-income housing, emergency shelter assistance for unhoused individuals, household radon, mold, lead, and pest mitigation, developing public health infrastructure and workforce, and provision of public safety services.

8.       In some cases, Minneapolis receives federal funding through formula grants (grants that are noncompetitive and allocated to grantees based on distribution formulas) and has built programs around the continuing nature of these funds.

9.       Final expenditures against 2024 grant funding will not be fully reconciled until later in 2025, so the 2024 total for federal funding may be higher.

10.     Minneapolis has largely obligated federal funding awarded to it in previous years. The City is relying on the federal government satisfying its contractual funding commitments to meet these obligations.

11.     The threat of loss of federal funds also creates confusion and uncertainty in the budget planning for Minneapolis.

12.     The City is currently planning its budget for 2026. Departments now are determining whether grant supported positions will be supported by grants in 2026. The Mayor must deliver a proposed budget to the City Council by August 2025. Not knowing whether certain federal funds will be available for those positions will create uncertainty about those positions and the work those positions perform for the communities Minneapolis serves.

13.     Minneapolis is facing difficult budgetary decisions and large projected tax levy increases because of decreasing commercial property values and the rising costs of providing municipal services.

14. The loss of its anticipated federal grant funding would force the City to choose between cuts to municipal services or imposition of a historically large tax levy on its residents.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 12, 2025, in Hennepin County, Minnesota.

*/s/ Matthew Bower*

Matthew Bower