| | |
|---|---|
| DAVID CHIU, SBN 189542<br>City Attorney<br>YVONNE R. MERÉ, SBN 175394<br>Chief Deputy City Attorney<br>MOLLIE M. LEE, SBN 251404<br>Chief of Strategic Advocacy<br>SARA J. EISENBERG, SBN 269303<br>Chief of Complex and Affirmative Litigation<br>NANCY E. HARRIS, SBN 197042<br>KARUN A. TILAK, SBN 323939<br>Deputy City Attorneys<br>Fox Plaza<br>1390 Market Street, 7th Floor<br>San Francisco, CA 94102-5408<br>Telephone:    (415) 355-3308<br>Facsimile:    (415) 437-4644<br>E-Mail:    karun.tilak@sfcityatty.org<br><br>Attorneys for Plaintiff<br>CITY AND COUNTY OF SAN FRANCISCO | TONY LOPRESTI, SBN 289269<br>County Counsel<br>KAVITA NARAYAN, SBN 264191<br>Chief Assistant County Counsel<br>MEREDITH A. JOHNSON, SBN 291018<br>Lead Deputy County Counsel<br>STEFANIE L. WILSON, SBN 314899<br>RAJIV NARAYAN, SBN 334511<br>Deputy County Counsels<br>BILL NGUYEN, SBN 333671<br>Litigation Fellow<br>70 W. Hedding Street, East Wing, 9th Floor<br>San José, CA 95110<br>Telephone:    (408) 299-5900<br>Facsimile:    (408) 292-7240<br>E-Mail:    tony.lopresti@cco.sccgov.org<br><br>Attorneys for Plaintiff<br>COUNTY OF SANTA CLARA |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSÉ, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, CITY OF ST. PAUL, CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100,<br><br>Defendants. | Case No. 25-CV-01350-WHO<br><br>**DECLARATION OF KYLE MEAUX IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

## DECLARATION OF KYLE MEAUX

I, Kyle Meaux, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to the matters set out below.

2. I am the Assistant Director for the San Diego Police Department's Chief's Office. My duties include overseeing, managing, and directing the operations of the Finance Division within the San Diego Police Department (SDPD). This includes Information Technology, Fiscal, Grants, and Payroll Units. I have been employed with SDPD since 2007.

3. SDPD relies on approximately $8 million in federal grants from at least four U.S. Department of Justice (DOJ) programs: 1) Internet Crimes Against Children (total awarded since 2018 is approximately $3.5 million); 2) Edward Byrne Justice Assistance Grant (total awarded since 2019 is approximately $3 million); 3) DNA Capacity Enhancement for Backlog Reduction Grant (total awarded since 2021 is approximately $1.4 million); and 4) Paul Coverdell Forensic Science Improvement Grant (total awarded since 2022 is approximately $167,000). These programs, each of which is described below, support public safety in San Diego.

4. The Internet Crimes Against Children (ICAC) Grant Program funds local law enforcement efforts—specifically the San Diego ICAC Task Force—to investigate computer crimes that target youth, provide educational training to teachers, parents, and children, and serve as a forensic resource to other local law enforcement agencies. The San Diego ICAC Task Force is comprised of several SDPD police officers, sergeants, and detectives in collaboration with representatives from the San Diego Sheriff's Office, Chula Vista Police Department, San Diego Unified School District, San Diego District Attorney's Office, Naval Criminal Investigative Service, Homeland Security Investigations, and others. It is one of 61 coordinated task forces across the United States, investigating and prosecuting cases at the local, state, and federal level as well as developing effective responses to deter internet crimes against children. This task force

also participates in national investigative efforts, relying on DOJ funds to actively protect vulnerable youth being targeted online and throughout our local communities.

5. Loss of these funds would directly impact the San Diego ICAC Task Force's efforts to protect San Diego's youth at a time when internet crimes are on the rise and becoming more sophisticated. SDPD relies on these funds to not just be reactive but also proactive in its approach to protect children in San Diego. A vital component of the ICAC program is to provide ICAC staff with resources to maintain the highest possible level of education and training, as this field is specialized, dynamic, and rapidly evolving. It is important that new investigators and police officers receive ICAC-related training as well. ICAC offenses often cross country, state, and international boundaries, requiring travel to other jurisdictions to further an investigation or apprehend a suspect. Without funding, the ability to reimburse partner agencies for assigning their detectives and agents to the Task Force would come to a halt, leaving it without personnel to investigate, for instance, the 11,000 Cyber Tips received by San Diego in 2024 alone.

6. Additionally, the San Diego ICAC Task Force serves an average of three residential search warrants per month. These warrants require not only weeks of preparation but also extensive field work by the entire San Diego ICAC team. Without access to critical federal funds like ICAC, residential search warrants involving ICAC will not be served, evidence on electronic devices will never be recovered, suspects will not be arrested, and youth victims will not be identified. Thus, ICAC grants that are paused or terminated will have a detrimental impact on law enforcement's ability to protect all children and teenagers using the Internet and other technology, address the proliferation of child sexual abuse images available electronically, and investigate the heightened online activity by predators seeking unsupervised contact with underage victims.

