DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5402
Telephone:    (415) 355-3308
Facsimile:    (415) 437-4644
E-Mail:    karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:    (408) 299-5900
Facsimile:    (408) 292-7240
E-Mail:    tony.lopresti@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSÉ, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, CITY OF ST. PAUL, CITY OF SANTA FE, <br><br> Plaintiffs, <br><br> vs. <br><br> DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100, <br><br> Defendants. | Case No. 3:25-cv-1350-WHO <br><br> **DECLARATION OF PRISHNI MURILLO IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Hearing Date:    TBD <br> Time:    TBD <br> Judge:    Honorable William H. Orrick <br> Place:    Courtroom 2 <br><br> Date Filed:    February 7, 2025 <br> Trial Date:    None Set |

Decl. of Prishni Murillo ISO Plts.' Mot. for Prelim.
Injunction; CASE NO: 25-CV-1350-WHO

n:\cxlit\li2025\250739\01818019.docx

## DECLARATION OF PRISHNI MURILLO

I, Prishni Murillo, declare as follows.

1.     I am a resident of the State of California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to the matters set forth below.

2.     I am the Program & Planning Manager at the San Francisco Department of Children, Youth, and their Families ("DCYF").  In this role, I am responsible for providing oversight and coordination of the DCYF Funding Team, supervising Program Specialists, and managing a caseload of grants and grantees. I previously served as a Senior Program & Planning Specialist within DCYF.

3.     DCYF supports programs serving young people up to age 24 and their families.  In many instances, DCYF's programs serve some of the most vulnerable and at-risk young people in the community, and help these people learn and succeed at school and prepare for college, work, and productive adulthood.

4.     For example, DCYF funds various programs for young people involved in the criminal justice system, including a community assessment and referral center, family support, out-of-home placement, and services for young people in custody.   DCYF also runs a nutrition program that provides free afterschool and summer meals to anyone age 18 or younger to ensure that young people in San Francisco can meet their basic nutrition needs and establish a healthy relationship with food. DCYF leads an interdepartmental School Crisis Support Initiative, which works to identify and resolve violent incidents in San Francisco public schools using de-escalation and conflict resolution while linking students to needed support.

5.     San Francisco's Sanctuary Ordinance plays an important role in helping DCYF build trust with the community so that all young people and their families, regardless of immigration status, feel comfortable accessing DCYF-funded programs and services.

6.     By contrast, when there is fear and confusion around the government's role in immigration enforcement, community members are less likely to access these services.  In the current climate of heightened fear and rhetoric around immigration enforcement and mass deportations, DCYF has seen a noticeable decrease in young people accessing services.  For example, community

organizations that administer DCYF-funded programs for justice-involved youth have reported that young people and their families are resistant to register for programs because of a fear of potential immigration consequences. DCYF has also seen a drop in attendance at some after-school programs.

7.      DCYF relies on federal funds, including grants from the U.S. Department of Justice ("DOJ"), in order to deliver vital services to San Francisco's young people. For example, since October 2022, DCYF has been awarded $2,000,000 in DOJ funding through the STOP School Violence program in order to support the work of the School Crisis Support Initiative. These funds primarily support case managers and violence interrupters who respond to incidents of school violence, de-escalate potentially violent incidents, perform one-on-one assessments with students, and connect them with resources.

8.      DCYF has also been awarded approximately $1.25 million in DOJ funding through the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") Program. These grant funds support several evidence-based programs for young people at risk or involved in the criminal justice system. This includes supporting programs like the Law Enforcement Assisted Diversion (LEAD SF), Focused Drug Deterrence, Drug Court Prosecution, Targeted Drug Treatment for Underserved Populations, Intensive Probation Supervision, Reentry Social Work, and Citywide Justice-Involved Youth Planning and providing early-stage diversion, focused deterrence activities, efficient prosecution, intensive probation supervision, recidivism reduction, and system-involvement prevention efforts. DCYF administers these funds through a multidisciplinary partnership with San Francisco's public safety departments, including the Police Department, Sheriff's Office, District Attorney's Office, Adult Probation Department, and Public Defender's Office. The Byrne JAG funds support case managers who work with youth across all middle and high schools in the district, as well as personnel across the city working with youth 16-24 years old in the juvenile and adult justice systems—with a particular focus on drug deterrence activities.

9.      The threats to DOJ funding present an immediate dilemma for DCYF. Many of the DOJ grants that DCYF receives are reimbursement-based—i.e., DCYF spends City funds on grant-approved projects, and then seeks reimbursement from DOJ. Thus, DCYF must decide whether to keep funding programs using City money and incur the risk that DOJ will withdraw grant funding and

1  refuse to reimburse these expenditures because of San Francisco's sanctuary policies. For now, DCYF

2  is continuing to budget for and fund these projects with the expectation that it will be reimbursed, but

3  the uncertainty around DOJ grant funding impacts DCYF's budgetary planning for programming and

4  services.

5      10.    The loss of DOJ grant funding would have a significant negative impact on DCYF's

6  ability to provide needed programming and services. If, for example, funding for the School Crisis

7  Support Initiative were withheld, DCYF would at a minimum have to significantly reduce the capacity

8  of the program, and would likely have to shut it down entirely. This would remove a critical service to

9  defuse and address school violence in San Francisco schools, which could negatively impact the safety

10  and wellbeing of students.

11      11.    Withholding of Byrne JAG funding would disrupt the work not just of DCYF, but also

12  the several other public safety departments that use the funding to administer treatment programs and

13  services for young people with substance use issues and involvement in the criminal justice system.

14  Without the Byrne JAG funding, DCYF would likely be unable to maintain the current level of

15  programming and services using its own budget. While DCYF would look to other departments and

16  partners to support these programs, it is likely that losing DOJ funding would require reducing the

17  availability and capacity of these programs—and thus reducing the number of young people with

18  addiction issues or criminal justice involvement who can access these services.

19      12.    DCYF also relies on funding from other federal agencies. For example, DCYF has been

20  awarded over $828,000 from the U.S. Department of Agriculture (passed through the California

21  Department of Social Services) for after-school meal programs. Through this program, DCYF

22  provides financial and administrative support to ensure that free nutritious meals are available in all

23  high-needs neighborhoods in San Francisco to any youth 18 and under. DCYF is currently awaiting

24  renewal of funding for fiscal year 2025-2026 for its after-school meal program, as well as for summer

25  food program for young people.

26      13.    As with the DOJ grants discussed above, the Department of Agriculture grant is also

27  reimbursement-based, meaning that DCYF initially uses City funds to pay for meals and then seeks

28  reimbursement based on the number of meals provided multiplied by a pre-determined rate per meal.

If this funding were withheld or suspended, DCYF would have to cancel the meal program or rely on partners who provide programming for students to shift resources to provide meals for students. This would necessarily mean diverting money away from personnel and programming needs to pay for food and snacks—thus reducing the quality, capacity, and availability of funding for literacy support, out-of-school youth development and other enrichment activities and services.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 10, 2025, in San Francisco, California.

Prishni Murillo