1  DAVID CHIU, SBN 189542
   City Attorney
2  YVONNE R. MERÉ, SBN 175394
   Chief Deputy City Attorney
3  MOLLIE M. LEE, SBN 251404
   Chief of Strategic Advocacy
4  SARA J. EISENBERG, SBN 269303
   Chief of Complex and Affirmative Litigation
5  NANCY E. HARRIS, SBN 197042
   KARUN A. TILAK, SBN 323939
6  Deputy City Attorneys
   Fox Plaza
7  1390 Market Street, 7th Floor
   San Francisco, CA  94102-5402
8  Telephone:    (415) 355-3308
   Facsimile:     (415) 437-4644
9  E-Mail:        karun.tilak@sfcityatty.org

10 Attorneys for Plaintiff
   CITY AND COUNTY OF SAN FRANCISCO
11

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:    (408) 299-5900
Facsimile:     (408) 292-7240
E-Mail:        tony.lopresti@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

12

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15 CITY AND COUNTY OF SAN FRANCISCO,          Case No. 3:25-cv-1350-WHO
   COUNTY OF SANTA CLARA, CITY OF
16 PORTLAND, MARTIN LUTHER KING, JR.          **DECLARATION OF SAN FRANCISCO**
   COUNTY, CITY OF NEW HAVEN, CITY OF         **POLICE CHIEF WILLIAM SCOTT ISO**
17 OAKLAND, CITY OF EMERYVILLE, CITY OF       **PLAINTIFFS' MOTION FOR**
   SAN JOSÉ, CITY OF SAN DIEGO, CITY OF       **PRELIMINARY INJUNCTION**
18 SACRAMENTO, CITY OF SANTA CRUZ,
   COUNTY OF MONTEREY, CITY OF SEATTLE,
19 CITY OF MINNEAPOLIS, CITY OF ST. PAUL,     Hearing Date:    TBD
   CITY OF SANTA FE,                          Time:            TBD
20                                            Judge:           Honorable William H. Orrick
                                              Place:           Courtroom 2
21          Plaintiffs,
                                              Date Filed:      February 7, 2025
22     vs.                                    Trial Date:      None Set

23 DONALD J. TRUMP, President of the United
   States, UNITED STATES OF AMERICA,
24 PAMELA BONDI, Attorney General of the United
   States, EMIL BOVE, Acting Deputy Attorney
25 General, UNITED STATES DEPARTMENT OF
   JUSTICE, KRISTI NOEM, Secretary of United
26 States Department of Homeland Security, UNITED
   STATES DEPARTMENT OF HOMELAND
27 SECURITY, DOES 1-100,

28          Defendants.

**DECLARATION OF SAN FRANCISCO POLICE CHIEF WILLIAM SCOTT**

I, WILLIAM SCOTT, declare as follows:

1.    I am a resident of the State of California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to the matters set forth below.

2.    I am the Chief of Police for the San Francisco Police Department ("SFPD"), a position I have held since January 23, 2017.

3.    SFPD is committed to ensuring public safety for all San Francisco residents.  To do this, SFPD aims to engage in just, transparent, unbiased and responsive policing, and to build trust and collaboration with the community.

4.    San Francisco's Sanctuary Ordinance has been an integral part of building trust with immigrant communities.  Ensuring all individuals and their families, regardless of immigration status, feel safe approaching SFPD allows for greater cooperation with law enforcement.  For example, victims of crimes and witnesses can feel safe coming forward and cooperating with SFPD without fear that contacting law enforcement will result in immigration consequences.  This cooperation is essential to SFPD's ability to apprehend criminals—making the City safer for everyone.

5.    Pursuant to the Sanctuary Ordinance and SFPD policy, SFPD officers are prohibited from assisting with enforcement of federal civil immigration laws, do not inquire about the immigration status of individuals with whom they have contact, and do not detain individuals on the basis of a civil immigration detainer or administrative warrant, with limited exceptions.

6.    Federal government funding, and in particular federal funding from the U.S. Department of Justice ("DOJ") is vitally important to SFPD.

7.    In the last four years, SFPD has been awarded or received over $10 million in DOJ federal grants, which go towards critical public safety functions.  $8 million of that total are active DOJ grants.

8.    For instance, SFPD has been awarded $6,250,000 through the DOJ COPS Officer Hiring Program ("COPS grant"), which has enabled SFPD to fund salaries for fifty SFPD officers for a

1  three-year period.  SFPD is critically understaffed, and the addition of these 50 officers is vitally

2  important for SFPD's patrol and other functions.

