DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone: (415) 355-3308
Facsimile: (415) 437-4644
E-Mail: karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
E-Mail: tony.lopresti@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSÉ, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, CITY OF ST. PAUL, CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100,<br><br>Defendants. | Case No. 3:25-cv-1350-WHO<br><br>**DECLARATION OF SAN FRANCISCO SHERIFF PAUL MIYAMOTO IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Paul Miyamoto, declare as follows:

1. I am a resident of the State of California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to the matters set forth below.

2. I am the Sheriff of the City and County of San Francisco ("San Francisco"). I joined the Sheriff's Office in 1996. I began my career assigned to the Custody Operations Division and worked in the jails at 425 7th Street and the Hall of Justice. In 1999, I was promoted to the rank of Senior Deputy and was assigned to the Training Unit to create the Department's first Field Training Manual. When I promoted to Sergeant, I served as the Training Unit manager. As a Lieutenant, I closed the old San Bruno Jail and opened the current San Bruno facility in 2005. As a Lieutenant, I was also assigned to the Sheriff's Patrol Unit at the Department of Public Health, and as the unit commander for our Investigative Services Unit. In 2008, I was promoted to Captain and served as a facility commander to the San Francisco County Jail at San Bruno and the Maximum Security Jail at the Hall of Justice. I served under Sheriff Ross Mirkarimi as the Assistant Sheriff from 2012-2015. I then served as a Chief Deputy from 2016-2019 as a division commander for both Custody Operations (2016-2017) and Field Operations (2017-2019). During my career, I also served in the Emergency Services Unit and on the Special Response Team (SRT/SWAT). I assumed office as the Sheriff on January 8, 2020. I was re-elected Sheriff for a second term that began January 8, 2025.

3. The San Francisco Sheriff's Office is responsible for operating the County jail system; enforcing the law; executing orders and legal process issued by California courts, the San Francisco Board of Supervisors, and other authorized entities; and providing security to courthouses, public hospitals, other public buildings, and public officials. The Sheriff's Office contracts with other City Departments to provide law enforcement patrol services in the City and County and coordinates with the San Francisco Police Department to provide security at large public gatherings or events, such as the 2025 NBA All-Star Weekend and the 2023 Asia-Pacific Economic Cooperation Leaders' Summit.

4. I am familiar with San Francisco's Sanctuary Ordinance, found in San Francisco Administrative Code Sections 12H and 12I. The Sanctuary Ordinance benefits the work of the

Sheriff's Office by facilitating trust between law enforcement and the public. This helps to create an environment where individuals can be candid and forthcoming with law enforcement, and feel comfortable reporting crimes, serving as witnesses, and assisting with investigations.

5. Consistent with San Francisco's Sanctuary Ordinance and state law, the San Francisco Sheriff's Office does not continue to hold individuals in custody who are otherwise subject to release based solely on a civil immigration detainer request or an administrative warrant.

6. As laid out in Section 12I.3(d) of the San Francisco Administrative Code, the Sheriff's Office may notify immigration authorities of the release date of an individual custody if they have a history of serious or violent felonies, face current felony charges, and pose a public safety risk. The Sheriff's Office conducts a thorough evaluation of an individual in order to determine whether they meet the Administrative Code's criteria for notifying Immigration and Customs Enforcement (ICE) of their release date. If an individual does not meet these criteria, the Sheriff's Office does not respond to notification requests from immigration authorities.

7. The Sheriff's Office's policies do not seek to interfere with federal immigration enforcement. Rather, the Sheriff's Office's policies are intended to ensure that the Department's resources are devoted to serving all San Francisco residents and the incarcerated population in the Sheriff's Office's custody. The Sheriff's Office also complies with criminal warrants or court orders to arrest or detain an individual. And as discussed above, in cases involving serious and violent criminals who pose a public safety risk, the Sheriff's Office conducts a case-by-case evaluation and determines whether to notify ICE of an inmate's release date.

8. Using the Sheriff's Office's facilities to assist with immigration enforcement would burden the Sheriff's Office's limited resources. Immigration detainer requests typically ask that an individual be held in custody for 48 hours beyond their release date, which could be a pretrial release date or a scheduled date for release after serving a sentence. Keeping those individuals in custody for an additional 48 hours would strain jail capacity and services. The Sheriff's Office would have to provide these detainees with security, housing, food, and potentially healthcare. An increase in the daily jail population created as a result of civil immigration detainers would also require additional

administration and training, and may require the allocation of additional sworn and non-sworn staff to ensure the safe operation of the County's jail facilities. The costs of providing these services is significant. The Office estimates that it costs between $200-$400 per day to care for an inmate, including providing housing and food, sufficient staffing to ensure the safety of the inmate population, and other incidental costs. Responding to notification requests also takes staff away from their regular job duties in ensuring the safety and security of individuals in Sheriff's Office custody.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on March 10, 2025 at San Francisco, California.

_____
Sheriff Paul Miyamoto

Decl. of S.F. Sheriff Paul Miyamoto ISO Plts.' Mot. for Prelim. Injunction      4      Case No. 3:25-cv-1350-WHO