DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Telephone:   (415) 355-3308
Facsimile:   (415) 437-4644
E-Mail:       karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:   (408) 299-5900
Facsimile:   (408) 292-7240
E-Mail:       tony.lopresti@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSÉ, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, CITY OF ST. PAUL, CITY OF SANTA FE, <br><br>Plaintiffs, <br><br>vs. <br><br>DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100, <br><br>Defendants. | Case No. 25-CV-01350-WHO <br><br>**DECLARATION OF STEN JOHNSON, ASSISTANT FIRE CHIEF, CITY OF SANTA FE, NEW MEXICO, IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

## DECLARATION OF STEN JOHNSON

I, Sten Johnson, declare as follows:

1. I have personal knowledge of all the matters stated herein and could and would testify truthfully thereto if called to do so.

2. I am the Assistant Fire Chief of Support Services for the City of Santa Fe (the "City"), New Mexico, where I oversee all divisions that support fire and emergency medical services (EMS) response. I have held this position for three years. Previously, I held multiple ranked officer positions and operational positions within our fire department as well as other emergency response agencies. Overall, I have 35 years' of experience in the EMS and fire department industry.

3. The City of Santa Fe Fire Department (the "Fire Department") serves as the first response and sole provider of fire and rescue services in the capital city of the state of New Mexico. The Fire Department is an all-hazards response department that includes structural and wildland fire suppression, an extrication and technical rescue team, hazardous materials response, fire protection at our commercial airport, and emergency medical services. We provide all emergency ambulance services for our City.

4. A section of the City's EMS division is a program that operates under the name of Mobile Integrated Health (MIH). During the past 15 years, we came to realize that some of the same people repeatedly used the 911 system, multiple times a month and, in some situations, multiple times a day. Common reasons for the calls were mental/behavioral health, substance abuse, homelessness, and impaired-mobility challenges. These individuals did not need repetitive visits to the hospital emergency department, but they had no other resources available. The City created MIH to seek out those people who are most vulnerable and to provide them case management. This strategy allows our case managers the opportunity to drill down to the root of frequent callers' needs and connect them with community resources better suited to help.

5. The MIH team consists of fifteen personnel: an operational chief officer, clinical manager (licensed social worker), EMS Captains (paramedics), case managers, and case manager supervisors. There are several strategies the team uses, but the two primary strategies are case management and an Alternative Response Unit (ARU). The ARU team consists of an EMS Captain, case manager, and police officer (assigned to the team from the City's Police Department). This team responds to 911 calls in real time. Any Fire Department or Police Department personnel may request ARU response when they realize the 911 caller could better benefit from ARU services. The ARU team spends a few hours connecting the caller to needed services. If the ARU determines the needs of the caller outweigh what can be offered during that initial contact, then the team refers the caller to the MIH case management program. A case manager is assigned to the 911 caller, who is then considered a client. The case manager works with the client for three to six months. One-on-one case management allows an opportunity to establish trust. That trust helps guide the case manager to understand the individual needs of their client, then connect the client to appropriate services. Once client needs are identified and initial connections are made, the client is then handed off to longer-term services.

6. MIH's goal is to send the right resource to the right call and to guide people in need toward the most effective treatment available. In the long term, we hope to decrease unnecessary 911 responses, which will keep our emergency resources more available for high-priority calls and reduce costs of deploying emergency resources. Getting the right help for the client will better serve them and lessen the incurred costs to healthcare in general.

7. The Fire Department was awarded $300,000 in federal funding from the United States Department of Justice ("DOJ") Byrne Discretionary Community Projects Grant to procure new specialty vehicles for the ARU team. From their time working outside in the elements with clients, the ARU team recognizes that bringing a client into a safe, private, and climate-controlled space is beneficial. The ARU team often encounters clients in public areas and meets with them for prolonged

periods of time. In addition, many clients are mobility impaired and/or reliant on a wheelchair, making it difficult for them to climb into a vehicle. The ARU's current vehicle, a SUV, is not conducive to meeting with clients; it is awkward for them to enter the vehicle and, therefore, it is sometimes impossible to have a productive encounter. The Fire Department plans to use the DOJ grant funds to purchase a Sprinter van-type vehicle, designed similarly to an ambulance, but without a gurney and with more seating and a table or desk. Access and egress for clients would be provided with a few built-in steps that are lower to the ground, and a wheelchair lift for the unit would accommodate physically disabled clients.

8. The DOJ grant also funds another priority for the MIH's ARU team: the acquisition of new and updated laptops. The current laptops are depreciating and losing reliability. Having reliable hardware with both Wi-Fi and data-card connectivity is important for MIH because we need to collect data, longitudinally track progress notes and plans for the clients we serve, and complete required reporting to the Federal Emergency Management Agency National Fire Incident Reporting System.

9. All funds under these grant programs are given on a reimbursement basis. In other words, although an overall sub-grant amount is determined by DOJ and the City of Santa Fe in advance, the City receives reimbursement only after it submits documentation showing it has completed qualifying projects. In the meantime, the projects are funded by the City.

10. Loss of the DOJ grant would be a hardship to the people we serve. The City would have to forego the anticipated purchases unless and until another source of funding became available. Working with our current equipment and vehicles is inefficient and, if the technology is not updated soon, clients' progress data could be lost. Without improvements to the vehicles, client transportation will be at best awkward and at worst impossible. The MIH and ARU teams and case workers would not be as agile and could not sustain the number of clients they carry on their caseloads. Response times will be severely delayed and potentially nonexistent. In the end, the client/patient will suffer.

High costs of emergency crews' response will be incurred. This will result in higher healthcare costs to the public.

11. Our MIH staff consists of highly trained, motivated individuals. They are compassionate in their efforts to help others and passionate about the work they do. The DOJ grant will significantly assist them to help the most people using the most effective means.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 12, 2025, in Santa Fe, New Mexico.

_____
STEN JOHNSON