YAAKOV ROTH
Acting Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
EREZ REUVENI
Acting Deputy Director
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
LINDSAY ZIMLIKI
ANGEL FLEMING
Trial Attorney

CAROLINE MCGUIRE
NY Bar No. 5854823
LINDSAY W. ZIMLIKI
PA Bar. No. 322181
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | CASE NO. 3:25-CV-1350 (WHO)<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION<br><br>Hearing Date: April 23, 2025<br>Time:          2:00 P.M. PST<br>Honorable William H. Orrick III |

1

**TABLE OF CONTENTS**

2
INTRODUCTION ...................................................................................................................1

3
BACKGROUND ...................................................................................................................2

4
I.       The Executive Orders and Agency Memoranda. ...............................................2

5
II.      The Executive Has Broad Discretion In The Enforcement Of Immigration Law And
6        Congress Intended For State/Local Governments To Work With The Federal
         Government In Carrying Out Immigration Enforcement. ...................................5

7
III.     This Litigation. .................................................................................................6
8
STANDARD OF REVIEW ...................................................................................................6
9
ARGUMENT ......................................................................................................................7
10
I.       The Court Should Deny Plaintiffs Injunctive Relief.........................................7
11
         A.      Plaintiffs Cannot Establish A Likelihood Of Success On The Merits..........8
12
                 1.      Plaintiffs' Claims Are Not Ripe............................................................8
13
                 2.      Plaintiffs Lack Standing.......................................................................10
14
                 3.      Plaintiffs Fail to Show a Violation of Separation of Powers. ...............13
15
                 4.      Plaintiffs Fail to Show a Violation of the Spending Clause. ................14
16
                 5.      Plaintiffs Fail to Articulate a Due Process Violation............................15
17
                 6.      Plaintiffs Fail to Articulate a Violation of the Tenth Amendment. .......16
18
19               7.      Plaintiffs Fail to Articulate a Violation of the APA. ............................17
20
         B.      Plaintiffs Cannot Establish Irreparable Harm To Warrant A Preliminary
21               Injunction. .........................................................................................................21
22
         C.      The Public Interest and the Balance of Equities Militate Against the
23               Injunction. .........................................................................................................23
24
         D.      The Court Should Require Plaintiffs to Post Security. ......................................24
25
CONCLUSION....................................................................................................................25

26

27

28

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) ............................................................................................................. 17

*Acquest Wehrle LLC v. U.S.,*
    567 F. Supp. 2d 402 (W.D.N.Y. 2008) ............................................................................... 18

*Am. Fed'n of State, Cty. & Mun. Employees v. Scott,*
    717 F.3d 851 (7th Cir. 2013) .............................................................................................. 13

*Americans for Immigrant Just. v. DHS,*
    22-3118 (CKK), 2023 WL 4364096 (D.D.C. July 6, 2023) ................................................ 24

*Anderson v. Green,*
    513 U.S. 557 (1995) ............................................................................................................... 8

*Arc of Cal. v. Douglas,*
    757 F.3d 975 (9th Cir. 2014) .............................................................................................. 21

*Arcsoft, Inc. v. Cyberlink Corp.,*
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) .............................................................................. 21

*Arizona Dream Act Coal. v. Brewer,*
    855 F.3d 957 (9th Cir. 2017) ................................................................................................ 5

*Arizona v. United States,*
    567 U.S. 387 (2012) ..................................................................................................... 5, 16, 23

*Baird v. Bonta,*
    81 F.4th 1036 (9th Cir. 2023) ............................................................................................... 7

*Bennett v. Spear,*
    520 U.S 154 (1997) .............................................................................................................. 17

*Bova v. City of Medford,*
    564 F.3d 1093 (9th Cir. 2009) .............................................................................................. 8

*Bresgal v. Brock,*
    843 F.2d 1163 (9th Cir. 1987) ............................................................................................ 24

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) .......................................................................................... 2, 24

*Caribbean Marine Servs. Co. v. Baldrige,*
    844 F.2d 668 (9th Cir. 1988) .............................................................................................. 21

*Cherry v. U.S. Dep't of Agr.*,
   13 F. App'x 886 (10th Cir. 2001) ............................................................................... 18

*City of Philadelphia v. Sessions*,
   280 F. Supp. 3d 579 (E.D. Penn. 2017) ..................................................................... 19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................................... 10

*Coal. for a Healthy Cal. v. FCC*,
   87 F.3d 383 (9th Cir. 1996) ....................................................................................... 24

*Colvin v. Caruso*,
   605 F.3d 282 (6th Cir. 2010) ....................................................................................... 4

*Connecticut v. Massachusetts*,
   282 U.S. 660 (1931) .............................................................................................. 2, 23

*Consumer Fin. Prot. Bureau v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016) ................................................................................... 23

*Cty. of Santa Clara v. Trump*,
   No. 17-CV-00485-WHO, 2017 WL 1459081 (N.D. Cal. Apr. 25, 2017) .................... 13, 14

*Daimler Chrysler v. Cuno*,
   547 U.S. 332 (2006) ................................................................................................... 10

*District of Columbia v. United States Dep't of Agric.*,
   444 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................... 23

*Env't Info. Ctr. v. Stone-Manning*,
   766 F.3d 1184 (9th Cir. 2014) ..................................................................................... 8

*Envtl. Def. Ctr., Inc. v. EPA*,
   344 F.3d 832 (9th Cir. 2003) ..................................................................................... 16

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
   543 F.3d 586 (9th Cir. 2008) ..................................................................................... 18

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ...................................................................................... 17, 18, 20

*FTC v. Standard Oil Co.*,
   449 U.S. 232 (1980) ............................................................................................ 17, 18

*Golden & Zimmermann, LLC v. Domenech*,
   599 F.3d 426 (4th Cir. 2010) ..................................................................................... 18

*Little v. Jones*,
   607 F.3d 1245 (10th Cir. 2010) ................................................................................. 4

*Los Angeles Mem'l Coliseum Comm'n v. NFL*,
   634 F.2d 1197 (9th Cir. 1980) ................................................................................ 21

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................................. 10

*Lujan v. National Wildlife Fed'n*,
   497 U.S. 871 (1990) ................................................................................................ 19

*Mayweathers v. Newland*,
   314 F.3d 1062 (9th Cir. 2002) ................................................................................ 15

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) .................................................................................................. 7

*New Jersey Hosp. Ass'n. v. United States*,
   23 F. Supp. 2d 497 (D.N.J. 1998) .......................................................................... 18

*New York v. DOJ*,
   951 F.3d 84 (2d Cir. 2020) ............................................................................. *passim*

*New York v. United States*,
   505 U.S. 144 (1992) ........................................................................................ 11, 16

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................ 23

*Norton v. S. Utah Wilderness*,
   *All.*, 542 U.S. 55 (2004) ......................................................................................... 19

*NTEU v. Bush*,
   891 F.2d 99 (5th Cir. 1989) .................................................................................... 13

*Oregon Natural Desert Ass'n. v. U.S. Forest Service*,
   465 F.3d 977 (9th Cir. 2006) .................................................................................. 17

*Pac. Radiation Oncology v. Queen's Med. Center*,
   810 F.3d (9th Cir. 2015) ........................................................................................... 4

*Pride Indus., Inc. v. Comm. for Purchase From People Who Are Blind or Severely Disabled*,
   420 F. Supp. 3d 1035 (E.D. Cal. 2019) .................................................................... 1

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*,
   128 F.4th 1089 (9th Cir. 2025) ............................................................................... 18

iii

*United States v. Salerno*,
  481 U.S. 739 (1987) ................................................................................................ 13

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................................... 22

*City & Cnty. of San Francisco v. Garland*,
  42 F.4th 1078 (9th Cir. 2022) ........................................................................ 9, 10, 11

*City and Cnty of San Franscico v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ............................................................................ 11, 24

*South Dakota v. Dole*,
  483 U.S. 203 (1987) ................................................................................ 11, 13, 14, 15

*Spokeo v. Robins,*
  578 U.S. 330 (2016) ................................................................................................ 10

*State ex rel. Becerra v. Sessions,*
  284 F. Supp. 3d 1015 (N.D. Cal. 2018) ................................................. 12, 19, 22, 23

*Stavrianoudakis v. United States Fish & Wildlife Serv.*,
  108 F.4th 1128 (9th Cir. 2024) ................................................................................. 7

