1   DAVID CHIU, SBN 189542
    City Attorney
2   YVONNE R. MERÉ, SBN 175394
    Chief Deputy City Attorney
3   MOLLIE M. LEE, SBN 251404
    Chief of Strategic Advocacy
4   SARA J. EISENBERG, SBN 269303
    Chief of Complex and Affirmative Litigation
5   NANCY E. HARRIS, SBN 197042
    KARUN A. TILAK, SBN 323939
6   Deputy City Attorneys
    Fox Plaza
7   1390 Market Street, 7th Floor
    San Francisco, CA  94102-5402
8   Telephone:      (415) 355-3308
    Facsimile:      (415) 437-4644
9   E-Mail:      karun.tilak@sfcityatty.org

10  Attorneys for Plaintiff
    CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:      (408) 299-5900
Facsimile:      (408) 292-7240
E-Mail:      tony.lopresti@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

11

12  [additional counsel on signature page]

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15  CITY AND COUNTY OF SAN FRANCISCO,        Case No. 3:25-cv-1350-WHO
    COUNTY OF SANTA CLARA, CITY OF
16  PORTLAND, MARTIN LUTHER KING, JR.        **PLAINTIFFS' REPLY IN SUPPORT OF**
    COUNTY, CITY OF NEW HAVEN, CITY OF       **MOTION FOR PRELIMINARY**
17  OAKLAND, CITY OF EMERYVILLE, CITY OF     **INJUNCTION**
    SAN JOSÉ, CITY OF SAN DIEGO, CITY OF
18  SACRAMENTO, CITY OF SANTA CRUZ,
    COUNTY OF MONTEREY, CITY OF SEATTLE,     Hearing Date:    April 23, 2025
19  CITY OF MINNEAPOLIS, CITY OF ST. PAUL,   Time:            2:00 p.m.
    CITY OF SANTA FE,                        Judge:           Honorable William H. Orrick
20                                           Place:           Courtroom 2
            Plaintiffs,
21                                           Date Filed:      February 7, 2025
            vs.                              Trial Date:      Not set
22
    DONALD J. TRUMP, President of the United
23  States, UNITED STATES OF AMERICA,
    PAMELA BONDI, Attorney General of the United
24  States, EMIL BOVE, Acting Deputy Attorney
    General, UNITED STATES DEPARTMENT OF
25  JUSTICE, KRISTI NOEM, Secretary of United
    States Department of Homeland Security, UNITED
26  STATES DEPARTMENT OF HOMELAND
    SECURITY, DOES 1-100,
27
            Defendants.
28

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

    I.    Plaintiffs' Claims Are Justiciable .................................................................. 1

        A.    Plaintiffs' Claims Are Justiciable Notwithstanding Defendants' Implausible Interpretation of the Executive Orders and Bondi Directive .......................................................................................... 2

        B.    Plaintiffs Need Not Wait for Their Federal Funding to be Withheld .......................................................................................... 5

    II.    Plaintiffs Have Established a Likelihood of Success on the Merits ................ 7

        A.    Separation of Powers ....................................................................... 7

        B.    Spending Clause ............................................................................... 8

        C.    Fifth Amendment ............................................................................. 9

        D.    Tenth Amendment ............................................................................ 9

        E.    Administrative Procedure Act ........................................................ 10

    III.    Plaintiffs Have Established Irreparable Harm ............................................ 12

    IV.    The Public Interest and the Balance of Equities Favor an Injunction .......... 13

    V.    Security, If Any, Should be Nominal ............................................................ 14

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ariz. Dream Act Coal. v. Brewer*
   757 F.3d 1053 (9th Cir. 2014) ...........................................................................13

*Arizona v. Yellen*
   34 F.4th 841 (9th Cir. 2022) ...............................................................................6

*Barahona–Gomez v. Reno*
   167 F.3d 1228, 1237 (9th Cir. 1999) ..........................................................14, 15

*Bennett v. Spear*
   520 U.S. 154 (1997)......................................................................................10, 11

*Bowen v. Massachusetts*
   487 U.S. 879 (1988).............................................................................................10

*Bresgal v. Brock*
   843 F.2d 1163 (9th Cir. 1987) ...........................................................................14

*Califano v. Yamasaki*
   442 U.S. 682 (1979).............................................................................................14

*City & Cnty. of S.F. v. Trump*
   897 F.3d 1225 (9th Cir. 2018) ................................................................. passim

*Clinton v. City of New York*
   524 U.S. 417 (1998)...............................................................................................7

*Cnty. of Santa Clara v. Trump*
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ..................................................... passim

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
   321 F.3d 878 (9th Cir. 2003) .............................................................................15

*East Bay Sanctuary Covenant v. Trump*
   349 F. Supp. 3d 838 (N.D. Cal. 2018) ..............................................................15

*Gilmore v. Wells Fargo Bank, N.A.*
   No. C 14-2389-CW, 2014 WL 3749984 (N.D. Cal. July 29, 2014)..........................15

*Lucero v. Hart*
   915 F.2d 1367 (9th Cir. 1990) .............................................................................9

*Melenderes v. Arpaio*
   695 F.3d 990 (9th Cir. 2012) .............................................................................13

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*
   No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025) ....................15

*Nat'l Council of Nonprofits v. OMB*
No. CV 25-239 (LLA), 2025 WL 597959 (D.D.C. Feb. 25, 2025) ..........................................11

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
567 U.S. 519 (2012) ...............................................................................................................10

*New York v. Trump*
No. 25-CV-39-JJM-PAS, 2025 WL 715621 (D.R.I. Mar. 6, 2025) ........................................11

*Peace Ranch, LLC v. Bonta*
93 F.4th 482 (9th Cir. 2024) ..............................................................................................5, 6

*Planned Parenthood Great Northwest v. Labrador*
122 F.4th 825 (9th Cir. 2024) .................................................................................................6

*State ex rel. Becerra v. Sessions*
284 F. Supp. 3d 1015 (N.D. Cal. 2018) ...............................................................................12

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014) .................................................................................................................5

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) .................................................................................................2

*Trump v. New York*
592 U.S. 125 (2020).............................................................................................................4, 5

*U.S. Department of Education v. California*
(No.24A910) 604 U.S. ---- (2025) .......................................................................................10

*Virginia v. Am. Booksellers Ass'n*
484 U.S. 383, 393 (1988).........................................................................................................2

