| | |
|---|---|
| DAVID CHIU, SBN 189542<br>City Attorney<br>YVONNE R. MERÉ, SBN 175394<br>Chief Deputy City Attorney<br>MOLLIE M. LEE, SBN 251404<br>Chief of Strategic Advocacy<br>SARA J. EISENBERG, SBN 269303<br>Chief of Complex and Affirmative Litigation<br>NANCY E. HARRIS, SBN 197042<br>KARUN A. TILAK, SBN 323939<br>Deputy City Attorneys<br>Fox Plaza<br>1390 Market Street, 7th Floor<br>San Francisco, CA 94102-5402<br>Telephone: (415) 355-3308<br>Facsimile: (415) 437-4644<br>E-Mail: karun.tilak@sfcityatty.org<br><br>Attorneys for Plaintiff<br>CITY AND COUNTY OF SAN FRANCISCO | TONY LOPRESTI, SBN 289269<br>County Counsel<br>KAVITA NARAYAN, SBN 264191<br>Chief Assistant County Counsel<br>MEREDITH A. JOHNSON, SBN 291018<br>Lead Deputy County Counsel<br>STEFANIE L. WILSON, SBN 314899<br>RAJIV NARAYAN, SBN 334511<br>Deputy County Counsels<br>BILL NGUYEN, SBN 333671<br>Litigation Fellow<br>70 W. Hedding Street, East Wing, 9th Floor<br>San José, CA 95110<br>Telephone: (408) 299-5900<br>Facsimile: (408) 292-7240<br>E-Mail: tony.lopresti@cco.sccgov.org<br><br>Attorneys for Plaintiff<br>COUNTY OF SANTA CLARA |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSÉ, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, CITY OF ST. PAUL, CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100,<br><br>Defendants. | Case No. 3:25-cv-1350-WHO<br><br>**[PROPOSED] SECOND SUPPLEMENTAL DECLARATION OF BILL NGUYEN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: April 23, 2025<br>Time: 2:00 p.m.<br>Judge: Hon. William H. Orrick III<br>Place: Courtroom 2<br><br>Date Filed: February 7, 2025<br>Trial Date: None Set |

[Proposed] Second Supp. Nguyen Decl. ISO PI Motion;
Case No. 3:25-cv-1350-WHO

I, Bill Nguyen, declare and state the following:

1. I am an attorney and a member of the Bar of this Court. I am a Litigation Fellow with the Office of the County Counsel, County of Santa Clara, and an attorney of record for the Party County of Santa Clara in the action *City and County of San Francisco v. Trump*, No. 25-cv-1350 (N.D. Cal.), filed in this District on February 7, 2025. In support of Plaintiffs' motion for preliminary injunction, I made a declaration filed on March 27, 2025, at ECF No. 89, and a supplemental declaration filed on April 7, 2025, at ECF No. 95-1. I make this second supplemental declaration of my own personal knowledge. If called on to do so, I could and would testify to the matters stated here.

2. Attached hereto as **Exhibit 1** is a true and correct copy of an April 11, 2025, Memorandum from the California Governor's Office of Emergency Services ("Cal OES") Grants Management to all subrecipients of the Cal OES Homeland Security Grant Program, Nonprofit Security Grant Program, Emergency Operations Center Grant Program, Emergency Management Performance Grant Program, and State and Local Cybersecurity Grant Program.

3. Attached hereto as **Exhibit 2** is a true and correct copy of an April 18, 2025 document on Defendant Department of Homeland Security's website, entitled "FY 2025 DHS STANDARD TERMS AND CONDITIONS" and available at https://www.dhs.gov/sites/default/files/2025-04/2025_0418_fy2025_dhs_terms_and_conditions_version_3.pdf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed in San José, California, on April 22, 2025.

*Bill Nguyen*
BILL NGUYEN

# Exhibit 1



# GRANT MANAGEMENT MEMORANDUM
## GMM 2025-03

**Date:** April 11, 2025

**To:** All California Governor's Office of Emergency Services (Cal OES) Homeland Security Grant Program (HSGP), Nonprofit Security Grant Program (NSGP), Emergency Operations Center Grant Program (EOCGP), Emergency Management Performance Grant (EMPG) Program and State and Local Cybersecurity Grant Program (SLCGP) Subrecipients

**From:** Cal OES Grants Management

**Subject:** DHS/FEMA Grant Guidance Impacting HSGP, NSGP, EOCGP, EMPG, & SLCGP Subrecipients

As you are aware, the Department of Homeland Security (DHS) and the Federal Emergency Management Agency (FEMA) have paused federal grant funding while they conduct a "manual review" of its grant programs, including pending disbursement requests for obligated grant funds. The California Governor's Office of Emergency Services (Cal OES) recognizes that this funding pause has significantly impacted the operations of many grant subrecipients, fostering uncertainty. As the state administrator of these affected grant programs in California, Cal OES wanted to provide you information about current efforts to address this funding pause, including the status of litigation brought by California and 22 other states to restore congressionally authorized funding.

