UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Case No. 25-cv-01350-WHO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**[1]<br><br>Re: Dkt. No. 61 |

In 2017, President Donald Trump issued Executive Order 13,768 ("EO 13,768"), titled "Enhancing Public Safety in the Interior of the United States," which was directed at so-called "sanctuary jurisdictions." The City and County of San Francisco and County of Santa Clara sued, arguing that Section 9 of EO 13,768 was unconstitutional. I found that they had pre-enforcement standing, that they were likely to succeed on the merits because Section 9(a) of EO 13,768 was unconstitutional, and that they faced irreparable harm absent an injunction. I enjoined Section 9(a) of EO 13,768. The Ninth Circuit affirmed. *Cnty. of Santa Clara v. Trump, et al.*, 250 F. Supp. 3d 497 (N.D. Cal. Apr. 25, 2017) (Preliminary Injunction Order), *aff'd*, 897 F.3d 1225 (9th Cir. 2018).

Here we are again. Shortly after taking office in 2025, President Trump issued Executive Orders 14,159 ("Protecting the American People Against Invasion") ("EO 14,159") and 14,218 ("Ending Taxpayer Subsidization of Open Borders") ("EO 14,218") (together, the "2025 Executive Orders"), the language and purpose of which mirror EO 13,768. Like EO 13,768, EO

---

[1] This is a summary order because of the exigencies it addresses. I will enter an order that discusses the issues and my reasoning in more detail at a later date.

14,159 directs the United States Attorney General and the United States Department of Homeland Security ("DHS") Secretary to withhold federal funds from "sanctuary jurisdictions," cities and counties that limit the use of local resources to enforce federal immigration law. EO 14,218 directs every federal agency to ensure that "federal payments" to localities do not "by design or effect" "abet so-called 'sanctuary' policies that seek to shield illegal aliens from deportation."

Neither Executive Order provides a definition for "sanctuary jurisdiction." But a memo from Attorney General Pamela Bondi on February 5, 2025, (the "Bondi Directive"), along with various memoranda and public comments about the orders and their force, provide a clear picture of what jurisdictions qualify, and of the 2025 Executive Orders' intended purpose: to end or severely curtail federal funding for cities, counties and states that the Trump administration deems to be sanctuary jurisdictions.

The plaintiffs in this case—San Francisco, Santa Clara, and fourteen other cities and counties from around the country that maintain policies placing them within the definition of "sanctuary jurisdictions" (hereafter the "Cities and Counties")[2]— have moved for a preliminary injunction to block the 2025 Executive Orders and Bondi Directive to the extent that they mandate the withholding of the Cities and Counties' federal funding because they are sanctuary jurisdictions. The Cities and Counties seek to preliminarily enjoin the defendants[3] and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them, from taking any action to withhold, freeze, or condition federal

---

[2] Plaintiffs are City and County of San Francisco ("San Francisco"), County of Santa Clara ("Santa Clara"), City of Portland ("Portland"), Martin Luther King, Jr. County ("King County"), City of New Haven ("New Haven"), City of Oakland ("Oakland"), City of Emeryville ("Emeryville"), City of San Jose ("San Jose"), City of San Diego ("San Diego"), City of Sacramento ("Sacramento"), City of Santa Cruz ("Santa Cruz"), County of Monterey ("Monterey"), City of Seattle ("Seattle"), City of Minneapolis ("Minneapolis"), City of St. Paul ("St. Paul"), and City of Santa Fe ("Santa Fe").

[3] Defendants are Donald J. Trump, President of the United States; the United States; the United States Department of Justice; Pamela Bondi in her official capacity as Attorney General of the United States; Emil Bove in his capacity as Acting Deputy Attorney General of the United States; the United States Department of Homeland Security; and Kristi Noem in her official capacity as Secretary of the Department of Homeland Security.

