YAAKOV ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

ELIANIS PEREZ
Assistant Director

LAUREN FASCETT
Senior Litigation Counsel

LINDSAY ZIMLIKI
VICTORIA TURCIOS
CAROLINE MCGUIRE
ANGEL FLEMING
FL Bar No. 0091103
Trial Attorneys

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | CASE NO. 3:25-CV-1350 (WHO) <br><br> DEFENDANTS' OPPOSITION TO MOTION FOR PERMISSIVE INTERVENTION <br><br><br> Hearing Date: June 11, 2025 <br> Time: 2:00 P.M. PST <br> Honorable William H. Orrick III |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT .........................................................................................................................3

    I. INTERVENORS LACK ARTICLE III STANDING. .............................................4

        A. INTERVENORS DO NOT ADEQUATELY PLEAD ASSOCIATIONAL STANDING. ...................................................................................................5

        B. INTERVENORS FAIL TO ESTABLISH ORGANIZATIONAL STANDING. ...................................................................................................6

    II. INTERVENTION WOULD BE FUTILE WHERE THE PLAINTIFFS AND INTERVENORS WOULD BE MISJOINED……………………………………………10

    III. INTERVENORS CANNOT MEET THE THRESHOLD REQUIREMENTS FOR PERMISSIVE INTERVENTION……………………………………………………..12

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Am. Physicians & Surgs v. FDA*,
    13 F.4th 531 (6th Cir. 2021) ................................................................................................ 4

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) ............................................................................................ 3, 12

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*,
    331 U.S. 519 (1947) ............................................................................................................ 3

*Central Delta Water Agency v. U.S.*,
    306 F.3d 938 (9th Cir. 2002) ............................................................................................... 4

*City & Cnty. of S.F. v. United States Citizenship & Immigration Servs.*,
    408 F. Supp. 3d 1057 (N.D. Cal. 2019) ............................................................................... 7

*City & Cnty. of S.F. v. Garland*,
    42 F.4th 1078 (9th Cir. 2022) ......................................................................................... 11, 12

*City of Chicago v. Sessions*,
    888 F.3d 272 (7th Cir. 2018) .............................................................................................. 12

*City of L.A. v. Barr*,
    941 F.3d 931 (9th Cir. 2019) ........................................................................................... 4, 12

*City of Philadelphia v. AG of the United States*,
    916 F.3d 276 (3d Cir. 2019) ............................................................................................... 12

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013) ............................................................................................................ 6

*Coalition for Humane Immigrant Right, et al. v. DHS*,
    No. 25-cv-00943, 2025 WL 1078776 (D.D.C. April 10, 2025) .......................... 6, 7, 8, 10

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) .................................................................................... 10, 11
*Cupp v. Harris*,
   No. 16-523, 2018 WL 4599588 (E.D. Cal. Sept. 21, 2018) ........................................ 11, 12
*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ............................................................................................ 3
*East Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) ......................................................................................... 5, 7
*East Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018) ............................................................................................ 8
*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) ............................................................................................... 6, 9, 10
*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
   98 F.4th 1180 (9th Cir. 2024) ........................................................................................... 3
*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) ........................................................................................ 10
*Friends of the Earth v. Sanderson Farms, Inc.*,
   992 F.3d 939 (9th Cir. 2021) ......................................................................................... 7, 8
*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ....................................................................................................... 6, 9
*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) .................................................................................................. 5, 6, 9
*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) .......................................................................................................... 4
*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*,
   624 F.3d 1083 (9th Cir.2010) ........................................................................................... 7
*Laird v. Tatum*,
   408 U.S. 1 (1972) ............................................................................................................. 6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 4, 6, 7

*McDonald v. Means*,
  309 F.3d 530 (9th Cir. 2002) ............................................................................................ 3

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) .......................................................................................... 8

*Northwest Forest Resource Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) .............................................................................................. 3

*Freedom from Religion Foundation, Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ....................................................................................... 3, 12

*Schmier v. United States Court of Appeals*,
  279 F.3d 817 (9th Cir. 2002) ............................................................................................ 9

*Sessions v. Morales-Santana*,
  582 U.S. 47 (2017) ............................................................................................................ 4

