| | |
|---|---|
| 1 | Mark Rosenbaum (SBN 59940) |
| 2 | Gina Amato (SBN 215519) |
| | Rebecca Brown (SBN 345805) |
| 3 | Jacob Maddox (SBN 354368) |
| 4 | Sophia Wrench (SBN 354416) |
| | PUBLIC COUNSEL |
| 5 | 610 South Ardmore Avenue |
| | Los Angeles, CA 90005 |
| 6 | (213) 385-2977 |
| 7 | mrosenbaum@publiccounsel.org |
| | gamato@publiccounsel.org |
| 8 | rbrown@publiccounsel.org |
| | jmaddox@publiccounsel.org |
| 9 | swrench@publiccounsel.org |

Matthew J. Craig (SBN 350030)
Mack E. Jenkins (SBN 242101)
Susan Har (SBN 301924)
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
(212) 763-0883
mcraig@heckerfink.com
mjenkins@heckerfink.com
shar@heckerfink.com

Thea Raymond-Sidel
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
traymond-sidel@heckerfink.com

*Attorneys for Plaintiffs-Intervenors Central American Resource Center – CARECEN – of California, Coalition for Humane Immigrant Rights, and Immigrant Defenders Law Center*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANSISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, CITY OF PORTLAND, MARTIN LUTHER KING, JR. COUNTY, CITY OF NEW HAVEN, CITY OF OAKLAND, CITY OF EMERYVILLE, CITY OF SAN JOSE, CITY OF SAN DIEGO, CITY OF SACRAMENTO, CITY OF SANTA CRUZ, COUNTY OF MONTEREY, CITY OF SEATTLE, CITY OF MINNEAPOLIS, | Case No. 25-CV-01350-WHO<br><br>**PLAINTIFFS-INTERVENORS' REPLY IN SUPPORT OF MOTION FOR PERMISSIVE INTERVENTION**<br><br>Hearing Date: June 11, 2025<br>Time: 2:00 p.m.<br>Courtroom: Courtroom 2<br>Before: Hon. William H. Orrick |

| | |
|---|---|
| 1 | CITY OF ST. PAUL, CITY OF SANTA FE, |
| 2 | |
| 3 | Plaintiffs, |
| 4 | v. |
| 5 | DONALD J. TRUMP, President of the United States, UNITED STATES OF AMERICA, PAMELA BONDI, Attorney General of the United States, EMIL BOVE, Acting Deputy Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of United States Department of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, DOES 1-100, |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | Defendants. |

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................................1

II. ARGUMENT ................................................................................................................................1

   A. Plaintiffs-Intervenors Need Not Demonstrate Standing to Intervene in this Action ..........1

   B. Plaintiffs-Intervenors Nevertheless Establish Standing .......................................................4

   C. The Government's Arguments for Misjoinder Are Improper ............................................9

III. CONCLUSION ...........................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A.B. v. Haw. State Dep't of Educ.*,
 30 F.4th 828 (9th Cir. 2022)..................................................................................................... 4

*Bennett v. Spear*,
 520 U.S. 154 (1997)................................................................................................................. 9

*Biden v. Nebraska*,
 600 U.S. 477 (2023)............................................................................................................... 11

*Bond v. United States*,
 564 U.S. 211 (2011)................................................................................................................. 4

*Cal. Rest. Ass'n v. City of Berkeley*,
 89 F.4th 1094 (9th Cir. 2024)................................................................................................... 8

*City & Cnty. of S.F. v. Trump*,
 897 F.3d 1225 (9th Cir. 2018).............................................................................................. 3, 7

*City & Cnty. of S.F. v. Trump*,
 No. 17 Civ. 485 (N.D. Cal. May 23, 2017).............................................................................. 3

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)................................................................................................................. 8

*Coalition for Humane Immigrant Rts. v. DHS*,
 No. 25 Civ. 943, 2025 WL 1078776 (D.D.C. Apr. 10, 2025)................................................. 6

*Coleman v. Quaker Oats Co.*,
 232 F.3d 1271 (9th Cir. 2000)................................................................................................ 10

*County of Santa Clara v. Trump*,
 275 F. Supp. 3d 1196 (N.D. Cal. 2017) ................................................................................... 3

*County of Santa Clara v. Trump*,
 No. 17 Civ. 574 (N.D. Cal. Feb. 3, 2017) ................................................................................ 3

