YAAKOV ROTH
Acting Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
LINDSAY ZIMLIKI
ANGEL FLEMING
VICTORIA TURCIOS
Trial Attorneys

CAROLINE MCGUIRE
NY Bar No. 5854823
Trial Attorneys
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | CASE NO. 3:25-CV-1350 (WHO)<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY AND/OR ENFORCE THE PRELIMINARY INJUNCTION<br><br><br>Hearing Date: May 8, 2025 - VIRTUAL<br>Time:              3:00 P.M. PST<br>Honorable William H. Orrick III |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

I.     Preliminary Injunction Issued on April 24, 2025 .............................................................. 2

II.    Executive Order 14,287 ..................................................................................................... 3

III.   The Executive has Broad Discretion in the Enforcement of Immigration Law and Congress Intended for State/Local Governments to Work with the Federal Government in Carrying Out Immigration Enforcement ................................................... 4

STANDARD OF REVIEW ............................................................................................................ 5

ARGUMENT .................................................................................................................................. 5

I.     Executive Order 14,287 Does Not Violate the Preliminary Injunction. ........................... 5

II.    Plaintiffs' Claims Are Not Ripe. ..................................................................................... 10

III.   Plaintiffs Lack Standing. ................................................................................................. 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Green*,
 513 U.S. 557 (1995) ............................................................................................................... 10

*Arizona Dream Act Coal. v. Brewer,*
 855 F.3d 957 (9th Cir. 2017) ..................................................................................................... 4

*Arizona v. United States*,
 567 U.S. 387 (2012) .................................................................................................................. 4

*Baird v. Bonta*,
 81 F.4th 1036 (9th Cir. 2023) .................................................................................................... 5

*Bova v. City of Medford*,
 564 F.3d 1093 (9th Cir. 2009) ................................................................................................. 10

*California v. Azar*,
 911 F.3d 558 (9th Cir. 2018) ..................................................................................................... 2

*City & Cnty. of San Francisco v. Garland*,
 42 F.4th 1078 (9th Cir. 2022) ........................................................................................ 9, 11, 12

*City of Los Angeles v. Barr*,
 929 F.3d 1163 (2019) ................................................................................................................ 9

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ................................................................................................................ 12

*Connecticut v. Massachusetts*,
 282 U.S. 660 (1931) .................................................................................................................. 2

*Daimler Chrysler v. Cuno*,
 547 U.S. 332 (2006) ................................................................................................................ 11

*Department of Education v. California*,
 145 S.Ct. 966 (2025) ................................................................................................................. 9

*Env't Info. Ctr. v. Stone-Manning*,
 766 F.3d 1184 (9th Cir. 2014) ................................................................................................. 10

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
 774 F.3d 935 (9th Cir. 2014) ..................................................................................................... 7

*Kindred v. Corona*,
    No. 1:18-cv-00554, 2022 WL 2133999 (E.D. Cal. June 14, 2022) ................................................ 7

*Kindred v. Price*,
    No. 1:18-cv-00554, 2022 WL 1421484 (E.D. Cal. May 5, 2022) .................................................. 7

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................................... 12

*Marshak v. Treadwell*,
    595 F.3d 478 (3d Cir. 2009) ........................................................................................................ 8

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) .................................................................................................................... 5

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949) .................................................................................................................... 8

*Mory v. City of Chula Vista*,
    06-CV-1460, 2008 WL 360071 (S.D. Cal., Feb. 11, 2008) ......................................................... 9

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) .................................................................................................. 6, 7

*Pride Indus., Inc. v. Comm. for Purchase From People Who Are Blind or Severely Disabled*,
    420 F. Supp. 3d 1035 (E.D. Cal. 2019) ...................................................................................... 2

*Reed v. Nevada*,
    No. 2:19-CV-00051, 2020 WL 2514312 (D. Nev. May 15, 2020) ............................................. 6

*Reno v. Flores*,
    507 U.S. 292 (1993) .................................................................................................................... 9

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) .................................................................................................................... 5

*Schlesinger v. Reservists Committee to Stop the War*,
    418 U.S. 208 (1974) .................................................................................................................. 10

