

CITY AND COUNTY OF SAN FRANCISCO

DAVID CHIU
City Attorney

OFFICE OF THE CITY ATTORNEY

KARUN TILAK
Deputy City Attorney

Direct Dial:    (415) 355-3308
Email:         karun.tilak@sfcityatty.org

June 13, 2025

**VIA CM/ECF**

Hon. William H. Orrick III
United States District Court
for the Northern District of California
450 Golden Gate Avenue,
San Francisco, CA 94102

     Re:   *City & County of San Francisco et al. v. Trump*, 25-cv-01350-WHO

Dear Judge Orrick:

Pursuant to the Court's May 6, 2025 Minute Order (ECF No. 131), the Parties submit this joint letter brief to bring to the Court's attention two disputes regarding (1) the application of the Court's preliminary injunction to certain agency grant terms and conditions; and (2) Plaintiffs' request that Defendants disclose a copy of the notices that the Court ordered Defendants to provide to all federal departments and agencies. Undersigned counsel for the parties met and conferred by videoconference on May 27, 2025 and June 3, 2025 regarding these issues.

## I.    PLAINTIFFS' POSITION

### A.    Application of Preliminary Injunction to Grant Conditions

#### 1.    DHS and DOT Standard Terms

DHS and DOT have implemented the challenged Executive Orders to condition funds to sanctuary jurisdictions. On April 18, DHS issued Standard Terms that apply to "all new federal awards" in FY 2025, and include several immigration conditions. Attachment B (April 18 DHS Standard Terms). Section IX of these terms requires grant recipients to certify to five different immigration conditions—including that they will "honor requests for cooperation, such as participation in joint operations," requests for information, and civil detainers, and will "provide access to detainees." *Id.* These conditions closely mirror language in Secretary Noem's February 19 Directive. Attachment C. Section XVII(2)(a)(iii) of the DHS Standard Terms also broadly requires that grant recipients certify that they do not "operate any program that benefits illegal immigrants or incentivizes illegal immigration." Attachment B. The standard terms do not define what it means to benefit illegal immigrants or incentivize illegal immigration, but appear to mirror Executive Order 14,218's language—which identifies so-called "sanctuary" jurisdictions as "fueling illegal immigration to the United States," and "facilitat[ing] the subsidization or promotion of illegal immigration." *See* 90 Fed. Reg. 10581 (Feb. 19, 2025).

On April 24, 2025, Secretary of Transportation Sean Duffy issued a letter ("Duffy Letter") announcing the department's policy of providing federal funding only to recipients that "cooperate with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." Attachment E. A press release accompanying the letter specifically

FOX PLAZA · 1390 MARKET STREET, 7TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3800 · FACSIMILE: (415) 437-4644

n:\cxlit\li2025\250739\01848314.docx

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 2
June 13, 2025

referenced and linked to Executive Order 14,159.[1]  Pursuant to this policy, DOT has now begun
including the precise language from the Duffy Letter in standard terms and template grant
agreements across its various operating administrations, including the Federal Transit
Administration ("FTA"), Federal Highway Administration ("FHWA"), Federal Aviation
Administration ("FAA"), and Federal Railroad Administration ("FRA") (collectively "DOT
Standard Terms").  Attachment F (Apr. 25, 2025 FTA Master Agreement v33) § 12(m);
Attachment G (Apr. 22, 2025 FHWA General Terms and Conditions) § 18.2; Attachment H
(FAA Airport Infrastructure Grant Template Agreement) § 32; Attachment I (Apr. 16, 2025 FRA
General Terms and Conditions) § 20.2.  These immigration standard terms have in turn been
incorporated into specific grant programs and grant agreements that Plaintiffs have received,
including grants that support transportation infrastructure and accessibility.  *See, e.g.*,
Attachment J (FHWA Safe Streets for All Grant Agreement) § 27.2; Attachment K (Better
Utilizing Infrastructure to Leverage Development Grant Agreement) § 21.2; Attachment L (May
9, 2025 SMART Grant General Terms and Conditions) § 24.2; *see also* Attachment A at p. 11
(listing grant agreements that Plaintiffs had received incorporating the DOT terms).[2]

      Contrary to Defendants' arguments, the DHS and DOT immigration conditions described
above clearly fall within the scope of the Preliminary Injunction.  This Court has already found
that the DHS Standard Terms "try to implement" the Executive Orders.  *See* Further Order
Regarding Prelim. Inj. ("May 3 Order"), ECF No. 126, at p. 5; *id.* at pp. 5–7.  And the terms flow
from a Secretary of Homeland Security directive that implements the challenged Executive
Orders and calls for the broad and wholesale withholding of federal funds based on a locality's
status as a "sanctuary" jurisdiction.  *See* Attachment C.  The DOT Standard Terms similarly
originate from the Secretary of Transportation's directive that implements Executive Order
14,159 and directs the categorical withholding of funding unless a jurisdiction cooperates with
federal immigration enforcement.  *See* Attachment E.

      The DHS and DOT immigration conditions violate the constitutional "first principles"
outlined in the Court's May 9 Order.  Defendants' claim that they will only apply the DOT
immigration condition where there is statutory authority rings hollow.  DOT has in fact already
applied this term virtually uniformly across its various operating administrations, including to
grants related to bridge improvements, railroad crossing studies, airport repairs, and public
transit accessibility, maintenance, and improvements—effectively conditioning entire swathes of
DOT funding on a jurisdiction's agreement to cooperate with ICE.  *See* Attachment A at p. 11;
Attachments F–L.  Defendants have refused to identify a statutory basis to justify immigration
conditions in the various DOT grants that Plaintiffs have identified.  *See* Attachment A at p. 3.

---

[1] Trump's Transportation Secretary Sean P. Duffy: Follow the Law, U.S. Department of
Transportation (Apr. 24, 2025) https://www.transportation.gov/briefing-room/trumps-
transportation-secretary-sean-p-duffy-follow-law.
[2] This list is not intended to be exhaustive, but rather to illustrate the breadth of grants to which
DOT is attaching immigration conditions.  Plaintiffs have learned about additional DOT grants
that incorporate immigration-related conditions since initiating this meet and confer.  For
example, one Plaintiff recently learned that six different DOT grants related to transit
maintenance and improvement signed as far back as December 13, 2024 have been updated in
DOT's online grants award system to incorporate the April 25 FTA Master Agreement. Upon
request, Plaintiffs can submit declarations regarding the various specific grant agreements that
Plaintiffs have received that incorporate the DOT Standard Terms.

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 3
June 13, 2025

And this Court has already found that transportation funding has no nexus to immigration enforcement for purposes of the Spending Clause. May 9 Order at p. 8.

The DHS Standard Terms similarly apply to "all new federal awards" regardless of any conceivable nexus to sanctuary policy. Attachment B at p. 1. Defendants argue that the terms will only apply based on an individualized assessment, and point to language on the DHS website (added on June 11) saying that "[n]ot all of DHS's Standard Terms and Conditions apply to every DHS grant program[]."[3] But language on a website can be removed at any time, and cannot be squared with the plain language of the Standard Terms—which have not been revised—and the very reason for having standard terms that apply uniformly to all grants (as opposed to grant-specific conditions). Even crediting Defendants' representation, DHS appears to have determined that the immigration condition may be applied to grants with no nexus to immigration, including FEMA grants that support critical emergency preparedness efforts in Plaintiffs' jurisdictions. *See* Attachment D (FEMA Memo) at p. 2 (acknowledging that immigration conditions may be applied to the Emergency Management Performance Grant, State Homeland Security Grant Program, and Urban Area Security Initiative grants); *cf.* McCluskey Decl., ECF No. 61-5, ¶¶ 8–11; Cole-Tindall Decl., ECF No. 61-6, ¶¶ 14–19; Öberg Decl., ECF No. 71, ¶4(k), (n)–(o); Williams Decl., ECF No. 76, ¶ 47 (describing the use of these grants for emergency preparedness); May 9 Order at p. 8 (noting that emergency funding has no nexus to immigration enforcement).[4]

Defendants have also not explained how, under their proposal, Plaintiffs will be on notice of whether Defendants have in fact identified a statutory authority for the immigration conditions contained in the standard terms and conditions. For example, Plaintiffs have already received, or expect to receive, grant agreements and notices of funding opportunity ("NOFOs") that incorporate by reference agency standard terms, or attach these terms as an exhibit. How are Plaintiffs to know whether the incorporation or attachment of the general terms and conditions is meant to also include the immigration conditions contained in those standard terms and if so, what statutory authority DHS or DOT has invoked? To date, Defendants have refused to answer to this question, despite the fact that Plaintiffs *presently* face this issue and have repeatedly asked Defendants for clarity. Attachment A at pp. 3, 5, 11, 13. Defendants' conduct therefore does not satisfy basic due process requirements or the requirement that any conditions on grants be unambiguous.

Finally, Defendants argue not only that the DHS and DOT Standard Terms are beyond the reach of the Court's order, but also that once those terms are incorporated into a particular grant program, that too is beyond the scope of the injunction and must be challenged through an amended complaint or separate lawsuit. The Court should not countenance this effort to effectively nullify the Court's injunction. There is a clear through-line between the enjoined Executive Orders, directives from department heads directing the widescale conditioning of funding to sanctuary jurisdictions pursuant to the Executive Orders, the inclusion of such conditions in broadly applicable agency standard terms, and steps to apply these standard terms in grant agreements with no nexus to immigration enforcement. Plaintiffs therefore respectfully request that the Court find that the Preliminary Injunction precludes application of the DOT Standard Terms or DHS Standard Terms in grants to Plaintiffs.

---

[3] https://www.dhs.gov/publication/dhs-standard-terms-and-conditions
[4] Defendants' citation to a June 6, 2025 declaration filed in *Illinois v. FEMA* is likewise unavailing because it acknowledges that FEMA may apply the immigration conditions to grants that Plaintiffs receive. *See* Defts.' Ex. 1.

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 4
June 13, 2025

### 2.    HUD Continuum of Care Grant

The HUD CoC grant agreements include language pulled directly from Executive Order 14,218—i.e., that "No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." *See* Attachment M at p. 2; *see also* McSpadden Decl., ECF No. 68, ¶¶ 4–6. Defendants argue that this language is not enjoined by the Preliminary Injunction because it is a condition on the use of awarded funds, and not a condition on receipt of the funds. Regardless of how Defendants parse the language, the relevant provision "condition[s] federal funds from" sanctuary jurisdictions. May 3 Order at p. 65. Defendants have provided no statutory authority for such a condition on funding, and there is no nexus between immigration enforcement and providing safety-net services for the homeless population.[5] Moreover, the Court has already found the language in Executive Order 14,218 to be unconstitutionally vague, May 3 Order at pp. 56–57, and the inclusion of identical language in the HUD CoC grant agreement suffers from the same constitutional deficiency. As such, under the Preliminary Injunction, Defendants cannot apply the HUD CoC grant language drawn from Executive Order 14,218 to Plaintiffs.

### B.    Disclosure of Notice to Federal Departments and Agencies

Plaintiffs have requested that Defendants disclose a copy of the court-ordered notice to all federal departments and agencies regarding the April 24 PI Order and the May 9 Order. Defendants have stated that they are not asserting a formal privilege but are not willing to share the notices without a court order. Defendants' position is untenable. DOJ has disclosed similar notices of preliminary injunctions in other cases. *See, e.g.*, *Nat'l Council of Nonprofits v. OMB*, ECF No. 54, No. 25-cv-00239 (D.D.C. Feb. 28, 2025); *State of New York v. Trump*, ECF No. 178, No. 25-cv-00039 (D.R.I. Apr. 6, 2025). Nor is a court order required for disclosure of these notices because they are clearly discoverable under Rule 26: they are relevant, not burdensome to produce, and admittedly not privileged. As such, Defendants cannot withhold a copy of the notices of the April 24 PI Order and May 9 Order provided to federal departments and agencies.

## II.    DEFENDANTS' POSITION

Plaintiffs' amended complaint challenged three specific and "related Executive Actions"—Executive Orders (EO) 14,159 and 14,219, and Attorney General Bondi's February 5, 2025 memorandum, and asked the Court "to enjoin Defendants from enforcing the challenged provisions of the [EOs] and DOJ's memo." *See* Dkt. 22, ¶ 10. The Court then enjoined Defendants from "taking any action to withhold, freeze, or condition federal funds from [Plaintiffs] based on (1) the first sentence of Section 17 of [EO] 14,159, (2) Section 2(a)(ii) of [EO] 14,218, or (3) the Preamble and Section I of the [DOJ memo]." Dkt. 111. Thereafter, the Court declined to enjoin a subsequent EO instructing departments to identify sanctuary cities and grant funds for possible termination and noted the injunction is "not intended to hamstring the

---

[5] A district court in the Western District of Washington recently held that various provisions in the HUD CoC grant terms and certain DOT standard terms—including the immigration-related conditions—are likely unconstitutional and arbitrary and capricious under the Administrative Procedure Act, and enjoined the application of those terms to the following Plaintiffs who are parties to that action: Martin Luther King Jr. County, City and County of San Francisco, County of Santa Clara, City of Minneapolis, City of Portland, and City of San José. *See* Order Granting Plts.' First & Second Mot. for PI, ECF No. 169, *King County v. Turner*, No. 25-cv-814 (W.D. Wash. June 3, 2025). However, several Plaintiffs in this case are not parties in *King County* and therefore are not covered by the preliminary injunction in that case.

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 5
June 13, 2025

Government's lawful evaluation of federal funds to States and localities that have sanctuary policies." Dkt. 136. But the Court clarified that the PI "shall be read to apply to *any* Executive Order or agency directive that purports to attempt to cut off federal funding from States or localities that meet the Government's definition of 'sanctuary' jurisdiction in the wholesale, overly broad, and unconstitutional manner threatened by Section 17 of EO 14,149 and Section 2(a)(ii) of EO 14,218." *Id.*

Now Plaintiffs assert that certain general terms and conditions associated with funding from DHS, DOT, and HUD—none of which has been applied to Plaintiffs—constitute a violation of the PI because they "mirror the language" in the EOs or "flow from" the type of agency directives the Court enjoined. This is an improper effort to broaden the scope of this lawsuit and the PI and to prejudge an array of distinct issues that are not properly before the Court.

Defendants confirmed during the parties' numerous meetings that—consistent with the PI—the agencies have not imposed these general terms based on the enjoined EOs or agency directives that operate in the same manner but instead will rely on independent statutory authority if and when they impose them on Plaintiffs (or at all). As the agencies are reviewing grants program by program and statute by statute, the Court should not allow Plaintiffs to use the PI as a blunt tool to categorically knock out any immigration conditions on any and all agency grants regardless of the legal basis for imposing such conditions. Indeed, Plaintiffs' own complaint acknowledges that it challenges only funding withheld or frozen on the basis of the EOs and memorandum that are the specific focus of this litigation—not every conceivable basis under federal law that might support the withholding of funding. *See* Dkt. 22 (Am. Compl.) ¶¶ 389-90, 400-01, 406; *see also* 184–210, 61 at 1 (wide ranging discussion of possible funding limitations).

Further, Plaintiffs do not contend that these agencies (DHS, DOT, HUD) have frozen or withheld from them any funds on the basis of any immigration-enforcement related conditions. Indeed, other suits have focused on those various agency actions, and each involve complex issues and require detailed analysis of federal grantmaking authority, statutory and appropriations law governing various grants, and the purposes and scope of various grant programs. As this Court knows, just one such program generated years of litigation in this Court. *See City of Los Angeles v. Barr*, 941 F.3d 931 (2019). Plaintiffs' approach to resolve this via PI compliance—let alone by short letter brief—is ill-suited to resolve the many nuanced questions that arise across countless grants and programs spanning multiple agencies. With that overview, Defendants offer the following agency-specific responses to Plaintiffs' allegations:

**DHS.** DHS committed that it would apply the 2025 Standard Terms and Conditions only as appropriate to specific grants after an individualized assessment, as contemplated in the Court's Clarifying Order. DHS has made clear on its public website that:

> Not all of DHS's Standard Terms and Conditions apply to every DHS grant programs. DHS directs individuals to review the program's NOFO and/or FEMA-State Agreement to determine which Terms and Conditions apply to a particular grant.

https://www.dhs.gov/publication/dhs-standard-terms-and-conditions (last visited June 12, 2025). That is the precise type of individualized consideration this Court's order permits and anticipates.

