BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
GLENN GIRDHARRY
Acting Deputy Director
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
LINDSAY ZIMLIKI
CAROLINE MCGUIRE
ANGEL FLEMING
VICTORIA TURCIOS
Trial Attorneys
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | CASE NO. 3:25-CV-1350 (WHO)<br><br>DEFENDANTS' RESPONSE TO COURT'S ORDER (DKT. 147) |

Pursuant to the Court's June 23, 2025 Order (Dkt. No. 147), Defendants submit this brief outlining why the Court should decline to enjoin immigration-related conditions in the 2024 U.S. Department of Housing and Urban Development's (HUD) Continuum of Care (CoC) Standard Terms and Conditions. Despite Plaintiffs' assertion that this condition violates this Court's injunction, the Congressionally determined and expansive catch-all provisions of 42 U.S.C. § 11386(b)(8) give HUD statutory authority to enforce the challenged CoC provisions.

First, Defendants note the Supreme Court's decision in *Trump v. CASA, Inc.*, No. 24A884, 606 U.S. -- (2025), provides that injunctive relief must be limited to the parties in a litigation. On that basis alone, extending this Court's preliminary injunction to HUD as a non-party is improper. Moreover, because injunctive relief was ordered against HUD in a related matter, where HUD *is* a party, injunctive relief here is unnecessarily duplicative as to six named Plaintiffs (which are a party to that litigation also). *See Martin Luther King, Jr. County, et al. v. Turner*, No. 2:25-cv-814, 2025 WL 1582368, at *17 (W.D. Wash. June 3, 2025) ("*King County*"), *appeal docketed*, No. 25-3664 (9th Cir. June 10, 2025). If the remaining Plaintiffs wish to challenge HUD's statutory authority to add a grant condition (as outlined *infra*), they must bring that challenge in a separate lawsuit.[1]

Nonetheless, to avoid having the subject provisions enjoined, this Court ordered the Defendants to demonstrate that the conditions in HUD's CoC grant agreements were substantively related to the HUD CoC grants.[2] Under 42 U.S.C. § 11386(b), a recipient must first enter into an agreement with HUD—accepting specific conditions—before the Secretary may disburse CoC grant funds. In addition to terms specifically provided by Congress, the recipient must agree "to comply with such other terms and conditions as the Secretary may establish to carry out this part in an effective and efficient manner." *Id.* §11386(b)(8). Notably, both this language and the immigration laws upon which the conditions are based preceded the challenged Executive Orders. Such discretionary language has routinely been used by HUD

---

[1] To the extent Plaintiffs are attempting to mount parallel challenges to the same grants in multiple courts, such claim-splitting is barred under the Federal Rules. *See Adams v. California Dep't of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) ("in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same").

[2] Respectfully, such burden was Plaintiffs' to bear and they failed to do so.

1

to require certification that recipients comply with federal anti-discrimination laws. Such required certifications also preceded the challenged Executive Orders in question.

Regardless, one of the conditions of the 2024 HUD CoC grant agreements states, "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." Dkt. No. 143, Attachment M. This condition merely requires recipients to comply with federal immigration laws, if they wish to obtain federal funding. Such policy ensures that United States citizens and legal aliens, who might be homeless, are provided for. This is neither unlawful nor unconstitutional. Section 11386(b)(8) squarely encompasses the challenged funding condition, as it aims to ensure that grant funds are not used for unlawful purposes—such as providing services to individuals who are not eligible under federal law, including illegal aliens. This condition ensures that grant funds are used[3] legally, effectively and efficiently to house and provide supportive services to eligible homeless persons.

As the Court relies upon *King County*, we note that decision mistakenly characterized the conditions listed in Section 11386(b) as non-substantive. *King County*, 2025 WL 1582368, at *16. While recipients must agree to certain reporting and privacy conditions, they must also agree to substantive conditions that implicate policy choices. That is, the conditions listed in section 11386(b) are substantive in nature. So although recipients must agree to certain ministerial reporting and privacy conditions (42 U.S.C. § 11386(b)(4)), recipients must also agree to substantive conditions that implicate policy choices. Recipients must agree, for example, "to ensure, to the maximum extent practicable, that individuals and families experiencing homelessness are involved, through employment, provision of volunteer services or otherwise, in constructing, rehabilitating, maintaining and operating facilities for the project and in providing supportive services." 42 U.S.C. § 11386(b)(3). Other conditions require recipients to take certain steps to ensure that children served in the CoC program are enrolled in school, can access services and programs to which they are entitled, and are placed in housing as close as possible to their original

---

[3] As the Court noted in its June 23, 2025 Order, the CoC conditions differ from the U.S. Department of Transportation and U.S. Department of Homeland Security standard terms previously considered by the Court because the HUD terms apply "to the use of already awarded funds, [and] they do not condition the receipt of funds." Dkt. No. 147.

