BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
GLENN GIRDHARRY
Acting Deputy Director
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
LINDSAY ZIMLIKI
CAROLINE MCGUIRE
ANGEL FLEMING
VICTORIA TURCIOS
Trial Attorneys
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　　　Defendants. | CASE NO. 3:25-CV-1350 (WHO)<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT |

i

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

PROCEDURAL HISTORY.....................................................................................................1

LEGAL STANDARD..............................................................................................................3

I.    AMENDMENT IS FUTILE. ......................................................................................4

     A.    The Court should deny Plaintiffs' motion for leave file a second amended complaint as futile because the SAC cannot survive a motion to dismiss under Rule 12(b)(6)...........................................................................................................4

     B.    The Court should deny Plaintiffs' motion as futile because the SAC cannot survive a motion to dismiss under Rule 12(b)(3) for improper venue.............................8

     C.    The Court should deny Plaintiffs leave to amend their complaint because Plaintiffs' proposed amendment seeks to improperly Join 34 Cities and Counties. ..............................................................................................................9

II.   AMENDMENT IS PREJUDICIAL.........................................................................12

CONCLUSION…………………………………………………………………………..15

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Adams v. California Dep't of Health Services*,
   487 F.3d 684 (9th Cir. 2007) ................................................................ 11

*Arcure v. Cal. Dep't. of Developmental Servs.*,
   No. 1:13-cv-00541-LJO-BAM, 2014 WL 346612, 2014 U.S. Dist. LEXIS 11798, at *6
   (E.D. Cal. Jan. 30, 2014).................................................................... 9

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) .................................................................. 3

*Brown v. Stored Value Cards, Inc.*,
   953 F.3d 567 (9th Cir. 2020) ................................................................. 3

*Chippewa Cree Tribe of Rocky Boy's Rsrv., Montana v. U.S. Dep't of Interior*,
   900 F.3d 1152 (9th Cir. 2018) .............................................................. 10

*City & Cnty. of San Francisco v. Garland*,
   42 F.4th 1087 (9th Cir. 2022) ................................................................ 7

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ........................................................... 9, 12

*Coughlin v. Rogers*,
   130 F.3d 1348 (9th Cir. 1997) ............................................................... 9

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ............................................................ 3, 12

*Dep't of Educ. v. Cal.*,
   145 S. Ct. 966 (2025)....................................................................... 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................... 3

*Foman v. Davis*,
   371 U.S. 178 (1962)......................................................................... 3

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ............................................................... 4

*Grover Products LLC v. Air Horns of Texas, LLC,*
   No. 2:24-cv-08002-CAS-PD, 2025 WL 1384256 (C.D. Cal. March 24, 2025) ................... 3

*Hernandez v. City of San Jose*,
  No. 16-CV-03957-LHK, 2017 WL 2081236 (N.D. Cal. May 15, 2017) ................................ 9

*Howey v. United States*,
  481 F.2d 1187 (9th Cir.1973) ................................................................................................ 12

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385, 1388 (9th Cir. 1990) .................................................................................... 13

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................................................... 6

*Miles v. Dep't of Army*,
  881 F.2d 777 (9th Cir. 1989) ................................................................................................... 3

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) ................................................................................................... 4

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ................................................................................................... 4

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
  522 F.3d 1049 (9th Cir. 2008) ................................................................................................. 4

*Rugila v. Mayorkas*,
  No. 24-CV-01218-MMC, 2024 WL 1446457 (N.D. Cal. Apr. 2, 2024) ................................ 8

*S. Dakota v. Dole*,
  483 U.S. 203 (1987) ............................................................................................................... 10

*SEC v. Leslie*,
  2010 WL 2991038 (N.D. Cal. July 29, 2010) ....................................................................... 10

*State v. DOJ*,
  951 F.3d 84 (2d Cir. 2020) .................................................................................................... 10

*Stith v. California*,
  No. 23-947, 2023 WL 4274043 (E.D. Cal. June 29, 2023) ................................................... 11

*Texaco, Inc. v. Ponsoldt*,
  939 F.2d 794 (9th Cir. 1991) ................................................................................................. 15

*Thome v. U.S. Food & Drug Admin.*,
  No. 11-00676 PSG, 2011 WL 3206910 (N.D. Cal. July 27, 2011) ......................................... 7

*Trump v. CASA, Inc.*,
  606 U.S. ----, No. 24A884, 2025 WL 1773631 (June 27, 2025) .......................................... 14

iv

*Trump v. Am. Fed'n of Gov't Emps.*,
  No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ........................................................ 5

*Trump v. New York*,
  592 U.S. 125 (2020) ........................................................................................................... 6

*U.S. v. Webb*,
  655 F.2d 977 (9th Cir. 1981) ............................................................................................ 13

*Union Pac. R. Co. v. Nevada Power Co.*,
  950 F.2d 1429 (9th Cir. 1991) ............................................................................................ 3

*Zhang v. Chertoff*,
  No. C 08–02589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ....................................... 8

**Statutes**

5 U.S.C. § 704 ........................................................................................................................ 13

