DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5408
Telephone:    (415) 355-33308
Facsimile:    (415) 437-4644
E-Mail:    karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:    (408) 299-5900
Facsimile:    (408) 292-7240
E-Mail:    bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, et al.,<br><br>     Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, President of the United States, et al.,<br><br>     Defendants. | Case No. 25-CV-01350<br><br>**DECLARATION OF GIDEON GRANDE IN SUPPORT OF PLAINTIFFS' MOTION FOR SECOND PRELIMINARY INJUNCTION** |

Decl. of Gideon Grande ISO Plts.' Mot. for Second
Prelim. Injunction

Case No. 25-CV-01350-WHO

### DECLARATION OF GIDEON GRANDE

1.    I am over the age of 18 years, am competent to testify as to matters in this declaration, and make it based on my personal knowledge, information provided to me in the performance of my job duties, and my review of business records.

2.    I am the Budget Director for the City of Albany, New York, where I oversee the finances of the City of Albany and its several departments, including, among others, the City of Albany Police Department, City of Albany Fire Department, City of Albany Department of General Services, and the City of Albany Department of Neighborhood and Community Services. I have served in this position for three years. Prior to this position I served as Deputy Budget Director for the County of Westchester, New York for four years. I have been employed in governmental and municipal finance for 16 years.

3.    The City of Albany has a strong mayor-council form of municipal government, and its operations include the management and maintenance of the City of Albany's municipal police, fire, transportation, general services, and other services that are essential to ensuring the public health and safety of the general public. These operations include neither assisting with federal immigration enforcement nor the facilitation of illegal immigration.

4.    I was appointed to my position as Budget Director by the Mayor of the City of Albany, Kathy Sheehan.

5.    My responsibilities include, among many others, developing and maintaining the City of Albany's budget and submitting it to the City of Albany Common Council annually by October 1, as well as tracking expenditures throughout the year to ensure that the City of Albany stays within its budget.

6.    Ensuring public safety in Albany requires that City of Albany officials and law enforcement maintain open lines of communication with foreign-born city residents and visitors. This

cooperation is possible only when foreign-born residents can interact with law enforcement without fear of deportation or the deportation of friends and family members.

7.      To that end, Mayor Sheehan instituted Executive Order 1-17 ("City of Albany Policy Regarding Community Policing and Protecting Immigrants") on April 24, 2017, directing Albany Police Department officers (1) not to inquire into an individual's immigration status "unless necessary to investigate criminal activity by that individual"; (2) not to arrest individuals based on suspected citizenship status, civil immigration detainer, or administrative warrant; and (3) not to respond to ICE requests for non-public information other than as required to comply with 8 U.S.C. § 1373. That policy, as well as Albany Police Department Policy 413, limits public requests for immigration status information to those instances where the request is legally mandated and affirms all residents' access to city services for which they are eligible, regardless of immigration status unless otherwise prohibited by law.

8.      I am familiar with Executive Orders 14,159, 14,218, and 14,287, and the related Department of Justice "Sanctuary Jurisdiction Directives" memorandum of February 5, 2025 ("Executive Orders and DOJ Memorandum"), as well as other actions by the federal government implementing the Executive Orders.

9.      I am also aware that, on May 29, 2025, the Department of Homeland Security released and later removed a list of states, counties, and cities that the agency has identified as "sanctuary jurisdictions defying federal immigration law." Albany was included on that list.

10.      The Executive Orders and related government actions threaten the City of Albany with the loss of federal funds for critical public health and safety operations that are unrelated to immigration.

11.      It is my responsibility to decide how to handle the threatened loss of funds in the budget for the fiscal year beginning January 1, 2026.

12.     The City of Albany has commenced the process of developing its budget for the 2026 fiscal year.  Because the City of Albany receives a significant amount of its annual budget from the federal government, the uncertainty produced by the orders has significantly hampered the City of Albany's ability to plan for the remainder of 2025 and future fiscal years.

13.     For example, the City of Albany received $12,548,689 in federal funding for the 2023 fiscal year, exclusive of the temporary Coronavirus State and Local Fiscal Recovery Program. These funds included $216,871 from the Department of Justice's Edward Byrne Memorial Justice Program that is used to fund the City of Albany's Organized Crime Drug Enforcement Task Force, among other Albany Police Department initiatives. The City of Albany also received $1,376,488 from the Department of Homeland Security, $2,151,813 from the Department of Labor, $7,887,907 from the Department of Housing and Urban Development, and $915,610 from the Department of Transportation.

14.     More than $1 million of the federal funds from the Department of Labor, which Albany receives annually, is used to support the City's youth employment and enrichment activities. Albany receives a similar amount via the Department of Labor's Dislocated Workers Grants.

15.     Albany uses nearly $1 million in federal funds to support public transportation improvements and maintenance within the City. Federal funds from the Department of Housing and Urban Development also support a home ownership support program. To access these HUD funds, Albany must, in part, submit an annual consolidated plan to HUD. The deadline for this year's plan is August 16, 2025.

16.     Albany receives Department of Homeland Security funding through both the Homeland Security Grant, which supports the City of Albany Police Department's K-9 explosive detection program, and through the Port Security Grant Program, which supports Albany's port security efforts.

17.     The Albany Police Department's organized drug crime task force is supported by a Department of Justice grant, passed through the New York State Office for Victims of Crime.

18.     None of the programs or services funded with this money are related to immigration enforcement.

19.     The loss of these funds would have a significant negative impact on the City of Albany's ability to provide essential services, including police services.  Losing this funding would result in a significant budgetary deficit that would be borne by Albany taxpayers in the form of reduced services or increased local taxation.  As the City possesses few locally controlled mechanisms to raise significant revenues, this would likely manifest itself as an increase in real property taxation. Maintaining current service levels and replacing the lost funding would require a real property tax levy increase of approximately twenty percent.  Also, the uncertainty as to whether the City of Albany will be prohibited from receiving these funds alone creates costs City of Albany taxpayers will have to bear.  Merely the delay in reimbursements of anticipated funds reduces the City's available cash and costs its taxpayers interest revenues that would have otherwise been earned.

20.     As a result, Albany now faces the threat of having to change its laws or to present a budget for 2026 with an enormous degree of uncertainty as to what federal funds will be available.

21.     Because of the Executive Orders and related government actions, the City has implemented mid-year spending controls to cover a potential loss of some or all of these federal funds. The alternative of assuming that federal funds will be remitted as promised poses too great a risk, given that the total loss of federal funding for fiscal year 2025 would more than deplete the City's entire unrestricted general fund balance of $9,109,582, absent other actions.

1    I declare under penalty of perjury that the foregoing is true and correct and that this declaration

2 was executed on July 24, 2025 in Albany, New York.

3                                                                 GIDEON GRANDE