DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5408
Telephone:     (415) 355-33308
Facsimile:     (415) 437-4644
E-Mail:        karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:     (408) 299-5900
Facsimile:     (408) 292-7240
E-Mail:        bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, President of the United States, et al.,<br><br>Defendants. | Case No. 25-CV-01350<br><br>**DECLARATION OF HAROLD MEDINA IN SUPPORT OF PLAINTIFFS' MOTION FOR SECOND PRELIMINARY INJUNCTION** |

**I, HAROLD MEDINA, declare as follows:**

1. I am a resident of the State of New Mexico. I have personal knowledge of the facts set forth in this declaration based on information provided to me in the performance of my job duties and my review of business records, and, if called as a witness, could and would testify competently to the matters set forth below.

2. I am the Chief of Police for the City of Albuquerque. I have served as Albuquerque Chief of Police for five years. Previously, I served as Chief of Police for Laguna Pueblo and as a sworn officer in the Albuquerque Police Department for 20 years.

3. The Albuquerque Police Department (APD) relies on approximately $17 million in federal grants from the following U.S. Department of Justice ("DOJ") programs: 1) Victims of Crime Act ($85,316 in Fiscal Year 2025); 2) Violence Against Women Act ($63,737 in FY2025); 3) Sexual Assault Kit Initiative ($2,250,000); 4) Edward Byrne Justice Assistance Grant ($3,232,825 in FY2020 – FY2024); 5) Community Oriented Policing Services Grant ($6,250,000 over 3 years, in addition to a $364,000 earmark for Crime Lab equipment); 6) Capacity Enhancement for Backlog Reduction Grant ($1,907,530 in FY2023 – FY 2025); 7) High Intensity Drug Trafficking Areas Grant ($622,865 in FY2025); and 8) Coverdell Grant Program ($45,480 in FY2025). These programs, each of which is described below, support public safety, officer safety, and victim support in Albuquerque.

4. APD uses grant funds from the Victims of Crime Act ("VOCA") and Violence Against Women Act ("VAWA") grants to provide outreach services for victims of domestic violence and other violent crimes. If this funding were terminated, APD would likely be forced to terminate these necessary services for local residents who have been victimized by violent offenders. APD would not have any other resources to provide services to victims.

5. APD uses grant funds from the Sexual Assault Kit Initiative ("SAKI") to process Sexual Assault Evidence Kit backlogs, analyze evidence in cold cases, pay for travel and training for Crime

Lab personnel to maintain their certifications, and maintain databases for fingerprint and other data to streamline information sharing among law enforcement agencies. If APD were to lose SAKI funding, the Crime Lab would be unable to process all these types of evidence, and many perpetrators in cold cases and sexual assaults would walk free. APD would also be unable to maintain the databases used to share information between law enforcement agencies, which would also allow violent criminals to avoid arrest and commit future crimes.

6. APD uses grant funds from the Edward Byrne Justice Assistance Grant ("Byrne JAG") to fund new equipment and supplies for police officers. If funding is lost, officers would have to continue to use old or outdated equipment and/or supplies, which could increase crime because APD would not have newer technology at their disposal to address crime in the community. The equipment and supplies support investigations, evidence processing, and various specialized APD divisions.

7. APD uses funds from the Community Oriented Policing Services ("COPS") Grant to pay sworn officers for the first few years of their service after graduating from the Police Academy. This grant currently pays 50 APD officers' salaries and benefits packages. If APD were to lose this funding, it would be unable to hire enough new officers in future years without compromising other necessary services in the City's budget. Fewer police officers would make our communities less safe.

8. APD uses funds from the Capacity Enhancement for Backlog Reduction ("CEBR") Grant to process DNA evidence backlogs. This evidence is extremely important to solving crimes and prosecuting the offenders. If APD were to lose this funding, the Crime Lab would not be able to process as much DNA evidence, slowing down investigations and leaving more perpetrators free to commit future crimes.

9. Funds from the High Intensity Drug Trafficking Areas ("HIDTA") Grant are used to investigate drug trafficking organizations. The loss of this funding would hamper APD's ability to

investigate these organizations and may lead to an increase in violent crime in Albuquerque and around the southwestern United States.

10. The State Homeland Security Grant Program ("SHSGP"), a FEMA grant program that APD receives as a pass-through from the New Mexico Department of Homeland Security and Emergency Management, pays for personal protective equipment and APD's Bomb X-Ray System, which allows officers to safely detect the presence of an explosive device. Absent this funding, the Bomb X-Ray System would be stalled until other funding is found, which could put APD officers in greater personal danger.

11. APD uses funds from the Coverdell grant to pay for travel and training for Crime Lab personnel to maintain their expertise and certifications. APD's Crime Lab processes evidence of many kinds and is indispensable to APD's ability to solve crimes and keep dangerous offenders off the street. Without this funding, APD would likely have to choose between falling behind on training needs for Crime Lab staff and repurposing other funding, which could impact other aspects of APD's work.

12. The entire Albuquerque community relies on APD to provide crucial public safety services. APD is a large and complex department that operates many public safety programs. The loss of DOJ and Department of Homeland Security grants will negatively impact APD and the citizens of Albuquerque in a significant way. It would hamper APD's overall ability to provide vital public safety services, such as its work processing evidence, investigating organized drug trafficking, connecting victims of crime with the services they need, paying the officers who work in local communities, and ultimately APD's ability to solve crimes.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on July 25, 2025, in Albuquerque, New Mexico.

*/s/ Harold Medina/*

HAROLD MEDINA