DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS, SBN 197042
KARUN A. TILAK, SBN 323939
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Telephone: (415) 355-33308
Facsimile: (415) 437-4644
E-Mail: karun.tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
Deputy County Counsels
BILL NGUYEN, SBN 333671
Litigation Fellow
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
E-Mail: bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DONALD J. TRUMP, President of the United States, et al., <br><br> Defendants. | Case No. 25-CV-01350 <br><br> **DECLARATION OF ANNETTE GUZMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SECOND PRELIMINARY INJUNCTION** |

Decl. of Annette Guzman ISO
Plts.' Mot. for Second Prelim. Injunction

Case No. 25-CV-01350-WHO

# DECLARATION OF ANNETTE GUZMAN

I, Annette Guzman, declare as follows:

1. I am a resident of the City of Chicago in the State of Illinois. I am over the age of 18. The statements contained herein are based on my personal knowledge, information provided to me in the performance of my job duties, and my review of business records. If called as a witness, I could and would testify competently to the matters set forth below.

2. I currently serve as Budget Director of the City of Chicago's Office of Budget and Management ("OBM"). I have held this position since May of 2023. Before my appointment as Budget Director, I served as the Budget Director for Cook County, Illinois, the second largest county in the country, where, among other activities, I was responsible for managing a budget of over $8.75 billion in 2023.

3. As Chicago's Budget Director, I manage the office responsible for developing, implementing, and managing Chicago's annual budget and financial planning processes. I serve as a liaison and subject matter expert on the responsible and transparent use of public funds and all related policy matters. I have built and currently manage an executive team of five, a departmental budget of $20 million (as well as Chicago's $17 billion budget), and approximately 61 employees.

4. In FY2024, Chicago received approximately $3.5 billion in federal grant revenue. For FY2025, federal grant revenues are also estimated to be approximately $3.5 billion, which is 20% of the City's total FY2025 budget. This amount includes $2.4 billion in carryover balances from current federal grants and $1.1 billion in new federal grants.

5. Chicago's FY2025 budget includes $1.8 billion in federal funding from the Department of Transportation, $668.9 million in federal funding from the Department of Health and Human Services, $329.8 million in federal funding from the Department of Housing and Urban Development, $116.5 million in federal funding from the Department of Justice ("DOJ"), and $157.4 from the

Department of Homeland Security ("DHS"). These federal dollars are comprised of $211.5 million in FY2024 carryover funds and $62.4 million in anticipated FY2025 awards.

6. I am familiar with Executive Orders 14159, 14218, and 14287, and related federal government actions targeting so-called "sanctuary cities" that threaten termination of grant funding, as well as civil and criminal prosecution, over immigration policies. I am also aware that, on May 29, 2025, DHS released and later removed a list of states, cities, and counties, which included Chicago, that the agency identified as "sanctuary jurisdictions defying federal immigration law." These Executive Orders and actions threaten all of Chicago's federal funding.

7. If Chicago were to lose all federal funding, the repercussions would be devastating. For example, Chicago has already spent or taken steps in reliance on much of the funds allocated in FY2024 and FY2025, including entering into agreements with delegates and subcontractors to purchase equipment and perform work. Chicago would have to lay off staff, notify its grantees and subcontractors to immediately stop work, and likely end many of the crucial safety programs listed below. Even with these actions, Chicago would still suffer budgetary deficits for costs already incurred that would no longer be reimbursed. Chicago would have to fill these budget gaps from non-federal sources, such selling assets, raising taxes or fees, or repurposing funds encumbered for other projects.

8. In addition to the DOJ and DHS grants, Chicago relies on federal funds to support critical infrastructure projects, public transportation, disease control and prevention, children and family services, senior services, housing, homeless services, and emergency services, to name a few. For instance, Chicago anticipates having nearly a billion dollars in federal funding to improve transportation in the City, through the Bipartisan Airport Improvement Program and the Surface Transportation Program. As another example, Chicago anticipates having approximately $174 million in federal funds through the Building Epidemiology and Health IT Capacity program. On top of that, approximately 944

of Chicago employees' salaries are charged to federal grants, so if Chicago were to lose that funding, it could be forced to lay off almost 1,000 employees.

9. Chicago is already facing difficult budgetary decisions without the potential loss of federal funds. Currently, Chicago faces a projected budget deficit of $1.1 billion for FY2026 and a projected deficit of approximately $1.3 billion by FY2027.

10. The threat of loss of federal funds also creates significant operational problems, as it injects confusion and uncertainty in Chicago's budget planning for 2026, which is already underway. Departments must determine whether ongoing positions and programs will be supported by grants in 2026; if not, they must notify subcontractors and grantees of discontinuance of contracts well ahead of the introduction of Chicago's proposed budget to allow those subcontractors and grantees time to plan their fiscal year budgets accordingly. To the extent Chicago will need to do reductions in force within its operations, Chicago also has to plan ahead of the budget cycle, because departments must enter the information into their budget requests and plan for the necessary notifications to be provided to represented employees in compliance with Chicago's collective bargaining agreements. The Mayor must deliver a proposed budget to the City Council by October 2025. Thus, Chicago is put in an impossible position of trying to plan and pay for essential services for the communities it serves while not knowing whether the funds it relies on for these services will be available.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on July 25, 2025, at Chicago, Illinois.

*Annette Guzman*
Annette Guzman

Decl. of Annette Guzman ISO
Plts.' Mot. for Second Prelim. Injunction.

4

Case No. 25-CV-01350-WHO