7. The Edward Byrne Memorial Justice Assistance Grant (Byrne JAG) Program enables SDPD to support numerous projects and activities to control crime and

strengthen the criminal justice system. San Diego receives an annual allocation, distributed by reimbursements for eligible costs. JAG funds support law enforcement and corrections programs, drug treatment and enforcement programs, mental health programs, and crime prevention programs.

8. Due to its location as a port, harbor, and border city, San Diego faces many unique law enforcement challenges. The wide variety of programs and projects under JAG alone would create significant vulnerabilities in public safety if San Diego were to lose this funding.

9. Notably, the lack of federal funds would significantly reduce SDPD's ability to respond to community emergencies. For example, by withholding funds for updated equipment and training programs, it reduces the effectiveness of police officers, increases response times resulting from limited staff, and reduces SDPD's overall ability to address critical incidents.

10. Without Byrne JAG funds, SDPD would likely be forced to shift funds from other public safety initiatives, undermining long-term crime prevention efforts and upgraded interoperability and security projects. This compromises public safety, impedes collaboration with partner agencies during mutual aid requests, and erodes the community's trust in SDPD to respond to emergencies.

11. By way of example, Byrne JAG grants are currently used to acquire bulletproof vests and other safety equipment for specialized units within SDPD. Byrne JAG grants also fund upgrades to SDPD's mesh communications system. This system allows for efficient communications even when some connections are lost, because it does not rely on a single central point of control. These communication upgrades are necessary as SDPD deals with daily emergencies and renders aid during times of natural disasters like wildfires and floods—both of which are prevalent in the San Diego region. Upgraded safety equipment and communications systems all lead to safer outcomes for SDPD officers and increased efficiency in their work to protect local communities.

Decl. of Kyle Meaux ISO Plts.' Mot. For Prelim. Injunction                4

12. Byrne JAG grants also fund vital crime prevention programs and initiatives related to domestic violence, as well as those led by SDPD's multijurisdictional gang and drug task forces. If San Diego loses Byrne JAG funding, SDPD would have to reprioritize these essential programs and initiatives, likely shifting to a more reactive work model with less emphasis on community policing and crime prevention. This shift would increase risk to police officers and citizens.

13. San Diego also receives federal funding from another DOJ grant program: the DNA Capacity Enhancement for Backlog Reduction Grant, which it uses to process DNA requests in its Crime Laboratory. SDPD's Crime Laboratory saw a nearly 410% increase in completed cases from 2000 to 2022. SDPD heavily relies on these federal funds to reduce turnaround time at its Laboratory, increase the number of samples analyzed, improve any backlog, adhere with mandated training, and increase staffing and capacity.

14. SDPD has used the funding to hire a full-time Laboratory Technician, implement technological advancements in instrumentation, train additional personnel, and pay SDPD staff overtime for priority cases as necessary. It has also purchased updated laboratory software and a liquid handling instrument that increases testing capacity.

15. Loss of funding would severely impact the SDPD Laboratory's ability to function. Laboratory staff would be forced to work with insufficient instruments and reduced training. SDPD might also be forced to lay off its full-time technician and other staff. These cuts would decrease the overall capacity to process DNA samples effectively and efficiently in the Laboratory's DNA unit and would lead to delayed DNA test results.

16. Successful prosecutions are increasingly reliant on physical evidence, and the Crime Laboratory is doing crucial work in supporting SDPD's investigations.

17. SDPD also receives federal funding support from the Paul Coverdell Forensic Science Improvement Grant, which provides funding to acquire and maintain

accreditation for crime labs, reduce backlogs, and improve the timeliness and quality of forensic science and medical examiner/coroner services.

18. This grant passes funds through reimbursement with the California Office of Emergency Services.

19. The SDPD's Crime Laboratory similarly relies on these funds to reduce backlogs and reduce turnaround time of forensic services. Loss of these funds would negatively impact the SDPD Laboratory's ability to provide timely results—increasing backlogs and, consequently, hindering SDPD's ability to properly investigate potential and reported crimes that harm our communities.

20. SDPD provides crucial public safety services that are relied on by the entire San Diego community. The inner workings of the department are complex as are the matters that they handle. Loss of DOJ grants will negatively impact SDPD and its citizens in a significant way. It will affect SDPD's overall ability to provide vital public safety services, such as its work fighting crimes against children, dealing with mental health-related emergencies, providing meaningful outcomes in reported crimes and criminal investigations, routinely training public safety staff, and proactively offering ample resources to the public to deter crimes in San Diego.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 10, 2025, in San Diego, California.

_____
Kyle Meaux

Decl. of Kyle Meaux ISO Plts.' Mot. For Prelim. Injunction                6