3      9.    SFPD has also been awarded $990,616 in DOJ funding through the Edward Byrne

4  Memorial Justice Assistance Grant Program ("Byrne JAG") to support the SFPD's Regional Vehicle

5  Interdiction Desk Project, a multijurisdictional project to combat carjacking and the use of stolen

6  vehicles in organized crime.  Carjacking and car theft are a significant public safety concern not only

7  in San Francisco, but across the Bay Area.  These funds will support law enforcement activities,

8  include tactical casework in support of carjacking investigations and prosecutions and use of

9  carjacking vehicles in organized crime, advanced software and training, and a media campaign to

10  support community engagement and community policing.

11      10.    SFPD has also been awarded $640,000 in DOJ grants to support the work of the SFPD

12  Criminalistics Laboratory (Crime Lab), the agency responsible for analyzing evidentiary material

13  associated with local criminal investigations.  This funding supports the salaries for two lab

14  technicians, the acquisition of new software, and other improvements that will help the Crime Lab

15  process evidence more efficiently and quickly, therefore helping law enforcement in San Francisco

16  solve crimes faster.

17      11.    The above examples are illustrations of some of the critical public safety work

18  supported by DOJ funding.

19      12.    Suspending or withdrawing this funding would have significant negative impacts on

20  SFPD's operations.  For example, without COPS funding, SFPD would likely have to use General

21  Fund money to cover the salaries and benefits for these officers in order to avoid a reduction in

22  service.  However, given the City's budget deficit and strained financial position, using limited

23  General Fund dollars in order to keep the 50 officers currently funded by COPS grant would likely

24  require allocating that money away from other important SFPD public safety services.

25      13.    Similarly, loss of Byrne JAG funding for the Regional Vehicle Interdiction Desk

26  Project would hamper SFPD's ability to tackle the significant criminal problem of carjacking.  The

27  impacts of the loss of these funds would be felt across the Bay Area, because the Project supports

28

1  carjacking investigations across several Bay Area counties. The Crime Lab's ability to process critical
2  evidentiary material would likewise suffer from a loss of DOJ funding.

3    14.    The threats to DOJ grant funding are already generating immediate uncertainty for
4  SFPD. In general, the DOJ grants are reimbursement-based. In other words, SFPD must initially use
5  City funds to pay for grant-approved purposes and then seek reimbursement from DOJ up to the
6  approved grant amount. Thus, SFPD must decide about whether to continue spending money for
7  grant-approved projects given the risk that those costs will not be reimbursed if the grants are
8  suspended because of San Francisco's Sanctuary ordinance. For example, with respect to the COPS
9  grant, SFPD has spent $4,888,412 through the pay period ending February 14, 2025, but has only
10  received reimbursements of $4,171,210—leaving over $700,000 for which SFPD must still seek
11  reimbursement from DOJ. SFPD expects expenditures to increase by a further $200,000 during the
12  next pay period. For now, SFPD is continuing to budget and spend funds for purposes approved under
13  the grant agreements and intends to seek reimbursement. But obtaining clarity about whether DOJ
14  grant funding will continue is extremely important for the Department's fiscal planning.

15    15.    SFPD also receives funds from other federal agencies, including the Department of
16  Transportation and the Department of Homeland Security. These funds are used to improve traffic
17  safety in San Francisco and have allowed SFPD to acquire necessary equipment for its Marine Unit,
18  which is responsible for assisting with rescuing vessels and individuals in distress and investigating
19  crimes in the San Francisco Bay.

20    16.    The loss of all federal grants would have dire consequences for SFPD's core public
21  safety services. Of the $9.3 million in total active federal grants that SFPD receives, 76% goes
22  towards salaries for staff and 11% covers necessary training, supplies, and equipment. SFPD is
23  critically understaffed with numerous demands for public safety. The majority of its budget is directed
24  towards salary with very little discretionary funds. Losing federal funds will add to SFPD's staffing
25  shortages and will contribute to worsening public safety in San Francisco. It would limit the
26  Department's ability to hire or to tackle the challenging issues on crime that the funds are meant to
27  address.

28

1      I declare under penalty of perjury that the foregoing is true and correct and that this declaration

2  was executed on March 10, 2025 at San Francisco, California.

3

4  _____
              WILLIAM SCOTT

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. of William Scott ISO Plts.' Mot. for Prelim.
Injunction