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................... 10

*Trump v. New York*,
  592 U.S. 125 (2020) ..................................................................................... 8, 10, 11

*U.S. Term Limits, Inc. v. Thornton*,
  514 U.S. 779 (1995) ................................................................................................. 16

*Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*,
  911 F.2d 261 (9th Cir. 1990) .................................................................................... 17

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012) ................................................................................ 16

*United States v. King Cnty.*,
  122 F.4th 740 (9th Cir. 2024) .................................................................................... 8

*United States v. Pickard*,
  100 F. Supp. 3d 981 (E.D. Cal. 2015) ...................................................................... 16

*United States v. South Carolina*,
  720 F.3d 518 (4th Cir. 2013) .................................................................................... 16

iv

*United States v. Texas,*
    599 U.S. 670 (2023) ............................................................................................. 24

*Veldhoen v. U.S. Coast Guard,*
    35 F.3d 222 (5th Cir. 1994) ............................................................................... 18

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas,*
    5 F.4th 997 (9th Cir. 2021) ................................................................................ 20

*Williams v. Vidmar,*
    367 F. Supp. 2d 1265 (N.D. Cal. 2005) ............................................................ 15

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ........................................................................................ *passim*

*Wright v. SEIU,*
    48 F.4th 1112 (9th Cir. 2022) ............................................................................ 10

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ........................................................................................... 15

**<u>Statutes</u>**

5 U.S.C. § 704 ....................................................................................................... 17

8 U.S.C. § 1101 ....................................................................................................... 5

8 U.S.C. § 1226(c)(1) ............................................................................................. 6

8 U.S.C. § 1373 .............................................................................................. *passim*

8 U.S.C. § 1373(a) ......................................................................................... *passim*

8 U.S.C. § 1373(b) .................................................................................................. 5

8 U.S.C. § 1373(c) ................................................................................. 5, 13, 15, 20

8 U.S.C. § 1644 ....................................................................................................... 5

8 U.S.C. § 10153(a)(5)(D) .................................................................................... 21

8 U.S.C. § 1231(a)(2) ............................................................................................. 6

8 U.S.C. § 1324 ................................................................................................... 3, 4

8 U.S.C. § 1357(g)(10)(A) .................................................................................... 23

18 U.S.C. § 371 ....................................................................................................... 4

34 U.S.C. § 10153(a)(5)(D) ........................................................................................ 9, 14, 20

**Rules**

Federal Rule of Civil Procedure 65(c) ......................................................................... 24

**Other Authorities**

Proclamation No. 14,218,
   90 Fed. Reg. 10581 (Feb. 19, 2025) ("E.O. 14,218").................................................. *passim*

Proclamation No. 14,159,
   90 Fed. Reg. 8443 (Jan. 20, 2025) ("E.O. 14,159")................................................... *passim*

**INTRODUCTION**

PLEASE TAKE NOTICE that Defendants, by and through their undersigned counsel, pursuant to Local Civil Rule 7(4), submit this opposition to Plaintiffs' Motion for Preliminary Injunction. This opposition is based on the Memorandum of Points and Authorities; all pleadings and papers in this cause of action; and such oral argument as may be presented at a hearing on April 23, 2025, at 2:00 P.M.

Plaintiffs seek "a preliminary injunction prohibiting Defendants from taking any action to withhold, freeze, or condition federal funds based on (1) Section 17 of Executive Order 14,159; (2) Section 2(a)(ii) of Executive Order 14,218; or (3) the February 5, 2025 Memorandum from the Attorney General entitled "Sanctuary Jurisdictions Directives[.]"[1] ECF No. 61 at 1[2] ("Pl. Br."). But Plaintiffs' claims do not warrant the extraordinary relief of a preliminary injunction because their claims are both (1) premature and thus not ripe for review and (2) fail to identify a cognizable injury for Article III standing purposes. Additionally, Plaintiffs failed to show a likelihood of success on the merits of their claims because they do not identify any constitutional violations or challenge a final agency action—as is required under the Administrative Procedure Act ("APA").

To be sure, Plaintiffs' challenge seeks to curb the Executive Branch's deliberative process concerning federal funding decisions and internal review of state and local governments' compliance with federal law. But the challenged directives merely provide guidance to executive agencies to review and evaluate. To date, the federal Government has not implemented any actions against the Plaintiffs, stemming from the challenged directives. Therefore, because Plaintiffs' claims are not ripe for review, Plaintiffs lack Article III standing. Likewise, because Plaintiffs have failed to identify a final agency action from which consequences have flowed, the Court cannot meaningfully evaluate the contours of Plaintiffs' claims with respect to the merits or any putative injury in order to preliminarily enjoin these executive directives. *See Pride Indus., Inc. v. Comm. for Purchase From People Who Are Blind or Severely Disabled*, 420 F. Supp. 3d 1035, 1045 (E.D. Cal. 2019) ("Unless or until plaintiff identifies final agency

---

[1] Plaintiffs do not articulate that they are seeking injunctive relief on the basis of the Memorandum by Emil Bove, dated January 21, 2025. Pl. Br. 1, 6, n.3.

[2] Defendants herein refer to the original page numbers listed at the bottom center of Plaintiffs' brief in support of their preliminary injunction motion.

action that is subject to the court's review under the APA, plaintiff is unable to demonstrate any potential for success on the merits, let alone a likelihood of success.").

Plaintiffs essentially concede that their request for a preliminary injunction is premature. They neither point to an agency action that has taken effect against them, nor articulated that any funding has been stopped. Instead, all their claims focus on speculation about conjectural and vague action that they speculate *may* occur in the future. For example, they clarify that they are not seeking a preliminary injunction with respect to Section 17 of Executive Order 14,159 at this time, characterizing the language of the Order a "threat[]." Pl. Br. 6, n.3. And Plaintiffs reserved their right to seek a future preliminary injunction, "if appropriate" and "[i]f DOJ publishes a list of grants that will be conditioned on compliance with 8 U.S.C. § 1373 or other immigration-related conditions, or begins imposing such conditions. . . ." *Id.* at 8, n.4. Thus, any Order the Court issues would be unmoored from any tangible harm because Plaintiffs have not demonstrated a clear likelihood of success on the merits or irreparable harm. Thus, the Court should deny the preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time," nor will such relief be granted for injuries that are merely "theoretical.").

At a minimum, should the Court find any relief is warranted, it must limit relief to the parties before the Court under binding precedent. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) ("The scope of an injunction is 'dependent as much on the equities of a given case as the substance of the legal issues it presents,' and courts must tailor the scope "to meet the exigencies of the particular case.").

## BACKGROUND

### I.    The Executive Orders and Agency Memoranda.

***Executive Order 14,159.*** On January 20, 2025, the President signed Executive Order 14,159, "Protecting the American People Against Invasion," which instructed "[e]xecutive departments and agencies (agencies)" to "employ all lawful means to ensure the faithful execution of the immigration laws of the United States against all inadmissible and removable aliens." Proclamation No. 14,159, 90 Fed.

Reg. 8443 (Jan. 20, 2025) ("E.O. 14,159"). Additionally, this Order instructed the Attorney General and the Secretary of Homeland Security to "evaluate and undertake any lawful actions to ensure that so-called 'sanctuary jurisdictions,' which seek to interfere with the lawful exercise of Federal law enforcement operations, do not receive access to Federal funds." *Id.* at § 17.