*Wilderness Soc'y v. Norton*
434 F.3d 584 (D.C. Cir. 2006) ..............................................................................................11

**Statutes & Codes**
8 U.S.C.
§ 1373 ....................................................................................................................................10

**Rules**
Federal Rule of Civil Procedure
Rule 65(c) ..........................................................................................................................14, 15

**Other References**
Interview between Attorney General Pam Bondi and Maria Bartiromo, "AG Pam Bondi says 'America will be transparent again' on politics, justice,"Fox Business (Mar. 14, 2025), https://www.foxbusiness.com/video/6370020686112................................................................1

**INTRODUCTION**

In response to Plaintiffs' motion, DOJ told the media that "[t]he Department of Justice has made it crystal clear" that so-called "sanctuary" jurisdictions "will be . . . stripped of federal funding." Supp. Nguyen Decl. Ex. 3.[1] Just days before Plaintiffs filed their motion, the Attorney General went on national TV and made clear that the Trump administration is targeting "sanctuary" jurisdictions and will "pull their federal funding until they comply" with Defendants' sweeping and improper assertion of federal control over local affairs.[2] Yet DOJ represents to this Court that Defendants are merely conducting "an internal evaluation of funds," ECF No. 93 ("Def. Br.") at 7, and the threat that Plaintiffs will lose funding as a result of Executive Order 14,159 ("EO 14,159"), Executive Order 14,218 ("EO 14,218"), and the Bondi Directive is remote and speculative. The Court should not countenance this double-speak. Defendants cannot avoid Plaintiffs' clearly justiciable and meritorious claims by downplaying the Executive Orders and Directive in this forum even as they confirm their plain meaning elsewhere. Just as this Court and the Ninth Circuit found with respect to the first Trump administration's efforts to defund "sanctuary" jurisdictions by executive fiat, Plaintiffs here (1) have a well-founded fear that the Executive Orders and Directive will deprive them of critical federal funding; (2) are likely to succeed in establishing that the Orders and Directive unconstitutionally and illegally threaten federal funding; and (3) are being immediately and irreparably harmed by the budgetary disarray that Defendants' unlawful directives have wrought. Plaintiffs' requested preliminary injunction is therefore in the public interest.

**ARGUMENT**

**I.    Plaintiffs' Claims Are Justiciable**

Defendants first argue that Plaintiffs' claims are too speculative to satisfy the requirements of standing and ripeness. Def. Br. at 8–12. Where, as here, Defendants dispute whether Plaintiffs' injury is "real and concrete rather than speculative and hypothetical," the ripeness and standing inquiries

---

[1] Citations to the Supp. Nguyen Decl. refer to the Supplemental Declaration of Bill Nguyen filed concurrently with Plaintiffs' reply brief.

[2] Interview between Attorney General Pam Bondi and Maria Bartiromo, at 3:30–4:30, "AG Pam Bondi says 'America will be transparent again' on politics, justice," Fox Business (Mar. 14, 2025), https://www.foxbusiness.com/video/6370020686112.

"merge[] almost completely." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citation and quotation marks omitted). Defendants' justiciability arguments fail because they rest on an implausible reinterpretation of the Executive Orders and Bondi Directive and ignore black-letter pre-enforcement standing doctrine. Indeed, this Court and the Ninth Circuit previously found that challenges to Executive Order 13,768 (the first Trump administration's efforts to defund "sanctuary" jurisdictions) were justiciable in a virtually identical posture and rejected many of the same arguments that Defendants raise here. Defendants' arguments fare no better this time around.

### A. Plaintiffs' Claims Are Justiciable Notwithstanding Defendants' Implausible Interpretation of the Executive Orders and Bondi Directive

Defendants claim that the Executive Orders and Bondi Directive merely "call for an evaluation of possible, lawful, federal funding limitations." Def. Br. at 9; *see also id.* at 12 ("[T]hese executive directives provide guidance for the agencies to begin their evaluation of federal funding decisions to certain localities, and then assess how they may implement any applicable funding changes."). As an initial matter, Defendants' narrow construction of the Executive Orders and Bondi Directive does not defeat standing. *See City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1236 (9th Cir. 2018) (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 515 (N.D. Cal. 2017). For the same reasons, Defendants' dismissal of Plaintiffs' injuries as purportedly contingent on future agency interpretation and implementation fails because the fact that Defendants "'may' choose to interpret the Order's broad language narrowly or 'may' choose not to enforce it . . . does not justify deferring review." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 529; *see also City & Cnty. of San Francisco*, 897 F.3d at 1236 ("the possibility of non-enforcement does not mean that the Counties lack standing"). Just as in Plaintiffs San Francisco's and Santa Clara's prior challenges to Executive Order 13,768, Plaintiffs here "have demonstrated that, if their interpretation of the Executive Order[s] [and Bondi Directive] is correct, they will be forced to either change their policies or suffer serious consequences." *City & Cnty. of S.F.*, 897 F.3d at 1236; *see* ECF No. 61 ("Pl. Br.") at 10–13, 23 (discussing Plaintiffs' harm from withholding of federal funds).

In any event, the language of the Executive Orders and Bondi Directive belies Defendants' new assertion that those orders can be disregarded as mere planning. *See City & Cnty. of S.F.*, 897

F.3d at 1239 (finding that the first Trump administration's similarly broad Executive Order was not susceptible to the government's narrow interpretation); *Cnty. of Santa Clara*, 250 F. Supp. 3d. at 515 (same). On its face, Section 17 of EO 14,159 does not merely request an "evaluation" of federal funding; it also includes a mandatory directive that the Attorney General and Secretary of Homeland Security "shall . . . undertake" actions to "ensure that so-called 'sanctuary' jurisdictions . . . do not receive access to Federal funds."[3] ECF No. 61-2 ("Tilak Decl.") Ex. 1. EO 14,218 likewise directs that every Executive department "shall" ensure that federal payments to states and localities "do not, by design or effect . . . abet so-called 'sanctuary' policies." *Id.* Ex. 33. These Executive Orders are also broad in scope, targeting federal funds and payments at large. *See City & Cnty. of S.F.*, 897 F.3d at 1239 (construing EO 13,768 as "threaten[ing] to withdraw all federal grants"). The Bondi Directive similarly directs that DOJ "shall" freeze "the distribution of all funds." Tilak Decl. Ex. 3.