Since the issuance of an Office of Management and Budget's memorandum on January 27, 2025, directing federal agencies to pause federal funding while agencies conducted a review of its federal programs, California and 22 other states have worked tirelessly to compel federal departments and agencies, including DHS and FEMA, to unfreeze grant funding.

Most recently, on April 4, 2025, the federal district court in Rhode Island issued an order to FEMA to end the "manual review" process and comply with the court's prior order that FEMA not pause or impede the disbursement of federal grant funds. That order, however, is temporarily stayed while the Rhode Island district court considers a motion brought by FEMA on April 6, 2025, asking the court to reconsider its April 4 order. The Rhode Island district court has provided the parties until April 14 to submit additional briefing.

While we are hopeful that the Rhode Island district court will issue its decision soon thereafter, we also wanted to inform you of the nature of requests made by FEMA

so that you are aware of the types of information and documentation we may need to request of you when submitting disbursement requests depending on the grant program involved. For example, recent information and documentation requests from FEMA related to disbursement requests in the EMPG and EOCGP include summaries and back up documentation related to the following categories:

- Budget, including costs categorized as "Other Costs" (including invoices supporting payment requests)
- Personnel
- Fringe Benefits
- Travel
- Equipment
- Supplies
- Contracts (including invoices supporting payment requests), and
- Indirect Cost Rate Information

We recognize the amount of effort that this will take for your organization to prepare and provide the requested information. However, we want to provide you with as much notice as possible so that you may begin to gather this information, and documentation should it be necessary. We have also made a request for relief from some of this required documentation directly to the Senior Official Performing the Duties of FEMA Administrator. We will notify you If any relief is authorized.

We understand that the federal funding pause has caused much anxiety to you and the communities you serve. Rest assured that while we await the court's decision, we will continue to actively work to submit disbursement requests while also keeping you informed of significant developments as information becomes available.

In the meantime, if you have questions regarding your grant, you can email grantsmanagement@caloes.ca.gov.

Cal OES Grants Management

# Exhibit 2

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

The Fiscal Year (FY) 2025 Department of Homeland Security (DHS) Standard Terms and Conditions apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2025 and flow down to subrecipients unless a term or condition specifically indicates otherwise. For federal continuation awards made in subsequent FYs, the FY 2025 DHS Standard Terms and Conditions apply unless otherwise specified in the terms and conditions of the continuation awards. The United States has the right to seek judicial enforcement of these terms and conditions.

All legislation and digital resources are referenced with no digital links. These FY 2025 DHS Standard Terms and Conditions are maintained on the DHS website at https://www.dhs.gov/publication/dhs-standard-terms-and-conditions.

A. **Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications**

   I. Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed.

B. **General Acknowledgements and Assurances Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10.**

   All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337.

   I. Recipients must cooperate with any DHS compliance reviews or compliance investigations.

   II. Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel.

   III. Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

   IV. Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference.

   V. Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

C. **Standard Terms & Conditions**

    I. **Acknowledgement of Federal Funding from DHS**

Recipients must acknowledge their use of federal award funding when issuing statements, press releases, requests for proposal, bid invitations, and other documents describing projects or programs funded in whole or in part with federal award funds.

    II. **Activities Conducted Abroad**

Recipients must coordinate with appropriate government authorities when performing project activities outside the United States obtain all appropriate licenses, permits, or approvals.

    III. *Age Discrimination Act of 1975*

Recipients must comply with the requirements of the *Age Discrimination Act of 1975*, Pub. L. No. 94-135 (codified as amended at Title 42, U.S. Code § 6101 *et seq*.), which prohibits discrimination on the basis of age in any program or activity receiving federal financial assistance.

    IV. *Americans with Disabilities Act of 1990*

Recipients must comply with the requirements of Titles I, II, and III of the *Americans with Disabilities Act*, Pub. L. No. 101-336 (1990) (codified as amended at 42 U.S.C. §§ 12101– 12213), which prohibits recipients from discriminating on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities.