1 funds based on (1) Section 17 of Executive Order 14,159; [4] (2) Section 2(a)(ii) of Executive Order
2 14,218; and (3) the Bondi Directive to jurisdictions on the basis that they have policies limiting (i)
3 the honoring of civil immigration detainer requests; (ii) cooperation with administrative warrants
4 for purposes of immigration enforcement; (iii) sharing of information with federal immigration
5 authorities other than immigration or citizenship status; (iv) the use of local law enforcement to
6 arrest or detain individuals solely for civil immigration violations; or (v) the use of local resources
7 to assist with civil immigration enforcement activities.

8 Issuance of a preliminary injunction is warranted if the movant establishes (1) a likelihood
9 of success on the merits; (2) a likelihood of irreparable harm in the absence of relief; (3) that the
10 balance of equities tips in the movant's favor; and (4) that granting relief is in the public interest.
11 *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  Courts in the Ninth Circuit evaluate
12 these factors on a "sliding scale" such that "serious questions going to the merits and a balance of
13 hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,
14 so long as the plaintiff also shows that there is a likelihood of irreparable injury and the injunction
15 is in the public interest." *Arc. of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (cleaned up).
16 As government entities are parties to this case, the final two factors merge.  *Roman v. Wolf*, 977
17 F.3d 935, 940–41 (9th Cir. 2020).

18 The Government challenges the Cities and Counties' motion on justiciability.  It argues
19 that the Cities and Counties lack standing and that their claims are not ripe because the 2025
20 Executive Orders and the Bondi Directive merely provide guidance for executive agencies
21 reviewing federal funding to sanctuary jurisdictions, and because the Cities and Counties have not
22 yet suffered a loss of funds.  This is essentially the same argument it made in 2017.  Indeed, this
23 case is on all fours with *Cnty. of Santa Clara v. Trump, et al.*, 250 F. Supp. 3d 497 (N.D. Cal. Apr.
24 25, 2017) (Preliminary Injunction Order), *aff'd*, 897 F.3d 1225 (9th Cir. 2018), where I and the
25 Ninth Circuit rejected the same justiciability arguments, finding that the plaintiffs had a well-

---

[4] The plaintiffs seek to enjoin the first sentence in Section 17 regarding the withholding of funding from sanctuary jurisdictions but not the second sentence of Section 17, which addresses civil and criminal enforcement.

3

founded fear of enforcement of Section 9(a) of EO 13,768. The Government asserts that the use in Section 17 of EO 14,159 of the phrase "evaluate and undertake any lawful actions" in directing the Attorney General and DHS Secretary to "ensure that so-called 'sanctuary' jurisdictions . . . do not receive access to Federal funds" makes it different than EO 13,768, which directed the same executive agencies to, "to the extent consistent with law . . . ensure that [sanctuary jurisdictions] … are not eligible for Federal grants." But this is a distinction without a difference. Section 17 of EO 14,159, like Section 9(a) of EO 13,768, "unambiguously command[s] action," *see City & Cnty. of S.F.*, 897 F.3d at 1239, and neither Executive Order's savings clause insulates it from judicial review, *see id.*

The Cities and Counties have pre-enforcement standing just as San Francisco and Santa Clara did in 2017. They each have policies that place them within the scope of the funding freeze that the 2025 Executive Orders and Bondi Directive (and other executive agency directives like it) seek to implement. Their well-founded fear of enforcement is even stronger than it was in 2017: it stems from the plain language of EO 14,159 and EO 14,218, the Bondi Directive, numerous directives from executive agencies ordering the withholding of funds to localities like the plaintiffs, and legal action that the Government has already initiated against sanctuary jurisdictions in Illinois and New York, in addition to recent statements from high ranking government officials and the litigation over these issues in the first Trump administration.