*State v. Dep't of Just.*,
  951 F.3d 84, 90 (2d Cir. 2020) ............................................................................ 10, 11, 12

*Stith v. California*,
  No. 23-947, 2023 WL 4274043 (E.D. Cal. June 29, 2023) ............................................ 10

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ..................................................................................................... 5, 6

*Titan Atlas Mfg. v. Sisk*,
  2014 WL 837247 (W.D. Va. Mar. 4, 2014) ................................................................. 2, 9

*United States v. Richardson*,
  418 U.S. 166 (1974) .......................................................................................................... 1

*Wang v. Zymergen Inc.*,
  716 F.Supp.3d 831 (N.D.Cal. 2024) ................................................................................. 2

*Washington v. U.S. Food & Drug Admin.*,
  108 F.4th 1163 (9th Cir. 2024) ..................................................................................... 1, 3

*Western States Trucking Association v. Schoorl*,
   377 F.Supp.3d 1056 (E.D. Cal. 2019) .................................................................................. 5

**Statutes**

34 U.S.C. § 10153(a)(5)(D) .................................................................................................... 11

**Rules**

Fed. R. Civ. P. 20(a) ........................................................................................................ 10, 11
Fed. R. Civ. P. 21 ....................................................................................................... 10, 11, 12
Fed. R. Civ. P. 24 ......................................................................................................... 1, 2, 3, 12

# INTRODUCTION

The Court should deny the Motion for Permissive Intervention (ECF No. 97, "Mot.") filed by Central American Resource Center – CARECEN – of California ("CARECEN"), Coalition for Humane Immigrant Rights ("CHIRLA") and Immigrant Defenders Law Center ("ImmDef") (collectively, "the Intervenors") because the Intervenors cannot show they are entitled to such intervention under Federal Rule of Civil Procedure ("Rule") 24(b)(1)(B). Specifically, Intervenors lack standing because they cannot stand in the shoes of the City of Los Angeles and neither they nor their members experienced a cognizable injury. Intervenors, non-profits that are wholly independent from Los Angeles, cannot make an as applied challenge to protect local laws on the City's behalf because they do not have a personal stake in defending Los Angeles' laws. *See United States v. Richardson*, 418 U.S. 166, 179-180 (1974) ("The acceptance of new categories of judicially cognizable injury has not eliminated the basic principle that to invoke judicial power the claimant must have a 'personal stake in the outcome,' or a 'particular, concrete injury,' or 'a direct injury,' in short, something more than 'generalized grievances[.]'") (internal citations omitted). Allowing Intervenors to join this lawsuit would drastically expand the standing doctrine beyond what the judiciary has deemed permissible. *See e.g. Wash. v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1177 (9th Cir. 2024) ("Holding otherwise would greatly expand state standing to challenge any federal action that allegedly increases crime or disorder, or imposes indirect compliance costs for state law enforcement.").

Likewise, intervention is not appropriate here because Plaintiffs are—and Intervenors would be—misjoined. To evaluate each litigant's claims, the Court will need to examine the legal authority across various circuits underlying any executive action, the amount of funding impacted, and other facts to ascertain whether the claims are viable. Should the Court find Intervenors have standing and otherwise satisfy the threshold requirements of permissive intervention, adding these entities to this litigation would only add to the tumor of analysis necessary to evaluate the merits of this case.

# BACKGROUND

On February 7, 2025, three cities and three counties filed a Complaint in this action. ECF No. 1 ("Compl."). On February 27, 2025, Plaintiffs amended their Complaint, adding ten additional cities and one county, seeking declaratory and injunctive relief. ECF No. 22 ("Am. Compl."). In total, sixteen localities bring suit against the United States. Am. Compl. ¶¶ 15–30. Thereafter, on March 17, 2025,

1

Plaintiffs filed a Motion for a Preliminary Injunction, ECF No. 61, accompanied by thirty-nine declarations, ECF Nos. 61-2–82. Defendants filed an opposition to the Motion for Preliminary Injunction, ECF No. 93, to which Plaintiffs replied, ECF No. 94. The Court held a preliminary injunction hearing on April 23, 2025. ECF No. 61. The Court granted the preliminary injunction on April 24, 2025. ECF No. 111.