*Dave Drilling Env't Eng'g, Inc. v. Gamblin*,
 No. 14 Civ. 02851, 2015 WL 4051968 (N.D. Cal. July 2, 2015) ........................................... 2

*Dep't of Com. v. New York*,
 588 U.S. 752 (2019)........................................................................................................... 9, 11

*E. Bay Sanctuary Covenant v. Trump*,
 932 F.3d 742 (9th Cir. 2018).................................................................................................... 5

*FDA v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................................................. 6

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
  98 F.4th 1180 (9th Cir. 2024) ............................................................................................... 2

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ................................................................................................ 2

*Gutta v. Renaud*,
  No. 20 Civ. 6579, 2021 WL 533757 (N.D. Cal. Feb. 12, 2021) .......................................... 10

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................................................................. 6

*Johnson v. High Desert State Prison*,
  127 F.4th 123 (9th Cir. 2025) ............................................................................................. 10

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
  558 F.2d 914 (9th Cir. 1977) .............................................................................................. 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................................................. 4

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) ............................................................................................................. 2

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................. 9

*Morris v. Northrop Grumman Corp.*,
  37 F. Supp. 2d 556 (E.D.N.Y. 1999) .................................................................................. 10

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ......................................................................................... 5, 8

*Or. Prescription Drug Monitoring Program v. DEA*,
  860 F.3d 1228 (9th Cir. 2017) .......................................................................................... 3, 4

*Russo v. Fed. Med. Servs., Inc.*,
  756 F. Supp. 3d 748 (N.D. Cal. 2024) ................................................................................ 10

*SEC v. Leslie*,
  No. 07 Civ. 3444; 2010 WL 2991038 (N.D. Cal. July 29, 2010) ....................................... 10

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) .............................................................................................. 2

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) .................................................................................................. 8

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ............................................................................................. 2, 4

*Washington v. FDA*,
    108 F.4th 1163 (9th Cir. 2024) .............................................................................. 4

**RULES**

Fed. R. Civ. P. 20 ............................................................................................................ 10

**OTHER AUTHORITIES**

Executive Order 13,768, *Enhancing Public Safety in the Interior of the United States*,
    82 Fed. Reg. 8799 (Jan. 25, 2017) ........................................................................ 3

Executive Order, *Protecting American Communities from Criminal Aliens*
    (Apr. 28, 2025) ................................................................................................. 1, 5

FEMA, Fiscal Year (FY) 2024 Shelter and Services Program – Competitive (SSP-C)
    Fact Sheet (Apr. 12, 2024) .................................................................................... 7

Letter from Reps. Jimmy Gomez, Nanette Diaz Barragán, Adam B. Schiff, Tony Cárdenas, &
    Sydney Kamlager-Dove, to Deanne Criswell, Admin., Fed. Emergency Mgmt. Agency
    (Aug. 8, 2024) ........................................................................................................ 7

## I. INTRODUCTION

Without a basis to fight Plaintiffs-Intervenors' motion on the merits of Rule 24(b) and the *Spangler* factors, Defendants instead shadowbox over two manufactured concerns: standing and misjoinder. Neither governs whether Plaintiffs-Intervenors should be permitted to intervene in this action.

First, as Plaintiffs-Intervenors laid out in their opening brief, Plaintiffs-Intervenors need not establish standing to intervene in this action because they bring only claims brought by the existing Plaintiffs. Defendants' standing concerns are therefore not a reason to deny intervention. But even if the Court were to consider Plaintiffs-Intervenors' standing as a discretionary factor, Plaintiffs-Intervenors have demonstrated standing in multiple ways, and Defendants' arguments do not seriously call any into question. Second, Plaintiffs-Intervenors, which raise the same constitutional challenges against the same executive actions as Plaintiffs do, can be properly joined in this action. Defendants' contrary contention ignores the text of Rule 20, upends established practice, and contorts joinder doctrine beyond recognition.

If anything, the case for intervention has only strengthened since Plaintiffs-Intervenors' initial filing. Four days after the Court granted Plaintiffs' request for a preliminary injunction, the White House issued yet another executive order aimed at identifying and punishing localities it deems to be sanctuary jurisdictions.[1] And the City of Los Angeles, as a sanctuary city, remains outside the scope of the Court's preliminary injunction and vulnerable to continued attacks from the current administration. Plaintiffs-Intervenors' motion should be granted.