*Sharp v. Weston*,
    233 F.3d 1166 (9th Cir. 2000) .................................................................................................... 5

*Southeast Alaska Conservation Council v. Federal Highway Admin.*,
    No. 1:06–cv–00009, 2013 WL 5532835 (D. Alaska, Oct. 3, 2013) ............................................ 6

*Spokeo v. Robins*,
    578 U.S. 330 (2016) .................................................................................................................. 11

*State v. Trump*,
  871 F.3d 646 (9th Cir. 2017) .................................................................................................. 5

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................................ 11

*Trump v. New York*,
  592 U.S. 125 (2020) .............................................................................................................. 12

*United States v. King Cnty.*,
  122 F.4th 740 (9th Cir. 2024) ................................................................................................ 10

*Winter v. NRDC*,
  555 U.S. 7 (2008) ............................................................................................................. 5, 10

*Wright v. SEIU*,
  48 F.4th 1112 (9th Cir. 2022) ................................................................................................ 12

*Zest Anchors LLC v. Geryon Ventures, LLC*,
  22-CV-230, 2022 WL 16838806 (S.D. Cal. Nov. 9, 2022) .................................................... 8

**Statutes**

8 U.S.C. § 1101 ............................................................................................................................ 4

8 U.S.C. § 1226(c)(1) .................................................................................................................. 5

8 U.S.C. § 1373 ..................................................................................................................... 4, 12

8 U.S.C. § 1373(b) ....................................................................................................................... 4

8 U.S.C. § 1644 ............................................................................................................................ 4

8 U.S.C. §§ 1231(a)(2) ................................................................................................................ 5

**Rules**

FED. R. CIV. P. 8 .......................................................................................................................... 1

FED. R. CIV. P. 8(a) ...................................................................................................................... 6

FED R. CIV. P. 8(a)(2) .................................................................................................................. 6

**Other Authorities**

Proclamation No. 14,218,
  90 Fed. Reg. 10581 (Feb. 19, 2025) ................................................................................ 1, 2, 8

Proclamation No. 14,159,
 90 Fed. Reg. 8443 (Jan. 20, 2025) ............................................................................................. 1, 8

Proclamation No. 14,287,
 90 Fed. Reg. 84 (Apr. 28, 2025) ...................................................................................... *passim*

# INTRODUCTION

PLEASE TAKE NOTICE that Defendants, by and through their undersigned counsel, pursuant to Local Civil Rule 7(4), submit this opposition to Plaintiffs' Motion to Modify and/or Enforce the Preliminary Injunction. ECF No. 128. This opposition is based on the Memorandum of Points and Authorities; all pleadings and papers in this cause of action; and such oral argument as may be presented at a virtual hearing on May 8, 2025, at 3:00 P.M PST.

Plaintiffs seek to modify and/or enforce the preliminary injunction, to include "Section 2 and Section 3(a) of Executive Order 14,287 or any other materially similar directive to withhold, condition, or freeze federal funds to 'sanctuary' jurisdictions." *See* ECF No. 128-2. There is no dispute that Executive Order 14,287, dated April 28, 2025, was issued after the Court's Preliminary Injunction Order, dated April 24, 2025, *see* ECF Nos. 111, 126 at 8, n.5. And the Order enjoined action based on "(1) the first sentence of Section 17 of Executive Order 14,159, (2) Section 2(a)(ii) of Executive Order 14,218, or (3) the Preamble and Section I of the February 5, 2025 Memorandum from the Attorney General." Thus, Plaintiffs' request to enforce the Court's Order against Executive Order 14,287—which was nonexistent when the Order was issued—is unwarranted.

Additionally, Plaintiffs' requested relief is outside of the four corners of the complaint, *see* FED. R. CIV. P. 8, and they are essentially asking for what would amount to a prohibited advisory opinion. To the extent that Plaintiffs claim that Executive Order 14,287 calls for similar action as in Executive Orders 14,159 and 14,218, as before, Defendants highlight that Plaintiffs' claims do not warrant the extraordinary relief of a preliminary injunction because their claims are premature and thus, not ripe for review. *See* ECF No. 93.