Additionally, Defendants provided Plaintiffs with the publicly filed declaration in *Illinois et al., v. FEMA et al.*, Case No. 25-cv-206 (D.R.I.), in which DHS and FEMA outlined their

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 6
June 13, 2025

individualized assessment and final determination to exempt 12 grant programs from immigration conditions, notwithstanding DHS' April 2025 general terms. *See* Defendants' Exhibit 1, Declaration of David Richardson, Senior Official Performing the Duties of the FEMA Administrator, ("Richardson Decl."), ¶¶ 6-7, 13-15. DHS reported that it is still assessing whether immigration conditions are appropriate for other programs and has not issued any Notices of Funding Opportunity (NOFOs) for Fiscal Year 2025; localities are not required to acknowledge DHS's terms until they apply for a NOFO. *Id*.

There may well be programs for which immigration-related conditions are authorized and appropriate. For example, DHS administers the Targeted Violence and Terrorism Prevention Grant Program (TVTP), which is authorized and appropriated through the Department's annual appropriations acts in its "Office of the Secretary and Executive Management—Federal Assistance" account. *See e.g.*, Department of Homeland Security Appropriations Act, 2024, Pub. L. No. 118-47, div. C., tit. I ("For necessary expenses of the Office of the Secretary and for executive management for Federal assistance through grants, contracts, cooperative agreements, and other activities, $33,000,000, which shall be transferred to ''Federal Emergency Management Agency—Federal Assistance'', of which $18,000,000 shall be for targeted violence and terrorism prevention grants…"). TVTP grant awards are discretionary and competitive, without statutory award criteria, and the legislative authority for TVTP is not prescriptive. The Department has substantial discretion to add grant conditions to these grants and there is a rational relationship between this program and immigration enforcement as the grant purpose is potentially undercut if DHS grants funds to a state or local government to prevent targeted violence and terrorism while at the same time that state or local government violates Federal statutes designed to support immigration law enforcement. To be clear, this case does not present that question; the point is simply that the Court should not sweep too broadly by treating the PI as foreclosing use of DHS's standard terms and conditions for *any* grant program.

**DOT.** Defendants also reported that DOT will only impose conditions on funding pursuant to statutory authority governing DOT grants. There are no allegations in the Complaint in this case regarding the scope of statutory authority DOT possesses relating to grant conditions, and DOT is not a defendant in this matter.

Like DHS, DOT may well have independent statutory authority to limit grant funding for particular programs. For example, pursuant to 49 U.S.C. § 5334(a), the Secretary of Transportation may "prescribe terms for a project that receives Federal financial assistance under this chapter (except terms the Secretary of Labor prescribes under section 5333(b) of this title)." 49 USC § 5334(a)(1). Additionally, the Secretary may "include in an agreement or instrument under this chapter a covenant or term the Secretary of Transportation considers necessary to carry out this chapter." *Id*. § 5334(a)(9). Plaintiffs assert that this Court already resolved the issue of whether DOT may place immigration conditions on grants in a parenthetical (*see* Dkt. 136 at 8), but Defendants submit there has been no analysis of any of these provisions—or any other specific provisions of statutory and appropriations law governing DOT—given that they are not parties to this case; their grants are not a subject of the Plaintiffs Complaint; and the PI dealt only with the purportedly categorical directives in the two EOs and the DOJ memorandum. We also note that it is not correct to say, without further analysis, that state transportation functions that may be supported by federal grants are categorically unrelated to immigration enforcement. *Cf. United States v. King Cnty., Washington*, 122 F.4th 740 (9th Cir. 2024) (local policy to preclude ICE access to county owned airport invalid under Supremacy Clause).

**HUD.** Like DHS and DOT, HUD will also only apply conditions that are based on statutory authority. For example, "[t]he Secretary may not provide assistance for a proposed project under this part unless the collaborative applicant involved agrees. . . to comply

CITY AND COUNTY OF SAN FRANCISCO                           OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 7
June 13, 2025

with such other terms and conditions as the Secretary may establish to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386(b)(8). To be sure, there may well be disputes over that authority and how it applies to particular grant programs; indeed, other litigation is ongoing over the use of immigration conditions in a particular HUD program. *See King County v. Turner*, No. 25-814 (W.D. Wash.). But those disputes are not pretermitted by the PI in this case. And questions about the scope of HUD's specific statutory authority is not properly before this Court because Plaintiffs did not sue HUD or make any allegations regarding HUD grants in this case.

Further, the HUD conditions Plaintiffs identify are restrictions on *the use of grant funds*, a limitation that is fundamentally different from the type of "wholesale" efforts to cut off or deny funds based a city *having sanctuary policies*. The PI addressed only the latter type of condition on eligibility; conditions about how government funds may be spent are well beyond the scope of this litigation. Contrary to Plaintiffs' contention, this is a meaningful difference. It is very hard to say that conditions on how grant funds themselves may be used is unrelated to the grant program or imposes any kind of coercion on local policy.

As to each of these agencies, Plaintiffs remain unsatisfied. But Plaintiffs' demand for clarity does not equate to a PI violation. *See* Dkt. 126 at 64 (The Government may "use all lawful means to enforce federal immigration laws"). The Court should not "entangle[e] [itself] in abstract disagreements over administrative policies," and should avoid premature interference with the administrative decision-making process. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (discussing ripeness and premature adjudication). To the extent that Plaintiffs may not have perfect clarity about every condition that may in the future be imposed by every agency under every funding program, that is the consequence of the type of suit they pursued. Plaintiffs' *desire* to now structure this case in a way that Defendants must defend piecemeal challenges to funding terms and repeatedly prove PI compliance is untenable.

If Plaintiffs wish to challenge an agency's statutory authority to add a grant condition, they must bring the challenge in a separate lawsuit independent from a PI compliance challenge.[6] *See* Dkt. 136 at 2. And, as flagged above, Plaintiffs and others have done so in *King County, et al., v. Turner et al.*, 2:25-cv-00814 (W.D. Wa.), a lawsuit brought by a group of localities—including six of the Plaintiffs in this case—challenging general terms and conditions for HUD and DOT as applied to seven specific HUD and DOT grant programs.[7] Similarly, in *Chelsea et al v. Trump et al.*, 1:25-cv-10442 (NMG) (D. Mass), the plaintiffs filed lawsuit that included DHS, DOT, and HUD as named defendants and specifically challenged, among other directives, DOT's General Terms and Conditions for its Safe Streets and Roads for All grants for fiscal year 2023. And in *Illinois, et al. v. FEMA, et al.*, 1:25-cv-00206 (D.R.I.), the plaintiffs, including the State of California, challenged DHS general terms and conditions as specifically applied to approximately ten FEMA grant programs. Notably, in those cases, the plaintiffs challenged *specific* terms in *specific* grants and the courts are then able to assess the named defendants-agencies' *specific* statutory authority to add these terms. *See id*. Defendants note that to the extent Plaintiffs are attempting to simultaneously make the same substantive challenge against

_____

[6] In past litigation, cases challenging discrete funding decisions were different from those challenging executive directives generally. *Compare Cal. ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1023-24 (N.D. Cal. 2018) (challenging termination of Byrne JAG funding) *with Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 507 (N.D. Cal. 2017) (challenging EO 13,768).

[7] On June 3, 2025, the Court enjoined HUD and DOT from imposing or enforcing certain conditions against the named plaintiffs in that case, some of which overlap with Plaintiffs here.

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 8
June 13, 2025

the same grants in multiple courts, such claim splitting is precluded by the Federal Rules. *See Adams v. California Dept. of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) ("in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same").

In short, this Court did not, and should not, demand that Defendants police all federal agencies and act as go-between to alleviate Plaintiffs' concerns about various terms and conditions that are all governed by distinct sources of funding authority and law.

**Notice.** With regard to Plaintiffs' request to see the court-ordered notice to all federal departments and agencies, Defendants have explained that they are not voluntarily providing Plaintiffs with copies as the Court did not require such disclosure and Defendants have confirmed on the record that the notices were disseminated as required by the Court's Order. As a general practice, absent a contrary court directive, the Government does not share such communications because of possible privilege concerns.

Very Truly Yours,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS
KARUN A. TILAK
Deputy City Attorneys

By:  */S/ KARUN A. TILAK*
KARUN A. TILAK
Deputy City Attorney

*Attorneys for Plaintiff City & County of San Francisco*

CITY AND COUNTY OF SAN FRANCISCO                OFFICE OF THE CITY ATTORNEY

Letter to Hon. William H. Orrick III
Page 9
June 13, 2025

TONY LOPRESTI
County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
STEFANIE L. WILSON
RAJIV NARAYAN
Deputy County Counsels
BILL NGUYEN
Litigation Fellow

By:  */s/ BILL NGUYEN*
BILL NGUYEN
Litigation Fellow

*Attorneys for Plaintiff County of Santa Clara*

BRETT A. SHUMATE                    By:  */s/ LAUREN FASCETT*
Assistant Attorney General              LAUREN FASCETT
Civil Division                          Senior Litigation Counsel
YAAKOV M. ROTH                          U.S. Department of Justice
Principal Deputy Assistant Attorney General   Civil Division
DREW C. ENSIGN                          Office of Immigration Litigation
Deputy Assistant Attorney General       Washington, D.C. 20044
ELIANIS PEREZ                           202-616-3466
Assistant Director                      Lauren.Fascett@usdoj.gov
Office of Immigration Litigation
LINDSAY ZIMLIKI                         *Counsel for Defendants*
CAROLINE MCGUIRE
ANGEL FLEMING
VICTORIA TURCIOS
Trial Attorneys

# ATTACHMENT A

| | |
|---|---|
| **From:** | Fascett, Lauren (CIV) |
| **To:** | Tilak, Karun (CAT); McGuire, Caroline (CIV); Bill Nguyen; Perez, Elianis (CIV); Turcios, Victoria E (CIV); Zimliki, Lindsay (CIV); Fleming, Angel (CIV) |
| **Cc:** | Eisenberg, Sara (CAT); Lee, Mollie (CAT); Kavita Narayan; Meredith Johnson; Rajiv Narayan; Stefanie Wilson; Mere, Yvonne (CAT) |
| **Subject:** | RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO |
| **Date:** | Thursday, June 5, 2025 3:22:47 PM |
| **Attachments:** | image006.png |

Hi Karun,

Thank you for outlining Plaintiffs' intentions to seek Court intervention. Since you have indicated you plan to file a motion to enforce, we believe you are no longer engaging in a meet and confer and are instead sending interrogatories via email. Thus, while I am providing *some* clarifications to your summary email in red below added within your earlier email, that is not a concession that Defendants agree your framing of their position generally.

Defendants will provide any further positions in either their portion of either a joint letter brief or via an opposition to Plaintiffs' unilateral letter brief. To that end, if you would like to proceed with a joint letter brief, Defendants will strive to exchange their initial portion by COB on Tuesday and a final section by COB on Thursday.

Best,
Lauren

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Wednesday, June 4, 2025 4:49 PM
**To:** McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <Kavita.Narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Caroline,

We first raised issues with the DHS, DOT, and HUD terms over three weeks ago. At this juncture, Defendants have had ample time to formulate their positions. We do not understand why Defendants need 48 hours to offer corrections to positions that they just articulated yesterday.

While we will review your proposed corrections, at this stage, Plaintiffs plan to seek relief from the Court. Given the time sensitivity we have repeatedly articulated, we believe we have more than satisfied our meet-and-confer obligations over the last three weeks to try and reach a resolution.

We plan to file a letter brief with the Court on Tuesday raising the DHS and DOT standard terms, the HUD CoC term, and our request for Defendants' notice to federal departments and agencies regarding the preliminary injunction and the May 9 order clarifying the preliminary injunction.

If Defendants would like to file a joint letter brief—which we understand to be the Court's preference—we propose that the parties exchange their sections on Monday at noon PT, and that Defendants provide Plaintiffs with their final section by 9am PT on Tuesday. We will then combine and file the letter brief.

Sincerely,

**Karun Tilak** (he/him)
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

---

**From:** McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>
**Sent:** Wednesday, June 4, 2025 11:40 AM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <Kavita.Narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Hi Karun,

Thank you for your message. Defendants will respond by COB tomorrow, and have several, forthcoming corrections to the below summary.

Sincerely,

**Caroline McGuire**
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4268
caroline.mcguire@usdoj.gov

---

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Tuesday, June 3, 2025 9:50 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <Kavita.Narayan@cco.sccgov.org>; Meredith Johnson

<meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Stefanie Wilson
<stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren and Caroline,

Thank you for your email. We want to confirm our understanding as to Defendants' position articulated
on today's meet-and-confer call so we can determine whether Plaintiffs need to seek relief from the
Court.

With respect to the DOT and DHS standard terms, we understand Defendants' position to be that the
standard terms identified in my May 12 email and subsequent correspondence are not covered by the
preliminary injunction because they do not flow from the Executive Order or an agency directive, and are
not themselves agency directives.
That is not a fully accurate representation of Defendants' position. As we have indicated, the agencies do
and will continue to apply conditions pursuant to statutory authority of the agency. They will not do so
based on the enjoined EOs, AG memo, or other EOs or "agency directive" as prohibited in the Clarifying
Order.  More specifically, as we conveyed in writing, DHS confirms that: DHS will apply the 2025 Standard
Terms and Conditions as appropriate to certain grants based on an individualized assessment of the
respective grant, as contemplated in the Court's Clarifying Order.  Similarly, DOT confirms that:  DOT will
only impose conditions on funding pursuant to statutory authority. Further, Defendants do not believe
that grant terms and conditions are "agency directives".

Defendants have stated that they will apply the immigration provisions in the standard terms where
there is "statutory authority." However, you have still not determined how Plaintiffs will know whether
the incorporation by reference of the standard terms document into a particular grant agreement or
notice of funding opportunity ("NOFO") means that Defendants believe there is statutory authority for
the immigration provision in the standard terms, or whether Plaintiffs should assume that the
immigration provisions are not included. You have also not identified the statutory authority for the
specific DOT grant programs identified in my prior correspondence.
Defendants do not believe that they have a duty to provide Plaintiffs in this case with a list of
statutory authority for agency grant conditions. Defendants will not be providing such
information to you via this PI compliance meet and confer.

And you have indicated that to the extent the immigration provision from the DOT and DHS standard
terms is incorporated into a grant program, that would not be covered by the preliminary injunction but
would need to be challenged either through an amended complaint seeking more specific relief and
naming DOT as a defendant or through a separate lawsuit.
Please recall that Judge Orrick specifically noted that the Government has the ability to "use all lawful
means to enforce federal immigration laws" (Dkt. 126 at 64) and stated that the PI "is not intended to
hamstring the Government's lawful evaluation of federal funds to States and localities that have
sanctuary policies" (Dkt. No. 136 at 8).  If Plaintiffs wish to challenge a condition added to a grant, then
Plaintiffs should bring such a challenge in a separate lawsuit or other manner independent from a PI
compliance challenge.

You have indicated that DOT is not retroactively applying revised terms and conditions to awards from
prior fiscal years and that terms and conditions in effect at the time of execution will continue to apply.
That is what DOT confirmed to us.

With respect to the HUD standard terms, we understand Defendants' position to be that the provision

we identified does not violate the preliminary injunction because it is not a condition on receipt of HUD federal funding, but rather a condition on expenditure of federal funds awarded under the grant.

Finally, with respect to Plaintiffs' request that Defendants disclose the notices provided to federal departments and agencies, we understand Defendants' position to be that they are not asserting formal privilege over the notices but will not disclose them absent a court order.
Defendants' position is that they are not voluntarily providing Plaintiffs with copies of the notices as the Court did not require such disclosure and Defendants have confirmed on the record that the notices were disseminated as required by the Court's Order.

Please let us know by close of business on Wednesday, 6/4, whether any of the above is inaccurate. As we have previously expressed, this is a time-sensitive issue for Plaintiffs and we need to determine how best to move forward.

Sincerely,


**Karun Tilak**
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email: karun.tilak@sfcityatty.org
www.sfcityattorney.org

---

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Tuesday, June 3, 2025 2:34 PM
**To:** McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <Kavita.Narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

## DOT has also confirmed the following:
DOT will only impose conditions on funding pursuant to statutory authority.
Thanks,
Lauren

---

**From:** McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>
**Sent:** Tuesday, June 3, 2025 1:57 PM
**To:** Bill Nguyen <bill.nguyen@cco.sccgov.org>; Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; Karun Tilak <Karun.Tilak@sfcityatty.org>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Sara Eisenberg <Sara.Eisenberg@sfcityatty.org>; Mollie Lee <Mollie.Lee@sfcityatty.org>; Kavita Narayan <Kavita.Narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Yvonne.Mere@sfcityatty.org

**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO


As discussed, DHS confirms the following:

DHS will apply the 2025 Standard Terms and Conditions as appropriate to certain grants based on an individualized assessment of the respective grant, as contemplated in the Court's Clarifying Order.