1  school. *Id.* § 11386(b)(4)(D), (7). Considering all conditions required in section 11386(b) and Congress's
2  determined broad and discretionary provision, the canon of *ejusdem generis* confirms that the Secretary
3  has broad authority to impose a range of conditions on CoC recipients, from the ministerial to the
4  substantive, so long as they are designed to enhance the program's efficiency and effectiveness, which
5  necessarily include Congressional and case law mandate.

6   The CoC funding conditions largely track restrictions already in place by Congressional mandate.
7  Specifically, under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996
8  (PRWORA), federal public benefits, including the housing and supportive services provided through the
9  CoC program, are only available to U.S. citizens and aliens with a qualifying immigration status. 8 U.S.C.
10 § 1611(a). PRWORA enacted a national policy with respect to welfare and immigration, stating that
11 federal public benefits for unlawful immigration created an incentive for unlawful immigration. 8 U.S.C.
12 § 1601. Congress stated, "[i]t is a compelling government interest to remove the incentive for illegal
13 immigration provided by the availability of public benefits." *Id.* § 1601(6). Here, the challenged CoC
14 conditions enforce PRWORA's purpose. Essentially, the conditions ensure compliance with already-
15 existing statutory restrictions by (1) prohibiting state and local governments from using CoC funds to
16 subsidize or promote illegal immigration and (2) requiring recipients (other than charitable non-profits,
17 *see* 8 U.S.C. § 1642(d)) to verify that the individuals they serve are in fact eligible to receive federal
18 benefits. Thus, the HUD Secretary is acting within the authority granted to him by Congressional mandate
19 and section 11386(b)(8). As such, this Court should reject Plaintiffs' attempt to interfere with HUD's
20 exercise of its express statutory authority. Plaintiffs cannot use this Court's injunction as a vehicle to
21 override the agency's discretion to ensure United States citizens are provided for, as mandated by these
22 grant conditions.

23  Importantly, in their First Amended Complaint, Plaintiffs challenge the suspension or withholding
24 of funding pursuant to three specific and "related Executive Actions"—Executive Orders (EO) 14,159
25 and 14,219, and Attorney General Bondi's February 5, 2025 memorandum—and asked the Court "to
26 enjoin Defendants from enforcing the challenged provisions of the [EOs] and DOJ's memo." *See* Dkt. No.
27 22, ¶ 10. Plaintiffs' First Amended Complaint contains no allegations challenging HUD's use of a specific
28 statutory authority to impose immigration-related conditions. Under Federal Rule of Civil Procedure

3

8(a)(2), a plaintiff must include a "a short and plain statement of the claim showing that the pleader is entitled to relief," to provide notice of the claim and its legal basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (noting that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]") (internal citations and quotations omitted). Plaintiffs have not met this pleading requirement. The Court should therefore reject any attempt to wield the preliminary injunction as a catch-all mechanism to attack immigration conditions attached to any agency grant, regardless of grounding. *Trump v. CASA, supra*. Allowing this overreach would impermissibly expand this lawsuit far beyond what Plaintiffs have pled. *Id.*

Dated: July 11, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

GLENN GIRDHARRY
Acting Deputy Director

ELIANIS PEREZ
Assistant Director

LAUREN FASCETT
Senior Litigation Counsel

ANGEL FLEMING
LINDSAY ZIMLIKI
CAROLINE MCGUIRE
Trial Attorneys

/s/ Victoria E. Turcios
VICTORIA E. TURCIOS
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Victoria.E.Turcios2@usdoj.gov

1 | *Attorneys for Defendants*
2 |
3 |
4 |
5 |
6 |
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 11, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

/s/ Victoria E. Turcios
VICTORIA E. TURCIOS
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorney for Defendants*

A