28 U.S.C. § 1391(e) ................................................................................................................. 8

28 U.S.C. § 1391(e)(1) .......................................................................................................... 8, 9

U.S.C. § 1346 ........................................................................................................................ 12

U.S.C. § 1406(a) ..................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 20(a) ................................................................................................................ 9

Fed. R. Civ. P. 21 .................................................................................................................... 9

Fed. R. Civ.P. 15(a) ................................................................................................................. 3

# INTRODUCTION

The Court Should Deny Plaintiffs' Motion for Leave to File a Second Amended Complaint (SAC) because their proposed amendments are futile, improper, and prejudicial. Nor do their proposed amendments cure the fatal flaws that warrant dismissal of this case. The SAC still fails to establish justiciability: Plaintiffs' alleged injuries remain speculative, contingent on unknown future events, and insufficient to confer standing. It also cannot survive dismissal under Rule 12(b)(3) because venue remains improper for most of the newly proposed plaintiffs. And Plaintiffs' attempt to add 34 new plaintiffs, many of whom are from different jurisdictions, is an improper effort to consolidate disparate claims into a single forum and burden Defendants with sprawling, unmanageable litigation. The Court should reject this belated attempt to reframe a deficient complaint and deny leave to amend.

# PROCEDURAL HISTORY

Plaintiffs filed this lawsuit on February 7, 2025. Dkt. No. 1. Plaintiffs' initial Complaint challenged the January 20, 2025 Executive Order 14,159 (EO 14,159), "Protecting the American People Against Invasion," which provides that "to the maximum extent possible under law," agencies should "evaluate and undertake any lawful actions" to limit sanctuary jurisdictions' access to federal funds, *id.* at §17, and a similar February 5, 2025 memo by Attorney General Pam Bondi. Dkt. No. 1 at 39–49 (Counts I–XIII). Plaintiffs alleged these executive directives violated the Separation of Powers, the Spending Clause, Due Process, the Tenth Amendment, and the Administrative Procedure Act (APA). *Id*. The initial Complaint listed five cities and counties as Plaintiffs. *Id.*

On February 27, 2025, Plaintiffs filed a First Amended Complaint (FAC), which asserted the same eight counts as the initial Complaint but also challenged the legality of the February 19, 2025, Executive Order 14,218 (EO 14,218), "Ending Taypayer Subsidization of Open Borders," which limited federal funds to illegal aliens, and added 11 new cities and counties as Plaintiffs. Dkt. No. 22 at 4–5 (Parties), 75–86 (Count I–XIII).

On March 17, 2025, Plaintiffs filed a motion for preliminary injunction "prohibiting Defendants from taking any action to withhold, freeze, or condition federal funds based on" portions of the challenged Executive directives.  Dkt. No. 61 at 1. Additionally, on March 27, Plaintiffs filed a Supplemental Request for Judicial Notice in support of their March 17 motion, in which they asked the Court to take judicial

notice of a February 19, 2025 memo by Secretary of Homeland Security, Kristi Noem, "Restricting Grant Funding for Sanctuary Jurisdictions." Dkt. Nos. 88, 89. The memo defined sanctuary jurisdictions, and instructed DHS components to "review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions." Dkt. No. 89. It further instructed each component to cease providing federal funding to said jurisdictions, "[t]o the extent consistent with relevant legal authorities and the applicable terms and conditions of each award." *Id*.

On April 7, 2025, Plaintiffs filed a second supplemental request for judicial notice, Dkt. No. 95, in which they asked this Court to take judicial notice of 1) a March 20, 2025, memo by Secretary Noem regarding how immigration conditions should be assessed for application to non-disaster-related FEMA funds. Dkt. No. 95-1 at 1-29; DHS Standard Terms and Conditions, *id.* at 30-39; along with media articles, a White House memo on Federal Rule of Civil Procedure 65(c), and various other courts' injunctions issued against single agency defendants in other cases challenging specific grant programs, *Id.* at 40-90.

After considering all of Plaintiffs' evidence and the parties' briefs, the Court granted a preliminary injunction on April 24, 2025. Dkt. No. 111. The Court's injunction was followed by a second order dated May 3, 2025, explaining the Court's reasoning in more detail. Dkt. No. 126.  Two days later, Plaintiffs filed a motion to enforce, or in the alternative, to modify the preliminary injunction. Dkt. No. 128. Plaintiffs argued that a clarifying order was necessary in light of Executive Order 14,287, dated April 28, 2025, (EO 14,287), "Protecting American Communities from Criminal Aliens," which after designation as a sanctuary jurisdiction, notification of designation, and failure to alter sanctuary policies, directs "each executive department or agency (agency), in coordination with the Director of the Office of Management and Budget and as permitted by law, [to] identify appropriate Federal funds to sanctuary jurisdictions, including grants and contracts, for suspension or termination, as appropriate." EO 14287 at §§ 2-3(a); Dkt. No. 128 at 5-6. The Court issued yet another order clarifying its preliminary injunction. Dkt. No. 136.