**Memorandum from Emil Bove.** On January 21, 2025, then Acting U.S. Deputy Attorney General issued interim guidance regarding the implementation of these Executive Orders. Memorandum from Emil Bove, Acting Deputy Attorney General to All Department Employees, re *Interim Policy Changes Regarding Charging, Sentencing, And Immigration Enforcement* (Jan. 21, 2025) ("Bove Memo"). The Bove Memo instructs that the "Supremacy Clause and other authorities require state and local actors to comply with the Executive Branch's immigration enforcement initiatives." *Id.* It also explains that "[f]ederal law prohibits state and local actors from resisting, obstructing, and otherwise failing to comply with lawful immigration-related commands and requests pursuant to, for example, the President's extensive Article II authority with respect to foreign affairs and national security, the INA and the Alien Enemies Act." *Id.* Accordingly, the "U.S. Attorney's Offices and litigating components of the Department of Justice [("DOJ")] shall investigate incidents involving any such misconduct for potential prosecution, including for obstructing federal functions in violation of . . . statutes, such as 8 U.S.C. §§ 1324, 1373." *Id.* at 3. In doing so, the Department of Justice's Civil Division, in cooperation with the Sanctuary Cities Enforcement Working Group, shall "identify state and local laws, policies, and activities that are inconsistent with Executive Branch immigration initiatives." *Id.* Where appropriate, legal action will be taken to challenge such laws. *Id.*

**Memorandum from Pamela Bondi.** On February 5, 2025, U.S. Attorney General Pamela Bondi issued "Sanctuary Jurisdiction Directives," which stated that DOJ "will ensure that, consistent with law, 'sanctuary jurisdictions' do not receive access to Federal funds from the Department." Memorandum from Pamela Bondi, Attorney General to All Department Employees, re *Sanctuary Jurisdiction Directives* (Feb. 5, 2025) ("Bondi Memo"). In addition, the memo details that DOJ will, *inter alia*, "exercise its own authority to impose any conditions of funding that do not violate applicable constitutional or statutory limitations." *Id.* (citing *New York v. DOJ*, 951 F.3d 84, 111 (2d Cir. 2020)). The Bondi Memo defines "sanctuary jurisdictions" as "state or local jurisdictions that refuse to comply with 8 U.S.C. § 1373, refuse

to certify compliance with § 1373, or willfully fail to comply with other applicable immigration laws." *Id.* at 2. Additionally, the Bondi Memo explains that "[c]onsistent with statutory authority and past practice, the Department will require any jurisdiction that applies for certain Department grants to be compliant with 8 U.S.C. § 1373(a)" and instructs that "the Associate Attorney General, in coordination with components that provide Department grants, to report to the Attorney General the grants to which these requirements apply." The memo also suggests that "to the extent consistent with applicable statutes, regulations, and terms, the Department may seek to tailor future grants to promote a lawful system of immigration. . . ." and reiterated that DOJ will "seek to take any appropriate enforcement action where state or local practices violate federal laws, regulations, or grant conditions." *Id.* at 2-3 (citing violation of federal laws such as 18 U.S.C. § 371 and 8 U.S.C. §§ 1324 and 1373) (emphasis added).

***Executive Order 14,218.*** Finally, on February 19, 2025, the President signed Executive Order 14,218, "Ending Taxpayer Subsidization of Open Borders," which instructed the head of each agency to "ensure, consistent with applicable law, that Federal payments to States and localities do not, by design or effect, facilitate the subsidization or promotion of illegal immigration, or abet so-called 'sanctuary' policies that seek to shield illegal aliens from deportation," to prevent taxpayer resources from supporting illegal immigration and to ensure taxpayer funded benefits do not go to illegal aliens. Proclamation No. 14,218, 90 Fed. Reg. 10581 § 2(ii) (Feb. 19, 2025) (E.O. 14,218).[3]

---

[3] Defendants note that on March 27, 2025, Plaintiffs filed a Request for Judicial Notice of a February 19, 2025, Memorandum from the Secretary of the Department of Homeland Security Kristi Noem to "ALL AGENCIES AND OFFICES" entitled "Restricting Grant Funding for Sanctuary Jurisdictions." ECF Nos. 88, 89. Plaintiffs did not challenge this memo in their Amended Complaint or Motion for Preliminary Injunction and it is improper for consideration here. *See Pac. Radiation Oncology v. Queen's Med. Ctr.*, 810 F.3d 631, 637 (9th Cir. 2015) (explaining that movant "could not prove the likelihood of success requirement of the preliminary injunction analysis because the [] violations alleged in the motion were not contained within the actual complaint"); *accord Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (explaining that plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint"); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (similar). Regardless, the Noem Memo, like the Bondi Memo, instructs agency components to "review all federal financial assistance awards" to determine what, if any, funds are going to sanctuary jurisdictions and to provide a report on their compliance with the Noem Memo in 30 days. ECF No. 89 at 5. It instructs components to consult with the General Counsel, the Director of Immigration and Customs Enforcement, and the Commissioner of Customs and Border Protection or their designees. *Id.* There is no indication that any action has been taken or that any funds have been affected. Nor is there any indication that Plaintiffs' have suffered any injury as a result of the Noem Memo.

4

**II.    The Executive Has Broad Discretion In The Enforcement Of Immigration Law And Congress Intended For State/Local Governments To Work With The Federal Government In Carrying Out Immigration Enforcement.**

The Federal Government "has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Through the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, Congress has granted the Executive Branch significant authority to control the entry, movement, and other conduct of foreign nationals in the United States, and to administer and enforce the immigration laws. *See Arizona Dream Act Coal. v. Brewer,* 855 F.3d 957, 967 (9th Cir. 2017) ("By necessity, the federal statutory and regulatory scheme, as well as federal case law, vest the Executive with very broad discretion to determine enforcement priorities.").

The INA contains several provisions that address the involvement of state and local authorities in the enforcement of immigration law. For example, 8 U.S.C. § 1373, mandates the sharing of immigration information by state and local actors to the Executive:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

*Id.* § 1373(a). Section 1373 further proscribes any government entity from prohibiting or restricting "maintaining," or "sending," or "exchanging" information regarding the immigration status of any individual. 8 U.S.C. § 1373(b). Section 1373(c) provides, in turn, that federal immigration authorities "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." A like provision, 8 U.S.C. § 1644, entitled "Communication between State and local government agencies and Immigration and Naturalization Service" provides:

> Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

Thus, Congress clearly envisioned that local governments would cooperate with the federal Government in the enforcement of immigration laws through information sharing. *See, e.g.*, 8 U.S.C. §§ 1231(a)(2), (a)(4)(A), (a)(1)(B)(iii); 8 U.S.C. § 1226(c)(1), (2).

## III. This Litigation.

On February 7, 2025, three cities and three counties filed a Complaint in this action. ECF No. 1 ("Compl."). On February 27, 2025, Plaintiffs amended their Complaint, adding ten additional cities and one county, seeking declaratory and injunctive relief. ECF No. 22 ("Am. Compl."). In total, sixteen localities bring suit against the United States. Am. Compl. ¶¶ 15–30. Thereafter, on March 17, 2025, Plaintiffs filed a Motion for a Preliminary Injunction, ECF No. 61, accompanied by thirty-nine declarations. ECF Nos. 61-2–82. Plaintiffs specifically request that the Court enter a preliminary injunction "prohibiting Defendants from taking any action to withhold, freeze, or condition federal funds based on (1) Section 17 of Executive Order 14,159; (2) Section 2(a)(ii) of Executive Order 14,218; or (3) the February 5, 2025 Memorandum from the Attorney General entitled "Sanctuary Jurisdictions Directives," to jurisdictions on the basis that they have policies that limit (i) the honoring of civil immigration detainer requests; (ii) cooperation with administrative warrants for purposes of immigration enforcement; (iii) the sharing of information with federal immigration authorities other than immigration or citizenship status; (iv) the use of local law enforcement to arrest or detain individuals solely for civil immigration violations; or (v) the use of local resources to assist with civil immigration enforcement activities." Pl. Br. 1.

Plaintiffs highlight that they do *not* seek a preliminary injunction against Section 17 of E.O. 14,159 or of the provisions in the Bove Memo regarding DOJ seeking civil and criminal enforcement of State or local laws that impede immigration enforcement, Pl. Br. 6, n.3, or of the portion of the Bondi Memo that relates to DOJ "exercise[ing] its own authority to impose any conditions of funding that do not violate applicable constitutional or statutory limitations," *Id.* at 8, n.4.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely

1    to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

2    and that an injunction is in the public interest." *Id.* at 20 (citation omitted). Thus, all four factors must be

3    met for the Court to grant a preliminary injunction, *id.*, and "should not be granted unless the movant, *by*

4    *a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

5    (emphasis in original). Importantly, likelihood of success on the merits is the most important *Winter* factor;

6    if a movant fails to meet this threshold inquiry, the court need not consider the other factors. *See Baird v.*

7    *Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

8                                             **ARGUMENT**

9    **I.    The Court Should Deny Plaintiffs Injunctive Relief.**

10           The Court should deny Plaintiffs' request for injunctive relief because they fail to satisfy the *Winter*

11   factors. Plaintiffs cannot establish a likelihood of success on the merits, including establishing Article III

12   jurisdiction. In particular, their claims are not currently ripe (and may never be so), because the Executive

13   has not yet made any funding decisions, and thus, neither the Court nor Defendants can evaluate the

14   contours of any putative injury. As Plaintiffs implicitly acknowledge, they could seek additional injunctive

15   relief *should* DOJ publish a list of grants that would be conditioned on compliance with 8 U.S.C. § 1373.