Defendants' arguments are also contradicted by their own conduct and that of other Executive agencies acting under Defendants' direction. For example, far from just "evaluating" federal funding, the Department of Housing and Urban Development ("HUD") has issued immigration-related grant conditions for its Continuum of Care program, which funds services to end homelessness for individuals and families, including persons fleeing domestic violence and sexual assault. These conditions mandate compliance with Executive Order 14,218 and its amorphous directive that federal payments not "abet[] so-called 'sanctuary' policies" "by design or effect." ECF No. 68 ("McSpadden Decl.") Ex. A at p. 3. In addition, on February 19, 2025, Defendant Noem issued a memorandum entitled "Restricting Grant Funding for Sanctuary Jurisdictions" (the "Noem Directive"), which implements the Executive Orders by directing components of DHS not just to review federal assistance awards, but also to "cease providing federal funding to sanctuary jurisdictions." ECF No. 89 ("Nguyen Decl.") Ex. 1 at p. 2. On March 25, Defendant Noem approved the Federal Emergency Management Agency's ("FEMA") recommendation that "conditions or restrictions" related to

---

[3] Defendants' opposition mistakenly asserts that Plaintiffs do not seek to enjoin Section 17 of EO 14,159. Def. Br. at 6. But, as Plaintiffs have made clear, they *do* seek to enjoin the direction to withhold funding from sanctuary jurisdictions in the first sentence of Section 17. Pl. Br. at 1. Plaintiffs do not, at this time, seek an injunction with respect to the second sentence of Section 17, which threatens civil and criminal enforcement. *See id.* at 6 n.3.

"sanctuary" jurisdictions should be placed on "all <u>open</u> and <u>future</u> awards" for twelve grant programs that fund critical emergency preparedness activities. Supp. Nguyen Decl. Ex. 1 at pp. 2–3.[4] These activities have nothing to do with civil immigration enforcement. They are instead used by Plaintiffs to prepare for and respond to natural disasters, terrorist attacks, and other emergencies. *See id.* at 21–23 (describing purpose and statutory authority for grants); *see, e.g.*, ECF No. 61-6 ("Cole-Tindall Decl.") ¶¶ 14–19; ECF No. 61-10 ("Boyd Decl.) ¶¶ 8–11; ECF No. 76 ("Williams Decl.") ¶ 47 (discussing Plaintiffs' use of these grants). And, on March 27, DHS issued terms and conditions applicable to "all new federal awards" for Fiscal Year 2025 that specifically target "sanctuary" jurisdictions by mandating, *inter alia*, that award recipients "honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer" and "provide access to detainees" in custody. Supp. Nguyen Decl. Ex. 2 at § IX(1). Making clear that these conditions emanate from the Executive Orders, the terms reiterate that grantees must "comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference." *Id.* § XXXI. Finally, DOJ has made "crystal clear" that "sanctuary" jurisdictions will be "stripped of federal funding," Supp. Nguyen Decl. Ex. 3, and Defendant Bondi has stated that the Administration "will continue to pull ['sanctuary' jurisdictions'] federal funding" in order to coerce these jurisdictions to abandon their policies, *see supra* p. 1 n.2.

Thus, far from merely "evaluating" possible limits, the Executive Orders and Bondi Directive reflect Defendants' determination that funding *will* be withheld—and indeed *is being* conditioned. Plaintiffs have therefore shown a concrete and imminent harm, and their claims are justiciable.[5]

---

[4] A district court recently concluded that the Noem Directive—and FEMA's implementation thereof—effectuate EO 14,159. Mem. & Order, *New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (D.R.I. Apr. 4, 2025), Supp. Nguyen Decl. Ex. 8, at 12–13.

[5] *Trump v. New York*, 592 U.S. 125 (2020), is inapposite. There, the challenged executive action simply directed the Secretary of Commerce to provide the President with a report containing information that the President could evaluate in carrying out a policy related to Congressional apportionment. *Id.* at 129–30. It did not contain the kind of mandatory directives present in the Executive Orders and Bondi Directive. Further, unlike in *New York*, where it was unclear whether the Secretary would even be able to provide the requested information or whether it would be used, *id.* at 132, Defendants here have already stated that federal funding will be stripped from "sanctuary" jurisdictions and have taken steps to withhold and condition funding. *See supra* p. 1 n.2; McSpadden Decl. Ex. A; Nguyen Decl. Ex. 1; Supp. Nguyen Decl. Exs. 1–3. Finally, as the Supreme Court

**B.     Plaintiffs Need Not Wait for Their Federal Funding to be Withheld**

Defendants also argue that Plaintiffs' claims are not justiciable because no funding has yet been withheld. Def. Br. at 9, 11. But, under well-established pre-enforcement standing principles, Plaintiffs need not wait until their federal funding is stripped away before challenging Defendants' unlawful actions. *See City & Cnty. of S.F.*, 897 F.3d at 1236–38; *Cnty. of Santa Clara*, 250 F. Supp. 3d at 517–25 (finding challenge to Executive Order 13,768 to be justiciable before funding was withheld). In assessing pre-enforcement standing, courts look at whether (1) the plaintiffs have "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) the conduct is "arguably . . . proscribed" by defendants' conduct, and (3) there is a "substantial" threat of future enforcement. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)); *Cnty. of Santa Clara*, 250 F. Supp. 3d at 517–25 (applying same analysis to challenge to Executive Order); *see also City & Cnty. of S.F.*, 897 F.3d at 1236 (applying a version of these factors in assessing ripeness). Each factor is satisfied here.

First, each Plaintiff has chosen to adopt policies limiting the use of local resources to enforce federal civil immigration laws. Pl. Br. at 3–5. As this Court has held, such policies implicate Plaintiffs' Tenth Amendment rights. *Cnty. of Santa Clara*, 250 F. Supp. 3d at 525–26. Second, Plaintiffs' choices are targeted by the Executive Orders and Bondi Directive. As Plaintiffs explained in their motion, their policies likely meet Defendants' definition of "sanctuary" jurisdictions. Pl. Br. at 10. The Noem Directive further underscores this conclusion. It defines "sanctuary" jurisdictions to include localities, like many Plaintiffs, that may decline to "honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of alien pursuant to a valid detainer," or that fail to "provide access to detainees" in local custody. Nguyen Decl. Ex. 1 at p. 2. Tellingly, Defendants' opposition does not dispute that Defendants regard Plaintiffs as "sanctuary" jurisdictions for purposes of the Executive Orders and Bondi Directive.