    V. **Best Practices for Collection and Use of Personally Identifiable Information**

(1) Recipients who collect personally identifiable information (PII) as part of carrying out the scope of work under a federal award are required to have a publicly available privacy policy that describes standards on the usage and maintenance of the PII they collect.

(2) Definition. DHS defines "PII" as any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual. Recipients may also find the DHS Privacy Impact Assessments: Privacy Guidance and Privacy Template as useful resources respectively.

    VI. *CHIPS and Science Act of 2022*, Public Law 117-167 CHIPS

(1) Recipients of DHS research and development (R&D) awards must report to the DHS Component research program office any finding or determination of sex based and sexual harassment and/or an administrative or disciplinary action taken against principal investigators or co-investigators to be completed by an authorized organizational representative (AOR) at the recipient institution.

(2) Notification. An AOR must disclose the following information to agencies within 10 days of the date/the finding is made, or 10 days from when a recipient imposes an administrative action on the reported individual, whichever is sooner. Reports should include:

    (a) Award number,

    (b) Name of PI or Co-PI being reported,

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

    (c) Awardee name,

    (d) Awardee address,

    (e) AOR name, title, phone, and email address,

    (f) Indication of the report type:

        (i) Finding or determination has been made that the reported individual violated awardee policies or codes of conduct, statutes, or regulations related to sexual harassment, sexual assault, or other forms of harassment, including the date that the finding was made.

        (ii) Imposition of an administrative or disciplinary action by the recipient on the reporting individual related to a finding/determination or an investigation of an alleged violation of recipient policy or codes of conduct, statutes, or regulations, or other forms of harassment.

        (iii) The date and nature of the administrative/disciplinary action, including a basic explanation or description of the event, which should not disclose personally identifiable information regarding any complaints or individuals involved. Any description provided must be consistent with the *Family Educational Rights in Privacy Act*.

(3) Definitions.

    (a) An "authorized organizational representative (AOR)" is an administrative official who, on behalf of the proposing institution, is empowered to make certifications and representations and can commit the institution to the conduct of a project that an agency is being asked to support as well as adhere to various agency policies and award requirements.

    (b) "Principal investigators and co-principal investigators" are award personnel supported by a grant, cooperative agreement, or contract under Federal law.

    (c) A "reported individual" refers to recipient personnel who have been reported to a federal agency for potential sexual harassment violations.

    (d) "Sex based harassment" means a form of sex discrimination and includes harassment based on sex, sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity.

    (e) "Sexual harassment" means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment, whether such activity is carried out by a supervisor or by a co-worker, volunteer, or contractor.

VII. <u>Civil Rights Act of 1964 – Title VI</u>

Recipients must comply with the requirements of Title VI of the *Civil Rights Act of 1964*, Pub. L. No. 88-352 (codified as amended at 42 U.S.C. § 2000d *et seq*.), which provides that no person in the United States will, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. DHS

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

    implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7.

VIII. <u>Civil Rights Act of 1968</u>

    Recipients must comply with Title VIII of the *Civil Rights Act of 1968*, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 *et seq*.) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

IX. <u>Communication and Cooperation with the Department of Homeland Security and Immigration Officials</u>

    (1) All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials:

        (a) They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity;

        (b) They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes;

        (c) That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance;

        (d) That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and

        (e) That they will not leak or otherwise publicize the existence of an immigration enforcement operation.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

 (2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award.

 (3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term.

X. <u>Copyright</u>

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so.

XI. <u>Debarment and Suspension</u>

Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

XII. <u>Drug-Free Workplace Regulations</u>

Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the *Drug-Free Workplace Act of 1988* (41 U.S.C. §§ 8101-8106).

XIII. <u>Duplicative Costs</u>

Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions.

XIV. <u>Education Amendments of 1972 (*Equal Opportunity in Education Act*) – Title IX</u>

Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq.*), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XV. *Energy Policy and Conservation Act*

Recipients must comply with the requirements of the *Energy Policy and Conservation Act*, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq*.), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act.

XVI. Equal Treatment of Faith-Based Organizations

It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries.

Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs.

XVII. Anti-Discrimination

Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

(1) Definitions. As used in this clause –

  (a) DEI means "diversity, equity, and inclusion."

  (b) DEIA means "diversity, equity, inclusion, and accessibility."

  (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

  (d) Discriminatory prohibited boycott means refusing to deal, cutting commercial relations, or otherwise limiting commercial relations specifically with Israeli companies or with companies doing business in or with Israel or authorized by, licensed by, or organized under the laws of Israel to do business.