Precedent in the Ninth Circuit and the orders of this court show why the Cities and Counties have established that they are likely to prevail on the merits of at least their separation of powers, Spending Clause, and Fifth and Tenth Amendment claims. The challenged sections in the 2025 Executive Orders and the Bondi Directive that order executive agencies to withhold, freeze, or condition federal funding apportioned to localities by Congress, violate the Constitution's separation of powers principles and the Spending Clause, as explained by the Ninth Circuit in the earlier iteration of this case in 2018; they also violate the Fifth Amendment to the extent they are unconstitutionally vague and violate due process. *See City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1234– 35 (9th Cir. 2018); *Cnty. of Santa Clara v. Trump, et al.*, 250 F. Supp. 3d 497, 530– 32, 534–36 (N.D. Cal. Apr. 25, 2017). The 2025 Executive Orders' directives to withhold or

freeze federal funding to sanctuary jurisdictions also violate the Tenth Amendment because they impose coercive condition intended to commandeer local officials into enforcing federal immigration practices and law. *See Cnty. of Santa Clara*, 250 F. Supp. 3d at 533. And as the order that will follow this one makes plain, the Cities and Counties have also shown a likelihood of success on the merits of their Administrative Procedure Act ("APA") claim: the Bondi Directive's order to freeze all DOJ funds is likely arbitrary and capricious, contrary to the Constitution and an ultra vires final agency action under the APA. 5 U.S.C. § 706(2).

The Cities and Counties have also demonstrated a likelihood of irreparable harm. The threat to withhold funding causes them irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve. *See City & Cnty. of S.F.*, 897 F.3d at 1244 (budgetary harms); *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (constitutional harms); *City of Los Angeles v. Sessions*, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018) (community harms), *aff'd sub nom. City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019). Lastly, the balance of the equities favors the Cities and Counties, and the requested relief is in the public interest. *City & Cnty. of S.F.*, 897 F.3d at 1244. Having established all of the *Winter* factors, the Cities and Counties are entitled to a preliminary injunction.

## PRELIMINARY INJUNCTION

Now, therefore, it is ORDERED that:

1. Defendants[5] and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them ARE HEREBY RESTRAINED AND ENJOINED from directly or indirectly taking any action to withhold, freeze, or condition federal

---

[5] Defendant President Donald J. Trump is not enjoined by this Order with respect to the "performance of his official duties." *See Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (citation and quotation marks omitted). However, the injunction does run against any federal agency or official, including the other named defendants and any other agency or individual acting in concert with or as an agent of the President or other defendants to implement the enjoined provisions of Executive Orders 14,159 and 14,128 and the Bondi Directive. *See Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir. 2017) ("Injunctive relief, however, may run against executive officials"), *rev'd on other grounds, Trump v. Hawaii*, 583 U.S. 941 (2017); *see also* Fed. R. Civ. Proc. 65(d)(2) (preliminary injunction may reach "other persons who are in active concert or participation with" the enjoined parties).

5

1  funds from the Cities and Counties based on (1) the first sentence of Section 17 of Executive
2  Order 14,159, (2) Section 2(a)(ii) of Executive Order 14,218, or (3) the Preamble and Section I of
3  the February 5, 2025 Memorandum from the Attorney General entitled "Sanctuary Jurisdictions
4  Directives" on the basis that the Cities and Counties have policies that limit (i) the honoring of
5  civil immigration detainer requests; (ii) cooperation with administrative warrants for purposes of
6  immigration enforcement; (iii) sharing of information with federal immigration authorities other
7  than immigration or citizenship status; (iv) the use of local law enforcement to arrest or detain
8  individuals solely for civil immigration violations; or (v) the use of local resources to assist with
9  civil immigration enforcement activities.

10  2.  Defendants are instructed to provide written notice of this Order to all federal departments
11  and agencies by April 28, 2025.  The written notice shall instruct those agencies that they may not
12  take steps to withhold from, freeze, or condition funds to the Cities and Counties based on the first
13  sentence of Section 17 of Executive Order 14,159, Section 2(a)(ii) of Executive Order 14,218, or
14  the Preamble and Section I of the February 5, 2025, Memorandum from the Attorney General
15  entitled "Sanctuary Jurisdictions Directives."

16  3.  This Order shall apply to the maximum extent provided for by Federal Rule of Civil
17  Procedure 65(d)(2) and 5 U.S.C. §§ 705 and 706.

**IT IS SO ORDERED.**

Dated: April 24, 2025



William H. Orrick
United States District Judge

6