On April 11, 2025, the Intervenors, CARECEN, CHIRLA, and ImmDef, filed a Motion to Intervene, accompanied by a Complaint in Intervention. ECF No. 97-1 ("Compl. Int."). These entities request permission to intervene because the City of Los Angeles, California, "is conspicuously absent" from the lawsuit and "no other party to this action is here specifically to protect [the City's] interests." *See* Mot. 8. In so moving, Intervenors' proposed Complaint alleges the same Counts One through Five as Plaintiffs' Amended Complaint. *See* Compl. Int. ¶¶ 63–103; Am. Compl. ¶¶ 386-426.[1] Specifically, Intervenors allege the following violations: Tenth Amendment (Count One), Separation of Powers (Count Two), Spending Clause (Count Three), Fifth Amendment – Void for Vagueness (Count Four), and Fifth Amendment – Procedural Due Process (Count Five). Likewise, Intervenors request the same relief as Plaintiffs, though Intervenors' requested relief is predicated on the City of Los Angeles' interests alone. For example, declaring portions of Executive Orders "unconstitutional and invalid as applied to the [sanctuary] Ordinance and City's related policies and practices[,]" Compl. Int., Prayer for Relief ¶¶ 2, 4, and enjoining Defendants from "taking enforcement actions against the City[,]" *id*. ¶¶ 6, 8.

## LEGAL STANDARD

"Rule 24 authorizes two types of intervention: intervention as a matter of right and intervention with permission of the Court." *Wang v. Zymergen Inc.*, 716 F.Supp.3d 831, 834 (N.D.Cal. 2024). "The difference between permissive intervention and intervention of right is the applicant's stake in the litigation at issue."[2] *Titan Atlas Mfg. v. Sisk*, 2014 WL 837247 at *6 (W.D. Va. Mar. 4, 2014).

---

[1] Intervenors do not advance allegations based on Counts Six through Eight of the Amended Complaint.

[2] Intervention as a matter of right under "Rule 24(a)(2) requires: (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the transaction; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit."

2

Permissive "intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case." *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.,* 331 U.S. 519, 524 (1947*)*. District courts have broad discretion whether to grant or deny permissive intervention under Rule 24(b). *See McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002).

Permissive intervention under Rule 24(b)(1)(B) "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 473 (9th Cir. 1992)). Also, a court has discretion to deny a motion for permissive intervention "[e]ven if an applicant satisfies those threshold requirements." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). If a proposed permissive intervenor seeks relief different from that of the original plaintiff, they must establish Article III standing. *Wash. v. U.S. Food & Drug Admin.*, 108 F.4th at 1171. Relief that demarcates a different geographical scope of relief than a plaintiff's original request constitutes different relief. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1196 (9th Cir. 2024) (discussing injunctive relief as "geographically overbroad.").

## ARGUMENT

All three Intervenors are "non-profits in Los Angeles that provide advocacy, legal services, and support to immigrant communities [and] are long-time champions of the City's sanctuary policies." Mot. 3. Intervenors argue that intervention should be permitted because the City of Los Angeles' sanctuary policies and potential federal funding "hang in the balance" but no other party to this lawsuit is present to protect the interests of the City. *Id*. However, Intervenors' pleadings do not establish Article III injury on behalf of themselves or their members, as they must, given that their requested relief expands the geographic scope of the relief Plaintiffs already seek. Moreover, intervention would be futile because Intervenors—like the current Plaintiffs—would be misjoined. Accordingly, this motion to intervene must be denied.

---

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).

3

## I. Intervenors Lack Article III Standing.

Intervenors' requested relief differs from that of Plaintiffs' because it expands the geographic scope of relief to include the City of Los Angeles. Thus, Intervenors must establish Article III standing, but have failed to do so here.

"Article III, § 2 of the Constitution states that the federal courts may only adjudicate 'cases' and 'controversies,' and thus imposes what the Supreme Court has called 'the irreducible constitutional minimum of standing.'" *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 946 (9th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing requires a litigant show three elements: (1) an actual, concrete injury; (2) a causal connection between that injury and the defendant's conduct; and (3) an injury "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal citations omitted). In a challenge to a government action, the nature and extent of the facts needed "to establish standing depends considerably upon whether the plaintiff is himself an object of the action…at issue." *Id* at 561. If the challenged government action is not directed at the plaintiff, "standing is not precluded, but it is ordinarily 'substantially more difficult to establish.'" *Id.* at 562 (internal citations omitted).