## II. ARGUMENT

### A. Plaintiffs-Intervenors Need Not Demonstrate Standing to Intervene in this Action

Defendants devote the bulk of their opposition to arguing that Plaintiffs-Intervenors lack standing, *see* ECF 115 ("Opp.") at 4–10, but little to explaining why they think that Plaintiffs-Intervenors must make such a showing in the first place. This omission is unsurprising, because the law is clear that, under the circumstances, Plaintiffs-Intervenors need not establish standing to intervene in this action.

---

[1] Executive Order, *Protecting American Communities from Criminal Aliens* (Apr. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/.

As Plaintiffs-Intervenors explained in their opening brief—and Defendants do not dispute—where a proposed intervenor does not seek to raise different claims or seek different relief from an existing plaintiff, the Court need not separately analyze its jurisdiction over the intervenor's claims. *See* ECF 97 ("Mot.") at 13, 16. That is to say, the requirement that an intervenor demonstrate an "independent ground for jurisdiction" does not apply in a federal question case like this one, and where, as here, the intervenor "brings no new claims, the jurisdictional concern drops away." *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 843–44 (9th Cir. 2011); *accord Dave Drilling Env't Eng'g, Inc. v. Gamblin*, No. 14 Civ. 02851, 2015 WL 4051968, at *5 (N.D. Cal. July 2, 2015). Similarly, because the Court has already found that existing Plaintiffs have standing to bring their claims, *see* ECF 111 at 3–4, black-letter law instructs that Plaintiffs-Intervenors are not also required to do so. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (court erred in inquiring into an intervenor's standing where existing party "clearly had standing"). Instead, a proposed intervenor is required to demonstrate standing only where it seeks "relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017). In other intervention contexts, standing is properly described as a discretionary factor to help the Court decide whether to allow intervention. *See Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

But despite Defendants' feeble suggestion to the contrary, Plaintiffs-Intervenors do not seek "different relief" from the existing Plaintiffs in this action. Defendants' opposition cites only one case for the proposition that "[r]elief that demarcates a different geographical scope of relief than a plaintiff's original request constitutes different relief." Opp. 3 (citing *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1196 (9th Cir. 2024)). It's not clear from where Defendants draw that idea, but it's certainly not from *Flathead*. *Flathead* considered a motion for a preliminary injunction, not a motion to intervene, and it stands merely for the proposition that evidence before a court must support the geographic scope of any injunction imposed. *Flathead*, 98 F.4th at 1196. In *Flathead* itself, for example, the Court reversed and remanded the district court's order enjoining wolf trapping in larger swaths of Montana than the evidence supported. *Id. Flathead* does not, however, speak to what constitutes "different relief" in this or any action.

In any case, Plaintiffs-Intervenors do not seek relief "that demarcates a different geographical scope of relief than a plaintiff's original request." Opp. 3. Plaintiffs' First Amended Complaint seeks a nationwide injunction and a declaration that the challenged actions are unconstitutional and invalid on their face, and Plaintiffs-Intervenors' Complaint-in-Intervenion seeks the same. *Compare* ECF 22, Prayer for Relief, *with* ECF 97-1, Prayer for Relief. The geographic scope of the requested relief is, therefore, identical. *See Or. Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (independent basis for standing only required where intervenor intends to "pursue different relief from that *sought by*" existing parties (emphasis added)).

The earlier litigation in which San Francisco and Santa Clara challenged Executive Order 13,768 during the first Trump administration only confirms that Plaintiffs-Intervenors do not seek different relief than the existing Plaintiffs. In that case, San Francisco and Santa Clara sought, and this Court initially granted, a nationwide injunction against the operation of Section 9 of Executive Order 13,768. *County of Santa Clara v. Trump*, 275 F. Supp. 3d 1196, 1219 (N.D. Cal. 2017); Compl., *County of Santa Clara v. Trump*, No. 17 Civ. 574 (N.D. Cal. Feb. 3, 2017), ECF 1 at 40–41; Second Am. Compl., *City & Cnty. of S.F. v. Trump*, No. 17 Civ. 485 (N.D. Cal. May 23, 2017), ECF 105 at 34. Based on the record at the time, the Circuit held that the injunction should apply to the State of California as a whole, even though the government argued that it should apply only to the plaintiffs. *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018); Br. for Appellants, *City & Cnty. of S.F.*, Nos. 17-16886, 17-16887, 17-17478, 17-17480 (9th Cir. Dec. 18, 2017), 2017 WL 6541403, at *29–36. In that case, it took only two California municipalities to extend relief to the entire state. Given that this case already has nine California municipalities as Plaintiffs, Plaintiffs-Intervenors are not necessary to extend injunctive relief to Los Angeles, and in requesting such relief, Plaintiffs-Intervenors do not seek something different from what is already at stake in the action. What Plaintiffs-Intervenors instead seek to do is augment the record to ensure that the existing Plaintiffs' requested relief covers Los Angeles, just as it did in the prior action. *City & Cnty. of S.F.*, 897 F.3d at 1244.