Plaintiffs' motion again seeks to curb the Executive Branch's deliberative process concerning federal funding decisions and its internal review of state and local governments' compliance with federal law. But Executive Order 14,287 merely provides guidance to executive agencies to identify, review and evaluate. To date, the federal Government has not implemented any actions against the Plaintiffs, stemming from Executive Order 14,287. Therefore, because Plaintiffs' claims are not ripe for review, Plaintiffs lack Article III standing. Likewise, because Plaintiffs have failed to identify a final agency action from which consequences have flowed, the Court cannot meaningfully evaluate the contours of Plaintiffs'

claims with respect to the merits or any putative injury in order to preliminarily enjoin these executive directives. *See Pride Indus., Inc. v. Comm. for Purchase From People Who Are Blind or Severely Disabled*, 420 F. Supp. 3d 1035, 1045 (E.D. Cal. 2019) ("Unless or until plaintiff identifies final agency action that is subject to the court's review under the APA, plaintiff is unable to demonstrate any potential for success on the merits, let alone a likelihood of success."), *but see* ECF Nos. 111 (Preliminary Injunction Order) and 126 (Further Order).

Further, Plaintiffs' request to enjoin "Section 2 and Section 3(a) of Executive Order 14,287, *see* ECF No. 128-2, but those sections do not seek to withhold, condition, or freeze federal funds to 'sanctuary' jurisdictions." *See* Proclamation No. 14,287, 90 Fed. Reg. 84 (Apr. 28, 2025).

Thus, the Court should deny the preliminary injunction. *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time," nor will such relief be granted for injuries that are merely "theoretical."). At a minimum, should the Court find any relief is warranted, it must limit relief to identifiable Executive Directives. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) ("The scope of an injunction is 'dependent as much on the equities of a given case as the substance of the legal issues it presents,' and courts must tailor the scope "to meet the exigencies of the particular case.").

## BACKGROUND

**I.     Preliminary Injunction Issued on April 24, 2025.**

The Court heard oral argument on Plaintiffs' Motion for Preliminary Injunction on April 23, 2025. ECF No. 109. On April 24, 2025, the Court issued an Order Granting Preliminary Injunction restraining "Defendants and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them . . . from directly or indirectly taking any action to withhold, freeze, or condition federal funds from the Cities and Counties based on (1) the first sentence of Section 17 of Executive Order 14,159, (2) Section 2(a)(ii) of Executive Order 14,218, or (3) the Preamble and Section I of the February 5, 2025 Memorandum from the Attorney General entitled 'Sanctuary Jurisdictions Directives' on the basis that the Cities and Counties have policies that limit (i) the honoring of civil immigration detainer requests; (ii) cooperation with administrative warrants for purposes of immigration enforcement; (iii) sharing of information with federal immigration authorities other than

immigration or citizenship status; (iv) the use of local law enforcement to arrest or detain individuals solely for civil immigration violations; or (v) the use of local resources to assist with civil immigration enforcement activities." ECF No. 111 (Preliminary Injunction Order). Defendants disseminated notice of this Order. ECF Nos. 119, 123. On May 3, 2025, the Court issued a lengthier decision to explain its reasoning in full. ECF No. 126 (Further Order).

On May 5, 2025, Plaintiffs filed a motion for expedited briefing and a concurrent motion to modify and/or enforce the preliminary injunction to request relief from Section 2 and Section 3(a) of Executive Order 14,287, entitled "Protecting American Communities from Criminal Aliens," dated April 28, 2025. ECF No. 128. Plaintiffs also request that Defendants be enjoined from withholding funding on "any other materially similar directive," which may include directives not yet in existence. ECF No. 128-2 at 2.