**Caroline McGuire**
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 532-4268
caroline.mcguire@usdoj.gov

**From:** Nguyen, Bill <bill.nguyen@cco.sccgov.org>
**Sent:** Wednesday, May 28, 2025 7:09 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <sara.eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Narayan, Kavita <Kavita.Narayan@cco.sccgov.org>; Johnson, Meredith <meredith.johnson@cco.sccgov.org>; Narayan, Rajiv <rajiv.narayan@cco.sccgov.org>; Wilson, Stefanie <stefanie.wilson@cco.sccgov.org>; yvonne.mere@sfcityatty.org
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Dear Lauren:

Thank you for meeting with us yesterday afternoon. We are available for a follow-up call on Friday, May 30, from 2 P.M. ET onward, and on Tuesday, June 3, between 12:30 and 2 P.M. ET and from 3 P.M. ET onward. Please let us know what time works best for you.

You stated yesterday that you are exploring either building a caveat into the standard terms we are concerned with or otherwise committing in writing that those terms will be applied only if an agency identifies specific statutory authority. On our next call, we hope to learn the following:

1. What is your concrete proposal for how DHS, DOT, and HUD will build in that caveat? As we touched on, HUD has said that it will not honor redlined grant agreements from the plaintiffs in *King County v. Turner*, No. 25-cv-00814 (W.D. Wa.). We would appreciate a clear description and example of your proposed procedure for each agency so that Plaintiffs here have a uniform, reliable approach to handling grant agreements incorporating the standard terms.

2. What have DHS, DOT, and HUD identified as specific statutory authority to impose immigration conditions on specific grants? With respect to DOT, you pointed to the general authority conferred by 49 U.S.C. §§ 5334(a)(1) & (9). We would appreciate a full list of specific statutory authority for

each agency.

Although we recognize the difficulty of coordinating with different agencies, many Plaintiffs are running up against the end of their fiscal years, deadlines to sign grant agreements, or both. For this reason, we seek clarity as soon as possible. If we do not have clear or satisfactory answers to the questions above by our next call, we intend to bring these matters to the Court's attention by joint letter brief. Thank you for your diligence and understanding.

Sincerely,
Bill



**Bill Nguyen** | Social Justice and Impact Litigation Fellow
Office of the County Counsel, County of Santa Clara
70 West Hedding Street, East Wing, 9th Floor | San José, CA 95110
Office: (408) 299-5994 | Mobile: (669) 279-9957
Pronoun: he
bill.nguyen@cco.sccgov.org | counsel.sccgov.org

NOTICE TO RECIPIENT: The information in this email is confidential and may be protected by the attorney–client and/or work product privileges. If you received this email in error, any review, use, dissemination, distribution, or copying of it is strictly prohibited. Please notify Administration, Office of the County Counsel, of the error immediately at (408) 299-5900 and delete this communication and any attached documents from your system.

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Wednesday, May 21, 2025 3:03 PM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <sara.eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Narayan, Kavita <Kavita.Narayan@cco.sccgov.org>; Johnson, Meredith <meredith.johnson@cco.sccgov.org>; Narayan, Rajiv <rajiv.narayan@cco.sccgov.org>; Nguyen, Bill <bill.nguyen@cco.sccgov.org>; Wilson, Stefanie <stefanie.wilson@cco.sccgov.org>; yvonne.mere@sfcityatty.org
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Karun,

Yes, 4PM ET on 5/27 should work for us.

Thanks,
Lauren

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>

**Sent:** Wednesday, May 21, 2025 5:47 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV)
<Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV)
<Victoria.E.Turcios2@usdoj.gov>; Zimlki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)
<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; 'Kavita Narayan' <kavita.narayan@cco.sccgov.org>; 'Meredith Johnson'
<meredith.johnson@cco.sccgov.org>; 'Rajiv Narayan' <rajiv.narayan@cco.sccgov.org>; 'Bill Nguyen'
<bill.nguyen@cco.sccgov.org>; 'Stefanie Wilson' <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT)
<Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

We are unavailable at 11am PT/2pm ET on Tuesday, but could be available at 1pm PT/4pm ET.
Please let us know if that will work for you.



**Karun Tilak** (he/him)
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Wednesday, May 21, 2025 2:16 PM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV)
<Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV)
<Victoria.E.Turcios2@usdoj.gov>; Zimlki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)
<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; 'Kavita Narayan' <kavita.narayan@cco.sccgov.org>; 'Meredith Johnson'
<meredith.johnson@cco.sccgov.org>; 'Rajiv Narayan' <rajiv.narayan@cco.sccgov.org>; 'Bill Nguyen'
<bill.nguyen@cco.sccgov.org>; 'Stefanie Wilson' <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT)
<Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Hi Karun,

Thank you for the additional information. We understand your concerns and the time-sensitive
nature of your inquiry. We are actively looking into these issues with Defendants. We
appreciate your patience and kindly ask that you allow us the rest of the week to get more
substantive answers. We propose a meeting on Tuesday, 5/27 at 2PM ET.

Thanks,
Lauren

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Wednesday, May 21, 2025 3:33 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; 'Kavita Narayan' <kavita.narayan@cco.sccgov.org>; 'Meredith Johnson' <meredith.johnson@cco.sccgov.org>; 'Rajiv Narayan' <rajiv.narayan@cco.sccgov.org>; 'Bill Nguyen' <bill.nguyen@cco.sccgov.org>; 'Stefanie Wilson' <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

It has come to our attention that DOT has inserted the same immigration cooperation requirement in terms and conditions for yet another grant, the BUILD grant program (formerly RAISE or TIGER grants). This language suffers from the same ambiguity and lack of nexus identified in the Court's order.

Moreover, it appears that with respect to both the BUILD program and Safe Streets for All program (which I previously raised), the immigration cooperation condition is not limited to new grant awards. Rather, DOT has revised the terms and conditions applicable to prior fiscal year awards—as far back as FY21 for BUILD and FY22 for Safe Streets for All—to include the immigration cooperation condition. Plaintiffs have grants under the BUILD and Safe Streets for All programs. To the extent DOT is purporting to retroactively require Plaintiffs to cooperate with immigration enforcement pursuant to grants awarded years ago, this heightens Plaintiff's need for clarity as to Defendant's position about whether these terms apply to Plaintiffs.

We are still awaiting your availability to meet and confer this week. I am available Friday anytime except 11am-12pm PT. I can also be available tomorrow afternoon. Otherwise, we are prepared to bring this matter to the Court's attention.

Karun



**Karun Tilak** (he/him)
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email: karun.tilak@sfcityatty.org
www.sfcityattorney.org

**From:** Tilak, Karun (CAT)
**Sent:** Tuesday, May 20, 2025 10:06 AM
**To:** 'Fascett, Lauren (CIV)' <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV)
<Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV)
<Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)
<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; 'Kavita Narayan' <kavita.narayan@cco.sccgov.org>; 'Meredith Johnson'
<meredith.johnson@cco.sccgov.org>; 'Rajiv Narayan' <rajiv.narayan@cco.sccgov.org>; 'Bill Nguyen'
<bill.nguyen@cco.sccgov.org>; 'Stefanie Wilson' <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT)
<Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

We identified the DOT, DHS, and HUD standard terms on May 12. In fact, the DHS and HUD terms
were incorporated in our PI briefing.  As my email from Monday makes clear, Plaintiffs are already
receiving grant agreements and need to make decisions soon.  This is a matter of urgency, and
Defendants unwillingness to provide a clear answer on the questions we've raised is concerning.

We expect that Defendants will be prepared to meet and confer by the end of the week.  Please
let us know your availability on Friday.

Thanks,



**Karun Tilak**
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Tuesday, May 20, 2025 9:41 AM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV)
<Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV)
<Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)
<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; 'Kavita Narayan' <kavita.narayan@cco.sccgov.org>; 'Meredith Johnson'
<meredith.johnson@cco.sccgov.org>; 'Rajiv Narayan' <rajiv.narayan@cco.sccgov.org>; 'Bill Nguyen'
<bill.nguyen@cco.sccgov.org>; 'Stefanie Wilson' <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT)
<Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Hi Karun,

We appreciate you providing this information. We need a bit more time to look into these specifics and discuss with Defendants in detail. Given that, we would like to postpone our meet and confer until will have more concrete information for you in order to have a more productive conversation. We will circle back later this week.

Thanks,
Lauren

---

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Monday, May 19, 2025 4:40 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; 'Kavita Narayan' <kavita.narayan@cco.sccgov.org>; 'Meredith Johnson' <meredith.johnson@cco.sccgov.org>; 'Rajiv Narayan' <rajiv.narayan@cco.sccgov.org>; 'Bill Nguyen' <bill.nguyen@cco.sccgov.org>; 'Stefanie Wilson' <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

In advance of our meet and confer tomorrow, I write to respond to your request that we identify specific Plaintiffs, grant agreements, and grant terms.

<u>DHS and DOT Standard Terms</u>
My May 12 email details the specific DHS and DOT standard terms that relate to immigration enforcement. *See, e.g.,* DHS Standard Terms (Apr. 18, 2025) § IX and XVII(2)(a)(iii); FTA Master Agreement (Apr. 25, 2025) § 12(m); FRA General Terms and Conditions (Apr. 16, 2025) § 20.2; FAA FY25 Airport Improvement Program Grant Agreement Template § 32; FHWA Competitive Grant Program General Terms and Conditions (Apr. 22, 2025) § 18.2.  We have also recently become aware of a provision in DOT's Safe Streets for All grant program general terms and conditions that mirrors the immigration enforcement language as other DOT standard terms.  *See* DOT General Terms & Conditions Under FY2023 SS4A Grant Program (Mar. 17, 2025) § 24.2.

These general terms and conditions are intended to apply to all funding awards disbursed by the agencies. *See, e.g.*, DHS Standard Terms p. 1 (stating that the terms apply to "*all* new federal awards of financial assistance . . . for which the federal award date occurs in FY 2025."); FTA Master Agreement at p.1 (stating that the terms in the master agreement apply to awards under numerous laws administered by the FTA). Thus, regardless of what specific grants Plaintiffs are applying for or receiving, the inclusion of immigration enforcement conditions in standard terms violates the injunction's requirement that Defendants engage in an individualized assessment of specific funding streams. Order Clarifying PI, ECF No. 136, at p. 6.  Indeed, the Court has already found that transportation funding (which comes from DOT) and funding for emergency management (which comes from FEMA, part of DHS) are both unrelated to immigration enforcement or sanctuary policies, *id.* at p. 8, so the imposition of immigration-related conditions on any transportation or emergency funding violates the Court's order.

Moreover, regardless of the specific grants into which they are incorporated, these terms are unconstitutionally ambiguous because they do not define what is required to "cooperate" with federal immigration enforcement, and they are coercive to the extent they require the use of local law enforcement to enforce or administer federal immigration law.

Nevertheless, the grants that Plaintiffs have or expect to receive that incorporate the standard conditions related to immigration enforcement only underscore the impropriety of these conditions under the preliminary injunction. For example:

1. San Francisco has already received grant agreements for signature that incorporate the FTA standard terms, including grants under the Transit Performance Initiative, the Enhanced Mobility of Seniors & Individuals with Disabilities program, and grants to improve the City's bus lines.
2. In addition, San Francisco has submitted grant applications to the FAA Airport Improvement Program ("AIP") for funds to rehabilitate airport taxiways, minimize the impact of aircraft noise on nearby communities, and obtain electric buses. San Francisco expects that these funds will be subject to the FAA AIP template grant agreement.
3. San Jose has received a grant agreement under the Safe Street for All grant program that includes the March 17 SS4A standard terms.
4. Portland and Minneapolis have received Railroad Crossing Elimination grants that include the FRA general terms.
5. Minneapolis received a Highway Administration grant for a bridge improvement project that included the FHWA general terms and conditions.
6. As detailed in Plaintiffs' declarations in support of the motion for preliminary injunction, several Plaintiffs rely on DHS funding for emergency and disaster preparedness and expect that these grant agreements will be subject to the DHS standard terms. *See, e.g.*, Cole-Tindall Decl. ¶¶ 14–19; Boyd Decl. ¶¶ 8–11; Williams Decl. ¶ 47.

These are only examples and are not intended to be exhaustive. Other Plaintiffs also receive funding under the grant programs discussed above and have, or expect to receive, grant agreements that include the standard terms related to cooperation with immigration enforcement.

HUD Continuum of Care Terms

Finally, with respect to the HUD Continuum of Care grants, as we have discussed in our court filings, those grants now include provisions requiring Plaintiffs to agree to language drawn straight from EO 14,218, i.e.: "No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." The Court has already found such language to be unconstitutionally ambiguous, and there is no nexus between immigration enforcement and the homelessness services funded by the Continuum of Care program. Plaintiffs, including San Francisco and Santa Clara, have outstanding Continuum of Care grant agreements that incorporate this language, and expect to receive additional grant agreements with these same terms. Apparently, HUD has taken the position that it will not honor executed grant agreements with Plaintiffs, including San Francisco, Santa Clara, and King County, without this language—notwithstanding the Court's preliminary injunction in this case and the Western District of Washington's temporary restraining order in *King County et al. v. Turner, et al.*, No. 2:25-cv-00914-BJR. *See* Declaration of Claudette Fernandez, ECF No. 56, in the *King County* case.

We look forward to discussing this matter further tomorrow and obtaining Defendants' confirmation that the DHS, DOT, and HUD terms discussed above and in my May 12 email are inapplicable to Plaintiffs.

Thanks,



**Karun Tilak** (he/him)
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

---

**From:** Tilak, Karun (CAT)
**Sent:** Friday, May 16, 2025 8:01 AM
**To:** 'Fascett, Lauren (CIV)' <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV)
<Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV)
<Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)
<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson
<meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen
<bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT)
<Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

Tuesday (5/20) at 1pm ET/10am PT works for Plaintiffs.  We will circulate a videoconference link.

Thanks,



**Karun Tilak**
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

---

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Thursday, May 15, 2025 4:02 PM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV)
<Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV)
<Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)
<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson
<meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen

<bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>

**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Karun,

It was not our intent to be non-responsive to your email. It appears you are asking us to confirm that DOJ and DHS will comply with the terms of Judge Orrick's Orders. Defendants do not feel that is necessary, as they believe the Orders speak for themselves. And we simply have not seen a situation in which we need to confirm to opposing counsel that our clients will comply with a court order. But to the extent there are specifics to discuss, we are open to meeting.

You state that "Many Plaintiffs have already received, and expect to receive, grant agreements that incorporate the DHS and DOT standard terms. Several Plaintiffs have also received grant agreements for HUD CoC funding that include the terms identified in my email." Would you please identify to which Plaintiffs, which grant agreements, and which specific terms you are referring? Then we are in a better position to investigate your claims and respond to your requests.

As for a meet and confer, we are not available tomorrow, but we could meet on Tuesday, 5/20 at 1PM ET/10AM PT.

Thanks,
Lauren

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Wednesday, May 14, 2025 5:56 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

Your email is entirely non-responsive to the issues posed in my email.

Many Plaintiffs have already received, and expect to receive, grant agreements that incorporate the DHS and DOT standard terms. Several Plaintiffs have also received grant agreements for HUD CoC funding that include the terms identified in my email. Plaintiffs therefore have a present need to know whether Defendants' position is that the immigration-enforcement conditions listed in my email below apply to Plaintiffs notwithstanding the preliminary injunction. Despite your assertion that the Court's orders speak for themselves, if Defendants cannot confirm that the terms listed in my email will not be applied to Plaintiffs, there is clearly a live dispute about whether Defendants are in compliance with the injunction.

Judge Orrick's standing order requires the parties to meet and confer by videoconference before submitting a dispute to the Court.  Please let us know your availability tomorrow or Friday to meet and confer regarding the above.  We would also like to meet and confer about whether Defendants are willing to provide Plaintiffs with the notices required by the April 24 and May 9 order.

Thanks,



**Karun Tilak** (he/him)
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

---

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Wednesday, May 14, 2025 12:21 PM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Hi Karun,

Defendants are in the process of distributing the Clarifying Order notice as required. Defendants believe the PI Order (ECF No. 111), Further Order on PI (ECF No. 126), and the Clarifying Order (ECF No. 136) speak for themselves and outline the Court's expectations of Defendants. Defendants do not believe there is any live dispute warranting a dispute letter for the Court to resolve. However, please do reach out with specific funding issues concerning Plaintiffs, if any arise.