On June 13, 2025, the Parties, at Plaintiffs' insistence, filed a joint dispute letter with the Court based upon Plaintiffs' assertion that Defendants were not complying with the Court's orders. Dkt. No. 143. On June 23, 2025, the Court issued a decision on the joint dispute letter finding that the preliminary injunction enjoined DHS and DOT standard terms and conditions from applying to DJS/DOT grants issued to Plaintiffs. Dkt. No. 147 at 3. With respect to HUD grant terms, the Court ordered Defendants to

1  brief the Court on the required nexus between the grant conditions and grant programs, which Defendants

2  filed on July 11, 2025. Dkt. No. 166.On July 8, 2025, Plaintiffs filed a Motion for Leave to File Second

3  Amended Complaint (SAC), Dkt. 151. The SAC asserts the same eight counts as the FAC, continues to

4  challenge the executive directives already in the FAC or judicially-noticed to the Court, and adds 46 new

5  Plaintiffs and two additional Defendants. Dkt. No. 151-3 at ¶¶ 17–76 (Parties), ¶¶ 697–764 (Counts I–

6  XIII).

7  ## LEGAL STANDARD

8       After a party has amended a pleading once as a matter of course, it may only amend further after

9  obtaining leave of the court, or by consent of the adverse party. Fed.R.Civ.P. 15(a). Generally, Rule 15

10  advises the court that "leave shall be freely given when justice so requires."

11       Courts look at five factors known as "*Foman* factors" when deciding whether to permit an

12  amendment to a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure

13  deficiencies by amendments previously permitted; (4) undue prejudice to the opposing party; or (5) futility

14  of amendment. *Eminence Capital, LLC v. Aspeon, Inc*. 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman

15  v. Davis*, 371 U.S. 178, 182 (1962)). Of these factors, "prejudice to the opposing party carries the most

16  weight." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020); *see also Eminence Capital,

17  LLC*. 315 F.3d at 1052(same). However, "[f]utility of amendment can, by itself, justify the denial of

18  a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

19       Further, the Ninth Circuit distinguishes between "[a]mendments seeking to add claims" which are

20  more liberally granted, and "amendments adding parties." *Grover Products LLC v. Air Horns of Texas,

21  LLC,* No. 2:24-cv-08002-CAS-PD, 2025 WL 1384256 at *4 (C.D. Cal. March 24, 2025); "differentiate[s]

22  between pleadings attempting to amend claims from those seeking to amend parties. Amendments seeking

23  to add claims are to be granted more freely than amendments adding parties." *Union Pac. R. Co. v. Nevada

24  Power Co*., 950 F.2d 1429, 1432 (9th Cir. 1991) (citing *Miles v. Dep't of Army*, 881 F.2d 777, 782 (9th

25  Cir. 1989); *contra DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("[L]iberality in

26  granting leave to amend is not dependent on whether the amendment will add causes of action or

27  parties.")."

28

## I.    AMENDMENT IS FUTILE.

Futility arises when the amendment is legally insufficient, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), or where the amended complaint would be subject to dismissal, such as when it violates the statute of limitations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008). "[T]he district court's discretion in denying amendment is 'particularly broad' when it has previously given leave to amend." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### A.    The Court should deny Plaintiffs' motion for leave file a second amended complaint as futile because the SAC cannot survive a motion to dismiss under Rule 12(b)(6).

In the SAC, Plaintiffs assert challenges to three EOs, specifically Section 17 of EO 14,159, dated January 21, 2025, Section 2(a)(ii) of EO 14,218, dated February 19, 2025, and Section 3(a) of 14,287, dated April 28, 2025; as well as the Bondi Memo, dated February 5, 2025; and the Noem Memo, dated February 19, 2025. These EOs and directives were issued months before Plaintiffs sought to amend their Complaint for a second time and all except EO 14,287 were already challenged in Plaintiffs' FAC. Though, as noted above, the Court took judicial notice of this EO and factored it into its May 9, 2025, Clarifying Order. Dkt. No. 136.

Plaintiffs offer a perfunctory analysis of the Executive Orders and assert an overbroad understanding of their scope. Plaintiffs ask the Court to seize on isolated references to "'sanctuary' jurisdictions" and "'sanctuary' policies" as well as "Federal funds" and "Federal payments," and leap to the conclusion that the Executive Orders should be enjoined as unconstitutional. But as Defendants will address more thoroughly in their motion to dismiss, a closer review of the Executive Orders' terms and a serious engagement with their text, along with the manner in which agencies sought to implement those Orders (prior to the Court's preliminary injunction), it is clear that EOs are not unconstitutional. Therefore, Plaintiffs' SAC should be denied as futile, especially regarding EO 14,287, where the Court has already addressed it and found it materially different from the other EOs. *See* Dkt. No. 136.