16   *Id.* at 8, n.4. But that has not yet happened. And for the same reasons, Plaintiffs lack standing because

17   they have not established a particularized or concrete injury. Where Plaintiffs seek prospective relief, the

18   Article III standing and ripeness inquiries significantly overlap. *Stavrianoudakis v. United States Fish &*

19   *Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024) ("Constitutional ripeness overlaps with the injury-in-

20   fact element of Article III standing, and 'therefore the inquiry is largely the same: whether the issues

21   presented are definite and concrete, not hypothetical or abstract.'").

22           Plaintiffs further cannot demonstrate their likelihood of success on the merits because no final

23   agency action has taken place yet. The executive directives ask for an internal evaluation of funds,

24   indicating by their very language that there is more to come on the Executive's decision to continue

25   funding certain localities. Plaintiffs also cannot demonstrate irreparable harm. Their motion is premised

26   on conjecture and speculation, not on actions that have come to pass. Such hypothesized injury falls well

27   short of the *likely* irreparable harm that *Winter* demands. 555 U.S. at [[520]]. A preliminary injunction is

28   not the vehicle to address whatever financial "uncertainty" Plaintiffs claim to be suffering by the ongoing,

                                                   7

internal evaluations by the Department—which may have not yet produced—and may *never* produce—a penny of financial harm to Plaintiffs. Finally, the balance of public interest and equities militate against granting Plaintiffs' request because these directives seek to ensure compliance with the law. Thus, the public interest lies in allowing the Executive Branch to pursue the necessary steps to implement these executive directives.

### A.    Plaintiffs Cannot Establish A Likelihood Of Success On The Merits.

"Two related doctrines of justiciability—each originating in the case-or-controversy requirement of Article III" prevent this Court from granting Plaintiffs' motion. *Trump v. New York*, 592 U.S. 125, 131 (2020). Plaintiffs must demonstrate that their claims are "ripe," meaning their claims are not dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (citations omitted). Likewise, Plaintiffs must first demonstrate standing, including "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Id.* (citations omitted). But Plaintiffs' claims are "riddled with contingencies and speculation that impede judicial review." *Id.* As Plaintiffs' claims are not yet ripe and they lack standing, the Court must deny their preliminary injunction motion. Moreover, even if Plaintiffs' claims were ripe and they had established standing, they cannot establish a likelihood of success on their constitutional or APA claims.

### 1.    Plaintiffs' Claims Are Not Ripe.

A dispute is ripe "if it presents concrete legal issues, … in actual cases, not abstractions." *Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quotation marks and alteration omitted); *see Anderson v. Green*, 513 U.S. 557, 559 (1995) (per curiam) ("[R]ipeness is peculiarly a question of timing[.]"). The ripeness doctrine "is intended to prevent 'premature adjudication' and judicial entanglement in 'abstract disagreements.'" *United States v. King Cnty.*, 122 F.4th 740, 753 (9th Cir. 2024). Indeed, "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). Necessarily, if contingent events do not unfold, Plaintiffs will not have suffered the concrete and particularized injury called for in *Winter*, 555 U.S. at 22. *Id.*

At this stage, Plaintiffs cannot demonstrate a likelihood of success on the merits because their claims are palpably premature. Plaintiffs do not assert that any specific action, stemming from the

executive directives, has been taken against them *at all*. Instead, Plaintiffs are challenging guidance and Executive Orders that call for an evaluation of possible, lawful, federal funding limitations. To be clear, none of the challenged executive directives have impacted any federal funding provided to any of the Plaintiffs. Indeed, Plaintiffs have not identified so much as a single cent of federal funding that they have lost because of the challenged actions.

As a result, neither the Court nor Defendants can evaluate the contours of their claims, and no Article III "case or controversy" exists right now.[4] Plaintiffs' allegations reduce to the theory that the mere existence of Executive Orders and memoranda, providing guidance to executive agencies, somehow already interferes with their state and local sovereignty. But Plaintiffs' speculation about the possibility of some future harm stemming from the application of this executive guidance is insufficient to establish a case or controversy over which the Court may preside. *See City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086-87 (9th Cir. 2022) (finding plaintiffs' facial constitutional challenge to federal statute, 8 U.S.C. § 1373, as unripe because any future injury was then purely conjectural). This point is further evidenced by Plaintiffs' proffered declarations. For example, Dwight Dively, (ECF 61-4) testifies as the Chief Operating Officer and Director of Performance, Strategy and Budget for Martin Luther King, Jr. County. ECF 61-4 ¶ 1. But even Mr. Dively admits that "[t]he federal funding discussion in this declaration is necessarily *preliminary*, and intentionally conservative." *Id.* ¶ 13 (emphasis added). To that end, Mr. Dively speculates what federal funding could be impacted, without ever going as far as to say that funding cuts have actually happened. *Id.* ¶¶ 6, 14. Such conjecture certainly does not provide any basis for the

---

[4] For example, Plaintiffs indicate, as with past litigation, that the Byrne Justice Assistance Grant program may be a candidate for budget decreases. *See, e.g.*, ECF Nos. 61-3, 61-15, 61-17. 34 U.S.C. § 10153(a)(5)(D) *may* authorize funding conditioning through a required certification. The "statute makes clear that it is the Attorney General who has authority to 'require[ ] or request[ ] specific information,' to ensure a grant applicant's intended compliance with all other applicable federal laws." *State v. Dep't of Just.*, 951 F.3d 84, 105 (2d Cir. 2020). "Thus, Byrne Program formula funding can be denied to an applicant that fails to provide the required § 10153(a)(5)(D) certification as to any 'applicable Federal law[ ],' whether that law pertains to the particular grant sought or to the applicant seeking it." *Id.* at 107. The Second Circuit has confirmed as much, but the Ninth Circuit has not yet decided the issue. *San Francisco*, 42 F.4th at 1090 (noting that this Circuit has not evaluated whether the federal Government could condition funding on 34 U.S.C. § 10153(a)(5)(D)). This point makes pellucid that when assessing the legality of executive spending decisions, the source of money is significant so that the parties can assess what terms govern the fund distribution. *State v. Dep't of Just.*, 951 F.3d at 103–04. That the Government's spending evaluation is in progress further undercuts that a preliminary injunction would be appropriate now.

1  extraordinary remedy of a preliminary injunction. *San Francisco*, 42 F.4th at 1086-87. And "speculative

2  contingencies afford no basis for [a court] passing" on unripe questions. *Id.* Therefore, the Court should

3  deny Plaintiffs' preliminary injunction because they never articulate an injury that is ripe for the Court's

4  adjudication.

5  ## 2.    Plaintiffs Lack Standing.

6  Similarly, Plaintiffs cannot establish a likelihood of succeeding on the merits in this case because

7  they lack standing. Plaintiffs must establish an injury that is concrete, particularized, and imminent rather

8  than "conjectural or hypothetical," *Spokeo v. Robins,* 578 U.S. 330, 339 (2016) (citations omitted), and

9  must do so for each claim and each form of relief they seek, *Daimler Chrysler v. Cuno*, 547 U.S. 332, 352

10  (2006). And for each type of relief requested, Plaintiffs must show that relief will in fact redress their

11  injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Plaintiffs ask the Court to issue

12  an injunction preventing Defendants from "taking any action to withhold, freeze, or condition federal

13  funds" based on the executive directives. Plaintiffs concede that injury is lacking here, when they clarify

14  that the Government has not yet "taken any action" and no funds have been impacted. Pl. Br. 1.

15  In an attempt to demonstrate injury at this early stage, Plaintiffs repeatedly rely upon previous

16  litigation that arose from DOJ requiring compliance with 8 U.S.C. § 1373 in order to receive the Byrne

17  JAG grant. Pl. Br. 2, 5-6, 19-20, 2, 23, 24. But, "past wrongs are 'insufficient by themselves to grant

18  standing.'" *Wright v. SEIU*, 48 F.4th 1112, 1118 (9th Cir. 2022). Instead, Plaintiffs must show a likelihood

19  of future harm that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

20  Additionally, while the Executive Orders direct executive agencies to evaluate federal funding of

21  certain localities, the "when" and "how" of the Executive Branch implementing this general directive, and

22  how it will affect each Plaintiff is "no more than conjecture" at this time. *Trump*, 592 U.S. at 131 (citing

23  *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). Further, the Bondi Memo provides no more of a

24  "concrete" injury than the Orders, as it likewise directs that the Associate Attorney General to create a

25  report identifying grants that may be conditioned upon compliance with immigration laws. Bondi Memo

26  at 2. DOJ is permitted to internally evaluate its funding decisions, regardless of whether it publicly

27  announces that an evaluation process is happening. And as Plaintiffs concede, no list has been published,

28  and no conditions have been placed on specific grants for which Plaintiffs have applied. Pl. Br. 8, n.4.