---

observed, the plaintiffs in *New York* did not face any present injury because the census had already concluded, 592 U.S. at 131, whereas here Plaintiffs are suffering present injury from the budgetary uncertainty engendered by Defendants' actions. *See infra* Part I.B.

Third, Plaintiffs face a substantial threat that the Executive Orders and Bondi Directive will be wielded to withhold critical federal funding. This factor "rises or falls with the enforcing authority's willingness to disavow enforcement." *Peace Ranch, LLC*, 93 F.4th at 490; *see also Planned Parenthood Great Northwest v. Labrador*, 122 F.4th 825, 838–39 (9th Cir. 2024). Courts also sometimes look to whether the authorities have "communicated a specific warning or threat to initiate proceedings" and to "the history of past prosecution or enforcement." *Arizona v. Yellen*, 34 F.4th 841, 851 (9th Cir. 2022); *City & Cnty. of S.F.*, 897 F.3d at 1236–37. Here, far from disavowing an intent to withhold funding from "sanctuary" jurisdictions, Defendants have doubled down by continuing to publicly commit to withdrawal of "sanctuary" jurisdictions' funding, and taking specific actions to effectuate that commitment. *See* Part I.A, *supra*; McSpadden Decl. Ex. A; Nguyen Decl. Ex. 1; Supp. Nguyen Decl. Exs. 1–3.[6] Indeed, on March 27, the President declared that he would "end sanctuary cities" through potential further Executive action. Supp. Nguyen Decl. Ex. 4. As for a "history of past prosecution or enforcement," the Court need only look to the first Trump administration's repeated unlawful attempts to defund "sanctuary" jurisdictions through Executive Orders and conditions on DOJ grants—actions that were halted only by injunctions from federal courts, including this Court. That history is repeating itself, and Plaintiffs are once again at risk of losing critical federal funding.

But Plaintiffs' harm is not limited to their credible fear that critical funding *will* be withheld. Plaintiffs have also shown that they face a *present* injury stemming from the budgetary uncertainty wrought by Defendants' actions. Just as with the first Trump administration's efforts to defund "sanctuary" jurisdictions through Executive Order 13,768, the Executive actions challenged here "create[] a contingent liability, potentially placing hundreds of millions of dollars of Plaintiffs' funding at risk." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 528; *see* Pl. Br. 10–13. Plaintiffs therefore once again "cannot make informed decisions about whether to keep spending federal funds on needed services for which they may not be reimbursed; they are forced to make contingency plans to deal with a potential loss of funds . . . and the obligation to mitigate potential harm to their residents and drastic

---

[6] While the Bondi Directive's threat to impose an across-the-board freeze on the distribution of all DOJ funds has not yet been implemented, DOJ has not disavowed an intent to impose the freeze, and Defendant Bondi and DOJ continue to threaten to use federal funding as a tool to coerce localities.

cuts to service may ultimately compel them to change their policies to comply with what they believe to be an unconstitutional Order." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 526; *see* Pl. Br. at 10–13, 23 (discussing budgetary harms); *see also Clinton v. City of New York*, 524 U.S. 417, 431 (1998).

## II.    Plaintiffs Have Established a Likelihood of Success on the Merits

On the merits, Defendants continue to mischaracterize the directives in the Executive Orders and Bondi Directive and misconstrue Plaintiffs' arguments. None of Defendants' arguments undermines Plaintiffs' likelihood of success on the merits of each of their claims.

### A.    Separation of Powers

Defendants attempt to sidestep the clear separation-of-powers violations at issue here by arguing that EO 14,159 refers only to "lawful actions" and the Bondi Directive states that actions will be taken in a manner "consistent with law." Def. Br. at 13. But these boilerplate phrases do not insulate Defendants from judicial review—as both this Court and the Ninth Circuit explained in response to the federal government's efforts to defend Executive Order 13,768 (which similarly directed that "sanctuary" jurisdictions be defunded "consistent with law"). *See City & Cnty. of S.F.*, 897 F.3d at 1240 ("If 'consistent with law' precludes a court from examining whether the Executive Order is consistent with law, judicial review is a meaningless exercise, precluding resolution of the critical legal issues."); *Cnty. of Santa Clara*, 250 F. Supp. 3d at 536 ("The Government's attempt to resolve all of the Order's constitutional infirmities with a 'consistent with law' bandage is not convincing."). Defendants do not address the Ninth Circuit's controlling decision in *City and County of San Francisco*, which held that a substantially similar Executive Order directing that federal funds be withheld from "sanctuary" jurisdictions violated the separation of powers. And Defendants' ongoing efforts to implement the Executive Orders by conditioning a broad swath of federal funds on local assistance with civil immigration enforcement illustrate that Defendants' promises to act "consistent with law" are illusory. *See* Part I.A, *supra*.

Defendants' remaining arguments similarly miss the mark. For example, Defendants address Section 2(b) of EO 14,218. Def. Br. at 13. But they offer no defense of Section 2(a)(ii), the provision that Plaintiffs *actually* challenge and that directs all Executive departments to ensure that federal payments do not "abet so-called 'sanctuary' policies"—regardless of the Congressional authorization

for those payments. Likewise, Defendants address the Bondi Directive's discussion of potential conditions on future grants, but Plaintiffs' arguments focus on the threat to freeze the "distribution of all funds" contained on the first page of the Bondi Directive. *See* Pl. Br. at 16. Defendants offer no defense of this threatened indefinite freeze on the distribution of Congressionally appropriated funds.

### B.    Spending Clause

Defendants once again mischaracterize the Executive Orders as "merely call[ing] for a deliberation and evaluation of the federal funding." Def. Br. at 14. But, as discussed above, the Executive Orders direct agencies to withhold or condition federal funds and payments at large—ostensibly including allocated and awarded funds where Plaintiffs had no notice and federal funds that have no nexus to civil immigration enforcement.[7] The potential breadth of federal funds and payments covered by the Executive Orders also means that Plaintiffs risk losing all, or a substantial portion, of the federal funds on which they rely to provide essential services, which would effectively coerce them into adopting Defendants' preferred civil immigration enforcement initiatives. And critical terms—such as what constitutes a "sanctuary" policy or "sanctuary" jurisdiction and what amounts to "abet[ting]" such a policy—remain undefined and ambiguous. *See Cnty. of Santa Clara*, 250 F. Supp. 3d at 532–33 (finding similar Spending Clause infirmities with Executive Order 13,768). The Bondi Directive fares no better. It threatens to freeze the distribution of "all" DOJ funds—regardless of whether the funds are already obligated or have any connection to civil immigration enforcement.