  (e) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

  (f) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.

(2) Grant award certification.

  (a) By accepting the grant award, recipients are certifying that:

    (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and

    (ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott.

    (iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration.

(3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2)..

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

(4) Upon suspension or termination under subsection (3), all funds received by the recipient shall be deemed to be in excess of the amount that the recipient is determined to be entitled to under the Federal award for purposes of 2 C.F.R. § 200.346. As such, all amounts received will constitute a debt to the Federal Government that may be pursued to the maximum extent permitted by law.

XVIII. *False Claims Act* and Program Fraud Civil Remedies

Recipients must comply with the requirements of the *False Claims Act*, 31 U.S.C. §§ 3729- 3733, which prohibit the submission of false or fraudulent claims for payment to the Federal Government. (See 31 U.S.C. §§ 3801-3812, which details the administrative remedies for false claims and statements made.)

XIX. Federal Debt Status

All recipients are required to be non-delinquent in their repayment of any federal debt. Examples of relevant debt include delinquent payroll and other taxes, audit disallowances, and benefit overpayments. See OMB Circular A-129.

XX. Federal Leadership on Reducing Text Messaging While Driving

Recipients are encouraged to adopt and enforce policies that ban text messaging while driving recipient-owned, recipient-rented, or privately owned vehicles when on official government business or when performing any work for or on behalf of the Federal Government. Recipients are also encouraged to conduct the initiatives of the type described in Section 3(a) of Executive Order 13513.

XXI. *Fly America Act of 1974*

Recipients must comply with Preference for U.S. Flag Air Carriers (a list of certified air carriers can be found at: Certificated Air Carriers List | US Department of Transportation, https://www.transportation.gov/policy/aviation-policy/certificated-aircarriers-list)for international air transportation of people and property to the extent that such service is available, in accordance with the *International Air Transportation Fair Competitive Practices Act of 1974*, 49 U.S.C. § 40118, and the interpretative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B-138942.

XXII. *Hotel and Motel Fire Safety Act of 1990*

Recipients must ensure that all conference, meeting, convention, or training space funded entirely or in part by federal award funds complies with the fire prevention and control guidelines of Section 6 of the *Hotel and Motel Fire Safety Act of 1990*, 15 U.S.C. § 2225a.

XXIII. *John S. McCain National Defense Authorization Act of Fiscal Year 2019*

Recipients, subrecipients, and their contractors and subcontractors are subject to the prohibitions described in section 889 of the *John S. McCain National Defense Authorization Act for Fiscal Year 2019*, Pub. L. No. 115-232 (2018) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to 2 C.F.R. Part 200. The statute – as it applies to DHS recipients, subrecipients, and their contractors and subcontractors – prohibits obligating or expending federal award funds on certain telecommunications and video surveillance products and contracting with certain entities for national security reasons.

XXIV. Limited English Proficiency (*Civil Rights Act of 1964, Title VI*)

Recipients must comply with Title VI of the *Civil Rights Act of 1964* (42 U.S.C. § 2000d *et seq*.) prohibition against discrimination on the basis of national origin, which requires that recipients of federal financial assistance take reasonable steps

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

    to provide meaningful access to persons with limited English proficiency (LEP) to their programs and services. For additional assistance and information regarding language access obligations, please refer to the DHS Recipient Guidance: https://www.dhs.gov/guidance-published-help- department-supported-organizationsprovide-meaningful-access-people-limited and additional resources on http://www.lep.gov.

XXV. <u>Lobbying Prohibitions</u>

    Recipients must comply with 31 U.S.C. § 1352 and 6 C.F.R. Part 9, which provide that none of the funds provided under a federal award may be expended by the recipient to pay any person to influence, or attempt to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any federal action related to a federal award or contract, including any extension, continuation, renewal, amendment, or modification. Per 6 C.F.R. Part 9, recipients must file a lobbying certification form as described in Appendix A to 6 C.F.R. Part 9 or available on Grants.gov as the Grants.gov Lobbying Form and file a lobbying disclosure form as described in Appendix B to 6 C.F.R. Part 9 or available on Grants.gov as the Disclosure of Lobbying Activities (SF-LLL).

XXVI. *National Environmental Policy Act*

    Recipients must comply with the requirements of the *National Environmental Policy Act of 1969*, Pub. L. No. 91-190 (1970) (codified as amended at 42 U.S.C. § 4321 *et seq.*) (NEPA) and the Council on Environmental Quality (CEQ) Regulations for Implementing the Procedural Provisions of NEPA, which require recipients to use all practicable means within their authority, and consistent with other essential considerations of national policy, to create and maintain conditions under which people and nature can exist in productive harmony and fulfill the social, economic, and other needs of present and future generations of Americans.