When a litigant is an organization, it may establish standing in two ways: through organizational standing, and/or associational standing.[3] A litigant demonstrates associational standing by lodging a claim

---

[3] While organizations may also rely on third-party standing in limited circumstances, Intervenors do not and could not rely on that doctrine here. "Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties." *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (internal quotations omitted) (citation omitted). Third-party standing is only appropriate in limited circumstances where the plaintiff has "a close relationship with the person who possesses the right" who is somehow hindered from representing his or her own interests. *Id*. (alteration in original); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Here, Intervenors do not articulate any hindrance to the ability of Los Angeles to bring its own claims challenging the Executive Orders at issue. Compl. Int. ¶¶ 63–103. Indeed, Los Angeles can sue, and has previously sued, to enforce its own interests with respect to the claims Intervenors propose bringing here. *See, e.g.*, *City of Los Angeles v. Barr*, 941 F.3d 931, 934 (9th Cir. 2019). In addition, third-party standing (unlike associational standing) "requires the plaintiff to suffer its own injury," *Ass'n of Am. Physicians & Surgs v. FDA*, 13 F.4th 531, 539 (6th Cir. 2021), which is lacking here. Intervenors also do not share the type of "close relationship" with the City of Los Angeles that is contemplated.

on behalf of its members. Organizations can also assert standing "in their own right" by alleging their own injury. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021).

### A. Intervenors Do Not Adequately Plead Associational Standing.

The Complaint in Intervention does not establish associational standing. As pled, Intervenors' members lack standing to sue in their own right, and because Intervenors refer only generally to "clients" and "members," neither Defendants nor the Court can verify whether standing is otherwise appropriate. Compl. Int. ¶¶ 56, 59-61.

For an organization to sue on behalf of its members via associational standing, it must demonstrate: "(1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). An organization must name its affected members so the court can determine whether a plaintiff has met its burden of proof for standing. *Summers v. Earth Island Institute*, 555 U.S. 488, 497-99 (2009). Where an organization fails to establish "*at least one identified member* had suffered or would suffer harm," it lacks associational standing. *Id*. at 498 (emphasis added). Without that information, "how is the court to assure itself" that an association has any members or confirm that any one of those members meet the prerequisites for standing? *Id*. at 499.

Intervenors' pleadings undercut any claim to associational standing. Initially, Intervenors have not identified a single member who has suffered the requisite harm, much less supplied the required "specific allegations" establishing harm to "at least one identified member." *Summers*, 555 U.S. at 498. Instead, Intervenors allege generally that their members and clients "have been harmed" and have "expressed a fear" of going out into the community due to Defendants' policies without submitting any declarations by their members or the organizations to support these claims. Compl. Int. ¶¶ 55-56, 60. But "[m]ere speculation does not suffice." *Western States Trucking Association v. Schoorl*, 377 F.Supp.3d 1056, 1067 (E.D. Cal. 2019). This anonymous allegation of "harm" hinders the Court's "independent obligation to assure that standing exists." *Summers*, 555 U.S. at 499. Where Intervenors only plead speculative

5

1  allegations, the Court cannot evaluate whether Intervenors meet the requirements for standing. *Id*. Thus,
2  the Court should reject standing on this basis alone.

3  Intervenors have also not plausibly alleged that their members are subject to actual or imminent
4  injury. *See Lujan*, 504 U.S. at 560-61. Rather, they allege their members have "expressed a fear" and are
5  "chilled in their ability to engage in their local community." Compl. Int. ¶¶ 59-61. While Intervenors
6  premise standing on a projected future injury, Article III demands not merely a possibility of injury, but a
7  showing that the threatened future injury is "certainly impending." *Clapper v. Amnesty International USA*,
8  568 U.S. 398, 409 (2013) (quoting *Lujan*, 504 U.S. at 565, n.2) (emphasis in original). "Allegations of a
9  subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat
10 of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Such "some day" speculations of
11 future harm "do not support a finding of the 'actual or imminent' injury our cases require." *Lujan*, 504
12 U.S. at 564.