The cases that actually discuss and apply the "different relief" standard—which Defendants do not cite in their opposition—further drive home this point. In each of the cases to decide this

1  question, the plaintiff and intervenor had brought different *types* of claims, pursued different *types*
2  of relief, or both. In *Town of Chester*, for example, the plaintiff and intervenor sought different forms
3  of monetary relief—compensation for a taking and a damages award, respectively—based on their
4  separate interests in a piece of property. 581 U.S. at 440–41. In *Oregon Prescription Drug*
5  *Monitoring Program v. DEA*, the plaintiff sought to prohibit the DEA from issuing an investigative
6  subpoena based on a specific state statutory provision, whereas the intervenor sought an injunction
7  requiring a warrant supported by probable cause based on the Fourth Amendment. 860 F.3d at 1234.
8  And finally, in *Washington v. FDA*, the "two complaints [raising APA claims] ha[d] little in
9  common," were, "in many respects, diametrically opposed," and sought different remedies. 108 F.4th
10 1163, 1173 (9th Cir. 2024). These cases are a far cry from the circumstances here.

Because Plaintiffs-Intervenors do not bring any different claims or seek any different relief than the existing Plaintiffs, Plaintiffs-Intervenors are not required to demonstrate standing to intervene in this action.

### B. Plaintiffs-Intervenors Nevertheless Establish Standing

Even if the Court were to consider standing as a discretionary factor, however, Defendants' arguments that Plaintiffs-Intervenors fail to identify a cognizable injury are unsuccessful for multiple reasons.[2]

***First***, Plaintiffs-Intervenors have shown injury as a result of the diversion of funds caused by the challenged executive actions.

Plaintiffs-Intervenors provide both social and legal services to immigrant communities in and around Los Angeles. ECF 97-1 ¶¶ 13–16, 33–34. They can only provide these kinds of holistic services for their clients when Los Angeles's sanctuary protections are in place and Plaintiffs-Intervenors and their clients can trust that the City will enforce them. *Id.* ¶ 34. Based on the federal government's clear attempts at coercion, Plaintiffs-Intervenors cannot be so confident. *Id.* ¶¶ 56–59.

---

[2] The government off-handedly suggests that Plaintiffs-Intervenors are asserting third-party standing based on injuries to Los Angeles itself. *See* Opp. 4 n.3. For the avoidance of doubt, Plaintiffs-Intervenors seek to vindicate their own legal rights and, if necessary, demonstrate organizational and associational standing. In any case, "what the defendants characterize[] as '[third-party] standing' arguments actually rest[] primarily on the general prudential rule against asserting the rights of third parties," and is often better characterized as "really an issue of whether the party has a cause of action" to bring the claim. *See A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 840–41 (9th Cir. 2022) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 & n.3 (2014)). Because Defendants do not, and cannot, argue that Plaintiffs-Intervenors lack a cause of action to bring their claims, *see, e.g.*, *Bond v. United States*, 564 U.S. 211, 225 (2011), their third-party standing arguments fall flat.

As a result, they have had to divert resources from doing this core work to assuaging their clients' well-founded fears that accessing City services and resources would not put them in greater danger of a City employee failing to enforce the City's sanctuary protections and reporting them to federal immigration authorities. *Id.* ¶¶ 60–61. This is not merely "address[ing] increased client inquiries," as Defendants flippantly suggest, Opp. 8, but a total reconfiguration of Plaintiffs-Intervenors' services to allay their clients' fears of the City's sanctuary protections crumbling. ECF 97-1 ¶ 61. Due to Defendants' coercive actions, Plaintiffs-Intervenors have had to mobilize entire rapid response networks, re-prioritize caseloads, create and facilitate a host of Know-Your-Rights trainings, and continuously produce new educational materials in response to Defendants' policy changes and threats. *Id.* As a result, Plaintiffs-Intervenors have had to slow, and at some points, stop, taking new cases altogether to address the emergency the challenged actions have created. *Id.*[3]