## II.  Executive Order 14,287.

Executive Order 14,287, *inter alia*, instructs the "Attorney General, in coordination with the Secretary of Homeland Security," to "publish a list of States and local jurisdictions that obstruct the enforcement of Federal immigration laws (sanctuary jurisdictions)," within thirty days of the date of the Executive Order. Proclamation No. 14,287, 90 Fed. Reg. 84 (Apr. 28, 2025). "Immediately following each publication" [of such list], the Attorney General and the Secretary of Homeland Security shall notify each sanctuary jurisdiction regarding its defiance of Federal immigration law enforcement and any potential violations of Federal criminal law." *Id* Thereafter, with respect to sanctuary jurisdictions that are so designated, "the head of each executive department or agency (agency), in coordination with the Director of the Office of Management and Budget and as permitted by law, shall identify appropriate Federal funds to sanctuary jurisdictions, including grants and contracts, for suspension or termination, as appropriate." *Id.*

In the Court's May 3, 2025, further order on Plaintiffs' preliminary injunction, the Court noted:

> On April 28, 2025, four days after I issued the Preliminary Injunction Order in this case, President Trump issued another Executive Order concerning sanctuary cities. *See* Executive Order issued April 28, 2025 ("Protecting American Communities from Criminal Aliens"), -- Fed. Reg. – (April 28 EO). Given its timing, I do not consider the April 28 EO in any way in this Order, except to note that it is consistent with the Government's other Executive Orders and conduct since January 20, 2025.

*See* ECF No. 126 at 8, n.5. Plaintiffs' amended complaint does not include allegations about Executive

3

Order 14,287. ECF No. 22.

### III. The Executive has Broad Discretion in the Enforcement of Immigration Law and Congress Intended for State/Local Governments to Work with the Federal Government in Carrying Out Immigration Enforcement.

The Federal Government "has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Through the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, Congress has granted the Executive Branch significant authority to control the entry, movement, and other conduct of foreign nationals in the United States, and to administer and enforce the immigration laws. *See Arizona Dream Act Coal. v. Brewer,* 855 F.3d 957, 967 (9th Cir. 2017) ("By necessity, the federal statutory and regulatory scheme, as well as federal case law, vest the Executive with very broad discretion to determine enforcement priorities.").

The INA contains several provisions that address the involvement of state and local authorities in the enforcement of immigration law. For example, 8 U.S.C. § 1373, mandates the sharing of immigration information by state and local actors to the Executive:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

*Id.* § 1373(a). Section 1373 further proscribes any government entity from prohibiting or restricting "maintaining," or "sending," or "exchanging" information regarding the immigration status of any individual. 8 U.S.C. § 1373(b). Section 1373(c) provides, in turn, that federal immigration authorities "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." A like provision, 8 U.S.C. § 1644, entitled "Communication between State and local government agencies and Immigration and Naturalization Service" provides:

> Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

4

Thus, Congress clearly envisioned that local governments would cooperate with the federal Government in the enforcement of immigration laws through information sharing. *See, e.g.*, 8 U.S.C. §§ 1231(a)(2), (a)(4)(A), (a)(1)(B)(iii); 8 U.S.C. § 1226(c)(1), (2).

**STANDARD OF REVIEW**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citation omitted). Thus, all four factors must be met for the Court to grant a preliminary injunction, *id.*, and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Importantly, likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

This Court has "the power to supervise compliance with an injunction and to modify a preliminary injunction in consideration of new facts." *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (cleaned up). "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

**ARGUMENT**

**I.   Executive Order 14,287 Does Not Violate the Preliminary Injunction.**

Executive Order 14,287 does not violate the preliminary injunction issued by this Court on April 24, 2025. Executive Order 14,287 is neither part of Plaintiffs' operative pleadings, *see* ECF No. 22, nor was it in Plaintiffs' initial request for a preliminary injunction, *see* ECF No. 61. *See* ECF No. 126 at 8, n.5 That is because this Executive Order came out *after* the Court ruled on Plaintiffs' preliminary injunction. *Id.* This deficiency only highlights that Plaintiffs' request is premature because the Government's

5

evaluation process is ongoing. *See Southeast Alaska Conservation Council v. Federal Highway Admin.*, No. 1:06–cv–00009, 2013 WL 5532835, at *2 (D. Alaska, Oct. 3, 2013) ("Even if the State is correct to say that an EIS may not be required to support receipt and recording of some sort of easement along the East side of Lynn Canal, no specific easement has yet been identified. So, the court is being asked by the State to advise whether some unidentified easement would violate the injunction.").