Best,
Lauren

---

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Monday, May 12, 2025 12:36 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV)

<Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT)
<Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson
<meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen
<bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT)
<Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren and Caroline,

In light of the Court's order clarifying the preliminary injunction, Plaintiffs seek confirmation that
Defendants will not withhold, freeze, or condition federal funds to Plaintiffs in violation of Judge
Orrick's orders.

First, please confirm that Defendants will not use agency-wide standard terms and conditions to
require local cooperation with federal civil immigration authorities as a condition to receive
agency funding. These standard terms and conditions violate Defendants' constitutional obligation
to make an individualized determination about whether "there is a nexus between the funding
stream, the jurisdiction's policies, and the desired immigration related conditions," Order
Clarifying PI, ECF No. 136, at p. 6, and instead require civil immigration enforcement cooperation
as a standard term applicable to all agency grants.

Examples of such standard terms and conditions include:
1. Department of Homeland Security Standard Terms (April 18, 2025) Sections IX and
   XVII(2)(a)(iii): The Court has already determined that the DHS standard terms implement
   the Executive Orders. *See* Further PI Order, ECF No. 126, at pp. 5–7.
2. The following Department of Transportation standard terms and conditions, each of which
   requires that recipients certify that they are "cooperating with . . . U.S. Immigration and
   Customs Enforcement (ICE) and other Federal offices and components of the Department
   of Homeland Security in the enforcement of Federal immigration law." As the Court's
   recent order makes clear, transportation funds have "little or nothing to do with sanctuary
   policies," and categorically conditioning such funds on local cooperation with immigration
   enforcement runs afoul of the injunction. *See* Order Clarifying PI at p. 8.
   1. Federal Transit Administration ("FTA") Master Agreement (Apr. 25, 2025) §
      12(m)
   2. Federal Railroad Administration ("FRA") General Terms and Conditions (Apr. 16,
      2025) § 20.2
   3. Federal Aviation Administration ("FAA") FY25 Grant Agreement Template § 32
   4. Federal Highway Administration ("FHWA") Competitive Grant Program General
      Terms and Conditions (Apr. 22, 2025) § 18.2

Second, Judge Orrick's orders enjoin Defendants from imposing funding conditions on an
individualized basis without the appropriate authorization, unambiguous language, and requisite
nexus. An existing example of a grant-specific condition that likewise violates the constitutional
parameters identified in the Court's order is the HUD Continuum of Care grants, which have no
nexus to immigration enforcement, yet include grant conditions that expressly reference Executive
Order 14,218 and closely mirror the unconstitutional portions of Section 2(a)(ii) of the Executive
Order. *See* Further PI Order at 7.

Please confirm that Defendants will not apply the above-referenced terms and conditions, or other
similar terms and conditions, in grants to Plaintiffs. If Defendants disagree, we propose seeking a
ruling from the Court through a 5-page joint dispute letter, as Judge Orrick suggested. We would
appreciate a response by noon PT on Wednesday, May 14. We are available to meet and confer
regarding the above if helpful.

Thanks,



**Karun Tilak**
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

---

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Friday, May 2, 2025 2:01 PM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Hi Karun,

Defendants' position is that the Court's April 24, 2025, PI Order does not apply to the April 28 Executive Order.
That said, we are not aware of any plan to deny funding based on the April 28 EO provisions that might arguably overlap with the enjoined EO provisions.

Thanks,
Lauren

---

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Friday, May 2, 2025 3:59 PM
**To:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Lauren,

As to the April 28 Executive Order, is it Defendants' position that the PI Order does not apply to the April 28 Executive Order's direction to federal agencies to identify and withhold funding from designated "sanctuary" jurisdictions because the April 28 EO postdates the PI Order?  I'd appreciate a response to this question by 5pm PT today.

We are in receipt of your email asserting privilege over the notice sent to federal agencies and listing the agencies to whom notice was provided.  We will follow up regarding the notice separately.

Thanks,



**Karun Tilak**
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email:  karun.tilak@sfcityatty.org
www.sfcityattorney.org

**From:** Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>
**Sent:** Friday, May 2, 2025 12:39 PM
**To:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>; McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** RE: City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Counsel,

We have notified federal departments and agencies of the requirements of the PI order as required by the court. Regarding the April 28 Executive Order, as you know, it postdates the PI Order. If you become aware of or are concerned about a specific federal government action, please let us know.

Best,
Lauren
_____
Lauren Fascett
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dep't of Justice
202-616-3466
Lauren.Fascett@usdoj.gov

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader for this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use, or copying of this message or portion thereof is strictly prohibited. If you have received this message in error, please reply immediately to the sender and delete this message. Thank you.

**From:** Tilak, Karun (CAT) <Karun.Tilak@sfcityatty.org>
**Sent:** Tuesday, April 29, 2025 7:53 PM
**To:** McGuire, Caroline (CIV) <Caroline.McGuire@usdoj.gov>; Fascett, Lauren (CIV) <Lauren.Fascett@usdoj.gov>; Perez, Elianis (CIV) <Elianis.Perez@usdoj.gov>; Turcios, Victoria E (CIV) <Victoria.E.Turcios2@usdoj.gov>; Zimliki, Lindsay (CIV) <Lindsay.Zimliki@usdoj.gov>; Fleming, Angel (CIV) <Angel.Fleming@usdoj.gov>
**Cc:** Eisenberg, Sara (CAT) <Sara.Eisenberg@sfcityatty.org>; Lee, Mollie (CAT) <Mollie.Lee@sfcityatty.org>; Kavita Narayan <kavita.narayan@cco.sccgov.org>; Meredith Johnson <meredith.johnson@cco.sccgov.org>; Rajiv Narayan <rajiv.narayan@cco.sccgov.org>; Bill Nguyen <bill.nguyen@cco.sccgov.org>; Stefanie Wilson <stefanie.wilson@cco.sccgov.org>; Mere, Yvonne (CAT) <Yvonne.Mere@sfcityatty.org>
**Subject:** [EXTERNAL] City & County of San Francisco et al. v. Trump. 25-cv-01350-WHO

Counsel,

On April 28, President Trump issued an Executive Order entitled "Protecting the American People from Criminal Aliens" ("April 28 Executive Order"), which threatens to "suspend" or "terminate" federal funding from so-called "sanctuary jurisdictions" designated by the Attorney General and Department of Homeland Security.

In light of Judge Orrick's April 24 order, please confirm that Plaintiffs' federal funding will not be suspended, terminated, withheld, frozen, or conditioned pursuant to the April 28 Executive Order.

We would appreciate your confirmation by 5pm PT on Friday, May 2. Otherwise, Plaintiffs are prepared to seek clarification from the Court.

Sincerely,

<image012.jpg>
**Karun Tilak** (he/him)
Deputy City Attorney
Office of City Attorney David Chiu
Phone: (415) 355-3308
Email: karun.tilak@sfcityatty.org
www.sfcityattorney.org

# ATTACHMENT B

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

The Fiscal Year (FY) 2025 Department of Homeland Security (DHS) Standard Terms and Conditions apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2025 and flow down to subrecipients unless a term or condition specifically indicates otherwise. For federal continuation awards made in subsequent FYs, the FY 2025 DHS Standard Terms and Conditions apply unless otherwise specified in the terms and conditions of the continuation awards. The United States has the right to seek judicial enforcement of these terms and conditions.

All legislation and digital resources are referenced with no digital links. These FY 2025 DHS Standard Terms and Conditions are maintained on the DHS website at https://www.dhs.gov/publication/dhs-standard-terms-and-conditions.

## A. Assurance, Administrative Requirements, Cost Principles, Representations, and Certifications

I.    Recipients must complete either the Office of Management and Budget (OMB) Standard Form 424B Assurances – Non- Construction Programs, or OMB Standard Form 424D Assurances – Construction Programs, as applicable. Certain assurances in these documents may not be applicable to your program and the DHS financial assistance office (DHS FAO) may require applicants to certify additional assurances. Applicants are required to fill out the assurances, as instructed.

## B. General Acknowledgements and Assurances Recipients are required to follow the applicable provisions of the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in effect as of the federal award date and located in Title 2, Code of Federal Regulations, Part 200 and adopted by DHS at 2 C.F.R. § 3002.10.

All recipients and subrecipients must acknowledge and agree to provide DHS access to records, accounts, documents, information, facilities, and staff pursuant to 2 C.F.R. § 200.337.

I.    Recipients must cooperate with any DHS compliance reviews or compliance investigations.

II.   Recipients must give DHS access to examine and copy records, accounts, and other documents and sources of information related to the federal award and permit access to facilities and personnel.

III.  Recipients must submit timely, complete, and accurate reports to the appropriate DHS officials and maintain appropriate backup documentation to support the reports.

IV.   Recipients must comply with all other special reporting, data collection, and evaluation requirements required by law, federal regulation, Notice of Funding Opportunity, federal award specific terms and conditions, and/or DHS Component program guidance. Organization costs related to data and evaluation are allowable. The definition of data and evaluation costs is in 2 C.F.R. § 200.455(c), the full text of which is incorporated by reference.

V.    Recipients must complete DHS Form 3095 within 60 days of receipt of the Notice of Award for the first award under which this term applies. For further instructions and to access the form, please visit: https://www.dhs.gov/civil-rightsresources-recipients-dhs-financial-assistance.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

implementing regulations for the Act are found at 6 C.F.R. Part 21. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 7.

VIII.    _Civil Rights Act of 1968_

Recipients must comply with Title VIII of the _Civil Rights Act of 1968_, Pub. L. No. 90284 (codified as amended at 42 U.S.C. § 3601 _et seq._) which prohibits recipients from discriminating in the sale, rental, financing, and advertising of dwellings, or in the provision of services in connection. therewith, on the basis of race, color, national origin, religion, disability, familial status, and sex, as implemented by the U.S. Department of Housing and Urban Development at 24 C.F.R. Part 100. The prohibition on disability discrimination includes the requirement that new multifamily housing with four or more dwelling units— i.e., the public and common use areas and individual apartment units (all units in buildings with elevators and ground-floor units in buildings without elevators)—be designed and constructed with certain accessible features. (See 24 C.F.R. Part 100, Subpart D.)

IX.    Communication and Cooperation with the Department of Homeland Security and Immigration Officials

(1)    All recipients and other recipients of funds under this award must agree that they will comply with the following requirements related to coordination and cooperation with the Department of Homeland Security and immigration officials:

(a)    They must comply with the requirements of 8 U.S.C. §§ 1373 and 1644. These statutes prohibit restrictions on information sharing by state and local government entities with DHS regarding the citizenship or immigration status, lawful or unlawful, of any individual. Additionally, 8 U.S.C. § 1373 prohibits any person or agency from prohibiting, or in any way restricting, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status of any individual: 1) sending such information to, or requesting or receiving such information from, Federal immigration officials; 2) maintaining such information; or 3) exchanging such information with any other Federal, State, or local government entity;

(b)    They must comply with other relevant laws related to immigration, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, 8 U.S.C. § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability regarding these statutes;

(c)    That they will honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of an alien pursuant to a valid detainer. A jurisdiction does not fail to comply with this requirement merely because it lacks the necessary resources to assist in a particular instance;

(d)    That they will provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien; and

(e)    That they will not leak or otherwise publicize the existence of an immigration enforcement operation.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

(2) The recipient must certify under penalty of perjury pursuant to 28 U.S.C. § 1746 and using a form that is acceptable to DHS, that it will comply with the requirements of this term. Additionally, the recipient agrees that it will require any subrecipients or contractors to certify in the same manner that they will comply with this term prior to providing them with any funding under this award.

(3) The recipient agrees that compliance with this term is material to the Government's decision to make or continue with this award and that the Department of homeland Security may terminate this grant, or take any other allowable enforcement action, if the recipient fails to comply with this term.

X.     Copyright

Recipients must affix the applicable copyright notices of 17 U.S.C. §§ 401 or 402 to any work first produced under federal awards and also include an acknowledgement that the work was produced under a federal award (including the federal award number and federal awarding agency). As detailed in 2 C.F.R. § 200.315, a federal awarding agency reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes and to authorize others to do so.

XI.     Debarment and Suspension

Recipients must comply with the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689 set forth at 2 C.F.R. Part 180 as implemented by DHS at 2 C.F.R. Part 3000. These regulations prohibit recipients from entering into covered transactions (such as subawards and contracts) with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in federal assistance programs or activities.

XII.     Drug-Free Workplace Regulations

Recipients must comply with drug-free workplace requirements in Subpart B (or Subpart C, if the recipient is an individual) of 2 C.F.R. Part 3001, which adopts the Government- wide implementation (2 C.F.R. Part 182) of the *Drug-Free Workplace Act of 1988* (41 U.S.C. §§ 8101-8106).

XIII.     Duplicative Costs

Recipients are prohibited from charging any cost to this federal award that will be included as a cost or used to meet cost sharing requirements of any other federal award in either the current or a prior budget period. See 2 C.F.R. § 200.403(f). However, recipients may shift costs that are allowable under two or more federal awards where otherwise permitted by federal statutes, regulations, or the federal award terms and conditions.

XIV.     Education Amendments of 1972 (*Equal Opportunity in Education Act*) – Title IX

Recipients must comply with the requirements of Title IX of the Education Amendments of 1972, Pub. L. No. 92-318 (codified as amended at 20 U.S.C. § 1681 *et seq.*), which provide that no person in the United States will, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. DHS implementing regulations are codified at 6 C.F.R. Part 17. Recipients of a federal award from the Federal Emergency Management Agency (FEMA) must also comply with FEMA's implementing regulations at 44 C.F.R. Part 19.

# FY 2025 DHS STANDARD TERMS AND CONDITIONS

XV. *Energy Policy and Conservation Act*

Recipients must comply with the requirements of the *Energy Policy and Conservation Act*, Pub. L. No. 94-163 (1975) (codified as amended at 42 U.S.C. § 6201 *et seq.*), which contain policies relating to energy efficiency that are defined in the state energy conservation plan issued in compliance with this Act.

XVI. Equal Treatment of Faith-Based Organizations

It is DHS policy to ensure the equal treatment of faith-based organizations in social service programs administered or supported by DHS or its component agencies, enabling those organizations to participate in providing important social services to beneficiaries.

Recipients must comply with the equal treatment policies and requirements contained in 6 C.F.R. Part 19 and other applicable statutes, regulations, and guidance governing the participations of faith-based organizations in individual DHS programs.

XVII. Anti-Discrimination

Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

(1) Definitions. As used in this clause –

(a) DEI means "diversity, equity, and inclusion."

(b) DEIA means "diversity, equity, inclusion, and accessibility."

(c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

(d) Discriminatory prohibited boycott means refusing to deal, cutting commercial relations, or otherwise limiting commercial relations specifically with Israeli companies or with companies doing business in or with Israel or authorized by, licensed by, or organized under the laws of Israel to do business.

(e) Federal anti-discrimination laws mean Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

(f) Illegal immigrant means any alien, as defined in 8 U.S.C. § 1101(a)(3), who has no lawful immigration status in the United States.

(2) Grant award certification.

(a) By accepting the grant award, recipients are certifying that:

(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws; and

(ii) They do not engage in and will not during the term of this award engage in, a discriminatory prohibited boycott.

(iii) They do not, and will not during the term of this award, operate any program that benefits illegal immigrants or incentivizes illegal immigration.

(3) DHS reserves the right to suspend payments in whole or in part and/or terminate financial assistance awards if the Secretary of Homeland Security or her designee determines that the recipient has violated any provision of subsection (2)..

# ATTACHMENT C



Secretary

**U.S. Department of Homeland Security**
Washington, DC 20528

February 19, 2025

MEMORANDUM FOR ALL AGENCIES AND OFFICES

FROM:      Kristi Noem
           Secretary

SUBJECT:   **Restricting Grant Funding for Sanctuary Jurisdictions**

---

Following the horrific attacks on this country on September 11, 2001, the American people
trusted their leaders to make sure it would never happen again. Among the circumstances that led
to those attacks was the failure to treat immigration as a national security issue. The 9/11
Commission Report, for example, recognized that "the institutions charged with protecting our
borders . . . did not understand how grave th[e] threat could be." 9/11 Commission Report at xvi.
The Commission also specifically noted that there were, at that time, "9 million people . . . in the
United States outside the legal immigration system." *Id.* at 390. A second factor recognized by
the Commission was the failure of different law enforcement entities to share information. The
Report recognized "pervasive problems of managing and sharing information across a large and
unwieldy government." *Id.* at xvi.