First, the challenged EOs and directives call for only "lawful actions". Section 17 of EO 14,159 says, "The Attorney General and the Secretary of Homeland Security shall, *to the maximum extent possible*

*under law*, evaluate and undertake any *lawful actions*. . . ." [1] Giving effect to this savings clause would not override the plain text of the EO and can be given effect if necessary to avoid Separation of Powers concerns. To the extent that any theoretical Separation of Powers concern might arise with respect to a particular grant and the statutory authority on which it is predicated, the EO's savings clause would mitigate any such concerns.

Similarly, Section 2(a)(ii) of EO 14,218, says "the head of each executive department or agency (agency) shall . . . "ensure, *consistent with applicable law*, that Federal payments to States and localities do not, by design or effect, facilitate the subsidization or promotion of illegal immigration, . . . . This section does not apply to federal funding for States and localities at all but instead restricts the payment of federal public benefits to individuals who are aliens unlawfully present in the United States. And, it does so pursuant to longstanding statutory requirements that Congress imposed thirty years ago in Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). Those requirements—instructing that federal public benefits, even when administered through a State or locality, should not be provided to aliens unlawfully present in the United States—are clearly set forth in federal law, and Plaintiffs fail to show how such decades-old statutory conditions raise a Separation of Powers concern.

Related, Section 3(a) of 14,287 says that for "sanctuary jurisdictions that are designated under section 2(a) of this order, the head of each executive department or agency (agency), in coordination with the Director of the Office of Management and Budget and *as permitted by law*, shall identify appropriate Federal funds to sanctuary jurisdictions, including grants and contracts, for suspension or termination, *as appropriate*." Allowing Plaintiffs' SAC to add a challenge to this EO is futile because, first, as this Court already stated, EO 14,287 is materially different from the other challenged EOs and directives because

---

[1] Justice Sotomayor's concurrence *Trump v. Am. Fed'n of Gov't Emps.*, recently noted the importance of a similar savings clause in a separate executive order. *See* No. 24A1174, 2025 WL 1873449, at *1 (U.S. July 8, 2025). Justice Sotomayor explained that "the relevant Executive Order directs agencies to plan reorganizations and reductions in force 'consistent with applicable law,' and the resulting joint memorandum from the [OMB] and [OPM] reiterates as much." *Id.* As such, Justice Sotomayor explained that because those reorganization or reduction in force plans were not before the court "at this stage," the Court had "no occasion to consider whether [the plans] can and will be carried out consistent with the constraints of law." *Id.*

"Section 2 of EO 14,287 calls for the Attorney General, in coordination with the DHS Secretary, to publish a list of States and local jurisdictions they have identified as "sanctuary" jurisdictions, and to notify those jurisdictions of their status on the list." Dkt. No. 136 at 5. "[N]othing in Section 2 of EO 14,287 directs executive agency heads to withhold from, freeze, or condition all federal funding to sanctuary jurisdictions on their compliance with federal immigration law. . ." *Id*. As for Section 3, this Court noted that "[t]he requirement to identify funds for potential rescission, by itself, is not inappropriate, following an evaluation of the type of funding involved to determine if there is a nexus between the funding stream, the jurisdiction's policies, and the desired immigration-related conditions. *Id*. at 6. Thus, for the same reasons that Plaintiffs' constitutional challenges to the other EOs and directives lack merit, Plaintiffs' proposed amendment to include this EO also is futile.

Second, despite Plaintiffs' claims that these EOs and directives will deprive them of federal funding, no funding has been denied to any Plaintiff. The challenged EOs and directives call for an evaluation process but do not directly impact any funding. Thus, Plaintiffs' claims are neither ripe nor do Plaintiffs establish standing because such agency guidance does not, and has not, independently caused any actual harm to Plaintiffs. *See* Dkt. No. 93 at 8–12. Defendants reiterate and maintain their arguments in opposition to the preliminary injunction again now, when the Government still has not made any funding decisions *months* after Plaintiffs initiated litigation. Plaintiffs' proposed amendment does not cure these threshold justiciability issues that warrant dismissal of this case.

Again, the EOs simply instruct the agencies to conduct a review on a program-by-program basis to determine grants to which the sanctuary jurisdiction condition should apply as authorized by specific statutes set forth by the relevant agencies. Nothing in the EOs demanded the agencies apply conditions in an indiscriminate or wholesale manner. While the EOs direct executive agencies to evaluate federal funding of certain localities, the "when" and "how" of the Executive Branch implementing this general directive, and how it will affect each Plaintiff is "no more than conjecture" at this time. *Trump v. New York*, 592 U.S. 125, 131 (2020) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). Indeed, there would be no need for such an evaluation if *all* federal funding were going to be impacted, as Plaintiffs continue to suggest.

Because neither Defendants, nor Plaintiffs, nor the Court know which funding will be affected, Plaintiffs cannot assert a concrete, particularized, imminent injury. Plaintiffs' hypothetical injury—that the federal Government may withhold funding or otherwise penalize them for being sanctuary locales— is too speculative for this Court to adjudicate or redress *at this time. See City & Cnty. of San Francisco v. Garland*, 42 F.4th 1087 (9th Cir. 2022).