Moreover, any future Executive action "will reflect both legal and practical constraints," as any action will be lawful, "making any prediction about future injury just that—a prediction." *Trump*, 592 U.S. at 133. As it stands, no action has been taken, no funding has been impacted, and no injury has been suffered. Because neither Defendants, nor Plaintiffs, nor the Court know which grants will be affected, Plaintiffs cannot assert a concrete, particularized, imminent injury. Plaintiffs' hypothetical injury—that the federal Government may withhold funding or otherwise penalize them for being sanctuary locales— is too speculative for this Court to adjudicate or redress at this time. *See San Francisco*, 42 F.4th at 1087. Specifically, it is too early to meaningfully assess the merits of any specific alleged injury with respect to Plaintiffs' claims—which may never actually arise.

For example, Plaintiffs allege that the Executive Orders and the Attorney General's Memo violate "Separation of Powers" by decreasing spending without Congressional approval, and run aground of the Spending Clause by, *inter alia*, refusing to disburse already awarded funds and imposing conditions on funding that have no relation to the funds. Pl. Br. 14, 16–19. Missing from Plaintiffs' equation, however, is the identification of any funding that has been decreased on this basis.[5] No meaningful analysis can occur without these details. *See e.g.*, *City and Cnty of San Franscico v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018) (examining whether Congress tied withholding of funding to compliance when assessing whether an Executive Order violated Separation of Powers); *see also New York v. United States*, 505 U.S. 144, 167 (1992) (evaluating the relationship between the conditions and the purpose of the federal spending to determine if such conditions violated Spending Clause); *South Dakota v. Dole*, 483 U.S. 203, 206–07 (1987) (same).

Similarly, Plaintiffs' declarations, requesting immediate relief because of alleged financial uncertainty in budget planning, are insufficient to establish a present, concrete injury. For example, Santa Clara County Executive James R. Williams contends preliminary relief is appropriate now because Santa Clara is in an "untenable financial situation, and decisions that must be made while awaiting a final decision could cause the County to go into a financial crisis." ECF No. 76 ¶61. But he asks the Court to

---

[5] Plaintiffs' only reference to any conditioned grants is a notice by the Department of Housing and Urban Development ("HUD"), which is not a named party, and Plaintiffs concede that the notice "appears to impose conditions on grant renewals and new grants." Pl. Br. 8, 9, n.5, 6, 11, 17.

halt DOJ's funding *evaluation process*, as again no funding decisions have been made. Because no policies have been implemented, the Court cannot craft an order with any further specificity—any relief would be predictive and advisory, as opposed to remedial.

Likewise, Plaintiffs lack standing to bring hypothetical constitutional claims. Plaintiffs lodge a Tenth Amendment claim alleging that compliance with federal law would amount to coercion. Pl. Br. 20–21. However, critical to evaluating whether there is "coercion," is what amount of funding would be impacted. *State v. DOJ*, 951 F.3d 84, 116 (2d Cir. 2020) (analyzing what percentage of a local government budget may be impacted by federal withholding to evaluate plaintiffs' Tenth Amendment commandeering claims). Therefore, neither the Court nor Defendants can meaningfully evaluate any such conditions or fund types at this stage, because those decisions have not been made.

Moreover, because Plaintiffs cannot identify any funding decrease with specificity whatsoever, it is impossible for the Court to determine the contours of Plaintiffs' alleged claims and therefore it cannot grant the preliminary injunction sought by Plaintiffs. For instance, in *State ex rel. Becerra v. Sessions*, this Court declined to issue a preliminary injunction to require the federal government to fund a grant on the basis that California was not complying with 8 U.S.C. § 1373 because the case would "benefit from further development." 284 F. Supp. 3d 1015, 1019, 1037 (N.D. Cal. 2018) (Orrick, J.). There, this Court determined that "[g]iven the number of open questions concerning the federal government's positions concerning the provisions of the statutes in question, the relatively minimal injury its delay has caused thus far, and the extraordinary nature of the relief sought," that a preliminary injunction was inappropriate. *Id.* at 1019. Here, since no funding decisions have been made, evaluating the merits of Plaintiffs' claim is untenable.

Finally, Plaintiffs' claim that the directives violate the Fifth Amendment because they are too vague and thus, do not provide them with any meaningful notice, Pl. Br. 19-20, underscores the premature nature of Plaintiffs' motion: these executive directives provide guidance for the agencies to begin their evaluation of federal funding decisions to certain localities, and then assess how they may implement any applicable funding changes. As already stated, such deliberative considerations have not imposed any consequence on Plaintiffs to date. Therefore, as Plaintiffs cannot established standing due to a lack of a concrete injury, the Court should not grant the extreme remedy of a preliminary injunction.

### 3.    Plaintiffs Fail to Show a Violation of Separation of Powers.

Even if Plaintiffs' claims were ripe, they still fail to establish a likelihood of success on the merits of their claim that the EOs and Bondi Memo violate separation of powers.[6] Pl. Br. 14-16. Article I of the Constitution confers on Congress the authority to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. CONST. Art. I, § 8, cl. 1. As this Court has said, Congress may, "[i]ncident to" its spending power, "attach conditions on the receipt of federal funds," *Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO, 2017 WL 1459081, at *21 (N.D. Cal. Apr. 25, 2017) (quoting *Dole*, 483 U.S. at 206), and "Congress can delegate some discretion to the President to decide how to spend appropriated funds" so long as "any delegation and discretion is cabined by [relevant] constitutional boundaries." *Id.* at *21.

Contrary to Plaintiffs' allegations, the executive directives do not attempt to withhold funds or unilaterally impose conditions on federal funds without Congressional authorization. Pl. Br. 14-15. As explained *supra*, Section 17 of EO 14,159 simply calls for an evaluation and undertaking of any *lawful actions* to ensure that "sanctuary" jurisdictions do not receive access to Federal funds. Section 2(b) of EO 14,218 asks certain federal agencies to identify sources of funding for illegal aliens and recommend additional agency action to align federal spending with the Order. Relatedly, the Bondi Memo makes clear that all action will be done "consistent with law" and "appliable statutes, regulations, court orders, and terms." Bondi Memo at 1. Regarding any grants, the Memo confirms that DOJ will require compliance with 8 U.S.C. § 1373(a) as a condition of grant eligibility only where "consistent with statutory authority and past practice." *Id*. at 2. Further, DOJ may seek to tailor future grants to promote a lawful system of immigration. *Id.* Nothing in this language imposes grant conditions that would violate any applicable constitutional or statutory limitation.

---

[6] A party challenging the facial constitutionality of an Executive Order must establish that the Order would be unconstitutional in all its applications. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (facial challenge must establish that "no set of circumstances exists under which [the enactment] would be valid"); *see also Am. Fed'n of State, Cty. & Mun. Employees v. Scott*, 717 F.3d 851 (7th Cir. 2013); *NTEU v. Bush*, 891 F.2d 99, 101 (5th Cir. 1989). That standard is necessarily impossible to meet in relation to Plaintiffs' Separation of Powers claim, since Congress frequently authorizes the Executive to impose discretionary conditions on the receipt of federal grants.

1    Moreover, even if DOJ poses conditions on future grants, Plaintiffs cannot establish any concern

2    over the separation of powers doctrine. In fact, Congress has frequently authorized agencies administering

3    certain grant programs to impose discretionary conditions on their receipt. Those statutory authorizations

4    have taken a variety of forms, including authorizing an agency to ensure that a grant recipient complies

5    "with all provisions of . . . applicable Federal laws," *see* 42 U.S.C. § 3752(a)(5)(D) (governing DOJ grant

6    program), or allowing an agency to "plac[e] special conditions" on certain grants under appropriate

7    circumstances. *See id*. § 3712(a). Pursuant to these types of statutory authorizations, DOJ has already

8    conditioned eligibility for participation in three DOJ-administered grant programs on the applicant's

9    certification of compliance with Section 1373. *See generally City & Cnty. of San Francisco v. Trump*, No.