Defendants' implementation of the Executive Orders further underscores the Spending Clause violations. For example, following Defendant Noem's February 19 direction, FEMA (a part of DHS) prepared recommendations, which Defendant Noem then approved, to impose immigration-related conditions on grants that support Plaintiffs' ability to plan and prepare for emergencies. *Compare* Supp. Nguyen Decl. Ex. 1 at pp. 2–3, 21–23, *with* Cole-Tindall Decl. ¶¶ 14–19; Boyd Decl. ¶¶ 8–11; Williams Decl. ¶ 47. And DHS has operationalized the Executive Orders by revising the standard

---

[7] Defendants' assertion that Plaintiffs have not offered any argument or explanation regarding the lack of nexus is simply incorrect. *See* Pl. Br. at 18 (describing how the Executive Orders' purported application to all federal funding would include funds that "have nothing to do with immigration enforcement" and how the Bondi Directive's threatened freeze would apply to DOJ grants that Plaintiffs rely on for purposes unrelated to immigration).

terms for all DHS federal awards to include ambiguous and unlawful conditions requiring grantees to assist with federal civil immigration enforcement (including "requests for cooperation") and comply with the Executive Orders, regardless of the nexus between a grant program and immigration enforcement. Supp. Nguyen Decl. Ex. 2. Likewise, HUD, a department that reports to the President, has conditioned grants to provide services to the homeless on compliance with EO 14,218 and its ambiguous requirement that funds not be used to "abet so-called 'sanctuary' policies" "by design or effect." McSpadden Decl. Ex. A at p. 3.

### C.    Fifth Amendment

Plaintiffs have a constitutionally protected property interest in the federal funds appropriated for a specific purpose by Congress and awarded to them via contracts with the federal government. *See Cnty. of Santa Clara*, 250 F. Supp. 3d at 536; *see also Lucero v. Hart*, 915 F.2d 1367, 1370 (9th Cir. 1990). Defendants do not contest the existence of such an interest, but instead argue only that the Executive Orders and Bondi Directive merely call for an "evaluation of federal funding" and there has been no "deprivation because there is no final agency action." Def. Br. at 15. As explained above, that argument fails. Defendants do not try to distinguish EO 13,768 or this Court's analysis in *County of Santa Clara*, 250 F. Supp. 3d at 534–36, that broad, standardless directives to agencies to "ensure" that "'sanctuary jurisdictions' are not eligible to receive federal grants" are void for vagueness and violate procedural due process under the Fifth Amendment. *Id.* at 535. In passing, Defendants argue that the Executive Orders and Bondi Directive "do contain various explanations for sanctuary terms," Def. Br. at 15–16, but do not clarify how those supposed explanations "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" or "provide explicit standards for those who apply them." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 534 (citation and quotation marks omitted).

### D.    Tenth Amendment

In response to Plaintiffs' Tenth Amendment claim, Defendants assert that Plaintiffs may simply decline to apply for DHS or DOJ grants. Def. Br. at 16. But EO 14,159 and EO 14,218 apply on their face to a much broader swath of federal funds and payments to so-called "sanctuary" jurisdictions. Requiring Plaintiffs to choose between exercising their Tenth Amendment rights to control the use of their local resources and forgoing potentially tens or hundreds of millions of dollars

in federal funding constituting a substantial portion of their budgets is not a choice at all; it is an

unconstitutional "gun to the head." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012);

*see also Cnty. of Santa Clara*, 250 F. Supp. 3d at 533–34. Nor, as discussed above, does Defendants'

specious promise to abide by "existing statutory and constitutional authority," Def. Br. at 11, rectify

the coercive nature of the Executive Orders.[8]

## E.    Administrative Procedure Act

Defendants focus only on the Bondi Directive's discussion of potential conditions on future

grants. But, as Plaintiffs' motion clearly explains, while they reserve the right to seek future relief if

DOJ publishes a list of grants conditioned on compliance with 8 U.S.C. § 1373, Pl. Br. at 8 n.4, their

APA arguments for purposes of the *present* motion focus on the Bondi Directive's instruction to freeze

the distribution of all DOJ funds to implement the President's directive to defund "sanctuary"

jurisdictions, *see* Pl. Br. at 21–22—a threat that Defendants neither disavow nor attempt to defend.[9]

The mandate to freeze distribution of all DOJ funds (presumably including awarded and

allocated funds) is undoubtedly a "final agency action" marking the "consummation of the agency's

decision-making process." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). It states in no uncertain

terms that "the Department of Justice *will ensure*, consistent with law, 'sanctuary jurisdictions' *do not*

receive access to Federal funds from the Department" and that DOJ "*shall pause the distribution of all*

*funds*." Tilak Decl. Ex. 3 at 1 (emphases added); *see Wilderness Soc'y v. Norton*, 434 F.3d 584, 595

(D.C. Cir. 2006) ("central" to the analysis of the legal effect of an agency policy document is "[t]he

---

[8] Defendants also raise arguments regarding threats of civil and criminal enforcement. *See* Def. Br. at 16–17. These arguments are premature. Plaintiffs' motion seeks only to enjoin the threats to federal funding—not the threats of civil or criminal enforcement. *See* Pl. Br. at 6 n.3.

[9] The U.S. Supreme Court's recent *per curiam* order in *U.S. Department of Education v. California* (No.24A910), 604 U.S. ---- (2025) does not bear on Plaintiffs' claims. There, in the context of an APA challenge to the termination of specific grant contracts, the Supreme Court vacated the district court's temporary restraining order in part because the APA's "limited waiver of immunity does not extend to orders to enforce a contractual promise of money . . . ." *Id.* at 2. Here, Plaintiffs' APA claim does not seek an order to enforce particular contract promises made by the federal government or recover damages, but instead seeks to prospectively enjoin the unlawful and irreparably harmful policy of indefinitely freezing all DOJ funds without constitutional or statutory authority or reasoned basis. Plaintiffs' claim therefore falls squarely within the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 904–08 (1988). Further, *U.S. Department of Education* involved solely an APA claim; here, Plaintiffs also have several constitutional claims for injunctive relief.

language actually used by the agency"). "[L]egal consequences will flow" from this across-the-board

freeze on funding. *Bennett*, 520 U.S. at 178. Plaintiffs rely on DOJ funding for critical public safety

functions, and an indefinite freeze on the distribution of these funds would require them to either incur

significant deficits and risk the likelihood that they will not be reimbursed, or slash vital services that

protect the safety of their communities. *See* Pl. Br. at 11–12. Courts have found similar directives to be

reviewable final agency actions, and not "programmatic" challenges. *See, e.g.*, *New York v. Trump*,

No. 25-CV-39-JJM-PAS, 2025 WL 715621, at *8 (D.R.I. Mar. 6, 2025) (OMB Directive directing

"temporary pause on all activities related to obligation or disbursement" of federal funds was a final

agency action); *Nat'l Council of Nonprofits v. OMB*, No. CV 25-239 (LLA), 2025 WL 597959, at *13

(D.D.C. Feb. 25, 2025) (finding the same directive was not a programmatic policy but "a mandatory

command … that produced legal consequences for Plaintiffs and others").