XXVII. <u>National Security Presidential Memorandum-33 (NSPM-33) and provisions of the CHIPS and Science Act of 2022, Pub. L. 117-167, Section 10254</u>

    (1) Recipient research institutions ("covered institutions") must comply with the requirements in NSPM-33 and provisions of Pub. L.117-167, Section 10254 (codified at 42 U.S.C. § 18951) certifying that the institution has established and operates a research security program that includes elements relating to:

        (a) cybersecurity;

        (b) foreign travel security;

        (c) research security training; and

        (d) export control training, as appropriate.

    (2) Definition. "Covered institutions" means recipient research institutions receiving federal Research and Development (R&D) science and engineering support "in excess of $50 million per year."

XXVIII. <u>Non-Supplanting Requirement</u>

    Recipients of federal awards under programs that prohibit supplanting by law must ensure that federal funds supplement but do not supplant non-federal funds that, in the absence of such federal funds, would otherwise have been made available for the same purpose.

XXIX. <u>Notice of Funding Opportunity Requirements</u>

    All the instructions, guidance, limitations, scope of work, and other conditions set forth in the Notice of Funding Opportunity (NOFO) for this federal award are incorporated

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

by reference. All recipients must comply with any such requirements set forth in the NOFO. If a condition of the NOFO is inconsistent with these terms and conditions and any such terms of the federal award, the condition in the NOFO shall be invalid to the extent of the inconsistency. The remainder of that condition and all other conditions set forth in the NOFO shall remain in effect.

XXX. <u>Patents and Intellectual Property Rights</u>

Recipients are subject to the *Bayh-Dole Act*, 35 U.S.C. § 200 *et seq*. and applicable regulations governing inventions and patents, including the regulations issued by the Department of Commerce at 37 C.F.R. Part 401 (Rights to Inventions Made by Nonprofit Organizations and Small Business Firms under Government Awards, Contracts, and Cooperative Agreements) and the standard patent rights clause set forth at 37 C.F.R. § 401.14.

XXXI. <u>Presidential Executive Orders</u>

Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference.

XXXII. <u>Procurement of Recovered Materials</u>

States, political subdivisions of states, and their contractors must comply with Section 6002 of the *Solid Waste Disposal Act*, Pub. L. No. 89-272 (1965) (codified as amended by the *Resource Conservation and Recovery Act* at 42 U.S.C. § 6962) and 2 C.F.R. § 200.323. The requirements of Section 6002 include procuring only items designated in guidelines of the Environmental Protection Agency (EPA) at 40 C.F.R. Part 247 that contain the highest percentage of recovered materials practicable, consistent with maintaining a satisfactory level of competition.

XXXIII. <u>*Rehabilitation Act of 1973*</u>

Recipients must comply with the requirements of Section 504 of the *Rehabilitation Act of 1973*, Pub. L. No. 93-112 (codified as amended at 29 U.S.C. § 794), which provides that no otherwise qualified handicapped individuals in the United States will, solely by reason of the handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

XXXIV. <u>Reporting Recipient Integrity and Performance Matters</u>

If the total value of any currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of the federal award, then the recipient must comply with the requirements set forth in the government-wide federal award term and condition for Recipient Integrity and Performance Matters is in 2 C.F.R. Part 200, Appendix XII, the full text of which is incorporated by reference.

XXXV. <u>Reporting Subawards and Executive Compensation</u>

For federal awards that total or exceed $30,000, recipients are required to comply with the requirements set forth in the government-wide federal award term and condition on Reporting Subawards and Executive Compensation set forth at 2 C.F.R. Part 170, Appendix A, the full text of which is incorporated by reference.

XXXVI. <u>Required Use of American Iron, Steel, Manufactured Products, and Construction Materials</u>

(1) Recipients of a federal award from a financial assistance program that provides funding for infrastructure are hereby notified that none of the funds provided under this federal award may be used for a project for infrastructure unless:

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

    (a) all iron and steel used in the project are produced in the United States—this means all manufacturing processes, from the initial melting stage through the application of coatings, occurred in the United States;

    (b) all manufactured products used in the project are produced in the United States—this means the manufactured product was manufactured in the United States; and the cost of the components of the manufactured product that are mined, produced, or manufactured in the United States is greater than 55 percent of the total cost of all components of the manufactured product, unless another standard for determining the minimum amount of domestic content of the manufactured product has been established under applicable law or regulation; and

    (c) all construction materials are manufactured in the United States—this means that all manufacturing processes for the construction material occurred in the United States.