13 Indeed, Intervenors' predicted injury is contingent on the unpredictable behavior of Los Angeles'
14 funding decisions, as they may or may not relate to that of the federal government. Compl. Int. ¶ 54-56.
15 But Intervenors cannot "rely on speculation about the unfettered choices made by independent actors not
16 before the courts." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383 (2024) ("*Alliance*")
17 (quoting *Clapper*, 568 U.S. at 415). The Intervenors have not alleged that any of their members have
18 suffered any specific harm, and "[w]ithout facts, the Court has uncorroborated fear. But Article III requires
19 more than maybes". *Coalition for Humane Immigrant Right, et al. v. DHS*, No. 25-cv-00943, 2025 WL
20 1078776, at *5 (D.D.C. April 10, 2025). Therefore, as Intervenors have not articulated an injury on behalf
21 of their members, they fail to satisfy the first associational standing requirement that the "members would
22 otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. Without satisfying this
23 requirement, Intervenors cannot establish associational standing and their request to intervene must be
24 denied. Further, since Intervenors cannot establish standing, the Court does not need to get to the other
25 two prongs of associational standing.

26 **B.  Intervenors Fail To Establish Organizational Standing.**

27 To establish organizational standing, an organizational plaintiff must demonstrate the same
28 elements that an individual asserting standing would be required to show. *Havens Realty Corp. v.*

6

*Coleman*, 455 U.S. 363, 378 (1982). Intervenors must show that "(1) they have suffered an injury-in-fact… (2) the alleged injury is 'fairly traceable' to the defendants' conduct, and (3) it is 'more than speculative' that the injury is judicially redressable." *East Bay Sanctuary Covenant*, 993 F.3d at 663 (quoting *Lujan,* 504 U.S. at 560).

The narrow question for injury is whether the organization can "show that the challenged conduct frustrated their organizational missions and that they diverted resources to combat that conduct." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 941 (9th Cir. 2021); *City & Cnty. of S.F. v. United States Citizenship & Immigration Servs.*, 408 F. Supp. 3d 1057, 1119 (N.D. Cal. 2019) (collecting cases) *aff'd* 981 F.3d 742 (9th Cir. 2020). "Of course, organizations cannot 'manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all…'" *East Bay Sanctuary Covenant*, 993 F.3d at 663 (quoting *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.2010). If the organization is conducting "business as usual" and engaging in a "continuation of existing advocacy," injury for standing purposes is more attenuated. *Friends of the Earth*, 992 F.3d at 943.

Here, Intervenors lack standing because they have not alleged an injury in fact. Instead, their Complaint describes general fears of immigration enforcement in the community and an increase in telephone calls seeking information. Compl. Int. ¶¶ 56-61; Mot. 10-12. This alleged injury is speculative. Indeed, as evidenced by another recent lawsuit involving CHIRLA, Intervenors do not have a judicially redressable injury. In *Coalition for Humane Immigrant Rights*, CHIRLA sued the Department of Homeland Security seeking to stay implementation of an interim final rule that created a form needed to comply with alien registration requirements. 2025 WL 1078776 at *1. Like Intervenors' here, CHIRLA's claimed injuries were fears about an anticipated increase in inquiries for assistance and the impact that increase may have on its mission. *Id*. at *5. That court found "CHIRLA's injuries are highly speculative, sounding in prospective fears about what might happen when the rule takes effect." *Id*. "When a nonprofit merely expands its operations to address increased demands in the communities it serves, its activities have not been tampered with." *Id*. Further, "organizations have not suffered a concrete injury just because shifts in government policy demand shifts in internal operations." *Id*. at *6. The court concluded that CHIRLA failed to establish either organizational or associational standing. The same reasoning applies to

the proposed Intervenors here. All three non-profit organizations speculate about potential harm to their operations due to "increased demands in the communities [they] serve[.]" *Id*. at *5.