These injuries clearly meet the governing standard. The challenged actions, by causing widespread, well-founded fear that the City will no longer enforce its sanctuary protections, have "perceptibly impaired [Plaintiffs-Intervenors'] ability to provide the services [they were] formed to provide." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 765 (9th Cir. 2018) (internal quotation marks omitted); *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) ("The complaint specifically alleges that Plaintiffs expended additional resources that they would not otherwise have expended, and in ways that they would not have expended them."). Just as the organizations in *East Bay Sanctuary Covenant* had to expend resources to alter their asylum practices as a result of the challenged regulation, and just as the plaintiffs in *National Council of La Raza* had to devote resources to registering voters that they "would have spent on some other aspect of their organizational purpose," *Nat'l Council of La Raza*, 800 F.3d at 1040, so too Plaintiffs-Intervenors

---

[3] As discussed above, this week, Defendant Trump issued a new executive order that reiterated the administration's goal to withdraw federal funds from sanctuary jurisdictions. The order instructs the Attorney General, in coordination with the Secretary of Homeland Security—both already Defendants in this action—to publish "a list of states and local jurisdictions that obstruct the enforcement of Federal immigration laws (sanctuary jurisdictions)," to "[i]mmediately ... notify each sanctuary jurisdiction regarding its defiance of Federal immigration enforcement" and instructs the head of each agency to "identify appropriate Federal funds to sanctuary jurisdictions, including grants and contracts, for suspension or termination, as appropriate." Executive Order, *Protecting American Communities from Criminal Aliens* (Apr. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/04/protecting-american-communities-from-criminal-aliens/. Defendants' opposition not once suggested that Defendants do not consider Los Angeles to be a sanctuary jurisdiction for purposes of Executive Order 14,159 and Executive Order 14,218. And the new executive order simply shows that Defendants are moving ahead with their attacks on sanctuary jurisdictions, undeterred by the pending constitutional challenges.

must devote resources to the constant threat of the erosion of the City's sanctuary protections, instead of focusing on delivering the holistic services that the City's sanctuary protections have enabled for years.

Plaintiffs-Intervenors' theory is also in accord with the larger line of caselaw that underpins the diversion-of-resources theory of organizational standing, from *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), to *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). *Havens* held that a housing counseling organization had standing to bring a claim against an owner and operator of apartment complexes for giving false information about apartment availability, because that false information "perceptibly impaired [plaintiff's] ability to provide counselling and referral services for low- and moderate-income homeseekers," which was a "concrete and demonstrable injury to the organization's activities[,] with the consequent drain on the organization's resources." 455 U.S. at 379. In *Hippocratic Medicine*, the Court held that the advocacy organization in that case could not "spend its way into standing," distinguishing *Havens* because in that case, "[the defendant's] actions directly affected and interfered with [the plaintiff's] core business activities." 602 U.S. at 394–95. Although Defendants seek to paint this case as mirroring the facts of *Hippocratic Medicine*, Plaintiffs-Intervenors are not alleging a "setback to [their] abstract social interests." Opp. 9 (quoting *Havens*, 455 U.S. at 379). They are expending significant resources to allay their clients' concerns regarding the City's sanctuary protections that Defendants have threatened, rather than providing the legal and social services—the "core" activities, to use the language of *Havens*, *East Bay Sanctuary Covenant*, and *National Council of La Raza*—that Plaintiffs-Intervenors exist to provide.

As a final effort to call Plaintiffs-Intervenors' organizational standing into question, Defendants analogize to Judge McFadden's recent decision denying a motion for a preliminary injunction for lack of standing in *Coalition for Humane Immigrant Rights v. DHS*, No. 25 Civ. 943, 2025 WL 1078776 (D.D.C. Apr. 10, 2025), currently on appeal. Apart from sharing a plaintiff, however, the similarities between this case and that one, as described by Judge McFadden, are minimal. In that case, a group of advocacy organizations brought an APA challenge to an interim final rule requiring a new registration process for undocumented residents. *Id.* at *1. Because the rule