Basic pleading requirements counsel whether injunctive relief is appropriate. FED R. CIV. P. 8(a)(2); *Reed v. Nevada*, No. 2:19-CV-00051, 2020 WL 2514312, at *2 (D. Nev. May 15, 2020) ("But this court is empowered to grant injunctive relief only based on claims pled in this action, and Reed's instant relief request far exceeds the scope of the limited issues he is litigating in this case."). Injunctive relief must be anchored in an actual case or controversy posed to the Court. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). And compliance with that standing requirement is measured by whether Plaintiff articulated such relief in the four corners of the complaint. *Id*. If not, Defendants lack notice of how to defend the case. FED. R. CIV. P. 8(a) (a pleading must contain "a short plain statement of the claim showing that the pleader is entitled to relief and (3) a demand for the relief sought"); *id*. 8(b) ("In responding to a pleading, a party must: (A) state in short plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party.").

Indeed, Plaintiffs' request for relief in their preliminary injunction, and the Court Order that flowed therefrom, was directly tied to specific language in two Executive Orders and agency memoranda. *Compare* ECF No. 61-1 (Plaintiffs' Proposed Preliminary Injunction Order), *with* ECF No. 111 at 5–6. Plaintiffs were careful to parse their relief, down to specific sentences of the executive directives they challenged. *See* ECF No. 94 at 3, n.3. And the Court acknowledged in its Further Order, that it did not consider Executive Order 14,287 "[g]iven its timing." *See* ECF No. 126 at 8, n.5. In light of this granular specificity, Defendants rightfully do not consider the Court's April 24, 2025 Order to encompass Executive Order 14,287. Neither did this Court. *Id*.

1 | Related, Executive Order 14,287 does not violate the preliminary injunction issued by this Court on April 24, 2025. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). And to the extent Plaintiffs seek to challenge Executive Order 14,287, they should amend their Complaint. Docket Text (Feb. 28, 2025), *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465-TNM (D.D.C.) (ordering Plaintiffs to file an Amended Complaint and Amended Preliminary Injunction following a change of material facts after the preliminary injunction was issued). The operative Complaint defines the scope of this case, and any relief to Plaintiffs would not be appropriate if that relief was not linked to the operative pleading. *Kindred v. Price*, No. 1:18-cv-00554, 2022 WL 1421484, at *2 (E.D. Cal. May 5, 2022), *report and recommendation adopted sub nom*, *Kindred v. Corona*, No. 1:18-cv-00554, 2022 WL 2133999 (E.D. Cal. June 14, 2022) ("As Plaintiff is seeking injunctive relief based on claim(s) not pled in the complaint, the Court will recommend that Plaintiff's motion be denied.").

Further, Plaintiffs seeks to enjoin "Section 2 and Section 3(a) of Executive Order 14,287 or any other materially similar directive to withhold, condition, or freeze federal funds to 'sanctuary' jurisdictions." *See* ECF No. 128-2. Notably, Executive Order 14,287 at § 2(a) only calls for the publication of a list, § 2(b) instructs that the identified sanctuary jurisdictions should be notified, and § 3(a) similarly calls for identification of funds for possible suspension or termination but does not direct for actual termination or suspension. Proclamation No. 14,287, 90 Fed. Reg. 84 (Apr. 28, 2025). Thus, even if Court's Preliminary Injunction Order somehow encompassed Executive Order 14,287, none of those directives seemingly conflict with the Court's Preliminary Injunction prohibiting Defendants from taking action to "withhold, condition, or freeze federal funds to 'sanctuary' jurisdictions. . . ." *See* ECF No. 111.