The year after those terrible attacks, President George W. Bush signed into the law the Homeland
Security Act of 2002. The Act created the Department of Homeland Security (DHS), and it
transferred into that new agency a number of important national security components, including
those responsible for immigration enforcement. Congress expressly found that "State and local
personnel have capabilities and opportunities to gather information on suspicious activities and
terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481(b)(8). Congress also found
that "[t]he Federal Government relies on State and local personnel to protect against terrorist
attack." *Id.* § 481(b)(2).

The bottom line is that partnership is an essential element of our national security and public
safety mission. And that mission undoubtedly includes immigration enforcement. State and local
governments that refuse to cooperate with, refuse to share information with, or even actively
obstruct federal immigration enforcement reject these ideals and the history we share in common
as Americans. If any government entity chooses to thumb its nose at the Department of
Homeland Security's national security and public safety mission, it should not receive a single
dollar of the Department's money unless Congress has specifically required it.

For purposes of this memorandum, "sanctuary jurisdictions" include the following:

- Jurisdictions that fail to comply with the information sharing requirements of 8 U.S.C.
  §§ 1373 and 1644.

Prohibiting Grant Funding for Sanctuary Jurisdictions
Page 2

- Jurisdictions that violate other relevant laws, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, *id.* § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, *id.* § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

- Jurisdictions that fail to honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of alien pursuant to a valid detainer. A jurisdiction, however, is not a sanctuary jurisdiction merely because it lacks the necessary resources to assist in a particular instance.

- Any jurisdiction that fails to provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien.

- Any jurisdiction that leaks the existence of an enforcement operation.

All components are to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions. To the extent consistent with relevant legal authorities and the applicable terms and conditions of each award, each component must cease providing federal funding to sanctuary jurisdictions. Components should also make appropriate criminal referrals to the Department of Justice where illegal conduct is discovered.

For questions regarding applicable legal authorities, components must consult with the General Counsel or his designee. For questions regarding whether a particular jurisdiction is a sanctuary jurisdiction, components must consult with the Director of Immigration and Customs Enforcement and the Commissioner of Customs and Border Protection or their designees.

Within 30 days, each component shall provide a report to the Undersecretary for Management with a summary of actions taken to comply with this memorandum.

# ATTACHMENT D



U.S. Department of Homeland Security
Washington, DC 20472

March 20, 2025

## DECISION

MEMORANDUM FOR:   Kristi Noem
                  Secretary of the Department of Homeland Security

FROM:             Cameron Hamilton
                  Senior Official Performing the Duties of the Administrator
                  Federal Emergency Management Agency

SUBJECT:          **Approval of FEMA-Administered Grant Disbursements**

---

**Purpose:** To seek approval on the review process and parameters of grant programs administered by the Federal Emergency Management Agency (FEMA) to align with Administration and Secretary priorities on non-governmental organizations, immigration, and sanctuary jurisdictions.

**Background:** On Jan. 28, 2025, the Secretary of the Department of Homeland Security (DHS) issued a memo to components and agency heads entitled *"Direction on Grants to Non-governmental Organizations,"* which required the development and implementation of a process to review payments and obligations for grants that *"(1) go to non-profit organizations or for which non-profit organizations are eligible and (2) touch in any way on immigration."* In accordance with this instruction, FEMA is recommending the implementation of additional processes to review certain grants prior to releasing funds, as outlined in this memo.

The Secretary also issued a memo on Feb. 19, 2025, *"Restricting Grant Funding for Sanctuary Jurisdictions,"* instructing all components to "review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions." In compliance with this memo, FEMA is providing recommendations for which grant programs sanctuary jurisdiction conditions should apply.

**Appendix A** provides a programmatic overview of all FEMA programs.

### Action: FEMA Recommendations for Approval

1. The grant programs for which sanctuary jurisdiction conditions or restrictions should be applied;
2. The methodology FEMA will use to assess disaster and non-disaster grant programs in accordance with the Secretary's direction on non-governmental organizations (NGOs) and immigration; and
3. FEMA's recommended determinations for each grant program.

1

**Action Item 1: FEMA Proposed Sanctuary Jurisdiction Programs and Applicability**

FEMA recommends applying conditions or restrictions on FEMA administered non-disaster preparedness grant programs that go to a sanctuary jurisdiction as designated by U.S. Immigration and Customs Enforcement (ICE) and:

   a. where the purpose of the grant has a nexus to immigration activities, law enforcement, or national security; or,
   b. where statute does not limit how FEMA implements the program.

Based on the criteria above, FEMA recommends the conditions or restrictions be placed on all open and future awards for the following 12 programs[1]:

   1. Case Management Pilot Program (CMPP);
   2. Emergency Management Performance Grant (EMPG);
   3. Homeland Security Grant Program – Operation Stonegarden (OPSG);
   4. Homeland Security Grant Program – State Homeland Security Program (SHSP);
   5. Homeland Security Grant Program – Urban Area Security Initiative;
   6. Homeland Security National Training Program - Continuing Training Grants - Competitive (HSNTP-CTG);
   7. Port Security Grant Program (PSGP);
   8. Presidential Residence Protection Assistance Grant Program (PRPA);
   9. Regional Catastrophic Preparedness Grant Program (RCPGP);
   10. Shelter and Services Program (SSP);
   11. Targeted Violence and Terrorism Prevention Grant Program (TVTP); and
   12. Transit Security Grant Program (TSGP); and

As noted above, application of conditions or restrictions will vary based on the structure or authority of each respective program.[2] FEMA will assess each grant and submit proposed program implementation recommendations to the General Counsel for a legal determination as appropriate. These program implementation recommendations will include how the conditions or restrictions apply to prime awards, sub-awards, and existing awards and payments.

FEMA recommends conditions or restrictions on sanctuary jurisdictions not apply to disaster grants, non-disaster mitigation grants, and grants to fire departments and organizations that comprise the National Urban Search and Rescue Response System.

To implement guidance from the Secretary's memo, *"Restricting Grant Funding for Sanctuary Jurisdictions,"* FEMA has categorized disaster and non-disaster programs into two risk profiles using the above criteria. FEMA recommends approval of the proposed methodology:

---

[1] While the Tribal Homeland Security Grant Program meets the criteria outlined above, FEMA did not include it for sanctuary jurisdiction conditions or restrictions due to Tribal sovereignty.
[2] See Appendix A for additional information on program eligibility.

**Image A: Proposed Sanctuary Jurisdictions Risk Methodology**

| Sanctuary Jurisdiction Does Not Apply | Sanctuary Jurisdiction Applies |
|---|---|
| • Grant programs that:<br>   • Do not go to sanctuary jurisdiction; or<br>   • Are disaster or non-disaster mitigation grants; or<br>   • Are non-disaster grants with no nexus to immigration activities, law enforcement, or national security; or<br>   • Are limited by statute.<br>• These programs/projects <u>should move forward without additional review.</u> | • Grant programs that:<br>   • Go to a designated sanctuary jurisdiction; or<br>   • Are non-disaster grants; <u>and</u><br>   • Have a nexus to immigration activities, law enforcement, or national security; or<br>   • Are not limited by statute.<br>• These programs/projects <u>require additional review by DHS review.</u> |
| Clears through existing program controls and review processes | Project identified as meeting S1 criteria, requires DHS review |

Approve/date _~~signature~~_ 3-25-25    Disapprove/date _____

Modify/date _____    Needs discussion/date _____

## Action Item 2: FEMA Proposed NGO/Immigration Grant Risk Assessment Methodology

To implement guidance from the Secretary's memo, *"Direction on Grants to Non-governmental Organizations,"* FEMA has categorized all disaster and non-disaster grant programs into three risk profiles. In considering the risk level, FEMA will evaluate whether the intent and primary purpose of the grant relates to the nexus of immigration. The intent is to ensure that FEMA's grant programs do not encourage or induce illegal immigration or illegal harboring of illegal aliens or any other unlawful activity. This information will lead to the determination of their risk profile as outlined in Image B. FEMA recommends approval of the proposed methodology:

**Image B: Proposed NGO/Immigration Risk Assessment Methodology**

| Low Risk | Medium Risk | High Risk |
|---|---|---|
| • Low likelihood that grant disbursements (1) go to NGOs, <u>and</u> (2) touch in any way on immigration.<br>• These programs/projects <u>should move forward without additional review.</u> | • Further analysis required to determine likelihood. Indeterminate risk that grant disbursements (1) go to NGOs, <u>and</u> (2) touch in any way on immigration.<br>• These programs/projects are <u>pending review by FEMA to assess low or high risk, with concurrence from DHS.</u> | • High likelihood that grant disbursements (1) go to NGOs, <u>and</u> (2) touch in any way on immigration.<br>• These programs/projects <u>require additional review by DHS.</u> |
| Clears through existing program controls and review processes | Requires FEMA review to assess high or low risk with concurrence from DHS | Project identified as meeting S1 criteria, requires DHS review |

Approve/date _~~signature~~_ 3-25-25    Disapprove/date _____

Modify/date _____    Needs discussion/date _____

## Action Item 3: Approval of FEMA's Recommended Determinations

In accordance with the above methodologies for non-disaster and disaster grants, FEMA recommends approval of the determinations by grant program as outlined in the table below. The recommended determinations are:

- **Green:** Cleared by FEMA to undergo the existing program controls and review processes. Programs have been identified to have a low likelihood of grant disbursements to NGOs **and** low likelihood of a nexus to immigration, and the sanctuary jurisdiction restriction do not apply. Grants with a "green" assessment are approved to move forward with payment consistent with FEMA's existing processes without additional review by DHS.

- **Yellow:** Pending review by FEMA to conduct additional analysis on the projects and awards to determine likelihood of grant disbursements to NGOs with an immigration nexus. Sanctuary jurisdiction restrictions do not apply. As FEMA completes the analysis, FEMA will submit decision memos to DHS to recommend a grant program be moved to green or red status. FEMA will also submit yellow payments weekly for DHS consideration and approval if payment can move forward.

- **Red:** For DHS review and approval of payment requests or evaluation for termination of grant program. Programs have been identified to have a high likelihood of grant disbursements to NGOs and immigration nexus, and/or meets the sanctuary jurisdiction restrictions. FEMA will conduct an assessment and provide recommendations to DHS on whether payments should be denied or approved. In the recommendation, FEMA will review the sanctuary jurisdictions identified by U.S. Immigration and Customs Enforcement (ICE) and specifically notate the jurisdictional restrictions. The recommendation will consider, among other things, the purpose and intent of the grant, the benefits to the DHS mission and risks, and the context of which organization is receiving the award. For example, is the individual grant award going to a county government who is not on the ICE sanctuary jurisdiction list, but the state is on the list. FEMA will also provide recommendations on if programs and/or individual grant awards should be terminated based on the Secretary's guidance.

Approve/date _~~signature~~_ 3-25-25    Disapprove/date _____

Modify/date _____    Needs discussion/date _____

# ATTACHMENT E



**THE SECRETARY OF TRANSPORTATION**
WASHINGTON, DC 20590

April 24, 2025

To All Recipients of U.S. Department of Transportation Funding:

The U.S. Department of Transportation (Department or DOT) distributes substantial Federal financial assistance for thousands of projects, programs, and activities operated or initiated by diverse entities, including but not limited to State and local governments. The Department administers this Federal financial assistance to support the development and maintenance of the Nation's transportation infrastructure, pursuant to statutory authority and in accordance with binding contractual agreements in the form of Federal financial assistance agreements, usually grants, cooperative agreements, and loans. Accordingly, I write to clarify and reaffirm pertinent legal requirements, to outline the Department's expectations, and to provide a reminder of your responsibilities and the consequences of noncompliance with Federal law and the terms of your financial assistance agreements. It is the policy of the Department to award and to continue to provide Federal financial assistance only to those recipients who comply with their legal obligations.

As recipients of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal laws and regulations. These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and public policy requirements, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and enforcing controls on illegal immigration. As Secretary of Transportation, I am responsible for ensuring recipients of DOT financial assistance are aware of and comply with all applicable legal obligations.

The Equal Protection principles of the Constitution prohibit State and Federal governmental entities from discriminating on the basis of protected characteristics, including race. Indeed, as the Supreme Court declared in *Students for Fair Admission, Inc. v. Harvard (SFFA)*, 600 U.S. 181, 206 (2023), "[t]he clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." The Court further noted that "[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220. In ruling that race-based admissions programs at universities violated the Equal Protection Clause, the Court made clear that discrimination based on race is, has been, and will continue to be unlawful, except in rare circumstances. *Id.* at 220-21. Similarly, sex-based classifications violate the Equal Protection Clause absent "exceedingly persuasive" justification. *See United States v. Virginia*, 518 U.S. 515, 533 (1996).

These constitutional principles are reinforced by the Civil Rights Act of 1964, which prohibits discrimination based on protected characteristics in the Federal funding and employment contexts in Title VI (42 U.S.C. § 2000d *et seq*.) and Title VII (42 U.S.C. § 2000e-2), as well as the applicable non-discrimination clauses in the Federal Aid Highway Act of 1973 (23 U.S.C. §§ 140 and 324 *et seq*.), the Airport and Airway Improvement Act of 1982, (49 U.S.C. § 47123), and Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq*.).

Based on binding Supreme Court precedent and these Federal laws, DOT is prohibited from discriminating based on race, color, national origin, sex, or religion in any of its programs or activities. Moreover, because DOT may not establish, induce, or endorse prohibited discrimination indirectly,[1] it must ensure that discrimination based on race, color, national origin, sex, or religion does not exist in the programs or activities it funds or financially assists.

These same principles apply to recipients of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding. Accordingly, DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities, including in administering contracts, and their employment practices.

Whether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," goals, presumptively violates Federal law. Recipients of DOT financial assistance must ensure that the personnel practices (including hiring, promotions, and terminations) within their organizations are merit-based and do not discriminate based on prohibited categories. Recipients are also precluded from allocating money received under DOT awards—such as through contracts or the provision of other benefits—based on suspect classifications. Any discriminatory actions in your policies, programs, and activities based on prohibited categories constitute a clear violation of Federal law and the terms of your grant agreements.

In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. DOT has noted reported instances where some recipients of Federal financial assistance have declined to cooperate with ICE investigations, have issued driver's licenses to individuals present in the United States in violation of Federal immigration law, or have otherwise acted in a manner that impedes Federal law enforcement. Such actions undermine Federal sovereignty in the enforcement of immigration law, compromise the safety and security of the transportation systems supported by DOT

---

[1] *See SFFA*, 600 U.S. at 230; Norwood v. Harrison, 413 U.S. 455, 465 (1973).

financial assistance, and prioritize illegal aliens over the safety and welfare of the American people whose Federal taxes fund DOT's financial assistance programs.

Under the Constitution, Federal law is "the supreme Law of the Land." U.S. Const. Art. VI. That means that where Federal and State legal requirements conflict, States and State entities must follow Federal law. Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. *See* 8 U.S.C. § 1324 and 8 U.S.C. § 1373. Accordingly, DOT expects its recipients to comply with Federal law enforcement directives and to cooperate with Federal officials in the enforcement of Federal immigration law. The Department also expects its recipients to ensure that the Federal financial assistance they receive from DOT is provided only to subrecipients, businesses, or service providers that are U.S. Citizens or U.S. Nationals and Lawful Permanent Residents (LPRs) or legal entities allowed to do business in the U.S. and which do not employ illegal aliens.

This letter provides notice of the Department's existing interpretation of Federal law. The Department will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter. Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT.

The Department retains authority, pursuant to its oversight responsibilities and the terms of your agreements, to initiate enforcement actions, such as comprehensive audits and possible recovery of funds expended in a manner contrary to the terms of the funding agreement. DOT may also terminate funding in response to substantiated breaches of the terms of the agreement, or if DOT determines that continued funding is no longer in the public interest. These steps, within DOT's discretion, are intended to ensure accountability and protect the integrity of Federal programs.

To assist grant recipients in meeting their legal obligations, DOT offers technical guidance and support through its program offices. Should you require clarification regarding your obligations, you are encouraged to contact your designated DOT representative promptly. Proactive engagement is strongly advised to prevent inadvertent noncompliance.

DOT remains committed to advancing a transportation system that serves the public interest efficiently and unleashes economic prosperity and a superior quality of life for American families. This mission depends upon your strict adherence to the legal framework governing our partnership, and I trust you will take all necessary steps to comply with Federal law and satisfy your legal obligations.