Third, even if Plaintiffs' challenge to the EOs and directives states a valid claim, that does not mean that federal agencies are not allowed to identify particular grants and funding programs that each believes should be conditioned upon compliance with immigration-related objectives. This Court recognized as much in its Clarifying Order (Dkt. No. 136) explaining that "the Preliminary Injunction was not designed to freeze litigation over the propriety of "sanctuary" policies or immigration-related conditions on particular government grants and contracts." Dkt. No. 136 at 4.

Critically, Plaintiffs seek to prevent the Government from performing this normal function whole cloth, by claiming any agency action is being taken solely at the direction of the EOs rather than the agencies' separate analysis and identification of independent statutory authority to add conditions. But if Plaintiffs want to challenge an agency's statutory authority to impose an immigration condition on a specific grant, they need to do so via a separate and tailored lawsuit, naming the specific agency as a defendant, identifying a specific grant that is set to be denied, and challenging the specific provisions in the complaint. Plaintiffs cannot be allowed to use this broad challenge to EOs to litigate every agency's action, especially where they have not named the agencies as defendants. And as discussed *infra*, Plaintiffs' proposed second amendment to their Complaint, to add numerous new parties, many of which are located outside of this District and Circuit, is still legally deficient, procedurally improper, prejudicial, and futile (not to mention Plaintiffs do not bother to add agencies despite seeking enforcement against them). *Thome v. U.S. Food & Drug Admin.*, No. 11-00676 PSG, 2011 WL 3206910, at *2 (N.D. Cal. July 27, 2011) ("A party lacking Article III standing at the outset of the lawsuit has no power to prosecute the action. As such, 'a plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists.'").

1

2

**B.      The Court should deny Plaintiffs' motion as futile because the SAC cannot survive a motion to dismiss under Rule 12(b)(3) for improper venue.**

3      The federal venue statute directs a district court to dismiss or transfer a case filed in the wrong

4    district or division. 28 U.S.C. § 1406(a). Venue in a suit against the federal government is governed by 28

5    U.S.C. § 1391(e). Section 1391(e) provides that generally, in any civil action against the United States, its

6    agencies, or its officers, like this one, venue is proper in "any judicial district in which (A) a defendant in

7    the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a

8    substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real

9    property is involved in the action." 28 U.S.C. § 1391(e)(1). Venue is not proper in this District for most

10   Plaintiffs in the SAC because they do not reside in this District (or this Circuit), Defendants do not reside

11   here, and no part of the events giving rise to this case occurred in this District.

12      First, the Defendants reside in Washington, D.C. *See Zhang v. Chertoff*, No. C 08–02589, 2008

13   WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases); *Rugila v. Mayorkas*, No. 24-CV-01218-

14   MMC, 2024 WL 1446457, at *1 (N.D. Cal. Apr. 2, 2024) ("Under established caselaw, where, as here, an

15   action is brought against a federal officer in his or her official capacity, the officer's residency is the place

16   in which the federal agency is located.")(collecting cases).

17      Second, the challenged Executive Orders and directives were developed and issued in Washington,

18   D.C., not in this District or Division. No property is at issue, and Plaintiffs have not identified any events

19   or omissions relevant to the claims that occurred locally. Plaintiffs' SAC asserts that venue is proper in

20   this District "because Plaintiffs City & County of San Francisco and County of Santa Clara reside in this

21   judicial district and a substantial part of the events or omissions giving rise to this action occurred in this

22   district." 28 U.S.C. § 1391(e)(1); Dkt. No. 151-3 ¶ 15. However, Plaintiffs fail to allege that any relevant

23   events occurred in this Division—a crucial distinction under the venue statute. Plaintiffs also argue that

24   their various "sanctuary city" policies and city or county budgets are impacted by the Executive Orders or

25   the Bondi Memo and implementation of these orders will result in devasting budgetary injury. Dkt. No.

26   151-3 at93. But those injuries are wide-ranging, *id.* at 94–146, and would occur in districts outside of the

27   Northern District of California. Thus, there is no basis to conclude that "a substantial part of the events or

28   omissions giving rise to the claim" occurred in this judicial district under § 1391(e)(1)(B).

Third, the majority of Plaintiffs do not reside in this District. Of the 16 Plaintiffs currently named in the FAC, nine reside outside this District or Division. Plaintiffs now seek to add 34 more Plaintiffs—20 of whom also reside outside this District. If granted, their motion would result in 30 of the 50 total Plaintiffs residing outside this District, Division. *See* Exhibit 1, Defendants' Chart of Plaintiffs in FAC and SAC.

Because these additional Plaintiffs cannot survive a motion to dismiss under 12(b)(3) for improper venue, the Court should deny the motion for leave to file the SAC as futile.

## C.   The Court should deny Plaintiffs leave to amend their complaint because Plaintiffs' proposed amendment seeks to improperly Join 34 Cities and Counties.

Preliminarily, Defendants highlight that they previously expressed their intention to move the Court for severance of certain Plaintiffs in the FAC. Dkt. No. 115 at 10. Defendants' motion was forthcoming when Plaintiffs indicated their intention to amend their Complaint a second time. The 34 new Plaintiffs in the SAC would be misjoined for the same reasons certain Plaintiffs are presently misjoined by the FAC.