10   3:17-cv-00485 (N.D. Cal. Apr. 14, 2017) (identifying the three programs); *Cty. of Santa Clara*, 2017 WL

11   1459081, at *4 (same). Therefore, Plaintiffs cannot state a viable claim for violation of separation of

12   powers.

### 4.    Plaintiffs Fail to Show a Violation of the Spending Clause.

13

14       Plaintiffs similarly cannot show a likelihood of success on their claim that the EOs and Memo

15   violate the Spending Clause at U.S. CONST. art. I, § 8, cl. 1. Pl. Br. 16-18. As the Supreme Court has held,

16   "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power

17   to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the

18   recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203, 206

19   (1987) (quotation marks omitted). The *Dole* Court outlined certain limitations that "the exercise of the

20   spending power must be in pursuit of 'the general welfare'" and conditions on the receipt of federal funds

21   must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the

22   consequences of their participation." *Id.* at 207.

23       Plaintiffs erroneously claim that the EOs "purport to impose" conditions that local jurisdictions

24   were unaware of and could not have voluntarily accepted and that the Memo "imposes retroactive

25   conditions on already-awarded funds." Pl. Br. 17. Undermining their own argument, Plaintiffs note that

26   the EOs do not identify which Federal funds and payments may be at issue. *Id*. And as Defendants outline

27   in ripeness *supra*, no conditions have been imposed and the EOs merely call for a deliberation and

28   evaluation of the federal funding. Indeed, they do not impose any retroactive conditions. Further, the

14

Bondi Memo language discusses conditions on future grants, *i.e.*, "the Department will require any jurisdiction that *applies* for certain Department grants to be compliant with 8 U.S.C. § 1373(a)" and "the Department *may seek* to tailor *future* grants. . . ." *Id.* (emphasis added). Necessarily, therefore, potential grantees will be able to exercise their choice knowingly, cognizant of the consequences of their participation in grant programs that include any such conditions. *Dole*, 483 U.S. at 207. Finally, Plaintiffs' legal recitation at Paragraph 2—that conditions placed on Congressional spending must have some nexus to with the purpose of the implicated funds"—lacks any argument or explanation as to how they believe the EOs or Memo are incompatible with such a condition. Pl. Br. 17-18; *see also*, *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (suggesting that the legislation *might* be illegitimate without demonstrating a nexus between the conditions and a specified national interest, is a far cry from imposing an exacting standard for relatedness). Therefore, Plaintiffs cannot demonstrate a likelihood of success on the merits of any spending clause claim.

### 5.    Plaintiffs Fail to Articulate a Due Process Violation.

"To allege a procedural due process claim on the basis of a vague regulation, [Plaintiffs] must first allege a deprivation of a constitutionally protected interest, and second, allege that the deprivation was achieved by means of constitutionally vague policy or procedure." *Williams v. Vidmar*, 367 F. Supp. 2d 1265, 1274 (N.D. Cal. 2005) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Plaintiffs claim that the directives violate the Fifth Amendment because they are too vague and that certain terms lack definitions, thus depriving Plaintiffs of notice of how the executive directives may be enforced. Pl. Br. 19-20. As already stated, such considerations have not imposed any consequence on Plaintiffs to date. Moreover, Plaintiffs do not articulate a policy or procedure causing any alleged deprivation because there is no final agency action, as explained *supra*. The executive directives call for an *evaluation* of federal funding. These directives indicate more information and implementation guidance will be forthcoming. Even Plaintiffs themselves concede that they base their preliminary injunction on financial uncertainty, not on the basis that funds have actually been diminished. In that same vein, because Plaintiffs have not articulated a concrete injury, Defendants cannot evaluate whether any "deprivation of a constitutionally protected interest" has occurred. Finally, the complained about directives do contain various explanations

for sanctuary terms. *See* E.O. 14,159 § 17 (explaining "sanctuary jurisdictions"); E.O. 14,218 (explaining "sanctuary policies"); Bondi memo (same for sanctuary jurisdictions").

### 6. Plaintiffs Fail to Articulate a Violation of the Tenth Amendment.

Plaintiffs fail to show a likelihood of success on the merits with respect to their claim that the Executive directives violate the Tenth Amendment. The Tenth Amendment embodies the principle that the "pre-existing sovereign States" (and their subdivisions) retain their sovereignty under the Constitution and that the Federal Government may not encroach upon that sovereignty. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 801 (1995); *New York v. United States*, 505 U.S. 144, 156 (1992). Plaintiffs claim that by "restricting funding and directing enforcement against Plaintiffs for limiting cooperation with federal immigration authorities," Executive Order 14,159 and the Bondi Memo "seek to commandeer Plaintiffs in furtherance of a federal regulatory program." ECF No. 1 at ¶ 180; *see also*, Pl. Br. 20-21. Because Plaintiffs may decline to apply for the specific DOJ or DHS grants to which any offensive conditions are attached, there is no commandeering of their sovereignty. *See Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) ("[A]s long as the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation.") (internal quotation marks omitted). Further, the Executive directives speak to the agencies exercising *existing* statutory and constitutional authority. *Cf. United States v. Pickard*, 100 F. Supp. 3d 981, 1011 (E.D. Cal. 2015) (rejecting a Tenth Amendment challenge to a statement of agency policy on the grounds that a policy statement "is a very different creature from a statute" in that it does not bind States as would a statute).

This Court has no jurisdiction to review yet-to-be-filed enforcement actions arising from the executive directives against Plaintiffs. Nor could Plaintiffs allege that the mere possibility of enforcement action has inflicted any cognizable injury. Indeed, there is always a possibility that the Federal Government may sue a State or local government alleging that the defendant's laws or policies are constitutionally preempted. *See Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012); *United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012). This authority exists entirely independent of the Executive Order. *Id*. Further, if such action

1  were to occur, the affected jurisdiction would have an opportunity at that time to challenge its propriety

2  and merits.

### 7.    Plaintiffs Fail to Articulate a Violation of the APA.

4  Presidential actions are not agency actions that are reviewable under the APA, and so Plaintiffs

5  cannot challenge the EOs on that basis and the Court may not issue an injunction as to the President. *See,*

6  *e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992). As to other Defendants, Plaintiffs have not

7  identified any final agency action for this Court to review. S*ee* 5 U.S.C. § 704 (APA requires that the

8  agency action is final). Agency action is final only if two conditions are met: (1) the agency action marks

9  "the consummation of the agency's decision-making process"—it must not be of a merely tentative or

10  interlocutory nature, and (2) the "action must be one by which rights or obligations have been determined,

11  or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations

12  omitted). *Both* conditions must be satisfied for agency action to be considered "final" under the APA. *Id.*

13  at 175.

14  Here, Plaintiffs' APA claim fails because the internal DOJ memos directing the Executive Branch

15  to conduct an internal *evaluation* of federal funding decisions and an internal review of state and local

16  governments' compliance with federal law is not "final action" under the APA. *Ukiah Valley Med. Ctr. v.*

17  *Fed. Trade Comm'n*, 911 F.2d 261, 264 (9th Cir. 1990) ("The general rule is that administrative orders

18  are not final and reviewable 'unless and until they impose an obligation, deny a right, or fix some legal

19  relationship as a consummation of the administrative process.'") (citations omitted). Courts have

20  interpreted the "finality" element with an eye toward pragmatism. *See FTC v. Standard Oil Co.*, 449 U.S.

21  232, 239 (1980) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). To determine whether

22  an action is "final," courts "look to whether the action 'amounts to a definitive statement of the agency's

23  position' or 'has a direct and immediate effect on the day-to-day operations' of the subject party, or if

24  'immediate compliance [with the terms] is expected.'" *Oregon Natural Desert Ass'n. v. U.S. Forest*

25  *Service*, 465 F.3d 977, 982 (9th Cir. 2006) (citation omitted).