On the merits, to the extent Defendants intimate that this freeze will be made "consistent with

law," as discussed above, they cannot wield this phrase as a talisman to evade judicial review. In any

event, an indefinite across-the-board freeze for the purpose of effectuating the President's directive to

withhold funding from "sanctuary" jurisdictions is unconstitutional and therefore *ultra vires*. *See* Part

II.A–D, *supra.* And, while Defendants postulate possible statutory authority to impose conditions on

future grants, they provide no statutory basis to freeze all funding (including awarded and allocated

funds) in order to review for alignment with the Administration's preferred immigration policy. As

Plaintiffs explained (and as DOJ does not dispute) no law authorizes DOJ to impose conditions not

authorized by Congress, and the Impoundment Control Act ("ICA") prescribes the circumstances and

procedures for the Executive Branch to request deferral or rescission of appropriated funds from

Congress, none of which have been satisfied here. Pl. Br. at 22; *see New York*, 2025 WL 715621, at

*9–10 (finding that Executive Branch directive and action to "defer or decline the expenditure of

appropriated federal funds" likely did not comply with the ICA, and was contrary to law and *ultra

vires* under the APA). Finally, Defendants also do not dispute Plaintiffs' arguments that the Bondi

Directive is arbitrary and capricious because it is not "reasonable" or "reasonably explained." Pl. Br. at

22.

### III.    Plaintiffs Have Established Irreparable Harm

Instead of engaging with Plaintiffs' comprehensive factual showing of irreparable harm, Defendants simply repeat the same unpersuasive arguments they raise with respect to justiciability—i.e., that any harm is speculative because no funds have been impacted. Def. Br. at 21–22. But, as Plaintiffs have amply demonstrated through nearly forty declarations, their *present* ability to budget is being thwarted, requiring them to make impossible choices *now* in the face of the Executive Orders and Bondi Directive's threats to critical federal funding. *See* Pl. Br. at 10–13, 23. Both this Court and the Ninth Circuit have found this very kind of harm to be irreparable. *See City & Cnty. of S.F.*, 897 F.3d at 1243–44; *Cnty. of Santa Clara*, 250 F. Supp. 3d at 537.[10] Defendants' arguments to the contrary do not warrant a different result here.

For example, Defendants posit that "a series of future actions must occur before" the Executive Orders and Directive "could have any concrete effect on Plaintiffs." Def. Br. at 22–23. But Plaintiffs' budgetary harm is present and concrete. *See* Pl. Br. at 10–13. And, contrary to Defendants' assertion that the federal government has not "taken any of these actions," Def. Br. at 22, Defendants are in fact actively making good on the Executive Orders and Bondi Directive's instructions to weaponize federal funding against "sanctuary" jurisdictions. During this very lawsuit, Defendants and other Executive departments have begun to operationalize the Executive Orders by conditioning a wide array of federal funding unrelated to immigration enforcement on local assistance with federal civil immigration enforcement (including ostensibly all DHS awards), and DOJ has made it "crystal clear" that it intends to "strip[] . . . federal funding" as a cudgel to coerce "sanctuary" localities to administer the federal government's immigration priorities. *See* Argument Part I.A, *supra*; McSpadden Decl. Ex. A; Nguyen Decl. Ex. 1; Supp. Nguyen Decl. Exs. 1–3; *see City & Cnty. of S.F.*, 897 F.3d at 1244 (finding that "total loss of federal funding would be catastrophic").

---

[10] Defendants assert that this case is "dissimilar from past cases[] where Plaintiffs have lodged like claims," Def. Br. at 22, without even acknowledging the prior litigation over Executive Order 13,768—which in fact involved very "like" claims against a substantially similar Executive Order in a virtually identical procedural posture. The sole case that Defendants do cite, *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018), is in fact dissimilar in that it involved a single grant that was a tiny portion of the State of California's budget—not the kind of existential funding threat and resulting budgetary uncertainty at issue here.

Defendants also argue that "Plaintiffs' contention that the terms of the directive are ambiguous conflict with their certainty that they will [be harmed] once the federal Government implements their terms." Def. Br. at 22–23. But the breadth and ambiguity of the Executive Orders and Bondi Directive have in fact placed Plaintiffs in a budgetary quandary. As with Executive Order 13,768, the "broad directive[s] and unclear terms" in the Executive Orders and Bondi Directive—and Defendants' accompanying statements and actions—have "caused substantial confusion and justified fear among" Plaintiffs and "impermissibly interfere[] with [Plaintiffs'] ability to operate, to provide key services, to plan for the future, and to budget." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 537. Defendants' claim that the Executive Orders and Directive simply ask departments to evaluate federal awards cannot be squared with the broad text of the Executive Orders and Directive, or with Defendants' public confirmation that they will "end" "sanctuary" cities and "strip" their federal funding, and the actions they have taken to make good on this threat. Part I.A, *supra*.

Finally, Defendants do not dispute that Defendants' actions irreparably harm the trust between Plaintiffs and their local communities. Pl. Br. at 24–25. And they do not contest that "the deprivation of constitutional rights" (which Plaintiffs have established as discussed above) constitutes irreparable injury. *See Melenderes v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

## IV.    The Public Interest and the Balance of Equities Favor an Injunction

"[B]y establishing a likelihood" of a constitutional violation, "Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Defendants' two responses are unavailing. Defendants first describe "the public interest in supporting the enforcement of federal immigration law." Def. Br. at 23. This point did not persuade the Ninth Circuit and should not persuade this Court, either, because whatever interest Defendants have in enforcing immigration law, there is *no* public interest in allowing them to do so in violation of the Constitution and federal law. *See City & Cnty. of S.F.*, 897 F.3d at 1243–44. Moreover, given the irreparable harm that Defendants' actions have inflicted on Plaintiffs' ability to budget for critical public safety-net services, "the public interest cannot be disserved by an injunction that brings clarity to all parties and to citizens dependent on public services." *Id.* at 1244. Defendants also claim that Plaintiffs seek an "advisory opinion[]" on

"executive directives that have not yet been implemented," Def. Br. at 24, but as discussed at length above, the directives at issue have been—and are being—implemented.