(2) The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

(3) *Waivers*

When necessary, recipients may apply for, and the agency may grant, a waiver from these requirements. The agency should notify the recipient for information on the process for requesting a waiver from these requirements.

    (a) When the Federal agency has determined that one of the following exceptions applies, the federal awarding official may waive the application of the domestic content procurement preference in any case in which the agency determines that:

        (i) applying the domestic content procurement preference would be inconsistent with the public interest;

        (ii) the types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality; or

        (iii) the inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25 percent.

    (b) A request to waive the application of the domestic content procurement preference must be in writing. The agency will provide instructions on the format, contents, and supporting materials required for any waiver request. Waiver requests are subject to public comment periods of no less than 15 days and must be reviewed by the Made in America Office.

    (c) There may be instances where a federal award qualifies, in whole or in part, for an existing waiver described at "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure | FEMA.gov.

**FY 2025 DHS STANDARD TERMS AND CONDITIONS**

  (4) *Definitions*. The definitions applicable to this term are set forth at 2 C.F.R. § 184.3, the full text of which is incorporated by reference.

XXXVII. SAFECOM

Recipients receiving federal awards made under programs that provide emergency communication equipment and its related activities must comply with the SAFECOM Guidance for Emergency Communication Grants, including provisions on technical standards that ensure and enhance interoperable communications. The SAFECOM Guidance is updated annually and can be found at Funding and Sustainment | CISA.

XXXVIII. Subrecipient Monitoring and Management

Pass-through entities must comply with the requirements for subrecipient monitoring and management as set forth in 2 C.F.R. §§ 200.331-333.

XXXIX. System for Award Management and Unique Entity Identifier Requirements

Recipients are required to comply with the requirements set forth in the governmentwide federal award term and condition regarding the System for Award Management and Unique Entity Identifier Requirements in 2 C.F.R. Part 25, Appendix A, the full text of which is incorporated reference.

XL. Termination of a Federal Award

 (1) By DHS. DHS may terminate a federal award, in whole or in part, for the following reasons:

  (a) If the recipient fails to comply with the terms and conditions of the federal award;

  (b) With the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated; or

  (c) Pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if the federal award no longer effectuates the program goals or agency priorities.

 (3) By the Recipient. The recipient may terminate the federal award, in whole or in part, by sending written notification to DHS stating the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if DHS determines that the remaining portion of the federal award will not accomplish the purposes for which the federal award was made, DHS may terminate the federal award in its entirety.

 (4) Notice. Either party will provide written notice of intent to terminate for any reason to the other party no less than 30 calendar days prior to the effective date of the termination.

 (5) Compliance with Closeout Requirements for Terminated Awards. The recipient must continue to comply with closeout requirements in 2 C.F.R. §§ 200.344200.345 after an award is terminated.

DHS Standard Terms & Conditions: FY 2025 *Version 3*       April 18, 2025

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XLI. <u>Terrorist Financing</u>

Recipients must comply with Executive Order 13224 and applicable statutory prohibitions on transactions with, and the provisions of resources and support to, individuals and organizations associated with terrorism. Recipients are legally responsible for ensuring compliance with the Executive Order and laws.

XLII. <u>Trafficking Victims Protection Act of 2000(TVPA)</u>

Recipients must comply with the requirements of the government-wide federal award term and condition which implements Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 106 (codified as amended at 22 U.S.C. § 7104). The federal award term and condition is in 2 C.F.R. § 175.105, the full text of which is incorporated by reference.

XLIII. <u>*Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001*</u>, Pub. L. 107-56

Recipients must comply with the requirements of Pub. L. 107-56, Section 817 of the USA PATRIOT Act, which amends 18 U.S.C. §§ 175–175c.

XLIV. <u>Use of DHS Seal, Logo and Flags</u>

Recipients must obtain written permission from DHS prior to using the DHS seals, logos, crests, or reproductions of flags, or likenesses of DHS agency officials. This includes use of DHS component (e.g., FEMA, CISA, etc.) seals, logos, crests, or reproductions of flags, or likenesses of component officials.

XLV. <u>*Whistleblower Protection Act*</u>

Recipients must comply with the statutory requirements for whistleblower protections in 10 U.S.C § 470141 U.S.C. § 4712.