Intervenors claim to provide comprehensive immigration legal services, which include legal representation, community education and workshops, and promotion of community engagement on immigration policy. Compl. Int. ¶¶ 13-16; Mot. 6. Notwithstanding Intervenors' own description of their regular operations, they now claim they have had to "expend resources to respond to a growing influx of calls[,]" to present "additional" informational workshops, and to "attempt to assuage clients' fears" of entering government buildings. Compl. Int. at ¶ 61. This alleged diversion of resources, Intervenors argue, has caused extra work and prevented them from taking on new clients. *Id*. Responding to inquiries from the community, providing additional informational workshops and discussing clients' questions or fears falls squarely within Intervenors' normal duties. *Id*. ¶¶ 13-16. Although Intervenors may have to dedicate more resources to these matters, they are not "diverting" resources, they are "merely expand[ing their] operations to address increased demands in the communities [they] serve[.]" *Coalition for Humane Immigrant Rights*, 2025 WL 1078776 at * 5. Indeed, the Ninth Circuit has found that organizations divert resources when they change their behavior to combat an alleged injury. *Cf. East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 766 (9th Cir. 2018) (finding a diversion of resources when the organization would have to "partially convert their affirmative asylum practice into a removal defense program," but for enforcement of a regulation); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (finding a diversion of resources when an organization assisted voters with registration when the voters should have been offered registration elsewhere). Intervenors do not divert resources—or change their behavior—when they address increased client inquiries. They are simply continuing their "existing advocacy," not creating new services to address something outside that scope. *See Friends of the Earth*, 992 F.3d at 943 (collecting cases).

Additionally, Intervenors allege that they have had to expend resources to provide additional immigration services due to increased demand within the community, and that "extra work on a per-client basis" has constrained their "ability to take on new individual representations". Compl. Int. ¶ 61. Intervenors' vague and conclusory allegations do not articulate how providing additional information on

8

immigration-specific topics, or increased workloads per existing client, is outside the scope of their regular client representation.

Intervenors also claim to face a "threatened loss of millions in federal funds passed through the City" which has impacted their ability to plan and budget. *Id*. at ¶ 62. This chain of contingent future events is entirely speculative. This pure speculation of possible future injury only demonstrate that Intervenors lack standing. *Schmier v. United States Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2002) (collecting cases) (declining to find standing when the complainant failed to articulate how a prohibition on citing unpublished cases injured him in real time). The only specific example of the loss of federal funds Intervenors cite is an "expected" FEMA grant to the City, that was allegedly frozen. Compl. Int. ¶ 62; Mot. 6, 11, 17. But Intervenors were not directly injured by any loss of funds intended for the City of Los Angeles. This is perhaps best demonstrated by the fact that Intervenors could not bring an independent action, whether administrative or judicial, to recoup those funds on Los Angeles' behalf—the City of Los Angeles would need to take action to address frozen FEMA grant funds, such as filing an administrative appeal. *See Hunt,* 432 U.S. at 342-343; *Titan Atlas Mfg*., 2014 WL 837247 at *6.

The Supreme Court's analysis in *Alliance,* which held that an organization did not have standing to challenge the FDA's approval of an abortion drug, 602 U.S. at 393–94, further confirms that Intervenors lack standing. There, the Supreme Court explained that to allege a concrete injury, an unregulated organizational plaintiff must allege "far more than simply a setback to the organization's abstract social interests." *Id.* (citing *Havens*, 455 U.S. at 379). As *Alliance* made clear, it is not enough that "an organization diverts its resources in response to defendant's actions" even if it will "expend considerable time, energy, and resources" in response to a policy change. 602 U.S. at 394-95. Instead, an unregulated organization must allege sufficient facts to show that the challenged action "perceptibly impair[s]" or "interfere[s] with" its activities by imposing an affirmative "impediment" to performing those activities. *Id.* at 395. To allow a lesser showing would impermissibly allow organizations to manufacture standing to challenge any policy that touches upon their mission. *See Id.* at 394.

Intervenors' allegations do not remotely satisfy this standard. *Id.* ("Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest, or because of strong opposition to the government's conduct[.]") (citations omitted). Although Intervenors explain

9

their mission and activities, *see* Compl. Int. ¶¶ 3, 13–16, 31-16, they do not allege that the challenged Executive Orders perceptibly impair or interfere with their pre-existing activities. Indeed, they do not provide any explanation as to how the Executive Orders harm their *organizations*. *Id.* And even if Intervenors had alleged that the Executive Orders had the incidental effect of temporarily frustrating their organizational mission, they must show "'more than frustration of [their] purpose,' since mere hindrance to a nonprofit's missions" alone cannot constitute a cognizable Article III injury. *Coalition for Humane Immigrant Rights*, 2025 WL 1078776 at *4 (quoting *Food & Water Watch*, *Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015)). Accordingly, Intervenors have not pled any cognizable injury and fail to establish organizational standing. Thus, the Court must decline to find jurisdiction and deny this request for intervention.