hadn't yet been implemented, Judge McFadden considered the plaintiffs' injuries "highly speculative, sounding in prospective fears about what might happen when the rule takes effect." *Id.* at *5. But unlike the rule challenged there, the challenged actions in this case have been in effect for months. Plaintiffs-Intervenors have been experiencing their effects on their budgets since that time, and this Court has already rejected Defendants' argument that the existing Plaintiffs lack standing because the challenged actions have not yet been enforced against them. *See* ECF 111 at 4. And while Judge McFadden held that the implementation of the rule could not interfere with CHIRLA's "core … activities," *Coalition for Humane Immigrant Rights*, 2025 WL 1078776, at *4, shifting resources to account for a bedrock shift in sanctuary protections strikes at the core of the services that Plaintiffs-Intervenors have provided with Los Angeles' sanctuary protections as a backdrop. Given these manifest differences, *Coalition for Humane Immigrant Rights* is inapposite.

***Second***, CHIRLA and CARECEN have been injured by the loss of pass-through federal funds resulting from the termination of FEMA grants to Los Angeles. Defendants argue that "Intervenors were not directly injured by any loss of funds intended for the City of Los Angeles." Opp. 9. But the City of Los Angeles had been awarded a grant to receive $21.8 million from FEMA's Shelter and Services Program (SSP), and CHIRLA and CARECEN had been awarded a grant from the City to receive a cumulative $8.5 million of that SSP funding over three years. Mot. 17. This is similar to the types of evidence considered and accepted by the Ninth Circuit in the prior action in fashioning relief for the state of California as a whole. *See City & Cnty. of S.F.*, 897 F.3d at 1244 ("The record supports [Plaintiffs'] claim that their budgets depend on grants awarded to themselves and to the State of California."). And Defendants cannot seriously contend that they were not aware that SSP funding would be awarded to subgrantees like CHIRLA and CARECEN. Indeed, the FEMA website itself envisioned grant applicants like the City listing the subgrantees to which it planned to disburse SSP funds,[4] and in support of the City's application, five members of Congress representing the Los Angeles area told the former FEMA Administrator directly the four organizations that would receive funds through the grant, including CHIRLA and CARECEN.[5] Accordingly, when FEMA

---

[4] FEMA, Fiscal Year (FY) 2024 Shelter and Services Program – Competitive (SSP-C) Fact Sheet (Apr. 12, 2024), https://www.fema.gov/grants/shelter-services-program/ssp-c/fy-24-fact-sheet (allowing "subapplicants" to apply to "receive subawards" from a "non-federal entity that applies for and receives an SSP-C award directly from FEMA" and that "[s]ubapplicants must work directly with an eligible SSP-C applicant"—like the City—"to be included in an application").
[5] Letter from Reps. Jimmy Gomez, Nanette Diaz Barragán, Adam B. Schiff, Tony Cárdenas, &

terminated its SSP grant to the City, the City's grant of a portion of those same funds to CHIRLA and CARECEN, too, disappeared. This is about as direct an injury as can be found to establish standing. *See id.* at 1236 (holding that a "loss of funds promised under federal law" confers standing (cleaned up)).

**Third**, CHIRLA's members—of which there are 50,000, Mot. 6—have experienced harms because of Defendants' efforts to coerce the City to abandon its sanctuary practices and policies, giving rise to associational standing. *See, e.g.*, *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1099 (9th Cir. 2024) (en banc). Defendants' arguments to the contrary rest on basic misunderstandings of applicable law.

Defendants first argue that *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), requires that Plaintiffs-Intervenors name a particular CHIRLA member that has been harmed by Defendants' coercion. Opp. 5. But *Summers* imposes no such blanket requirement, and under controlling Ninth Circuit law, Plaintiffs-Intervenors need not name a single member affected "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *Nat'l Council of La Raza*, 800 F.3d at 1041; *see also Cal. Rest. Ass'n*, 89 F.4th at 1099–1100 (holding that plaintiffs had established associational standing without naming individual affected members). It is far from speculative that CHIRLA's members have a "well-founded fear" of the City failing to enforce its sanctuary ordinance due to Defendants' ongoing efforts to achieve precisely that, *see* ECF 117 at 24, and that they have been injured by not being able to access City services as a result.