Plaintiffs baselessly imply that Executive Order 14,287 is an attempted end-run around this Court's preliminary injunction Order. Pl. Mot. at 9. But the cases Plaintiffs rely on arise from contempt proceedings, where the litigants created what appears to be a deliberate scheme to violate a Court Order. That is not the case here. For instance, in *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, the Ninth Circuit affirmed contempt proceedings when an enjoined party empowered others who were not named in the injunction to violate it. 774 F.3d 935, 940 (9th Cir. 2014). Executive Order 14,287 is a far cry from that scenario. Like the other executive directives Plaintiffs previously challenged, this Order similarly instructs the Attorney General, the Secretary of Homeland Security, and agency leadership to

7

identify or evaluate certain funding decisions. *See* Proclamation No. 14,159, 90 Fed. Reg. 8443 § 17 (Jan. 20, 2025) ("The Attorney General and the Secretary of Homeland Security shall[…]"); *see also* Proclamation No. 14,218, 90 Fed. Reg. 10581 § 2(ii) (Feb. 19, 2025) ([t] the head of each executive department or agency (agency) shall[…]). And this Court made clear that the Order applies not just to the named Defendants, but broadly. ECF No. 111 at 5, n.5. But the Court correctly recognized it could not, and thus did not, enjoin the President himself. *Id.* The President has authority to issue Executive Orders as the head of the executive branch and could not violate the Court's prior order irrespective of its scope given that it does not apply to him. Furthermore, certain parts of Executive Order 14,287 call for other executive action and/or processes that either was not contemplated by the previously challenged directives or was not enjoined by this Court. *See, e.g.*, 90 Fed. Reg. 84 § 2 (requiring the designation and notification of sanctuary jurisdictions); *id.* § 4 ("develop guidance, rules, or other appropriate mechanisms to ensure appropriate eligibility verification is conducted for individuals received Federal public benefits…"); *see also*, ECF No. 111 (enjoining "action to withhold, freeze, or condition federal funds. . . ."). These facts dilute Plaintiffs' allegation that Defendants were somehow using Executive Order 14,287 to circumvent the operative preliminary injunction here.

Plaintiffs' additional citations are similarly inapplicable here. In *McComb v. Jacksonville Paper Co.*, the Supreme Court affirmed contempt proceedings in light of an injunction prohibiting the defendants from violating the minimum wage, overtime, and record-keeping provisions of Fair Labor Standard Act, when the defendants set up a "fictitious" compensation paradigm without regard for the hours worked, failure to pay overtime compensation, misclassification of employees, and a bonus structure that did not account for certain time accrued. 336 U.S. 187, 192 (1949). Likewise, in *Marshak v. Treadwell*, the Third Circuit found contempt after finding that a litigant tried to circumvent a trademark infringement by promoting a business under a different name. 595 F.3d 478, 489 (3d Cir. 2009); *see also Zest Anchors LLC v. Geryon Ventures, LLC*, 22-CV-230, 2022 WL 16838806, at *4 (S.D. Cal. Nov. 9, 2022) (finding that selling parts of a product, as opposed to the whole product in-tact, violates the preliminary injunction).

Here, the Court indicated in its May 3, 2025, Further Order, that Executive Order 14,287 is "consistent" with the other executive directives that Plaintiffs challenge. ECF No. 128 at 8, n.5. This Executive Order also calls for an evaluation of funding—no funding has been impacted yet. The Court's

preliminary injunction here did not hamstring the Government from proceeding with its deliberative processes, as Executive Order 14,287 contemplates. Even if this Court improperly rejects the significance of the important qualifiers in this order to identify "appropriate" funds and terminate or suspend "as appropriate," agencies have authority to review their grants or contracts, meaning that the Order is not invalid on its face even under this Court's reasoning. *See Reno v. Flores*, 507 U.S. 292, 300 (1993) (to prevail in a facial challenge to a regulation "respondents 'must establish that no set of circumstances exists under which [the regulation] would be valid'"). Indeed, the Ninth Circuit has held that some grants may consider sanctuary city policies in issuance. *See City of Los Angeles v. Barr*, 929 F.3d 1163, 1178 (2019) ("DOJ's inclusion of immigration-related scoring factors as a component of its implementation of its grant program is well within DOJ's broad authority to carry out the Act."). Moreover, disputes over contract terminations are not within this Court's jurisdiction and would be reviewed under the terms of the appropriate grant or contract in the Court of Federal Claims. *See Department of Education v. California*, 145 S.Ct. 966 (2025) ("the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money'" and "[i]nstead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States'"). Indeed, the prior Executive Directives used the terms "funds" and "federal funding" as opposed to specifying "grants and contracts," as the language in Executive Order 14,287 indicates. Thus, the Executive Order does not evidence a "scheme" to work around Plaintiffs' preliminary injunction request. Instead, as Defendants maintain, it demonstrates that Plaintiffs' claims are unripe because a deliberative process is ongoing.