Sincerely,

Sean P. Duffy

# ATTACHMENT F

**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**FEDERAL TRANSIT ADMINISTRATION**

**MASTER AGREEMENT**

**For Federal Transit Administration Agreements authorized by**
**49 U.S.C. chapter 53 and Title 23, United States Code (Highways), as amended by**
**the Infrastructure Investment and Jobs Act of 2021 (IIJA), the Fixing America's Surface**
**Transportation (FAST) Act, the Moving Ahead for Progress in the 21st Century Act**
**(MAP-21), the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy**
**for Users (SAFETEA-LU), the SAFETEA-LU Technical Corrections Act of 2008, or other**
**federal laws that FTA administers.**

**FTA MA(33)**
**April 25, 2025**

http://www.transit.dot.gov

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**FEDERAL TRANSIT ADMINISTRATION**

**MASTER AGREEMENT**

**PREFACE**

**Statutory Authorities**

This is the official Federal Transit Administration (FTA) Master Agreement that applies to each Underlying Agreement (Grant Agreement, Cooperative Agreement, Loan Agreement, Loan Guarantee Agreement, or Line of Credit Agreement) for a specific Award authorized by:

(a)     Federal transit laws, 49 U.S.C. chapter 53, as amended, including the following:

        (1)     The Infrastructure Investment and Jobs Act of 2021 (IIJA), Public Law No. 117-58, November 15, 2021, and other authorizing legislation that may be enacted;

        (2)     The Fixing America's Surface Transportation (FAST) Act, Public Law No. 114-94, December 4, 2015;

        (3)     The Moving Ahead for Progress in the 21st Century Act (MAP-21), Public Law No. 112- 141, July 6, 2012, as amended by the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Public Law No. 114-41, July 31, 2015; and

        (4)     The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Public Law No. 109-59, August 10, 2005, as amended by the SAFETEA-LU Technical Corrections Act of 2008, Public Law No 110-244, June 6, 2008.

(b)     Continuing Resolutions or Other Appropriations Resolutions or Acts funding the Department of Transportation during Fiscal Year 2025.

(c)     Title 23, United States Code (Highways).

(d)     Other federal legislation that FTA administers, as FTA so determines.

**Purpose of this Master Agreement**

This FTA Master Agreement contains the standard terms and conditions that apply to the Underlying Agreement with the Recipient, which Underlying Agreement may take the form of an:

(a)     FTA Grant Agreement, including an FTA Grant Agreement for an award of federal assistance under the Tribal Transit Program;

(b)     FTA Cooperative Agreement; or

(c)     Transportation Infrastructure Finance Innovation Act (TIFIA) or Railroad Rehabilitation and Improvement Financing (RRIF) Loan, Loan Guarantee, Line of Credit, Master Credit Agreement for a Project overseen by FTA, or State Infrastructure Bank (SIB) Cooperative Agreement.

THEREFORE, in consideration of the mutual covenants, promises, and representations herein, FTA and the Recipient agree as follows:

## GENERALLY APPLICABLE PROVISIONS

**Section 1.    Terms of this Master Agreement and Compliance.**

(a)    The Recipient must comply with all applicable federal laws, regulations, and requirements, and should follow applicable federal guidance, except as FTA determines otherwise in writing.

(b)    To assure compliance with federal laws, regulations, and requirements, the Recipient must take measures to assure that other participants in its Underlying Agreements (e.g., Third Party Participants) comply with applicable federal laws, regulations, and requirements, and follow applicable federal guidance, except as FTA determines otherwise in writing.

(c)    FTA may take enforcement action if the Recipient or a Third Party Participant violates an applicable federal law, regulation, or requirement, or does not follow applicable federal guidance.

(d)    FTA and the Recipient agree that not every provision of this Master Agreement will apply to every Recipient or Underlying Agreement.

(1)    FTA has divided this Master Agreement into the "Preface," "Generally Applicable Provisions," and "Special Provisions for Specific Programs."

(2)    This Master Agreement has an Appendix A illustrating the specific provisions of this Master Agreement that apply to the Tribal Transit Programs.

(3)    Criteria determining which federal laws, regulations, requirements, and guidance apply include the type of Award, the federal law authorizing federal assistance for the Award, the federal law, regulations, or requirements governing how the Award must be implemented, the federal guidance pertaining to the Award, and the Recipient's legal status as a "state," "state instrumentality," a "local government," a federally recognized Indian Tribe (Indian Tribe), a "private nonprofit entity," a "private for-profit entity," or an individual.

(e)    As provided in federal laws, regulations, requirements, and guidance, FTA will enforce only those federal laws, regulations, requirements, and guidance that apply to the specific FTA Recipient, its Third Party Participants, or to any Project and related activities encompassed in the Award, the accompanying Underlying Agreement, and any Amendments thereto.

3

(d)    *Uniform Administrative Requirements.* These termination rights are in addition to and in no way limit the Federal Government's rights to terminate described in 2 CFR § 200.340.

**Section 12.    Civil Rights.**

(a)    *Civil Rights Requirements.* The Recipient agrees that it must comply with applicable federal civil rights laws, regulations, and requirements, and follow applicable federal guidance, except as the Federal Government determines otherwise in writing. Therefore, unless a Recipient or a federal program, including the Indian Tribe Recipient or the Tribal Transit Program, is specifically exempted from a civil rights statute, FTA requires compliance with each civil rights statute, including compliance with equity in service requirements.

(b)    *Nondiscrimination in Federal Public Transportation Programs.* The Recipient agrees to, and assures that it and each Third Party Participant will:

(1)    Prohibit discrimination based on race, color, religion, national origin, sex (including sexual orientation), disability, or age.

(2)    Prohibit the:

(i)    Exclusion from participation in employment or a business opportunity for reasons identified in 49 U.S.C. § 5332;

(ii)    Denial of program benefits in employment or a business opportunity identified in 49 U.S.C. § 5332; or

(iii)    Discrimination identified in 49 U.S.C. § 5332, including discrimination in employment or a business opportunity identified in 49 U.S.C. § 5332.

(3)    Follow:

(i)    The most recent edition of FTA Circular 4702.1, "Title VI Requirements and Guidelines for Federal Transit Administration Recipients," to the extent consistent with applicable federal laws, regulations, requirements, and guidance; but

(ii)    FTA does not require an Indian Tribe to comply with FTA program-specific guidelines for Title VI when administering its Underlying Agreement supported with federal assistance under the Tribal Transit Program.

(c)     *Nondiscrimination – Title VI of the Civil Rights Act*. The Recipient agrees to, and assures that each Third Party Participant will:

    (1)     Prohibit discrimination based on race, color, or national origin,

    (2)     Comply with:

        (i)     Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, et seq.;

        (ii)    U.S. DOT regulations, "Nondiscrimination in Federally-Assisted Programs of the Department of Transportation – Effectuation of Title VI of the Civil Rights Act of 1964," 49 CFR Part 21, including any amendments thereto; and

        (iii)   Federal transit law, specifically 49 U.S.C. § 5332; and

    (3)     Follow:

        (i)     The most recent edition of FTA Circular 4702.1, "Title VI Requirements and Guidelines for Federal Transit Administration Recipients," to the extent consistent with applicable federal laws, regulations, requirements, and guidance;

        (ii)    U.S. DOJ, "Guidelines for the enforcement of Title VI, Civil Rights Act of 1964," 28 C.F.R. § 50.3; and

        (iii)   All other applicable federal guidance that may be issued.

(d)     *Equal Employment Opportunity*.

    (1)     *Federal Requirements and Guidance*. The Recipient agrees to, and assures that each Third Party Participant will, prohibit discrimination based on race, color, religion, sex, sexual orientation, or national origin, and:

        (i)     Comply with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.;

        (ii)    Comply with Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq.;

        (iii)   Comply with federal transit law, specifically 49 U.S.C. § 5332, as provided in section 12 of this Master Agreement;

(iv)     FTA Circular 4704.1 "Equal Employment Opportunity (EEO) Requirements and Guidelines for Federal Transit Administration Recipients;" and

(v)     Follow other federal guidance pertaining to EEO laws, regulations, and requirements.

(2)     *Indian Tribes*. The Recipient agrees to, and assures that each Third Party Participant will recognize that Title VII of the Civil Rights Act of 1964, as amended, exempts Indian Tribes under the definition of "Employer".

(e)     *Disadvantaged Business Enterprise*. To the extent authorized by applicable federal laws, regulations, or requirements, the Recipient agrees to facilitate, and assures that each Third Party Participant will facilitate, participation by small business concerns owned and controlled by socially and economically disadvantaged individuals, also referred to as "Disadvantaged Business Enterprises" (DBEs), in the Underlying Agreement as follows:

(1)     *Statutory and Regulatory Requirements*. The Recipient agrees to comply with:

(i)     Section 11101(e) of IIJA;

(ii)     U.S. DOT regulations, "Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs," 49 CFR Part 26, including any amendments thereto; and

(iii)     Federal transit law, specifically 49 U.S.C. § 5332, as provided in section 12 of this Master Agreement.

(2)     *Special Requirements for a Transit Vehicle Manufacturer (TVM)*. The Recipient agrees that:

(i)     *TVM Certification*. Each TVM, as a condition of being authorized to bid or propose on FTA-assisted transit vehicle procurements, must certify that it has complied with the requirements of 49 CFR Part 26, including any amendments thereto; and

(ii)     *Reporting TVM Awards*. Within 30 days of any third party contract award for a transit vehicle purchase, the Recipient must submit to FTA the name of the TVM contractor and the total dollar value of the third party contract using the Transit Vehicle Award Reporting Form on FTA's website. The Recipient must also submit additional

notifications if options are exercised in subsequent years to ensure that the TVM is still in good standing.

(3)    *Assurance*. As required by 49 C.F.R. § 26.13(a):

    (i)    *Recipient Assurance*. The Recipient agrees and assures that:

        (A)    It must not discriminate based on race, color, national origin, or sex in the award and performance of any FTA or U.S. DOT-assisted contract, or in the administration of its DBE program or the requirements of 49 CFR Part 26;

        (B)    It must take all necessary and reasonable steps under 49 CFR Part 26 to ensure nondiscrimination in the award and administration of U.S. DOT-assisted contracts;

        (C)    Its DBE program, as required under 49 CFR Part 26 and as approved by U.S. DOT, is incorporated by reference and made part of the Underlying Agreement; and

        (D)    Implementation of its DBE program approved by U.S. DOT is a legal obligation and failure to carry out its terms shall be treated as a violation of this Master Agreement.

    (ii)    *Subrecipient/Third Party Contractor/Third Party Subcontractor Assurance*. The Recipient agrees and assures that it will include the following assurance in each subagreement and third party contract it signs with a Subrecipient or Third Party Contractor and agrees to obtain the agreement of each of its Subrecipients, Third Party Contractors, and Third Party Subcontractors to include the following assurance in every subagreement and third party contract it signs:

        (A)    The Subrecipient, each Third Party Contractor, and each Third Party Subcontractor must not discriminate based on race, color, national origin, or sex in the award and performance of any FTA or U.S. DOT-assisted subagreement, third party contract, and third party subcontract, as applicable, and the administration of its DBE program or the requirements of 49 CFR Part 26;

        (B)    The Subrecipient, each Third Party Contractor, and each Third Party Subcontractor must take all necessary and reasonable steps under 49 CFR Part 26 to ensure nondiscrimination in the award and administration of U.S. DOT-assisted

subagreements, third party contracts, and third party subcontracts, as applicable;

(C)    Failure by the Subrecipient and any of its Third Party Contractors or Third Party Subcontractors to carry out the requirements of this subparagraph 12.e(4)(ii) is a material breach of this subagreement, third party contract, or third party subcontract, as applicable; and

(D)    The following remedies, or such other remedy as the Recipient deems appropriate, include, but are not limited to, withholding monthly progress payments, assessing sanctions, liquidated damages, and/or disqualifying the Subrecipient, Third Party Contractor, or Third Party Subcontractor from future bidding as non-responsible.

(4)    *Remedies*. Upon notification to the Recipient of its failure to carry out its approved program, FTA or U.S. DOT may impose sanctions as provided for under 49 CFR Part 26, and, in appropriate cases, refer the matter for enforcement under either or both 18 U.S.C. § 1001, and/or the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. § 3801, et seq.

(f)    *Nondiscrimination on the Basis of Sex*. The Recipient agrees to comply with federal prohibitions against discrimination based on sex, including:

(1)    Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681, et seq.;

(2)    U.S. DOT regulations, "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance," 49 CFR Part 25; and

(3)    Federal transit law, specifically 49 U.S.C. § 5332.

(g)    *Nondiscrimination on the Basis of Age*. The Recipient agrees to comply with federal prohibitions against discrimination based on age, including:

(1)    The Age Discrimination in Employment Act, 29 U.S.C. §§ 621 – 634, which prohibits discrimination based on age;

(2)    U.S. Equal Employment Opportunity Commission (U.S. EEOC) regulations, "Age Discrimination in Employment Act," 29 CFR Part 1625;

(3)    The Age Discrimination Act of 1975, as amended, 42 U.S.C. § 6101, et seq., which prohibits discrimination against individuals based on age in the

55

administration of Programs, Projects, and related activities receiving federal assistance;

(4)    U.S. Health and Human Services regulations, "Nondiscrimination on the Basis of Age in Programs or Activities Receiving Federal Financial Assistance," 45 CFR Part 90; and

(5)    Federal transit law, specifically 49 U.S.C. § 5332.

(h)    *Nondiscrimination on the Basis of Disability.* The Recipient agrees to comply with the following federal prohibitions against discrimination based on disability:

(1)    Federal laws, including:

(i)    Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, which prohibits discrimination based on disability in the administration of federally assisted Programs, Projects, or activities;

(ii)    The Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12101, et seq., which requires that accessible facilities and services be made available to individuals with disabilities:

(A)    For FTA Recipients generally, Titles I, II, and III of the ADA apply; but

(B)    For Indian Tribes, Titles II and III of the ADA apply, but Title I of the ADA does not apply because it exempts Indian Tribes from the definition of "employer;"

(iii)    The Architectural Barriers Act of 1968, as amended, 42 U.S.C. § 4151, et seq., which requires that buildings and public accommodations be accessible to individuals with disabilities;

(iv)    Federal transit law, specifically 49 U.S.C. § 5332, which now includes disability as a prohibited basis for discrimination; and

(v)    Other applicable federal laws, regulations, and requirements pertaining to access for seniors or individuals with disabilities.

(2)    Federal regulations and guidance, including:

(i)    U.S. DOT regulations, "Transportation Services for Individuals with Disabilities (ADA)," 49 CFR Part 37;

(ii)     U.S. DOT regulations, "Nondiscrimination on the Basis of Disability in Programs and Activities Receiving or Benefiting from Federal Financial Assistance," 49 CFR Part 27;

(iii)    Joint U.S. Architectural and Transportation Barriers Compliance Board (U.S. ATBCB) and U.S. DOT regulations, "Americans With Disabilities (ADA) Accessibility Specifications for Transportation Vehicles," 49 CFR Part 38;

(iv)     U.S. DOT regulations, "Transportation for Individuals with Disabilities: Passenger Vessels," 49 CFR Part 39;

(v)      U.S. DOJ regulations, "Nondiscrimination on the Basis of Disability in State and Local Government Services," 28 CFR Part 35;

(vi)     U.S. DOJ regulations, "Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities," 28 CFR Part 36;

(vii)    U.S. EEOC, "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 CFR Part 1630;

(viii)   U.S. Federal Communications Commission regulations, "Telecommunications Relay Services and Related Customer Premises Equipment for Persons with Disabilities," 47 CFR Part 64, subpart F;

(ix)     U.S. ATBCB regulations, "Electronic and Information Technology Accessibility Standards," 36 CFR Part 1194;

(x)      FTA regulations, "Transportation for Elderly and Handicapped Persons," 49 CFR Part 609;

(xi)     FTA Circular 4710.1, "Americans with Disabilities Act: Guidance;" and

(xii)    Other applicable federal civil rights and nondiscrimination regulations and guidance.

(i)    *Drug or Alcohol Abuse – Confidentiality and Other Civil Rights Protections*. The Recipient agrees to comply with the confidentiality and civil rights protections of:

(1)    The Drug Abuse Office and Treatment Act of 1972, as amended, 21 U.S.C. § 1101, et seq.;

57

(2)     The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, as amended, 42 U.S.C. § 4541, et seq.; and

(3)     The Public Health Service Act, as amended, 42 U.S.C. §§ 290dd – 290dd-2.

(j)     *Access to Services for Persons with Limited English Proficiency*. The Recipient agrees to provide meaningful access to public transportation services to persons with limited understanding of English to comply with Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, *et seq.*, and its implementing regulation at 28 CFR § 42.405(d), and appliable U.S. Department of Justice guidance.