Under Rule 20(a) joinder is appropriate where "(1) the plaintiffs asserted a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (emphasis added); Fed. R. Civ. P. 20(a). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

Under Rule 21, the Court has broad discretion to sever any claim against a party. Fed. R. Civ. P. 21; *Coleman*, 232 F.3d F.3d at 1297. "There is no established test in the Ninth Circuit for when a district court should exercise its broad discretion and sever a claim under Rule 21." *Arcure v. Cal. Dep't. of Developmental Servs.*, No. 1:13-cv-00541-LJO-BAM, 2014 WL 346612, at *6, 2014 U.S. Dist. LEXIS 11798, at *6 (E.D. Cal. Jan. 30, 2014). However, in deciding whether severance is appropriate, courts typically consider "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and

9

1  (5) whether different witnesses and documentary proof are required for the separate claims." *Hernandez*

2  *v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *4 (N.D. Cal. May 15, 2017) (quoting

3  *SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010), *clarified on denial of reconsideration*,

4  No. 5:07-CV-03444-JF, 2010 WL 3259375 (N.D. Cal. Aug. 18, 2010)).

5        Although Plaintiffs assert that they are alleging common claims on behalf of all Plaintiffs—

6  common constitutional challenges to the EOs and APA claims against the DOJ and DHS directives—in

7  reality, Plaintiffs inappropriately seek to curb all individual agency action that purports to impose

8  conditions on funding on specific jurisdictions under specific grants. Such claims challenging a federal

9  agency's statutory authority to add conditions to funding inevitably arise out of separate transactions or

10  occurrences and are thus improperly joined. *Chippewa Cree Tribe of Rocky Boy's Rsrv., Montana v. U.S.*

11  *Dep't of Interior,* 900 F.3d 1152, 1156 (9th Cir. 2018) (government must conduct investigation to

12  determine if grantee violated grant conditions prior to reclaiming the funds).

13        Relatedly, to assess the "coercive" nature of a funding condition, an adjudicator inevitably must

14  assess a locality's "sanctuary" policies to see if they are in conflict with a funding condition. Similarly,

15  the adjudicator may need to review what portion of the locality's budget the conditioned funding effects.

16  *See S. Dakota v. Dole*, 483 U.S. 203, 211 (1987) ("Our decisions have recognized that in some

17  circumstances the financial inducement offered by Congress might be so coercive as to pass the point at

18  which 'pressure turns into compulsion.'") (internal citation omitted); *Chippewa Cree Tribe of Rocky Boy's*

19  *Rsrv., Montana v. U.S. Dep't of Interior*, 900 F.3d 1152, 1161 (9th Cir. 2018) (finding that while the

20  stimulus grant funded a project that was important to the Tribe,  an offer is not coercive just because it is

21  attractive); *State v. DOJ*, 951 F.3d 84, 116 (2d Cir. 2020) (analyzing what percentage of a local

22  government budget may be impacted by federal withholding to evaluate plaintiffs' Tenth Amendment

23  commandeering claims).

24        For example, Plaintiffs allege that San Franscisco received at least $8.7 million in funds

25  administered by DOJ in FY 2024-2025 and San Francisco's current budget includes nearly $3.1 billion in

26  federal funds. *Id.* ¶¶ 456, 459. Plaintiff New Haven has received "approximately $104,222,265" in federal

27  grant monies "over the last few years[.]" *Id.* ¶ 472. And "[f]or Fiscal Year 2026, Baltimore expects to

28  receive approximately $216 million in operating dollars and $65 million in capital dollars from the federal

government[.]" *Id.* ¶ 575. These inquiries likely require documentary or testimonial evidence and factual development about specific funding decisions in each locality and would merit determinations guided by the unique law in each municipalities' home forum. Indeed, as this Court noted in its decision denying permissive intervention of three non-profit organizations, although many "entities and persons may have in common that they *are* affected by the federal government's challenged actions, the *nature* of that effect varies, meaning the relief to which they may be entitled also varies." Dkt No. 142 at 3 (emphasis in original).

Plaintiffs effectively admit this reality by submitting approximately 53 pages of facts for each proposed plaintiff discussing their specific sanctuary policies and funding. *See* Dkt. No. 151-3 ¶¶456–687 (discussing the various Plaintiffs' local programs supported by federal funding); *see also* Dkt. Nos. 61-3 – 61-20, 63–82 (impact declarations from various city and county officials). Because Plaintiffs claims will require a highly individualized analysis to determine the nature and extent to which they are entitled to relief; allowing an amendment to misjoin new Plaintiffs who subsequently should be severed is futile. *See Stith v. California*, No. 23-947, 2023 WL 4274043, at *3–4 (E.D. Cal. June 29, 2023) (holding severance of claims was warranted because "[t]he joinder of multiple Plaintiffs with varying factual allegations does not promote judicial economy and confuses and complicates the issues because there are questions of fact and causation unique to each of their alleged injuries"). Also, to the extent Plaintiffs are attempting to mount parallel challenges to the same grants in multiple courts (*see e.g., King County et al., v. Turner et al.*, 2:25-cv-00814 (W.D. Wa)), such claim-splitting is barred under the Federal Rules. *See Adams v. California Dep't of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) ("in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same").