26  In *Standard Oil*, the Supreme Court held that the Federal Trade Commission's issuance of a

27  complaint averring there was "reason to believe" that a party was in violation of the Federal Trade

28  Commission Act was insufficient to satisfy the finality requirement. *Standard Oil*, 449 U.S. at 239, 243.

The Supreme Court explained that "reason to believe" was merely a determination that adjudicatory proceedings would commence, and the actual issuance of the complaint was sufficient only to initiate the proceedings. *See id*. at 242. The complaint issued in that case had no effect on the daily operations of defendant's business, nor did it have any legal force compelling a party to do something or refrain from doing something. *See id; see also Franklin*, 505 U.S. at 798 (finding no final agency action where "the Secretary's report to the President carries no direct consequences for the reapportionment, it serves more like a tentative recommendation than a final and binding determination."); *New Jersey Hosp. Ass'n. v. United States*, 23 F. Supp. 2d 497, 499 (D.N.J. 1998) (finding no final agency action where settlement letters to hospitals "merely indicate a belief by the DOJ that plaintiff's member hospitals may have violated" the law); *See Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593–94 (9th Cir. 2008) (agency determination that certain property contains wetlands subject to the Clean Water Act was not reviewable final action because it did not determine rights or obligations from which legal consequences will flow).

Plaintiffs do not challenge any final agency action in this case. In fact, Plaintiffs acknowledge that DOJ has not taken any action to impose conditions on grants or require any compliance with immigration-related laws. Pl. Br. 8, n.4. Rather, Plaintiffs seek to prohibit DOJ from taking "anticipate[d]" future action that could impact their federal funding. Pl Br. 10. For example, the Bondi Memo merely indicates that the "Department will require any jurisdiction that applies for certain Department grants to be compliant with 8 U.S.C. § 1373(a)", Bondi Memo at 2, and that "DOJ shall investigate incidents involving" jurisdictions that "impede, obstruct, or otherwise fail to comply with lawful immigration-related directives" for potential prosecution, *id.* at 3. These are not "definitive statement[s] of position", but rather "a threshold determination that further inquiry is warranted…." *See Standard Oil*, 449 U.S. at 241.[7]

---

[7] *See also*, *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1132 (9th Cir. 2025) (J. Van Dyke dissenting), citing *Cherry v. U.S. Dep't of Agr.*, 13 F. App'x 886, 890–91 (10th Cir. 2001) (an agency letter furthering a decision made long ago does not count as final); *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (agency's initiation of an investigation does not qualify as final agency action); *Golden & Zimmermann, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) (agency's FAQ explaining law and regulations was not final agency action because, *inter alia*, "if the [agency] had never published the Reference Guide and FAQ[], the [agency] would still have had the authority to prosecute licenses for engaging in the conduct described in FAQ[] because legal consequences do not emanate from FAQ[] but from the [statute] and its implementing regulations."); *Acquest Wehrle LLC v. U.S.*, 567 F. Supp. 2d 402, 410 (W.D.N.Y. 2008) (no final agency action when "the legal rights

Indeed, the cases finding final agency action have involved some concrete act beyond the announcement of a policy or plan. *See, e.g.*, *State ex rel Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) (finding final agency action when funding was in fact dependent on the certification condition on the Byrne JAG program); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Penn. 2017) (finding final agency action when the Attorney General conditioned funding Byrne JAG on applicants certifying compliance with 8 U.S.C. § 1373). The key in these cases was *actual implementation*, which simply has not occurred here.

The DOJ memos generally describe future efforts to ensure that state and local authorities are complying with federal law or to put state and local authorities on notice that changes are coming. They do not identify or direct immediate denial of Plaintiffs' specific federal grants. In fact, Plaintiffs concede that DOJ has not yet published a list of grants that will be conditioned upon compliance. Pl. Br. 8, n.4. Nor do the memos' instructions to identify and review state and local laws or policies have an immediate impact on Plaintiffs' daily operations. These entities have not been denied any grants, nor have they been subject to criminal or civil penalties pursuant to the memos. The DOJ will need to undertake further review and investigation before it can take any agency action. In other words, the agency's decision-making process is ongoing—not consummated—and there is no final agency action here.

Likewise, the "agency action" requirement articulated in *Bennett* precludes "broad programmatic attacks" on an agency's administration of a program. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); Plaintiffs' claims against the executive cannot circumvent the programmatic challenge limitations set forth in *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882 (1990). In *Lujan*, the Supreme Court announced a prohibition on programmatic challenges and determined that the challenged "program" was "not an agency action" within the meaning of § 702, much less a "final agency action" under § 704. *Id.* In reaching this conclusion, the Court emphasized that § 702 only allows for review of "identifiable agency action," and that the APA requires challenge to agency action on a "case-by-case" basis, rather than pursuing "wholesale improvement of [an agency] program by court decree." *Id.* at 891-894. The Court's prohibition on programmatic challenges was motivated by institutional limits on Article III courts, which

---

and obligations of the parties were precisely the same the day after the jurisdictional determination was issued as they were the day before").

constrain their review to narrow and concrete actual controversies. *See id.* at 891–94*; see also Norton*, 542 U.S. at 64 ("The limitation to discrete agency action precludes the kind of broad, programmatic attack we rejected in *Lujan*[.]"). Thus, absent a discrete and final agency action, federal courts cannot review an on-going program or policy. *See*, *Franklin*, 505 U.S. at 797 ("The core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties."). Here, although Plaintiffs challenge DOJ's evaluation of funding, and no funding has yet been impacted, their suit cuts at the heart of anticipated, programmatic changes, which are squarely precluded from APA review. *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1011 (9th Cir. 2021) ("The Supreme Court's decision in *National Wildlife* squarely forecloses Plaintiffs' request for judicial review of these seven 'programs.'"). Therefore, Plaintiffs have failed to establish a likelihood of success on the merits of their APA claim, and the Court should decline their request for a preliminary injunction.

Even assuming this Court were to find that the agency memos constitute final agency action, Plaintiffs fail to establish a likelihood of success on the merits with respect to their claims that the Bondi memo exceeds statutory authority and or is contrary to fundamental constitutional principle or an abuse of discretion. Pl. Br. 21. The Bondi Memo relies upon the Attorney General's authority to impose any conditions of funding that do not violate applicable constitutional or statutory limitations. Bondi Memo at 1, citing *New York v. Dep't of Justice,* 951 F.3d 84, 111 (2d Cir. 2020) ("Because 8 U.S.C. § 1373 is a law applicable to all plaintiffs in this action, the Attorney General was authorized to impose the challenged Certification Condition and did not violate either the APA or separation of powers by doing so."). So, from the outset, the Memo clearly states that any conditions applied to federal funds will be in accordance with statutory and constitutional law. With respect to constitutional limitations, the Bondi memo comports with the Separation of Powers Clause, the Spending Clause, and the Fifth and Tenth Amendments. *See, supra*. With respect to statutory limitations, Plaintiffs fail to articulate which statutory provision(s) the Bondi Memo violates, nor could they at this stage because the degree of agency discretion in implementing grant programs varies depending on the type of grant program and the terms of the authorizing legislation. For instance, 42 U.S.C. § 3752(a)(5)(D), authorizes an agency to ensure that a grant recipient complies "with all provisions of . . . applicable Federal laws," and Section 3712(a), allows an agency to "plac[e]

special conditions" on certain grants under appropriate circumstances. Additionally, the Bondi Memo states that "to the extent consistent with applicable statutes, regulations, and terms, the Department may seek to tailor future grants to promote a lawful system of immigration." Bondi Memo at 2. Thus, Attorney General Bondi has made it clear that any conditions placed must be in accordance with the law. And the Bondi Memo cites compliance with 8 U.S.C. § 1373 and case law holding that the Attorney General has authority under 8 U.S.C. § 10153(a)(5)(D) to condition grants on compliance with § 1373. As for Plaintiffs' claim that the Bondi Memo failed to consider the breadth of funding affected or their reliance interests, assuming the grants are conditioned upon compliance with § 1373, such considerations are unwarranted when DOJ is not statutorily authorized to excuse a grant applicant from certifying its willingness to comply with an applicable federal law. *State*, 951 F.3d at 122 (citing 34 U.S.C. § 10153(a)(5)(D) and 8 U.S.C. § 1373). Thus, without more, Plaintiffs fail to establish a likelihood of success on the merits of their APA claim.

### B.    Plaintiffs Cannot Establish Irreparable Harm To Warrant A Preliminary Injunction.

Plaintiffs cannot establish irreparable harm because they have failed to identity a concrete and particularized injury. "The threat of irreparable harm must . . . be 'immediate.'" *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (Orrick, J.) (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). "'[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction,' not merely that it is possible." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (emphasis in original) (quoting *Winter*, 555 U.S. at 22)). That injury, moreover, must be "real and concrete" rather than merely "abstract." *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980).