The scope of Plaintiffs' requested preliminary injunction is commensurate with the scope of Defendants' violations. The U.S. Supreme Court has long explained that "the scope of injunctive relief is dictated" not by geography but "by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Here, Plaintiffs' request for a preliminary injunction is no broader than the extent of Defendants' violations: the proposed injunction would sustain the status quo against the unlawful policy of withholding or conditioning funds pursuant to EO 14,159, EO 14,218, or the Bondi Directive based on five types of policies limiting local assistance with civil immigration enforcement that Plaintiffs have adopted. ECF No. 61-1 (Proposed Order) at 2–3. The scope of this injunctive relief accords with other recent injunctions that remain in effect.[11] That some Plaintiffs reside outside of this federal circuit—a fact Defendants perversely argue (without authority) should narrow the injunction— calls instead for widening its scope, because "*such breadth is necessary to give prevailing parties the relief to which they are entitled.*" *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987). No less than Plaintiffs located within this District, the other Plaintiffs too are entitled to the benefit of an injunction to protect their rights against Defendants' illegal acts.

## V.    Security, If Any, Should be Nominal

Lastly, Defendants fail to justify why, pursuant to Federal Rule of Civil Procedure 65(c), the Court should "require Plaintiffs to post security for any taxpayer funds expended during the pendency of the Court's order." Def. Br. at 24–25. This rule "invest[s] the district court with discretion as to the amount of security required, if any." *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999),

---

[11] *See, e.g.*, Order Granting Plaintiffs' Motion for a Temporary Restraining Order and Order to Show Cause, *San Francisco Unified School District v. AmeriCorps*, No. 25-cv-02425 (N.D. Cal. Mar. 31, 2025), Supp. Nguyen Decl. Ex. 6, at 11 ("Defendants shall not, at any time now or in the future, pause, freeze, impede, block, cancel, or terminate AmeriCorps funding awards on the basis of recipients' failure . . . to certify, or execute new grants certifying, that the funded programs do not include any 'activities that promote DEI activities.'"); Order, *Nat'l Council of Nonprofits v. Office of Management and Budget*, No. 1:25-cv-00239 (D.D.C. Feb. 25, 2025), Supp. Nguyen Decl. Ex. 5, at 1 ("Defendants are enjoined from implementing, giving effect to, or reinstating under a different name the unilateral, non-individualized directives in OMB Memorandum M-25-13."); Mem. & Order, *New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (D.R.I. Apr. 4, 2025), Supp. Nguyen Decl. Ex. 8, at 14 ("FEMA must immediately cease the challenged manual review process implemented pursuant to Secretary Noem's [] memoranda.").

supplemented, 236 F.3d 1115 (9th Cir. 2001) (collecting cases). It is within the district court's "wide discretion" to waive the bond requirement entirely "if there is no evidence the party will suffer damages from the injunction," *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citations omitted), or if "there is a high probability of success that equity compels waiving the bond, the balance of the equities overwhelmingly favors the movant . . . or the requirement of a bond would negatively impact the movant's constitutional rights," *Gilmore v. Wells Fargo Bank, N.A.*, No. C 14-2389-CW, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014); *see also Barahona-Gomez*, 167 F.3d at 1237; *East Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 868 (N.D. Cal. 2018).

The Court should reject Defendants' request out of hand because it is entirely unsupported. Defendants offer no explanation of how "taxpayer funds expended during the pendency" of the order could possibly qualify as costs and damages of Defendants' officers and agencies. Moreover, as explained above, the balance of equities weighs strongly in favor of Plaintiffs, who have established a high probability of vindicating important constitutional principles and advance a significant public interest in bringing this litigation. Indeed, Defendants' request is a transparent ploy to discourage such challenges to federal overreaches. *See* Supp. Nguyen Decl. Ex. 7 (March 11, 2025 White House Memorandum) (identifying Rule 65(c) as a "key mechanism" to combat what the federal administration deems "activist judges," "activist organizations," and "frivolous suits"). Perhaps unsurprisingly, Defendants have failed to secure the kind of bond they request here in similar litigation where Defendants have made the same request. *See, e.g.*, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-CV-00333-ABA, 2025 WL 573764, at *30 (D. Md. Feb. 21, 2025), *opinion clarified*, No. 25-CV-0333-ABA, 2025 WL 750690 (D. Md. Mar. 10, 2025), *injunction stayed on appeal*, Order, Dkt. No. 29, No. 25-1189 (4th Cir. Mar. 14, 2025). If the Court decides that a bond is needed, Plaintiffs request that the amount be nominal.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated:  April 7, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS
KARUN A. TILAK
Deputy City Attorneys

By:  /s/ David Chiu
DAVID CHIU
Deputy City Attorney

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO


TONY LOPRESTI
County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
STEFANIE L. WILSON
RAJIV NARAYAN
Deputy County Counsels
BILL NGUYEN
Litigation Fellow

By:  /s/ Tony LoPresti
TONY LOPRESTI
County Counsel

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

ROBERT TAYLOR
Portland City Attorney

By: */s/ Naomi Sheffield*
NAOMI SHEFFIELD*
Chief Deputy City Attorney
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Tel: (503) 823-4047
Fax: (503) 823-3089
Naomi.Sheffield@portlandoregon.gov

*Admitted *pro hac vice*

Attorneys for Plaintiff
CITY OF PORTLAND


SHANNON BRADDOCK
King County Executive

*/s/ David J. Hackett*
By:  DAVID J. HACKETT*
General Counsel to King County
Executive
Chinook Building
401 5th Avenue, Suite 800
Seattle, Washington, 98104
(206) 477-9483
David.hackett@kingcounty.gov
PAUL J. LAWRENCE*
Pacifica Law Group
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
(206) 245-1708
Paul.Lawrence@pacificalawgroup.com