## II. Intervention Would be Futile Where the Plaintiffs and Intervenors Would be Misjoined[4]

The Court should not permit Intervenors to join a case to which they are not suitable parties. Rule 21 allows a court to drop a misjoined party at any time. Fed. R. Civ. P. 21. Under Rule 20(a) joinder is appropriate where "(1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence *and* (2) some question of law or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (emphasis in original); Fed. R. Civ. P.

---

[4] Defendants intend to move separately to request that the Court sever all Plaintiffs under Rule 21 for the reasons articulated herein. Plaintiffs here are misjoined because they do not share common questions of law and fact. Their respective claims will require individualized factual developments about specific funding decisions in each locality and merits determinations guided by the unique law in each municipalities' home forum. *See Stith v. California*, No. 23-947, 2023 WL 4274043, at *3–4 (E.D. Cal. June 29, 2023) (holding severance of claims was warranted because "[t]he joinder of multiple Plaintiffs with varying factual allegations does not promote judicial economy and confuses and complicates the issues because there are questions of fact and causation unique to each of their alleged injuries"). To that end, given the geographic diversity of Plaintiffs and Intervenors, funding impacts will not be the same in every jurisdiction or to every party. For example, New Haven, Connecticut, is located in the Second Circuit, where binding circuit precedent may foreclose the relief those Plaintiffs seek, depending on what funding decisions are actually executed. *See State v. Dep't of Just.*, 951 F.3d at 90. Likewise, Minneapolis and Santa Fe are located in the Eighth and Tenth Circuits, respectively. The jurisdictions within which those localities lie are better suited to make decisions evaluating the specific municipalities' local laws. Permitting Intervenors to join this litigation would only amalgamate this already disjointed case by adding a seventeenth municipality with yet another home forum.

20(a). Courts "ha[ve] broad discretion in determining whether to sever claims under Rule 21." *Cupp v. Harris*, No. 16-523, 2018 WL 4599588, at *3 (E.D. Cal. Sept. 21, 2018) (citation omitted). "Claims may be severable under Rule 21 if they arise from different factual situations or pose different legal questions," or "if it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Cupp*, 2018 WL 4599588, at *3 (citations and quotation marks omitted). Courts must weigh "the interests of judicial efficiency" against the "potential prejudice" to the plaintiffs whose claims would be severed. *See Coleman*, 232 F.3d at 1297; *Cupp*, 2018 WL 4599588, at *3.

Intervenors' merits claims do not satisfy Rule 20(a) with respect to Plaintiffs' claims. Although Intervenors' claims mirror those of Plaintiffs as to Counts One through Five, their claims for relief do not "aris[e] out of the same transaction and occurrence." *Coleman*, 232 F.3d at 1296. Like each of Plaintiffs' claims, Intervenors' claims require their own factual development and merits decisions based on what, if any, impact on funding occurs. Notably, the Bondi Memo (Am. Compl., Ex. D) distinguishes between state and local jurisdictions like Plaintiffs (Section I) and non-governmental organizations like Intervenors (Section II). Am. Compl., Ex. D, pp. 1-2. This distinction demonstrates that Plaintiffs' claims and Intervenors' claims would be analyzed differently and require distinct factual development.[5]