Defendants next complain that Plaintiffs-Intervenors have not plausibly alleged imminent injury or based their injury "on the unpredictable behavior" of the City. Opp. 6. In doing so, however, Defendants simply recite basic standing principles instead of grappling with the precise arguments Plaintiffs-Intervenors made in their opening brief. Plaintiffs-Intervenors do not dispute *Clapper*'s requirement that future injury be "certainly impending" or *Hippocratic Medicine*'s warning not to "rely on speculation about the unfettered choices made by independent actors not before the courts." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) and *Hippocratic Medicine*, 602

---

Sydney Kamlager-Dove, to Deanne Criswell, Admin., Fed. Emergency Mgmt. Agency (Aug. 8, 2024), https://gomez.house.gov/uploadedfiles/08.08.2024femasspclagrantsupportletter.pdf.

1  U.S. at 383). But nowhere in Defendants' brief are the two cases Plaintiffs-Intervenors base their
2  associational standing theory upon: *Bennett v. Spear*, 520 U.S. 154, 169 (1997), and *Department of*
3  *Commerce v. New York*, 588 U.S. 752, 768 (2019). In both cases, the government argued that their
4  injury was speculative because a standing theory cannot be "the result of the independent action of
5  some third party not before the court," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)
6  (cleaned up). Yet in both cases, the Supreme Court disagreed, because *Lujan*'s limitation on
7  predicating a standing theory on the actions of a third party "does not exclude injury produced by
8  determinative or coercive effect upon the action of someone else." *Bennett*, 520 U.S. at 169; *see also*
9  *Dep't of Com.*, 588 U.S. at 768 ("Respondents' theory of standing thus does not rest on mere
10 speculation about the decisions of third parties; it relies instead on the predictable effect of
11 Government action on the decisions of third parties." (citing *Bennett*, 520 U.S. at 169–70)).

12       This is precisely what has occurred here. The government has acted to coerce sanctuary
13 jurisdictions, including the City, to abandon their sanctuary protections by threatening them with the
14 prospect of losing hundreds of millions in federal funding. CHIRLA's members have avoided public
15 transportation, have not attended school, and have failed to access City services because of their
16 well-founded fear that the City will respond to coercion by being coerced. *Bennett* and *Department*
17 *of Commerce* teach that CHIRLA's members need not wait for the City to succumb to the
18 government's threats before they have standing to sue to enjoin those threats in the first place.

19       **C.**    **The Government's Arguments for Misjoinder Are Improper**

20       Finally, Defendants argue that intervention is futile because Plaintiffs-Intervenors would be
21 misjoined parties. Opp. 10. But Rule 20 permits Plaintiffs-Intervenors to join this action, and none
22 of the factors that courts may consider under Rule 21 would then support severing their claims from
23 this action.

24       Several plaintiffs may join a suit under Rule 20(a)(1) if "(1) the plaintiffs assert any right to
25 relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and
26 (2) there are common questions of law or fact." *Johnson v. High Desert State Prison*, 127 F.4th 123,
27 134 (9th Cir. 2025). If those requirements are met, the plaintiffs should be joined so long as the
28 joinder "would 'comport with the principles of fundamental fairness'" and would not cause

1  "prejudice to either side." *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir.
2  2000)). Rule 20's permissive joinder rules are construed "to expedite the final determination of
3  disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan.*
4  *Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

5        Plaintiffs-Intervenors meet both of Rule 20's requirements. Their claims arise from the same
6  facts as Plaintiffs'—the federal government's attempts to eliminate sanctuary cities. *See, e.g.*, ECF
7  22 ¶¶ 172–83 (describing Executive Order 14,218); ECF 97-1 ¶ 51 (same); ECF 22 ¶¶ 184–210
8  (describing Bondi and Bove memos); ECF 97-1 ¶¶ 45–50 (same). And Plaintiffs-Intervenors'
9  challenge shares questions of law and fact with Plaintiffs' challenges—not least because Plaintiffs
10 and Plaintiffs-Intervenors raise the same five constitutional claims. *Compare* ECF 22 ¶¶ 386–426
11 *with* ECF 97-1 ¶¶ 63–103.

12       Defendants do not dispute these points. They instead misinterpret Rule 20's "common
13 questions of law or fact" inquiry to allow only for the joining of plaintiffs when *all* issues of law and
14 fact are common to all plaintiffs. Rule 20 is not so demanding. "[A]ny" common question is grounds
15 for permissive joinder. Fed. R. Civ. P. 20(a)(1)(B). Total commonality is not required. *Russo v. Fed.*
16 *Med. Servs., Inc.*, 756 F. Supp. 3d 748, 754 (N.D. Cal. 2024). Here, the overlapping questions about
17 the legality of Defendants' actions are more than sufficient to satisfy Rule 20. *Gutta v. Renaud*, No.
18 20 Civ. 6579, 2021 WL 533757, at *6 (N.D. Cal. Feb. 12, 2021).