Next, regarding Plaintiffs' request for relief on executive directives not yet in existence or that Plaintiffs are unable to identify for the purposes of this motion practice, *see* ECF No. 128-2 ("any other materially similar directive"), Plaintiffs seek an advisory opinion (in part), which is improper. *See City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086-87 (9th Cir. 2022) ("Similarly, [a] request for injunctive relief remains live only so long as there is some present harm left to enjoin and [a] plaintiff who can[] reasonably be expected to benefit from prospective relief ordered against the defendant.") (internal quotations omitted) (alteration in original); *Mory v. City of Chula Vista*, 06-CV-1460, 2008 WL 360071, at *5 (S.D. Cal., Feb. 11, 2008) ("Therefore, the existence of this dispute 'hangs on future contingencies,' rendering Plaintiffs' declaratory relief claims unripe. Consequently, if the Court were to grant the

9

1   declaratory relief that Plaintiffs request, it would impermissibly render an advisory opinion.") (citation
2   omitted); *see also Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 221–22 (1974)
3   ('The desire to obtain (sweeping relief) cannot be accepted as a substitute for compliance with the general
4   rule that the complainant must present facts sufficient to show that his individual need requires the remedy
5   for which he asks.") (internal quotations omitted) (citation omitted).

6       Accordingly, the Court should deny Plaintiffs' motion because their operative Complaint does not
7   reflect their requested relief. Should the Court grant any of Plaintiffs' requested relief, it should be limited
8   to identifiable Executive directives.

9   **II.   Plaintiffs' Claims Are Not Ripe.**

10       Defendants maintain that Plaintiffs' claims are not ripe, and that therefore, they cannot establish a
11   likelihood of success on the merits. ECF No. 93. That is because Executive Order 14,287 calls for an
12   evaluation process and no funding has been impacted. Indeed, there would be no need for such an
13   evaluation if *all* federal funding was going to be impacted, as Plaintiffs continue to suggest.

14       A dispute is ripe "if it presents concrete legal issues, … in actual cases, not abstractions." *Mont.*
15   *Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quotation marks and alteration
16   omitted); *see Anderson v. Green*, 513 U.S. 557, 559 (1995) (per curiam) ("[R]ipeness is peculiarly a
17   question of timing[.]"). The ripeness doctrine "is intended to prevent 'premature adjudication' and judicial
18   entanglement in 'abstract disagreements.'" *United States v. King Cnty.*, 122 F.4th 740, 753 (9th Cir. 2024).
19   Indeed, "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as
20   anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).
21   Necessarily, if contingent events do not unfold, Plaintiffs will not have suffered the concrete and
22   particularized injury called for in *Winter*, 555 U.S. at 22. *Id.*

23       At this stage, Plaintiffs cannot demonstrate a likelihood of success on the merits because their
24   claims are palpably premature. Plaintiffs do not assert that any specific action, stemming from Executive
25   Order 14,287, has been taken against them *at all*. Instead, Plaintiffs are challenging a deliberative process
26   to evaluate lawful, federal funding limitations. To be clear, Executive Order 14,287 has not impacted any
27   federal funding provided to any of the Plaintiffs. Indeed, Plaintiffs have not identified so much as a single
28   cent of federal funding that they have lost because of the challenged actions.