(k)     *Other Nondiscrimination Laws, Regulations, Requirements, and Guidance*. The Recipient agrees to comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination.

(l)     *Remedies*. Remedies for failure to comply with applicable federal Civil Rights laws, regulations, and requirements, and failure to follow guidance may be enforced as provided in those federal laws, regulations, requirements, or guidance.

(m)     *Federal Law and Public Policy Requirements*. The Recipient shall ensure that Federal funding is expended in full accordance with the U.S. Constitution, Federal Law, and statutory and public policy requirements: including, but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(n)     *Federal Anti-Discrimination*.

(1)     Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(2)     Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

58

# ATTACHMENT G

**FEDERAL HIGHWAY ADMINISTRATION**

**COMPETITIVE GRANT PROGRAM GENERAL TERMS AND CONDITIONS**

**Date: April 22, 2025**

## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions are incorporated by reference in this grant agreement under the Grant Program. The term "Recipient" is defined in this grant agreement. This grant agreement includes schedules A through H. The grant agreement may include special terms and conditions in grant agreement articles or schedules.

## ARTICLE 1
## PURPOSE

1.1     **Purpose.** The purpose of this award is to fund the eligible project defined in this grant agreement that has been selected to receive an award for the Grant Program. The parties will accomplish that purpose by achieving the following objectives:

(1)     timely completing the Project; and

(2)     ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule E.

## ARTICLE 2
## FHWA ROLE

2.1     **Federal Highway Administration (FHWA) Responsibilities.**

(a)     The FHWA is the operating administration under the United States Department of Transportation ("USDOT") responsible for the administration of the Grant Program, the approval and execution of this grant agreement, and any modifications to this grant agreement under section 15.1.

## ARTICLE 3
## RECIPIENT ROLE

3.1     **Statements on the Project.** The Recipient states that:

(1)     all material statements of fact in the Technical Application were accurate when that application was submitted; and

(2)     schedule E documents all material changes in the information contained in that application.

3.2     **Statements on Authority and Capacity.** The Recipient states that:

(4)    documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

(5)    describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

# ARTICLE 18
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**18.1**    **Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**18.2**    **Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) The failure of this grant agreement to expressly identify Federal law applicable to the Recipient or activities under this grant agreement does not make that law inapplicable.

**18.3**    **Implementation of Executive Order 14025.** Consistent with Executive Order 14025, "Worker Organizing and Empowerment" (Apr. 26, 2021), Schedule H, Labor and Work, documents the consideration of job quality and labor rights, standards, and protections related to the Project.

**18.4**    **Implementation of Executive Order 14173**

(a) Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(b) Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal

# ATTACHMENT H



**U.S. Department
of Transportation
Federal Aviation
Administration**

## FY 2025 AIRPORT INFRASTRUCTURE GRANT
*TEMPLATE ONLY ** GRANT AGREEMENT ** TEMPLATE ONLY*
### Part I - Offer

Federal Award Offer Date        {{DateTime_es_:signer1:calc(now()):format(date," mmmm d, yyyy")}}

Airport/Planning Area        [Selection Criteria: Airport Name or Planning Area]

Airport Infrastructure Grant
Number        [Selection Criteria: Grant Number Formatted]

Unique Entity Identifier        [Selection Criteria: DUNS Number]

TO:    [Selection Criteria: Sponsor Name]

**(herein called the "Sponsor") (For Co-Sponsors, list all Co-Sponsor names. The word "Sponsor" in this Grant Agreement also applies to a Co-Sponsor.)**
[Please Enter Co-Sponsor Name(s)]

FROM:    **The United States of America** (acting through the Federal Aviation Administration, herein called the "FAA")

**WHEREAS**, the Sponsor has submitted to the FAA a Project Application dated [Selection Criteria: Project Application Date], for a grant of Federal funds for a project at or associated with the [Selection Criteria: Airport Name or Planning Area], which is included as part of this Grant Agreement; and

**WHEREAS**, the FAA has approved a project for the [Selection Criteria: Airport Name or Planning Area] (herein called the "Project") consisting of the following:

[Selection Criteria: Project Description]

which is more fully described in the Project Application.

**NOW THEREFORE**, Pursuant to and for the purpose of carrying out the Infrastructure Investment and Jobs Act (IIJA) (Public Law number (P.L.) 117-58) of 2021; FAA Reauthorization Act of 2024 (P.L. 118-63); and the representations contained in the Project Application; and in consideration of: (a) the Sponsor's adoption and ratification of the attached Grant Assurances dated April 2025, interpreted, and applied consistent with the FAA Reauthorization Act of 2024; (b) the Sponsor's acceptance of this Offer; and (c) the benefits to accrue to the United States and the public from the accomplishment of the Project and compliance with the Grant Assurance and conditions as herein provided;

1

certain telecommunications and video surveillance services or equipment in compliance with the National Defense Authorization Act [P.L. 115-232 § 889(f)] and 2 CFR § 200.216.

28. **Critical Infrastructure Security and Resilience.** The State or Sponsor, as applicable, acknowledges that it has considered and addressed physical and cybersecurity and resilience in its project planning, design, and oversight, as determined by the DOT and the Department of Homeland Security (DHS).  For airports that do not have specific DOT or DHS cybersecurity requirements, the FAA encourages the voluntary adoption of the cybersecurity requirements from the Transportation Security Administration and Federal Security Director identified for security risk Category X airports.

29. **Title VI of the Civil Rights Act.** As a condition of a grant award, the Sponsor shall demonstrate that it complies with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000 et seq) and implementing regulations (49 CFR part 21), the Airport and Airway Improvement Act of 1982 (49 U.S.C. § 47123), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), U.S. Department of Transportation and Federal Aviation Administration (FAA) Assurances, and other relevant civil rights statutes, regulations, or authorities, including any amendments or updates thereto. This may include, as applicable, providing a current Title VI Program Plan to the FAA for approval, in the format and according to the timeline required by the FAA, and other information about the communities that will be benefited and impacted by the project. A completed FAA Title VI Pre-Grant Award Checklist is required for every grant application, unless excused by the FAA. The Sponsor shall affirmatively ensure that when carrying out any project supported by this grant that it complies with all federal nondiscrimination and civil rights laws based on race, color, national origin, sex, creed, age, disability, genetic information, in consideration for federal financial assistance. The Department's and FAA's Office of Civil Rights may provide resources and technical assistance to recipients to ensure full and sustainable compliance with Federal civil rights requirements. Failure to comply with civil rights requirements will be considered a violation of the agreement or contract and be subject to any enforcement action as authorized by law.

30. **FAA Reauthorization Act of 2024.** This grant agreement is subject to the terms and conditions contained herein including the terms known as the Grant Assurances as they were published in the Federal Register in April 2025. On May 16, 2024, the FAA Reauthorization Act of 2024 made certain amendments to 49 U.S.C. chapter 471. The Reauthorization Act will require the FAA to make certain amendments to the assurances in order to best achieve consistency with the statute. Federal law requires that the FAA publish any amendments to the assurances in the Federal Register along with an opportunity to comment. In order not to delay the offer of this grant, the existing assurances are attached herein; however, the FAA shall interpret and apply these assurances consistent with the Reauthorization Act. To the extent there is a conflict between the assurances and Federal statutes, the statutes shall apply. The full text of the FAA Reauthorization Act of 2024 is at:  https://www.congress.gov/bill/118th-congress/house-bill/3935/text

31. **Applicable Federal Anti-Discrimination Laws.** Pursuant to Section (3)b)(iv), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the sponsor:

    a.  Agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. 3729(b)(4); and

10

b. certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

32. **Federal Law and Public Policy Requirements.** The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

33. **National Airspace System Requirements.**

(a) The Sponsor shall cooperate with FAA activities installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System, including waiving permitting requirements and other restrictions affecting those activities to the maximum extent possible, and assisting the FAA in securing waivers of permitting or other restrictions from other authorities. The Sponsor shall not take actions that frustrate or prevent the FAA from installing, maintaining, replacing, improving, or operating equipment and facilities in or supporting the National Airspace System.

(b) If the FAA determines that the Sponsor has violated subsection (a), the FAA may impose a remedy, including:

1) additional conditions on the award;
2) consistent with 49 U.S.C. chapter 471, any remedy permitted under 2 CFR 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs; requiring refunds from the Recipient to the DOT; suspension or termination of the award; or suspension and debarment under 2 CFR part 180; or
3) any other remedy legally available.

(c) In imposing a remedy under this condition, the FAA may elect to consider the interests of only the FAA.

(d) The Sponsor acknowledges that amounts that the FAA requires the Sponsor to refund to the FAA due to a remedy under this condition constitute a debt to the Federal Government that the FAA may collect under 2 CFR 200.346 and the Federal Claims Collection Standards (31 CFR parts 900–904).

34. **Signage Costs for Construction Projects.** The Sponsor agrees that it will require the prime contractor of a Federally assisted airport improvement project to post signs consistent with a DOT/FAA-prescribed format, as may be requested by the DOT/FAA, and further agrees to remove any signs posted in response to FAA requests received prior to February 1, 2025.

35. **Title 8 - U.S.C., Chapter 12, Subchapter II - Immigration.** The sponsor will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

11

# ATTACHMENT I

**U.S. Department of Transportation**
**Federal Railroad Administration**

---

## Attachment 1

---

# GENERAL TERMS AND CONDITIONS

Revision Date: April 16, 2025

U.S. Department of Transportation
**Federal Railroad Administration**

# ATTACHMENT 1

This Grant Agreement (Agreement) is between the Federal Railroad Administration (FRA) and the Recipient identified in Attachment 2: Project-Specific Terms and Conditions. This Agreement, including the Agreement cover sheet, this Attachment 1, Attachment 2, and Exhibits A–C, constitutes the entire Agreement between FRA and the Recipient regarding the Project as defined in Attachment 2. All prior discussions and understandings concerning the scope and subject matter of this agreement are superseded by this Agreement.

This Agreement is governed by and subject to 2 C.F.R. part 200, Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards, and the U.S. Department of Transportation (USDOT) implementing regulations at 2 C.F.R. part 1201.

# ARTICLE 1:  TERMS AND CONDITIONS

**1.1    General Terms and Conditions**

This Attachment 1: General Terms and Conditions, is part of the Agreement between FRA and the Recipient. This Attachment 1 contains the standard terms and conditions governing the administration of this Agreement and the execution of the Project. The General Terms and Conditions incorporate by reference the information contained in Attachment 2 and the Exhibits to this Agreement.

**1.2    Project-Specific Terms and Conditions**

Attachment 2: Project-Specific Terms and Conditions, is part of the Agreement between FRA and the Recipient. Attachment 2 contains Project-Specific Terms and Conditions, which may include special terms and conditions.

**1.3    Program-Specific Clauses**

Article 26 of this Attachment 1 contains the applicable program-specific clauses. The Recipient will comply with the program-specific clauses below that are associated with the grant program identified in Attachment 2 of this Agreement. In the event that the Recipient's grant is not authorized under a program listed below, Article 26 does not apply.

(a)  For Projects funded under the Interstate Rail Compacts program (49 U.S.C. § 22910), the Recipient will comply with the program-specific clauses in Article 26.1.

(b)  For Projects funded under the Railroad Crossing Elimination program (49 U.S.C. § 22909), the Recipient will comply with the program-specific clauses in Article 26.2.

(c)  For Projects funded under the Consolidated Rail Infrastructure and Safety Improvements program (49 U.S.C. § 22907), the Recipient will comply with the program-specific clauses in Article 26.3.

(d)  For Projects funded under the Restoration and Enhancement program (49 U.S.C. § 22908), the Recipient will comply with the program-specific clauses in Article 26.4.

U.S. Department of Transportation
**Federal Railroad Administration**

## ARTICLE 19: CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE

**19.1    Critical Infrastructure Security and Resilience**

(a)  Consistent with the National Security Presidential Memorandum on Improving Cybersecurity for Critical Infrastructure Control Systems (July 28, 2021) and the National Security Memorandum on Critical Infrastructure Security and Resilience (April 30, 2024), the Recipient will consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b)  If the Security Risk Designation in Section 1.3 of Attachment 2 of this Agreement is "Elevated," then not later that than two years after the date of this Agreement the Recipient will submit to FRA a report that:

> (1)  identifies a cybersecurity point of contact for the transportation infrastructure being improved in the Project;

> (2)  summarizes or contains a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project;

> (3)  summarizes or contains a cybersecurity incident response plan for the transportation infrastructure being improved in the Project;

> (4)  documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

> (5)  describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

## ARTICLE 20: FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**20.1    Uniform Administrative Requirements for Federal Awards**

The Recipient will comply, and will ensure that other entities receiving funding under this agreement will comply, with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201, regardless of whether the Recipient or other entity receiving funding under this agreement is a Non-Federal entity as defined in 2 C.F.R. § 200.1, except that subpart F of part 200 does not apply if the Recipient or Subrecipient is a for-profit entity.

**20.2    Federal Law and Public Policy Requirements**

(a)  The Recipient will ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not

**U.S. Department of Transportation**
**Federal Railroad Administration**

impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law.

(b) Pursuant to Section 3(b)(iv)(A) of Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(c) Pursuant to Section 3(b)(iv)(B) of Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

(d)  The failure of this Agreement to expressly identify Federal law applicable to the Recipient or activities under this Agreement does not make that law inapplicable.

**20.3    Federal Freedom of Information Act**

(a)  FRA is subject to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

(b)  The Recipient acknowledges that the Application and materials submitted to FRA by the Recipient related to this Agreement will become FRA records that may be subject to public release under 5 U.S.C. § 552. If the Recipient submits any materials to FRA related to this Agreement that the Recipient considers to include trade secret or confidential commercial or financial information, the Recipient should note that the submission contains confidential business information, mark each affected page, and highlight or otherwise denote the portions of the submission that contain confidential business information.

**20.4    History of Performance**

Under 2 C.F.R. § 200.206, any Federal awarding agency may consider the Recipient's performance under this Agreement, when assessing the risks of making a future Federal financial assistance award to the Recipient.

**20.5    Whistleblower Protection**

(a)  The Recipient acknowledges that it is a "Recipient" within the scope of 41 U.S.C. § 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of this award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b)  The Recipient will inform its employees in writing of the rights and remedies provided under 41 U.S.C. § 4712, in the predominant native language of the workforce.

# ATTACHMENT J

**U.S. DEPARTMENT OF TRANSPORTATION**

**GENERAL TERMS AND CONDITIONS UNDER THE**
**FISCAL YEAR 2024 SAFE STREETS AND ROADS FOR ALL ("SS4A") GRANT**
**PROGRAM:**
**FHWA PROJECTS**

**Date: June 13, 2024**
**Revised:  October 1, 2024**
**Revised:  March 17, 2025**

## GENERAL TERMS AND CONDITIONS

The Infrastructure Investment and Jobs Act (Pub. L. 117–58, November 15, 2021; also referred to as the "IIJA") established the Safe Streets and Roads for All (the "SS4A") Discretionary Grant Program (IIJA Section 24112) and appropriated funds to the United States Department of Transportation (the "**USDOT**") under Division J, Title VIII of IIJA to implement the program. The funds are available to provide Federal financial assistance to support local initiatives to prevent death and serious injury on roads and streets, commonly referred to as "Vision Zero" or "Toward Zero Deaths" initiatives.

The USDOT published a Notice of Funding Opportunity (the "**NOFO**") to solicit applications for Federal financial assistance in Fiscal Year 2024 for the SS4A Discretionary Grant Program.

These general terms and conditions are incorporated by reference in a project-specific grant agreement under the fiscal year 2024 SS4A grant program. Articles 1–6 are in the project-specific portion of the agreement. The term "Recipient" is defined in the project-specific portion of the agreement. Attachments A through F are project-specific attachments.

## ARTICLE 7
## PURPOSE

7.1    **Purpose.** The purpose of this award is to improve roadway safety by significantly reducing or eliminating roadway fatalities and serious injuries through safety action plan development or projects focused on all users, including pedestrians, bicyclists, public transportation users, motorists, personal conveyance and micromobility users, and commercial vehicle operators. The parties will accomplish that purpose by achieving the following objectives:

    (1)    timely completing the Project; and

    (2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Grant Application, as modified by section 3.3 and Attachment B.

## ARTICLE 8
## USDOT ROLE

8.1    **Division of USDOT Responsibilities.**

    (a) The Office of the Secretary of Transportation is ultimately responsible for the USDOT's administration of the SS4A Grant Program.