Finally, permitting 34 additional cities and counties to join this action would result in unwieldy, behemoth, and never-ending litigation. In its order denying permissive intervention, the Court also noted that it could "see no limiting principle that would allow intervention by the Intervenors and not by other nonprofits or organizations with the same mission, further delaying and prolonging the litigation." Dkt. No. 142 at 3. Similarly here, there is no limiting principle which would prevent other cities or counties from joining this action thereby expanding the scope of this litigation and delaying the proceedings.

Plaintiffs have already misjoined several Plaintiffs to this litigation because their claims do not arise out of the same transaction or occurrence and they should not be permitted to amend their Complaint in order to misjoin 34 additional cities and counties. *Coleman*, 232 F.3d at 1296. This entire proceeding disregards the careful APA scheme providing for Plaintiffs to challenge specific agency actions directed towards them. And with respect to actual grants, it disregards the Tucker Act, which steers disputes to the Court of Federal Claims.[2]

## II.    AMENDMENT IS PREJUDICIAL

Not all the *Foman* factors merit equal weight. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). As the Ninth circuit and others have held, "prejudice to the opposing party . . . carries the greatest weight." *Id.* (quoting *DCD Programs, Ltd.*, 833 F.2d at 185). "Prejudice is the touchstone of the inquiry under rule 15(a)." *Id.* (internal citations and quotation marks omitted); s*ee also Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir. 1973) (stating that "the crucial factor is the resulting prejudice to the opposing party"). The amendments Plaintiffs seek to make to their proposed SAC would prejudice Defendants because they seek to add 34 localities that they knew or should have known to add to their original or FAC and the addition of these plaintiffs will transform this case into complex litigation that is burdensome on Defendants to manage and litigate.

Plaintiffs state in their motion that their request for leave to amend is prefaced on the "flurry" of executive actions that have taken place since they filed their FAC. Dkt. No. 151 at 5-6. But all the actions mentioned have been addressed by this Court. They previously sought judicial notice of the March 25 FEMA recommendations made pursuant to the February 19 Noem directive, Dkt. No. 88, 95, and the Court's preliminary injunction already covered the FEMA conditions. Dkt. No. 111. Additionally, they filed a motion to enforce or modify this Court's May 3, 2025 preliminary injunction, prevent the U.S. Government from implementing Executive Order 14,287, dated April 28, 2025. Dkt. No. 128. This was

---

[2] *Dep't of Educ. v. Cal*., 145 S. Ct. 966, 968 (2025)( in reviewing a district courts' order enjoining the Government from terminating education-related grants, the Supreme Court held that the order was, at its core, an order "to enforce a contractual obligation to pay money" and thus belonged in the Court of Federal Claims under the Tucker Act.). Likely knowing this, Plaintiffs improperly assert jurisdiction to sue the United States under 28 U.S.C. § 1346, despite not alleging any facts that would support a claim under the Federal Tort Claims Act.

1   despite the fact the only action resulting from that Executive Order was DHS's June 1, 2025 list of
2   sanctuary jurisdictions, which was withdrawn within days of being posted. *See e.g.*, *List of 'Sanctuary*
3   *Jurisdictions' Removed from US Government Website Following Criticism*, Associated Press (June 1,
4   2025)    available    at    https://apnews.com/article/immigration-sanctuary-jurisdictions-list-
5   a372c7501746e4f2b7e117ba22ebccac (last visited July 21, 2025); Dkt. No. 151 at 5 (conceding DHS
6   withdrew the list). This Court addressed Executive Order 14,287 in its May 9, 2025 "Order Clarifying
7   Preliminary Injunction." Dkt. No. 136. Lastly, "DHS, DOT, and HUD's issuance of grant terms and
8   conditions requiring local cooperation with federal civil immigration enforcement in furtherance of the
9   Executive Orders and directives by Defendants Bondi and Noem" are already part of their FAC (despite
10  DOT and HUD not being named defendants). Dkt. No. 22. So, none of their alleged reasons for seeking
11  amendment are actual "intervening actions." Indeed, these alleged actions only underscore the need for
12  final agency action under the APA before a challenge can be brought. *See* 5 U.S.C. § 704.