Plaintiffs have not established the threat of "immediate" and "concrete" irreparable harm necessary to secure a preliminary injunction because they premise their injury on speculative future loss of funds. Indeed, Plaintiffs have failed to identify the loss of *any* funds—or the future loss—traceable to any action that the Executive has taken. Not even a penny. Here, Plaintiffs premise their injury on the future loss of funds if they are deemed sanctuary jurisdictions because of their refusal to comply with federal law. Pl. Br. 10–13. But this theory is purely conjectural. Although Plaintiffs articulate—at length—

the consequences that will flow from any alleged action from the Executive, funding has not yet been impacted, and thus, neither the Court nor Defendants can evaluate the parameters of any so-called injury. Thus, any alleged injury is not "irreparable," for the purpose of a preliminary injunction. And Plaintiffs' assertion that these executive funding decisions would eliminate "all" of their federal funding, Pl. Br. 10–12, is purely speculative. Thus, Plaintiffs overstate their alleged injury because no funding has been impacted yet. Neither the Court, nor Defendants for that matter, evaluate the parameters of any alleged injury. *See Sampson v. Murray*, 415 U.S. 61, 74 (1974) ("Until administrative action has become final, no court is in a position to say that such action did or did not conform to applicable regulations."). And, for similar reasons, Plaintiffs have not remotely established that they are *likely* to suffer irreparable harm without issuance of a preliminary injunction as *Winter* mandates. 555 U.S. at 20.

As these directives have not yet been implemented, a series of future actions must occur before they or 8 U.S.C. § 1373 could have any concrete effect on Plaintiffs. Among other things, (1) the Attorney General and the Secretary of Homeland Security must identify any state or local governments that constitute "sanctuary jurisdictions" and make formal designations to that effect; (2) evaluate what federal funding is afforded to these entities; (3) "consistent with law," the Secretary and the Attorney General must then determine which funding may be withheld based on the jurisdiction's non-compliance with federal law; (4) the Secretary and the Attorney General must determine how to implement those actions and (5) the Attorney General must determine what appropriate actions she can take in relation to any violation of Section 1373 or any statute, policy, or practice that otherwise hinders the enforcement of federal law. These directives thus explicitly contemplate that some time will be required for implementation. As such, Plaintiffs do not allege that the Federal Government has taken any of these actions. They, in fact, concede as much, by clarifying that they are not moving for a preliminary injunction on civil and criminal enforcement threats, Pl. Br. 6, n.3, and reserved the right to seek additional injunctive relief should DOJ publish a list of grants that would be conditioned on compliance with 8 U.S.C. § 1373. *Id.* at 8, n.4. That is because Plaintiffs do not allege that they have applied for funds and received a denial, because no funding decisions have been made. *Id.* at 8, n.5. This litigation is dissimilar from past cases, where Plaintiffs have lodged like claims against the federal Government, and articulated the impact of federal funding decisions with specificity. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1019

(N.D. Cal. 2018) (Orrick, J.) (evaluating whether the federal government was required to fund a one-million-dollar grant from the Byrne JAG Program and the Office of Community Oriented Policing Services.). These facts are critical for the Court to decide whether a preliminary injunction is appropriate *right now*. *Id.* at 1036 (declining to grant Plaintiffs' preliminary injunction because it was premature).

As this litigation is currently postured, none of those actions have occurred. And Plaintiffs' speculation about what funding may be impacted, Pl. Br. 12–13, in what amount, *id.* at 10–11, and in what jurisdiction, *id.* at 17, confirms that the uncertainty of future harm does not justify preliminary injunctive relief now. *See Winter*, 555 U.S. at 22; *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (An injunction "will not be granted against something merely feared as liable to occur at some indefinite time in the future."). Indeed, Plaintiffs' contention that the terms of the directive are ambiguous conflict with their certainty that they will in fact be "injured" "irreparably" once the federal Government implements their terms. *Compare* Pl. Br. 16–19 *with id.* at 22–25. This, too, undermines that granting Plaintiffs' request for a preliminary injunction is appropriate at this juncture.

### C.    The Public Interest and the Balance of Equities Militate Against the Injunction.

Lastly, a party seeking a preliminary injunction must "establish . . . that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Where the Federal Government is the defendant, these factors "merge" into one. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The most pertinent and concretely expressed public interest in relation to this case is contained in 8 U.S.C. § 1373, which expresses the public interest in supporting the enforcement of federal immigration law. *See Arizona*, 567 U.S. at 411-412 ("Consultation between federal and state officials is an important feature of the immigration system. Congress has made clear that no formal agreement or special training needs to be in place for state officers to "communicate with the [Federal Government] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States.") (citing 8 U.S.C. §§ 1357(g)(10)(A), 1373(c)). These directives are meant simply to ensure compliance with the federal statutes. Therefore, the public interest lies in allowing the Executive Branch to pursue the necessary steps to implement the executive directives. *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016) ("Vindicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief

Executive."); *District of Columbia v. United States Dep't of Agric.*, 444 F. Supp. 3d 1, 45 (D.D.C. 2020) ("The public does have an interest in the executive branch's 'effectuating statutes enacted' by Congress."). Additionally, the public interest prohibits judicial "advisory opinions," which Plaintiffs' motion would require this Court to render in relation to executive directives that have not yet been implemented. *See Coal. for a Healthy Cal. v. FCC*, 87 F.3d 383, 386 (9th Cir. 1996).

If, however, the Court determines an injunction is warranted then it should be limited to the named Plaintiffs. "[U]niversal injunctions … intrude on powers reserved for the elected branches," *United States v. Texas*, 599 U.S. 670, 694 (2023) (Gorsuch, J., concurring), and any injunction should, at a minimum, be "narrowed to redress only the injury shown as to [Plaintiffs]." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) ("Although there is no bar against nationwide relief in federal district court ... such broad relief must be *necessary* to give prevailing parties the relief to which they are entitled." (internal quotation marks and alterations omitted)) (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987); *City and Cnty of San Franscico*, 897 F.3d at 1244 (An injunction must be narrowly tailored to remedy the specific harm shown). "The Supreme Court has repeatedly emphasized that nationwide injunctions have detrimental consequences to the development of law and deprive appellate courts of a wider range of perspectives." *Azar*, 911 F.3d at 583. Related, the Court should limit any injunction to only those Plaintiffs who reside in this judicial district and federal circuit. For example, New Haven, Connecticut is located in the Second Circuit, where binding circuit precedent may foreclose the relief those Plaintiffs seek, depending on what funding decisions are actually executed. *State v. DOJ*, 951 F.3d 84 (2d Cir. 2020). Likewise, Minneapolis and Santa Fe are located in the Eighth and Tenth Circuits, respectively. The jurisdictions within which those localities lie are better suited to make decisions on Plaintiffs' local laws. *See Americans for Immigrant Just. v. DHS*, No. CV 22-3118 (CKK), 2023 WL 4364096, at *4 (D.D.C. July 6, 2023) ("[A]lthough the 'plaintiff's choice of forum is ordinarily entitled to deference,' that choice is conferred considerably less deference when it is not the plaintiff's home forum and has few factual ties to the case.").

### D.    The Court Should Require Plaintiffs to Post Security.

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers

proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). To the extent that the Court grants relief to Plaintiffs, Defendants respectfully request that the Court require Plaintiffs to post security for any taxpayer funds expended during the pendency of the Court's order.

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' preliminary injunction motion.

Dated: March 31, 2025                    Respectfully submitted,

                                         YAAKOV ROTH
                                         Acting Assistant Attorney General
                                         Civil Division

                                         DREW C. ENSIGN
                                         Deputy Assistant Attorney General

                                         EREZ REUVENI
                                         Acting Deputy Director

                                         ELIANIS PEREZ
                                         Assistant Director

                                         LAUREN FASCETT
                                         Senior Litigation Counsel

                                         ANGEL FLEMING
                                         Trial Attorney

                                         */s/ Caroline McGuire*
                                         CAROLINE MCGUIRE
                                         NY Bar No. 5854823
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Office of Immigration Litigation
                                         General Litigation and Appeals Section
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044

                                         */s/ Lindsay W. Zimliki*
                                         LINDSAY W. ZIMLIKI
                                         PA Bar. No. 322181
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Office of Immigration Litigation
                                         General Litigation and Appeals Section
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

_/s/ Caroline McGuire_
Caroline McGuire
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
_Attorney for Defendants_