*Admitted *pro hac vice*

Attorney for Plaintiff
MARTIN LUTHER KING, JR. COUNTY

PATRICIA KING
New Haven Corporation Counsel

By:  /s/ Patricia King
PATRICIA KING*
Office of the Corporation Counsel
City of New Haven
165 Church Street-4th Floor
New Haven, CT 06510
Tel:   203-946-7951
Cell: 203-668-9282
Fax:  203-946-7942
pking@newhavenct.gov

*Admitted pro hac vice

Attorney for Plaintiff
CITY OF NEW HAVEN


RYAN RICHARDSON
Oakland City Attorney

By:  /s/ Ryan Richardson
RYAN RICHARDSON
City Attorney
MARIA BEE
Chief Assistant City Attorney
JAMIE HULING DELAYE
Supervising City Attorney
H. LUKE EDWARDS
Deputy City Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
Tel: (510) 238-6629
Fax: (510) 238-6500
Email: RRichardson@OaklandCityAttorney.org

Attorneys for Plaintiff
CITY OF OAKLAND

JOHN I. KENNEDY
City Attorney

By:  */s/ John I. Kennedy*
JOHN I. KENNEDY, City Attorney
1333 Park Ave, Emeryville, CA 94608-3517
Phone: 510-596-4381
Fax: 510-596-3724
Email: John.Kennedy@emeryville.org

Attorney for Plaintiff
CITY OF EMERYVILLE


NORA FRIMANN
City Attorney

By:  */s/ Nora Frimann*
NORA FRIMANN, City Attorney
ELISA TOLENTINO, Chief Deputy City Attorney
200 E Santa Clara St
San José, CA 95113-1905
Tel: 408-535-1900
Fax: 408-998-3131
cao.main@sanjoseca.gov

Attorneys for Plaintiff
CITY OF SAN JOSÉ


HEATHER FERBERT
City Attorney

By:  */s/ Mark Ankcorn*
MARK ANKCORN, Senior Chief Deputy City Attorney
JULIE RAU, Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
Tel: (619) 533-5800

Attorneys for Plaintiff
CITY OF SAN DIEGO

SUSANA ALCALA WOOD
City Attorney

By: */s/ Andrea Velasquez*
ANDREA VELASQUEZ, Supervising Deputy City
Attorney
915 I St Fl 4, Sacramento, CA 95814-2621
Tel: 916-808-5346
Fax: 916-808-7455
Email: AVelasquez@cityofsacramento.org

Attorneys for Plaintiff
CITY OF SACRAMENTO


By: */s/ Anthony P. Condotti*
Anthony P. Condotti, City Attorney
Catherine M. Bronson, Assistant City Attorney
Claire Hard, Deputy City Attorney
PO Box 481
Santa Cruz, CA 95061
Tel: 831-423-8383
Email: tcondotti@abc-law.com
chard@abc-law.com
cbronson@abc-law.com

Attorneys for Plaintiff
CITY OF SANTA CRUZ



SUSAN K. BLITCH
County Counsel

By: */s/ Susan K. Blitch*
SUSAN K. BLITCH, County Counsel
HENRY BLUESTONE SMITH, Deputy County Counsel
168 W Alisal St Fl 3rd
Salinas, CA 93901-2439
Tel: 831-755-5045
Fax: 831-755-5283
Email: SmithHB@countyofmonterey.gov

Attorneys for Plaintiff
COUNTY OF MONTEREY

1

ANN DAVISON
Seattle City Attorney

2

By: */s/ Ann Davison*

3

Ann Davison, Seattle City Attorney*
Kerala Cowart, Assistant City Attorney*
Dallas LePierre, Assistant City Attorney*

4

Rebecca Widen, Assistant City Attorney*
Seattle City Attorney's Office

5

701 Fifth Avenue, Suite 2050
Seattle, WA 98104

6

Tel: (206) 684-8200
E-mail: ann.davison@seattle.gov

7

8

*Admitted *pro hac vice*

9

Attorneys for Plaintiff
CITY OF SEATTLE

10

11

KRISTYN ANDERSON
City Attorney

12

By: */s/ Kristyn Anderson*

13

KRISTYN ANDERSON (MN Lic. 0267752)*
SARA J. LATHROP, Assistant City Attorney (MN Lic.

14

0310232)*
SHARDA ENSLIN, Assistant City Attorney (MN Lic.

15

0389370)*
350 South Fifth Street

16

Minneapolis, MN 55415
Tel: 612-673-3000

17

Email: kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov

18

sharda.enslin@minneapolismn.gov

19

*Admitted *pro hac vice*

20

Attorneys for Plaintiff

21

CITY OF MINNEAPOLIS

22

23

24

25

26

27

28

1   LYNDSEY OLSON
    City Attorney

2   By: */s/ Lyndsey Olson*

3       LYNDSEY OLSON, City Attorney*
        ANTHONY G. EDWARDS, Assistant City Attorney*

4       400 City Hall and Courthouse
        15 Kellogg Boulevard West

5       Saint Paul, Minnesota 55102
        Tel: 651-266-8710

6       Fax: 651-298-5619
        Email: Anthony.Edwards@ci.stpaul.mn.us

7
        *Admitted *pro hac vice*

8
        Attorneys for Plaintiff

9       CITY OF ST. PAUL

10

11      ERIN K. McSHERRY
        City Attorney

12
    By: */s/ Erin K. McSherry*

13      ERIN K. McSHERRY, City Attorney*
        200 Lincoln Avenue

14      Post Office Box 909
        Santa Fe, NM 87504-0909

15      (505) 955-6512
        Email: ekmcsherry@santafenm.gov

16
        *Admitted *pro hac vice*

17
        Attorney for Plaintiff

18      CITY OF SANTA FE

19

20  By: */s/ Naomi Tsu*
        NAOMI TSU*

21      JILL HABIG (CA Bar No. 268770)
        Public Rights Project

22      490 43rd Street, Unit #115
        Oakland, CA 94609

23      Tel: (510) 738-6788
        jill@publicrightsproject.org

24      naomi@publicrightsproject.org

25      *Admitted *pro hac vice*

26
        Attorneys for Plaintiffs

27      CITIES OF MINNEAPOLIS, NEW HAVEN,
        PORTLAND, ST. PAUL, SANTA FE, and SEATTLE

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILER'S ATTESTATION**

I, DAVID CHIU, am the ECF user whose identification and password are being used to file this PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.