---

[5] For example, Plaintiffs pontificate that as with past litigation, the Byrne Justice Assistance Grant program may be a candidate for budget decreases. *See, e.g.*, ECF Nos. 61-3, 61-15, 61-17. But 34 U.S.C. § 10153(a)(5)(D) *may* authorize funding conditioning through a required certification. The Second Circuit has held that the "statute makes clear that it is the Attorney General who has authority to 'require[ ] or request[ ] specific information,' to ensure a grant applicant's intended compliance with all other applicable federal laws." *State v. Dep't of Just.*, 951 F.3d 84, 105 (2d Cir. 2020). "Thus, Byrne Program formula funding can be denied to an applicant that fails to provide the required § 10153(a)(5)(D) certification as to any 'applicable Federal law[ ],' whether that law pertains to the particular grant sought or to the applicant seeking it." *Id.* at 107. By contrast, the Ninth Circuit has not yet decided the issue. *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1090 (9th Cir. 2022) (noting that this Circuit has not evaluated whether the federal government could condition funding on 34 U.S.C. § 10153(a)(5)(D)). Thus, the circuit where the Plaintiffs or Intervenors are located will be an important, if not dispositve, factor in resolving their claims. Similarly, when assessing the legality of executive spending decisions, the source of money is significant so that the parties can assess what terms govern the fund distribution. *State v. Dep't of Just.*, 951 F.3d at 103–04. Further, the amount of funding that would be impacted is critical to evaluating whether there is "coercion" in a Tenth Amendment claim . *Id.* at 116 (analyzing what percentage of a local government budget may be impacted by federal withholding to evaluate plaintiffs' Tenth Amendment commandeering claims). The contours of these questions will likely vary from jurisdiction to jurisdiction, and from party to party, depending on how each factual record develops, highlighting the impropriety of allowing intervention in this matter.

11

Additionally, the sheer number of Plaintiffs and their already expansive geographic reach counsel against intervention. Notably, in prior cases, Plaintiffs were generally limited to their geographic and jurisdictional areas, thereby allowing for individualized analysis of local laws and budgets and benefitting from various local court perspectives. *See San Francisco*, 42 F.4th 1078 (showing that the City and County of San Francisco and Santa Clara County were the only named Plaintiffs); *City of L.A. v. Barr*, 941 F.3d 931 (9th Cir. 2019) (showing that Los Angeles is the only named Plaintiff); *City of Phila. v. AG of the United States*, 916 F.3d 276 (3d Cir. 2019) (showing that Philadelphia is the only named Plaintiff); *City of Chi. v. Sessions*, 888 F.3d 272 (7th Cir. 2018) (showing that Chicago is the only named Plaintiff). And when they did, certain states joined in litigation once definitive, identical funding decisions had been made, and the States could present *one case* for evaluation. *See State v. Dep't of Just.*, 951 F.3d at 90. Here, no funding decisions have been made and permitting Intervenors to join this matter will create an unnecessarily chaotic quagmire.

Simply put, Plaintiffs are misjoined, and opening the door to intervenors in this case would only enlarge the problem of adjudicating these mismatched parties' claims in one fell swoop. *Cupp*, 2018 WL 4599588, at *6 (granting Rule 21 motion to sever claims because "[u]ltimately, the [complaint] involves completely different plaintiffs, defendants, events, and jurisdictions, and the Court is unable to discern any reason for these claims being brought together"). Thus, the Court should deny intervention in this matter.

### III. Intervenors Cannot Meet the Threshold Requirements for Permissive Intervention

Should this Court reach the merits of the Motion, Intervenors do not meet the threshold requirements for permissive intervention. Permissive intervention under Rule 24(b)(1)(B) "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Foundation, Inc*, 644 F.3d at 843 (quoting *Beckman Indus., Inc.,* 966 F.2d at 473). Intervenors cannot meet two of these three requirements. As set forth above, Intervenors cannot establish an independent ground for jurisdiction because they cannot show standing. *Supra* § I. Intervenors also cannot show a common question of law and fact, where Plaintiffs are—and Intervenors would be—misjoined because their respective claims will require individualized factual developments and merits determinations in various circuits. *Supra* § II.

12

## CONCLUSION

For these reasons, the Court should deny the motion to intervene.

Dated: April 25, 2025           Respectfully submitted,

YAAKOV ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

ELIANIS PEREZ
Assistant Director

LAUREN FASCETT
Senior Litigation Counsel

LINDSAY ZIMLIKI
VICTORIA TURCIOS
CAROLINE MCGUIRE
Trial Attorneys

*/s/ Angel Fleming*
ANGEL FLEMING
FL Bar No. 0091103
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

/s/ *Angel Fleming*
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorney for Defendants*

A