19       Nor would there be a basis to sever Plaintiffs-Intervenors' claims under Rule 21. In
20 considering whether to sever a claim, courts consider a nonexclusive list of factors including "(1)
21 whether the claims arise out of the same transaction or occurrence; (2) whether the claims present
22 some common questions of law or fact; (3) whether settlement of the claims or judicial economy
23 would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5)
24 whether different witnesses and documentary proof are required for the separate claims." *SEC v.*
25 *Leslie*, No. 07 Civ. 3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (quoting *Morris v.*
26 *Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999)). The first and second factors
27 weigh against severance for the same reasons that Plaintiffs-Intervenors could be properly joined as
28 parties. The remaining factors point the same way: judicial economy would not be served by

requiring separate litigation involving similar or identical evidence on closely related legal questions, and Defendants do not explain the prejudice that they would avoid if Plaintiffs-Intervenors' claims were severed.

At bottom, Defendants' misjoinder arguments—like their standing arguments—seek to insulate executive actions from judicial review by inventing obstacles to the assertion of constitutional claims. But it is hardly uncommon for multiple plaintiffs to join together to raise identical constitutional challenges. And courts routinely decide such cases without raising any Rule 21 concerns, notwithstanding that Rule 21 permits courts to sever claims or parties sua sponte. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477 (2023) (adjudicating claims of Arkansas, Iowa, Kansas, Missouri, Nebraska, and South Carolina); *Dep't of Com.*, 588 U.S. 752 (deciding case brought by 18 states, various counties and cities, the District of Columbia, and the United States Conference of Mayors in the Southern District of New York and a companion consolidated case brought by a group of nonprofits). Defendants, in advancing a novel interpretation of Rule 21, ignore this accepted practice. Their argument should be rejected.

*        *        *

That the preliminary injunction in this action is limited to the existing Plaintiffs makes the case for Plaintiffs-Intervenors' intervention all the more urgent. *See* ECF 111 at 5–6; Mot. 14. And Plaintiffs-Intervenors' pressing interest in joining this case grew even more acute this week, with an executive order reiterating the government's intent to punish sanctuary jurisdictions with suspension and termination of federal funding. *See supra* n.3. Given that urgency, Plaintiffs-Intervenors would be prepared to present oral argument at a hearing on this motion at any time prior to the existing June 11 hearing date. In the alternative, and considering Defendants' concessions as to the majority of issues presented by Plaintiffs-Intervenors' motion, Plaintiffs-Intervenors would be prepared to forego oral argument and rest on their papers.

### III.    CONCLUSION

For the reasons above and in Plaintiffs-Intervenors' opening brief, the Court should grant the motion for permissive intervention.

| | | |
|---|---|---|
| 1 | Dated: Los Angeles, California | *Mark Rosenbaum* |
| 2 | May 1, 2025 | Mark Rosenbaum (SBN 59940) |
| | | Gina Amato (SBN 215519) |
| 3 | | Rebecca Brown (SBN 345805) |
| | | Jacob Maddox (SBN 354368) |
| 4 | | Sophia Wrench (SBN 354416) |

Dated: Los Angeles, California
     May 1, 2025

*Mark Rosenbaum*
Mark Rosenbaum (SBN 59940)
Gina Amato (SBN 215519)
Rebecca Brown (SBN 345805)
Jacob Maddox (SBN 354368)
Sophia Wrench (SBN 354416)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
mrosenbaum@publiccounsel.org
gamato@publiccounsel.org
rbrown@publiccounsel.org
jmaddox@publiccounsel.org
swrench@publiccounsel.org

Matthew J. Craig (SBN 350030)
Mack E. Jenkins (SBN 242101)
Susan Har (SBN 301924)
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
(212) 763-0883
mcraig@heckerfink.com
mjenkins@heckerfink.com
shar@heckerfink.com

Thea Raymond-Sidel**
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
traymond-sidel@heckerfink.com

*Attorneys for Plaintiffs-Intervenors Central American Resource Center – CARECEN – of California, Coalition for Humane Immigrant Rights, and Immigrant Defenders Law Center*

** Admitted *pro hac vice*