Section Two of Executive Order 14,287 instructs the "Attorney General, in coordination with the Secretary of Homeland Security," to "publish a list of States and local jurisdictions that obstruct the enforcement of Federal immigration laws (sanctuary jurisdictions)," within thirty days of the date of the Executive Order. Proclamation No. 14,287, 90 Fed. Reg. 84 (Apr. 28, 2025). Subsequently, the Attorney General and the Secretary must notice each sanctuary jurisdiction of certain information. *Id.* And finally, with respect to sanctuary jurisdictions so designated, "the head of each executive department or agency (agency), in coordination with the Director of the Office of Management and Budget and as permitted by law, shall *identify* appropriate Federal funds to sanctuary jurisdictions, including grants and contracts, for suspension or termination, as appropriate." *Id.* (emphasis added). Plaintiffs' allegations reduce to the theory that the mere existence of Executive Orders and memoranda, providing guidance to executive agencies, somehow already interferes with their state and local sovereignty. But Plaintiffs' speculation about the possibility of some future harm stemming from the application of this executive guidance is insufficient to establish a case or controversy over which the Court may preside. *See City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086-87 (9th Cir. 2022) (finding plaintiffs' facial constitutional challenge to federal statute, 8 U.S.C. § 1373, as unripe because any future injury was then purely conjectural). And "speculative contingencies afford no basis for [a court] passing" on unripe questions. *Id.* Therefore, the Court should deny Plaintiffs' preliminary injunction because they do not articulate an injury that is ripe for the Court's adjudication.

### III. Plaintiffs Lack Standing.

Similarly, Plaintiffs cannot establish a likelihood of succeeding on the merits in this case because they lack standing. Plaintiffs must establish an injury that is concrete, particularized, and imminent rather than "conjectural or hypothetical," *Spokeo v. Robins,* 578 U.S. 330, 339 (2016) (citations omitted), and must do so for each claim and each form of relief they seek, *Daimler Chrysler v. Cuno*, 547 U.S. 332, 352 (2006). And for the relief requested, Plaintiffs must show that relief will in fact redress their injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Plaintiffs ask the Court to issue an injunction preventing Defendants from impacting funding to localities based on "Section 2 and Section 3(a) of Executive Order 14,287 or any other materially similar directive." *See* ECF No. 128-2. In light of the

11

expedited briefing schedule in place here, Defendants incorporate, preserve, and reassert their briefing on justiciability in their opposition, *see* ECF No. 93, to Plaintiffs' original preliminary injunction.

While the Executive Order direct executive agencies to evaluate federal funding of certain localities, the "when" and "how" of the Executive Branch implementing this general directive, and how it will affect each Plaintiff is "no more than conjecture" at this time. *Trump v. New York*, 592 U.S. 125, 131 (2020) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). And in an attempt to demonstrate injury at this early stage, Plaintiffs repeatedly rely upon previous litigation that arose from DOJ requiring compliance with 8 U.S.C. § 1373 in order to receive the Byrne JAG grant. Pl. Br. 2, 5-6, 19-20, 2, 23, 24. But these decisions were made independently under the relevant governing statutes relating to the Byrne JAG program. And in any event, "past wrongs are 'insufficient by themselves to grant standing.'" *Wright v. SEIU*, 48 F.4th 1112, 1118 (9th Cir. 2022). Instead, Plaintiffs must show a likelihood of future harm that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Moreover, any future Executive action "will reflect both legal and practical constraints," as any action will be lawful, "making any prediction about future injury just that—a prediction." *Trump*, 592 U.S. at 133. As it stands, no action has been taken, no funding has been impacted, and no injury has been suffered. Because neither Defendants, nor Plaintiffs, nor the Court know which funding will be affected, Plaintiffs cannot assert a concrete, particularized, imminent injury. Plaintiffs' hypothetical injury—that the federal Government may withhold funding or otherwise penalize them for being sanctuary locales—is too speculative for this Court to adjudicate or redress at this time. *See San Francisco*, 42 F.4th at 1087. Specifically, it is too early to meaningfully assess the merits of any specific alleged injury with respect to Plaintiffs' claims—which may never actually arise.

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' motion to enforce and/or modify the preliminary injunction motion.

Dated: May 7, 2025

Respectfully submitted,

YAAKOV ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

ELIANIS PEREZ
Assistant Director

LAUREN FASCETT
Senior Litigation Counsel

ANGEL FLEMING
LINDSAY W. ZIMLIKI
VICTORIA TURCIOS
Trial Attorneys

*/s/ Caroline McGuire*
CAROLINE MCGUIRE
NY Bar No. 5854823
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

/s/ Caroline McGuire
Caroline McGuire
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorney for Defendants*

A