(b) If the Recipient is an Existing Recipient, the Recipient shall submit to the USDOT either:

(1) not later than one month after the date of this agreement, documentation showing that the Recipient has complied with all reporting requirements under the Administering Operating Administration's implementation of Title VI; or

(2) not later than six months after the date of this agreement, both a Title VI Plan and a Community Participation Plan, as those plans are described in chapter II, sections 3–4 of DOT Order 1000.12C.

(c) If the Recipient is "New," then the Administering Operating Administration completed a Title VI Assessment of the Recipient, as described in chapter II, section 2 of DOT Order 1000.12C., before entering this agreement.

(d) In this section 26.1:

(1) "**Title VI**" means Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified at 42 U.S.C. 2000d to 2000d-4a).

(2) **"Existing"** means a prior recipient of DOT federal financial assistance since the publication of DOT Order 1000.12C on June 11, 2021.

**(3)** **"New"** means a recipient who has not received DOT federal financial assistance since the publication of DOT Order 1000.12C on June 11, 2021.

## ARTICLE 27
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**27.1**  **Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**27.2**  **Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) Pursuant to Executive Order 14173, *Ending Illegal Discrimination And Restoring Merit-Based Opportunity,* the Recipient agrees that its compliance in all respects with all

# ATTACHMENT K

**U.S. DEPARTMENT OF TRANSPORTATION**

**GENERAL TERMS AND CONDITIONS UNDER THE
FISCAL YEAR 2025 BUILD PROGRAM:
FHWA PROJECTS**

Revision date: April 23, 2025

## GENERAL TERMS AND CONDITIONS

The Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), appropriated funds to the United States Department of Transportation (the "**USDOT**") for fiscal year 2025 under the heading "National Infrastructure Investments." The funds are available to carry out 49 U.S.C. 6702 by providing Federal financial assistance for surface transportation infrastructure projects that will have a significant local or regional impact. The USDOT program administering those funds is the Better Utilizing Infrastructure to Leverage Development (the "**BUILD Program**").

On November 1, 2024, the USDOT posted a funding opportunity at Grants.gov with funding opportunity title "FY 2025 National Infrastructure Investments" and funding opportunity number DTOS59-25-RA-RAISE. The notice of funding opportunity posted at Grants.gov (the "**NOFO**") solicited applications for Federal financial assistance under the fiscal year 2025 BUILD Program. On January 10, 2025, the USDOT announced application selections under the NOFO.

These general terms and conditions are incorporated by reference in a project-specific agreement under the fiscal year 2025 BUILD Program. The term "Recipient" is defined in the project-specific portion of the agreement. The project-specific portion of the agreement includes schedules A through H. The project-specific portion of the agreement may include special terms and conditions in project-specific articles.

## ARTICLE 1
## PURPOSE

**1.1    Purpose.**

The purpose of this award is to fund an eligible project that will have a significant local or regional impact and improve transportation infrastructure. The parties will accomplish that purpose by achieving the following objectives:

(1)    timely completing the Project; and

(2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule D.

**ARTICLE 21**
**FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL**
**POLICY REQUIREMENTS**

**21.1    Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 CFR parts 200 and 1201.

**21.2    Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(c) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

(d) The failure of this agreement to expressly identify Federal law applicable to the Recipient or activities under this agreement does not make that law inapplicable.

**21.3    Federal Freedom of Information Act.**

(a) The USDOT is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the USDOT by the Recipient related to this agreement may become USDOT records subject to public release under 5 U.S.C. 552.

**21.4    History of Performance.** Under 2 CFR 200.206, any Federal agency may consider the Recipient's performance under this agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**21.5    Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain

# ATTACHMENT L

### U.S. DEPARTMENT OF TRANSPORTATION

### EXHIBITS TO OST-R SMART GRANT AGREEMENTS

### Version Date: May 09, 2025

**EXHIBIT A**      **APPLICABLE FEDERAL LAWS AND REGULATIONS**

By entering into this agreement for a SMART Grant, the Recipient assures and certifies, with respect to this Grant, that it will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Project. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Recipient and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

1. **General Federal Legislation**
   - Federal Fair Labor Standards Act - 29 U.S.C. §§ 201, et seq.
   - Hatch Act - 5 U.S.C. §§ 1501, et seq.
   - Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 – 42 U.S.C. §§ 4601, et seq.
   - National Historic Preservation Act of 1966 - 54 U.S.C. § 306108
   - Archeological and Historic Preservation Act of 1974 - 54 U.S.C. §§ 312501, et seq.
   - Native American Graves Protection and Repatriation Act - 25 U.S.C. §§ 3001, et seq.
   - Clean Air Act – 42 U.S.C. §§ 7401, et. seq.
   - Clean Water Act - 33 U.S.C. §§ 1251, et seq.
   - Endangered Species Act – 16 U.S.C. §§ 1531 et seq.
   - Coastal Zone Management Act – 16 U.S.C. §§ 1451 et seq.
   - Flood Disaster Protection Act of 1973 – 42 U.S.C. §§ 4001 et seq.
   - Age Discrimination Act of 1975, as amended - 42 U.S.C. §§ 6101, et seq.
   - American Indian Religious Freedom Act, 42 U.S.C. 1996
   - Drug Abuse Office and Treatment Act of 1972, as amended, 21 U.S.C. §§ 1101, et seq.
   - The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended - 42 U.S.C. §§ 4541, et seq.
   - Sections 523 and 527 of the Public Health Service Act of 1912, as amended, 42 U.S.C. §§ 290dd through 290dd-2.
   - Architectural Barriers Act of 1968 - 42 U.S.C. §§ 4151, et seq.

**24.1    Uniform Administrative Requirements for Federal Awards.**

The Recipient shall comply with the obligations on non-Federal entities under 2 CFR Parts 200 and 1201.

**24.2    Federal Law and Public Policy Requirements.**

The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and

a) the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

b) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

c) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

d) The failure of this agreement to expressly identify Federal law applicable to the Recipient or activities under this agreement does not make that law inapplicable.

**24.3    Federal Freedom of Information Act**

a) the USDOT is subject to the Freedom of Information Act, 5 U.S.C. 552.

b) the Recipient acknowledges that the Technical Application and materials submitted to the USDOT by the Recipient related to this agreement may become USDOT records subject to public release under 5 U.S.C. 552.

**24.4    History of Performance**

Under 2 C.F.R 200.206, any Federal awarding agency may consider the Recipient's performance under this agreement when evaluating the risks of making a future Federal financial assistance award to the Recipient.

# ATTACHMENT M

**Grant Number/FAIN:**
**Recipient Name:**
**Tax ID No.:**
**Unique Entity Identifier (UEI) Number:**


## CONTINUUM OF CARE PROGRAM (Assistance Listing# 14.267) GRANT AGREEMENT


This Grant Agreement ("this Agreement") is made by and between the United States Department of Housing and Urban Development ("HUD") and _____ (the "Recipient").

This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by

1. The Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024);

2. title IV of the McKinney-Vento Homeless Assistance Act 42 U.S.C. 11301 et seq. (the "Act");

3. the Continuum of Care Program rule at 24 CFR part 578 (the "Rule"), as amended from time to time;

4. the Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (NOFO), except for references in the NOFO to Executive Orders that have since been repealed;

5. all current Executive Orders; and

6. the Recipient's application submissions on the basis of which these Grant Funds were approved by HUD, including the certifications, assurances, technical submission documents, and any information or documentation required to meet any grant award condition (collectively, the "Application").

The Application is incorporated herein as part of this Agreement, except that only the project (those projects) listed below are funded by this Agreement. In the event of any conflict between any application provision and any provision contained in this Agreement, this Agreement shall control. Capitalized terms that are not defined in this agreement shall have the meanings given in the Rule.

(5) Notwithstanding anything in the NOFO or Application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

The recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

HUD will not enforce provisions of the Grant Agreement to the extent that they require the project to use a housing first program model.

As stated in Section III.A.2 of the NOFO, Faith-based organizations may be recipients or subrecipients for funds under this agreement on the same basis as any other organization. Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

If any new projects funded under this Agreement are for project-based rental assistance for a term of fifteen (15) years, the funding provided under this Agreement is for the performance period stated herein only. Additional funding is subject to the availability of annual appropriations.

The budget period and performance period of renewal projects funded by this Agreement will begin immediately at the end of the budget period and performance period of the grant being renewed. Eligible costs incurred between the end of Recipient's budget period and performance period under the grant being renewed and the date this Agreement is executed by both parties may be reimbursed with Grants Funds from this Agreement. No Grant Funds for renewal projects may be drawn down by Recipient before the end date of the project's budget period and performance period under the grant that has been renewed.

For any transition project funded under this Agreement the budget period and performance period of the transition project(s) will begin immediately at the end of the Recipient's final

DEFENDANTS' EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

ILLINOIS, *et al.*,

      Plaintiffs,

*v.*

FEDERAL EMERGENCY
MANAGEMENT AGENCY, *et al.*,

      Defendants.

Civil Action No.
25-cv-206-WES-PAS

### DECLARATION OF DAVID RICHARDSON

I, David Richardson, declare as follows:

1.      I am the Senior Official Performing the Duties of the Administrator at the Federal Emergency Management Agency ("FEMA" or "agency"). FEMA is a component within the U.S. Department for Homeland Security ("DHS"). As the Senior Official Performing the Duties of the FEMA Administrator, I am the DHS official responsible for being the principal advisor to the President and Secretary of Homeland Security ("Secretary") for all matters related to emergency management in the United States. I am also vested with the authority to manage and administer the various grant programs assigned to FEMA directly by statute or through delegation from the Secretary. In these capacities, I am familiar with the grant programs administered by FEMA and the policies and procedures governing these programs.

2.      My statements in this Declaration are based on my personal knowledge, on information provided to me in my official capacity; on reasonable inquiry; information obtained from various records, systems, databases, DHS, or FEMA employees and information portals maintained and relied upon by the DHS in the regular course of business; and on my evaluation of that information.

3.      FEMA administers grants that fall under three general categories: Preparedness, Mitigation, and Disaster. Preparedness grants support activities that improve

the readiness of communities to respond to emergencies and disasters. Preparedness grants fund training, exercises, and planning initiatives that enhance the capabilities of local, state, and tribal governments. Mitigation grants focus on reducing the long-term risk of disaster damage. Mitigation grants fund projects that strengthen infrastructure, implement hazard-resistant building codes, and promote community resilience through various initiatives aimed at minimizing future disaster impacts. Disaster grants provide financial assistance to individuals, communities, and some private nonprofit organizations directly affected by disasters. Disaster grants help cover costs related to recovery efforts, including housing assistance, public infrastructure repair, and other essential services needed to restore communities after a disaster.

4.    I have reviewed agency records concerning each DHS grant program that FEMA administers and that Plaintiffs' Complaint addresses. I also have reviewed those same records concerning each version of the DHS Standard Terms & Conditions ("Terms") that Plaintiffs have identified in the preliminary-injunction motion filings. ECF 20-4, -5, -6 (respectively dated Mar. 27, 2025; Apr. 18, 2025; and May 17, 2025).

5.    The federal government's fiscal year ("FY") runs from October 1 through September 30. DHS grants that have been issued or will issue during FY 2025, and therefore, correspond to periods of performance that start at some point between October 1, 2024, and September 30, 2025, and will have different end dates depending on the specific grant program and the project- specific costs they support. The periods of performance for grants awarded before FY 2025 may also extend into FY 2025 (*e.g.*, a Homeland Security Grant Program grant awarded in FY 2022 has a period of performance that begins on September 1, 2022, and ends on August 31, 2025). The Terms will not apply to those grants.

6.    On March 25, 2025, the Secretary signed a memorandum ("March 25 Memo") outlining which grant programs might apply immigration enforcement-related conditions. The March 25 Memo notes that DHS/FEMA's application of any conditions or restrictions on grant program applications or funding would vary based on the structure,

purpose, and statutory authority of each respective program. After reviewing each of FEMA's grant programs and authorizing statutes, the March 25 Memo determined which grant programs could be *exempt* from immigration enforcement conditions, and which grant programs required further review. The March 25 Memo establishes two things: (1) that the Department will not apply immigration enforcement provisions across the board to all its programs, identifying several programs where such conditions will not apply; and (2) that further consideration and analysis is needed for 12 identified programs before making a decision on whether to apply conditions to those programs. While the March 25 Memo makes final determinations regarding programs where immigration enforcement provisions will not apply, it remains predecisional concerning whether and how FEMA might apply the immigration enforcement conditions to the remaining programs. The copy of the March 25 Memo attached to Plaintiffs' Complaint as Ex. B (ECF 12) is accurate.

7.      Since the issuance of the March 25 Memo, DHS has been completing the additional analysis for the identified grant programs to determine whether it should apply restrictions related to federal immigration enforcement to each program and, if so, the scope of those restrictions. DHS has not yet made any final decision regarding the application of the immigration enforcement provisions to the programs identified in the Memo for further consideration.

8.      The Terms cover a broad range of conditions that could potentially apply to awards under the numerous grant programs administered by DHS components. A particular condition in the Terms, however, may not apply to a particular recipient and/or a particular grant award, such as where the statute that a condition is implementing only applies to certain recipient types, the particular grant program does not implicate the condition, or the award agreement for a specific program expressly excludes or revises a condition.

9.      The April Terms include specific conditions requiring compliance with federal civil immigration law, cooperation with federal civil immigration enforcement, and certifying that the grant applicant does and will not operate programs that benefits illegal

immigrants or incentivize illegal immigration (Sections C.IX and C.XVII(2)(a)(iii), the "Immigration Conditions").

10.     The Immigration Conditions were not included in any grant awards that had already been made before March 27, 2025.

11.     DHS/FEMA have not terminated or taken any action on any of its grant programs due to the Immigration Conditions.

12.     In keeping with the March 25 Memo, DHS is analyzing whether the Immigration Conditions can be applied to the following grant programs in a way that is consistent with the specific statutes that apply to each grant program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, and DHS may tailor the Immigration Conditions to a specific grant program:

- Emergency Management Performance Grant (EMPG)
- Homeland Security Grant Program – State Homeland Security Program (SHSP)
- Homeland Security Grant Program – Urban Area Security Initiative (UASI)
- Port Security Grant Program (PSGP)
- Presidential Residence Protection Assistance (PRPA)

13.     In keeping with the March 25, Memo, DHS has made a final determination that that the Disaster relief grant programs, the Mitigation grant programs, and certain Preparedness grant programs identified in the Plaintiffs' Complaint will ***not*** be subject to the Immigration Conditions.

14.     Specifically, the agency has made a final determination that Immigration Conditions do ***not*** apply to the following grant programs and applicants for funding under the following programs are not required to comply with Immigration Conditions in order to receive funding:

- **Disaster Relief**:
  - Public Assistance Programs

- Disaster Case Management (DCM)
- Hazard Mitigation Grant Program (HMGP)
- Fire Management Assistance Grant (FMAG)
- **Mitigation**:
  - National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance (NEHRP-ISEA)
  - Flood Mitigation Assistance (FMA)
  - National Dam Safety Program (NDSP)
  - Community Assistance Program – State Support Services Element (CAP-SSSE)
  - National Urban Search & Rescue Response System (US&R)
  - Cooperating Technical Partners Program (CTP)
- **Preparedness**:
  - State and Local Cybersecurity Grant Program (SLCGP)
  - Nonprofit Security Grant Program (NSGP)

15.     The above determination by DHS supersedes any language in the April Terms suggesting that the Immigration Conditions apply to these grant programs.

16.     Specifically with respect to the FMAG program identified by Plaintiffs, the Immigration Conditions do not apply to the FEMA-State Agreements required for FMAG funding.

17.     A Notice of Funding Opportunity ("NOFO") establishes DHS's guidance concerning various aspects of a particular Preparedness or Mitigation grant program for a specific fiscal year. Those aspects include the program's objectives, the amount of money appropriated by Congress for the program, how states can demonstrate their eligibility for funding and how they must apply for it, and the terms and conditions that apply to those programs. DHS/FEMA cannot award a Fiscal Year ("FY") 2025 Preparedness or Mitigation grant until after DHS/FEMA issues a NOFO for the program.

18.    For Preparedness and Mitigation grants, states are not required to acknowledge DHS's Terms until they apply for a NOFO. The Terms that are in effect at the time the grant is awarded apply to the grant, not the Terms in effect at the time of the NOFO.

19.    DHS/FEMA has not issued any NOFOs for any of the Preparedness or Mitigation programs identified in the Plaintiffs' complaint for FY 2025.

I, David Richardson, declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2025

David Richardson
Senior Official Performing the Duties of the Administrator
Federal Emergency Management Agency