13       The true addition to their SAC is the addition of 34 more plaintiffs, one named defendant agency
14  (OMB), and one named defendant agency head (Russell Vought). The additional plaintiffs are 34
15  jurisdictions that are "spread across the country" and "home to 23 million residents," each of which have
16  applied or will apply for various grants provided by different agencies and may or may not actually be
17  affected by the executive directives at issue in this case. Dkt. No. 151-3 at ¶ 12. Moreover, these additional
18  plaintiffs are all jurisdictions that could have been named as parties to this suit all along. The Ninth Circuit
19  has described two scenarios where a court may find undue delay. *See Jackson v. Bank of Hawaii*, 902 F.2d
20  1385, 1388 (9th Cir. 1990). One aspect of the issue is whether an "amendment . . . would produce an
21  undue delay in the litigation." *Id.* at 1387. The second aspect is whether the plaintiffs unduly delayed filing
22  their amendment. *See id.* at 1387–89. The court in *Jackson* explained that "relevant to evaluating the delay
23  issue is whether the moving party knew or should have known the facts and theories raised by the
24  amendment in the original pleading." *Id.* at 1388. Here, plaintiffs certainly knew the plaintiffs and
25  executive directives raised by the second proposed amended complaint when they filed their FAC. They
26  arguably knew the additional plaintiffs when they filed the original complaint. Further, for reasons stated
27  below, allowing the additional parties will delay the litigation and prejudice Defendants.

28

1    The Ninth Circuit has held that in additional to delay, bad faith or prejudice must also exist to

2    constitute "undue delay." *See U.S. v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). As it stands, Plaintiffs have

3    named two agencies (DOJ and DHS) as Defendants, but the Court has applied its preliminary injunction

4    to *all* federal agencies and their subagencies. Dkt. Nos. 111, 126, 136, 147. This requires undersigned

5    counsel for named Defendants to monitor the actions of multiple agencies, which are not named parties,

6    as they relate to 16 Plaintiffs. If the Court allows Plaintiffs to add 34 additional jurisdictions, all of which

7    may apply for numerous and varying grants from numerous and varying agencies, management and

8    litigation of this case would be overly burdensome to say the least.

9         Plaintiffs' "cart-before-the-horse" approach to this case—whereby they have brought a general

10   challenge against the entire U.S. Government before any immigration conditions have been imposed on

11   any jurisdiction—complicates the litigation of this case and adding 34 additional plaintiffs quickly

12   transforms this action into one that is unmanageable. Due to the preemptive, amorphous nature of

13   Plaintiffs' challenge, Defendants must articulate statutory authority and nexus for each and every one of

14   its funding programs in which each agency or subagency intends to impose immigration conditions simply

15   to avoid Plaintiffs prematurely filing yet another emergency preliminary injunction, motion to enforce or

16   modify a prior preliminary injunction, or dispute letter. This may lead to named defendants and unnamed

17   federal agencies having to surmise which grants each added plaintiff *might* apply for and then put on a

18   mini evidentiary hearing simply to meet the preliminary showing that the conditions are not in violation

19   of this Court's order.

20        Moreover, this Court has repeatedly stated that once Defendant makes this showing, each Plaintiff

21   would need to initiate a separate suit to challenge the lawfulness of that specific imposition of immigration

22   conditions. Dkt Nos. 136 at 2, 4; 147 at 2, n. 4. Presumably, it would be more judicially efficient for each

23   jurisdiction to identify which of its grants are affected and then bring a specific suit against the agency

24   funding said grant in their own jurisdiction. Yet, if Plaintiffs are allowed to add 34 new Plaintiffs in this

25   SAC, will they be permitted to continually add new jurisdictions for similar reasons again? If allowed to

26   continue, Plaintiffs will in effect create a nationwide injunction by adding every jurisdiction that has made

27   the decision to "limit the use of local resources to enforce or administer federal civil immigration law."

28   Dkt No. 155-3 at ¶13. As the Supreme Court has made clear, nationwide injunctions are improper and

injunctions should only provide relief to the parties before the Court. *Trump v. CASA, Inc.*, 606 U.S. ----,
No. 24A884, 2025 WL 1773631, at *4, 15 (June 27, 2025). Thus, the Court should deny Plaintiffs' motion
to amend its complaint a second time because Plaintiffs have delayed this amendment and it will prejudice
Defendants. *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (eight-month delay between
the time of obtaining a relevant fact and seeking a leave to amend is unreasonable).

## CONCLUSION

For all of the above reasons, the Court should deny Plaintiffs' motion to amend its complaint a
*second* time as futile, improperly seeks to join plaintiffs from other districts, and unduly prejudicial to
Defendants.

Dated: July 22, 2025                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

                                        DREW C. ENSIGN
                                        Deputy Assistant Attorney General

                                        GLENN GIRDHARRY
                                        Acting Deputy Director

                                        ELIANIS PEREZ
                                        Assistant Director

                                        LINDSAY ZIMLIKI
                                        CAROLINE MCGUIRE
                                        VICTORIA TURCIOUS
                                        ANGEL FLEMING
                                        Trial Attorneys

                                        */s/ Lauren E. Fascett*
                                        LAUREN E. FASCETT
                                        Senior Litigation Counsel
                                        United States Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation
                                        General Litigation and Appeals Section
                                        450 5th Street, NW
                                        Washington, D.C. 20530
                                        202-616-3466
                                        Lauren.Fascett@usdoj.gov

                                        *Attorney for Defendants*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 22, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

/s/ Lauren E. Fascett
LAUREN E. FASCETT
Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section

A