1  DAVID CHIU, SBN 189542
   City Attorney
2  YVONNE R. MERÉ, SBN 175394
   Chief Deputy City Attorney
3  MOLLIE M. LEE, SBN 251404
   Chief of Strategic Advocacy
4  SARA J. EISENBERG, SBN 269303
   Chief of Complex and Affirmative Litigation
5  NANCY E. HARRIS, SBN 197042
   KARUN A. TILAK, SBN 323939
6  Deputy City Attorneys
   Fox Plaza
7  1390 Market Street, 7th Floor
   San Francisco, CA  94102-5408
8  Telephone:     (415) 355-3308
   Facsimile:      (415) 437-4644
9  E-Mail:          karun.tilak@sfcityatty.org

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
STEFANIE L. WILSON, SBN 314899
RAJIV NARAYAN, SBN 334511
BILL NGUYEN, SBN 333671
Deputy County Counsels
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:     (408) 299-5900
Facsimile:      (408) 292-7240
E-Mail:          bill.nguyen@cco.sccgov.org

10  Attorneys for Plaintiff
    CITY AND COUNTY OF SAN FRANCISCO

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

11  *[additional counsel on signature page]*

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

15  CITY AND COUNTY OF SAN FRANCISCO,
    COUNTY OF SANTA CLARA, CITY OF
16  PORTLAND, MARTIN LUTHER KING, JR.
    COUNTY, CITY OF NEW HAVEN, CITY OF
17  OAKLAND, CITY OF EMERYVILLE, CITY OF
    SAN JOSÉ, CITY OF SAN DIEGO, CITY OF
18  SACRAMENTO, CITY OF SANTA CRUZ,
    COUNTY OF MONTEREY, CITY OF SEATTLE,
19  CITY OF MINNEAPOLIS, CITY OF ST. PAUL,
    CITY OF SANTA FE, COUNTY OF ALAMEDA,
20  CITY OF ALBANY, CITY OF ALBUQUERQUE,
    COUNTY OF ALLEGHENY, CITY OF
21  BALTIMORE, CITY OF BEND, CITY OF
    BENICIA, CITY OF BERKELEY, CITY OF
22  BOSTON, CITY OF CAMBRIDGE, CITY OF
    CATHEDRAL CITY, CITY OF CHICAGO, CITY
23  OF COLUMBUS, CITY OF CULVER CITY,
    COUNTY OF DANE, CITY AND COUNTY OF
24  DENVER, CITY OF HEALDSBURG, COUNTY
    OF HENNEPIN, CITY OF LOS ANGELES,
25  COUNTY OF MARIN, CITY OF MENLO PARK,
    MULTNOMAH COUNTY, CITY OF PACIFICA,
26  CITY OF PALO ALTO, CITY OF PETALUMA,
    PIERCE COUNTY, CITY OF RICHMOND, CITY
27  OF ROCHESTER, CITY OF ROHNERT PARK,
    COUNTY OF SAN MATEO, CITY OF SANTA

Case No. 3:25-cv-1350-WHO

**OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF**

Hearing Date:    November 5, 2025
Time:               2:00 p.m.
Judge:              Honorable William H. Orrick
Place:               Courtroom 2

Date Filed:        February 7, 2025

28

ROSA, COUNTY OF SONOMA, CITY OF
WATSONVILLE, CITY OF WILSONVILLE,

  Plaintiffs,

  vs.

DONALD J. TRUMP, President of the United
States, UNITED STATES OF AMERICA,
PAMELA BONDI, Attorney General of the United
States, EMIL BOVE, Acting Deputy Attorney
General, UNITED STATES DEPARTMENT OF
JUSTICE, KRISTI NOEM, Secretary of United
States Department of Homeland Security, UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY, RUSSELL VOUGHT, Director of
United States Office of Management and Budget,
UNITED STATES OFFICE OF MANAGEMENT
AND BUDGET, DOES 1-100,

  Defendants.

1

## TABLE OF CONTENTS

2    INTRODUCTION .................................................................................................................1

3    BACKGROUND ..................................................................................................................2

        I.      Factual Background ..........................................................................................2
4
        II.     Procedural History ...........................................................................................4
5
     LEGAL STANDARD............................................................................................................5

6    ARGUMENT .......................................................................................................................6

7        I.      Plaintiffs' Claims are Justiciable ......................................................................6

8               A.     Plaintiffs Have Established Injury in Fact ...............................................6

9               B.     Plaintiffs Have Pre-Enforcement Standing..............................................7

                C.     Plaintiffs' Fifth Amendment Claims Are Ripe .......................................10
10
        II.     Plaintiffs Have Alleged Plausible Claims for Relief ..........................................11
11
                A.     Plaintiffs Adequately Plead a Facial Challenge.....................................11
12
                B.     Plaintiffs' Have Adequately Pleaded Violations of the Separation of
13                     Powers and Spending Clause ................................................................12

14                     1.     *Dalton v. Specter* Does Not Bar Plaintiffs' Claims ....................12

                       2.     Plaintiffs Have Adequately Alleged Separation-of-Powers and
15                            Spending Clause Violations......................................................15

16              C.     Plaintiffs Have Sufficiently Alleged that the Executive Orders Violate
                       the Tenth Amendment ..........................................................................17
17
                D.     Plaintiffs Sufficiently Allege a Violation of the APA .............................18
18
                       1.     The Bondi Directive and Noem Directive Are Final Agency
19                            Actions ...................................................................................19

                       2.     The Challenged Directives Are Not Committed to Agency
20                            Discretion................................................................................20

21   CONCLUSION....................................................................................................................22

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)............................................................................................6

*Bd. of Nat. Res. of State of Wash. v. Brown*
    992 F.2d 937 (9th Cir. 1993) .........................................................................10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007).........................................................................................6

*Bennett v. Spear*
    520 U.S. 154 (1997).......................................................................................19

*Biden v. Sierra Club*
    142 S. Ct. 46 (2021).......................................................................................14

*Building and Construction Trades Dep't, AFL-CIO v. Allbaugh*
    295 F.3d 28 (D.C. Cir. 2002).................................................................11, 15

*City & Cnty. of S.F. v. Trump*
    897 F.3d 1225 (9th Cir. 2018) ................................................................ passim

*City of Fresno v. Turner*
    Dkt. No. 45, No. 25-cv-07070-RS (N.D. Cal. Sept. 23, 2025).................21

*City of Santa Clara v. Andrus*
    572 F.2d 660 (9th Cir. 1978) .......................................................................10

*Cnty. of Santa Clara v. Trump*
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................................................17

*Community Action of Laramie Cnty., Inc. v. Bowen*
    866 F.2d 347 (10th Cir. 1989) ...............................................................21, 22

*Dalton v. Specter*
    511 U.S. 462 (1994)....................................................................2, 12, 13, 14

*Department of State v. AIDS Vaccine Advocacy Council*
    No. 25A269 (Sept. 3, 2025)..........................................................................13

*Doe v. Trump*
    284 F. Supp. 3d 1182 (W.D. Wash. 2018)..................................................14

*Franklin v. Massachusetts*
    505 U.S. 788 (1992).......................................................................................20

*FTC v. Standard Oil Co.*
    449 U.S. 232 (1980).......................................................................................20

*Global Health Council v. Trump*
  2025 WL 2326021 (D.C. Cir. Aug. 13, 2025), ........................................................12, 13

*Global Health Council v. Trump*
  2025 WL 2480618 (D.C. Cir. Aug. 28, 2025) ........................................................12, 13

*Lam Rsch. Corp. v. Schunk Semiconductor*
  65 F. Supp. 3d 863 (N.D. Cal. 2014) ........................................................................1

*Leite v. Crane Co.*
  749 F.3d 1117 (9th Cir. 2014) ...................................................................................5

*Lincoln v. Vigil*
  508 U.S. 182 (1993)...............................................................................20, 21, 22

*Louisiana ex rel. Landry v. Biden*
  64 F.4th 674 (5th Cir. 2023) .....................................................................................6

*Milk Train, Inc. v. Veneman*
  310 F.3d 747 (D.C. Cir. 2002) ...............................................................................21

*Moody v. NetChoice LLC*
  603 U.S. 707 (2024)................................................................................................12

*Murphy Co. v. Biden*
  65 F.4th 1122 (9th Cir. 2023) .................................................................................14

*National Federation of Independent Business v. Sebelius*
  567 U.S. 519 (2012)................................................................................................17

*New Jersey Hospital Association v. United States*
  23 F. Supp. 2d 497 (D.N.J. 1998) ..........................................................................20

*New York v. Trump*
  133 F.4th 51 (1st Cir. 2025)....................................................................................21

*New York v. Trump*
  769 F. Supp. 3d 119 (D.R.I. 2025) ...................................................................19, 20

*Oregon Council for Humanities v. U.S. DOGE Service*
  2025 WL 2237478 (D. Or. Aug. 6, 2025)...............................................................13

*Pennhurst State Sch. & Hosp. v. Halderman*
  451 U.S. 1 (1981)....................................................................................................16

*Policy & Research, LLC v.  United States Department of Health and Human Services*
  313 F. Supp. 3d 62 (D.D.C. 2018)..........................................................................21

*Rodriguez v. AT&T Mobility Servs. LLC*
  728 F.3d 975 (9th Cir. 2013) ..................................................................................14

*Roe v. Anderson*
   134 F.3d 1400 (9th Cir. 1998) ...........................................................................14

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004) .............................................................................5

*Sierra Club v. Trump* ("*Sierra Club I*")
   929 F.3d 670 (9th Cir. 2019) .............................................................................14

*Sierra Club v. Trump* ("*Sierra Club II*")
   963 F.3d 874 (9th Cir. 2020) .............................................................................14

*State of Illinois v. FEMA*
   Dkt. No. 71, No. 1:25-cv-00206 WES (D.R.I. Sept. 24, 2025) ...........................20, 26

*United States v. California*
   921 F.3d 865 (9th Cir. 2019) .............................................................................18

*United States v. Illinois*
   2025 WL 2098688 (N.D. Ill. July 25, 2025) .......................................................18

*United States v. Williams*
   553 U.S. 285 (2008) .........................................................................................10

*Usher v. City of Los Angeles*
   828 F.2d 556 (9th Cir. 1987) ...............................................................................6

*Virginia v Am. Booksellers Ass'n*
   484 U.S. 383 (1988) ...........................................................................................8

*Whitewater Draw Natural Resource Conservation District v. Mayorkas*
   5 F.4th 997 (9th Cir. 2021) ...............................................................................20

**Statutes & Codes**
5 U.S.C.
   § 701(a)(2) ......................................................................................................20

8 U.S.C.
   § 1373 ...............................................................................................................9

**Rules**
Federal Rule of Civil Procedure
   Rule 8(a)(1) .......................................................................................................5
   Rule 12(b)(1) .....................................................................................................5
   Rule 12(b)(6) ...............................................................................................6, 11

N.D. Cal. Civ. L.R.
   7–9(b) ...............................................................................................................1

**Other Authorities**

90 Fed. Reg. 10581 (Feb. 19, 2025) ...........................................................................................3

90 Fed. Reg. 18761 (Apr. 28, 2025) ...........................................................................................3

90 Fed. Reg. 8443 (Jan. 20, 2025) ..............................................................................................3

**INTRODUCTION**

Since entering office for a second term, President Trump has repeatedly threatened "sanctuary" jurisdictions, like Plaintiffs, with ruinous federal funding withdrawals and civil and criminal penalties unless they cede their local autonomy and deploy scarce local resources to enforce federal civil immigration law.  Defendants have effectuated these threats through a series of Executive Orders and agency directives that weaponize federal funding and the threat of prosecution to coerce localities into implementing the President's aggressive immigration enforcement agenda.  Plaintiffs filed suit to stop these unconstitutional and unlawful actions.

This Court has already preliminarily enjoined Defendants from categorically withholding or conditioning federal funding to Plaintiffs on the basis that they have certain "sanctuary" policies.  And, in the face of Defendants' repeated efforts to evade the injunction, the Court has clarified the scope of the injunction and its application to agencywide grant conditions that similarly require local cooperation with federal civil immigration enforcement.  In the course of these rulings, the Court has already considered and rejected most of the arguments raised in Defendants' Motion to Dismiss ("MTD") and has found that Plaintiffs' claims are justiciable and Plaintiffs are likely to succeed on the merits.  While Defendants' MTD ostensibly challenges Plaintiffs' Second Amended Complaint ("SAC"), it in fact invites the Court to reconsider its prior interpretation of the challenged Executive actions without justifying why reconsideration is warranted.  *See* N.D. Cal. Civ. L.R. 7–9(b) (a party moving for reconsideration must show "a material difference in fact or law," "[t]he emergence of new material facts or a change of law," or "[a] manifest failure by the Court to consider material facts or dispositive legal arguments"); *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 869 (N.D. Cal. 2014) ("Courts routinely look to the substance of the motion rather than how it is styled in determining the standard to apply.")

Defendants' arguments fare no better now than they did earlier in this litigation.  With respect to standing, Plaintiffs have adequately alleged (and this Court has found) that the Executive Orders command agencies to broadly condition funding to "sanctuary" jurisdictions.  Plaintiffs therefore face a concrete injury-in-fact from the budgetary and operational harms wrought by the Orders, and have established pre-enforcement standing because their policies are squarely targeted by the Orders'

threats to "sanctuary" jurisdictions. Plaintiffs' Fifth Amendment claims are also ripe because the Executive Orders fail to provide fair notice of what conduct triggers "sanctuary" jurisdiction designation, instead leaving that determination to Defendants' subjective discretion.

Defendants likewise cannot show that Plaintiffs have failed to state a plausible claim for relief. Most of Defendants' arguments turn on reading savings clauses in the challenged Executive Orders in isolation. But the Court has already rejected this strained interpretation of the Orders, which cannot be squared with the Orders' text or the context surrounding their issuance. Properly understood, the Executive Orders direct agencies to categorically condition federal funding on a jurisdiction's willingness to cooperate with federal civil immigration enforcement—a direction that lacks any legitimate application and clearly violates the separation of powers, Spending Clause, and Tenth Amendment. Defendants' invocation of *Dalton v. Specter,* 511 U.S. 462 (1994), is misplaced because Plaintiffs' separation-of-powers and Spending Clause claims are not premised on a statutory violation of the Impoundment Control Act ("ICA"). And, even if they were, the Ninth Circuit permits constitutional claims where, as here, the President's violation of a statute also violates his constitutional authority. Finally, contrary to Defendants' assertions, Plaintiffs have stated a viable Administrative Procedure Act ("APA") claim because the agency directives challenged in the SAC are final agency actions with immediate legal consequences for Plaintiffs. Plaintiffs also satisfactorily allege that these actions are not committed to agency discretion, but instead implement the clear direction in the Executive Orders to categorically withhold funding to "sanctuary" jurisdictions.

As such, Defendants' motion to dismiss should be denied.

## BACKGROUND

### I.    Factual Background

Plaintiffs' Second Amended Complaint ("SAC")[1] challenges three Executive Orders and related agency directives that direct the widescale defunding of so-called "sanctuary" jurisdictions and

---

[1] Five Plaintiffs initially filed this lawsuit on February 7, 2025, challenging EO 14,159. On February 27, Plaintiffs filed their First Amended Complaint ("FAC") adding eleven new Plaintiffs and a challenge to EO 14,218. On July 8, Plaintiffs sought leave to file the operative SAC, adding thirty-four additional Plaintiffs and two additional defendants, and including additional allegations about EO 14,287 and other factual developments since the FAC. The court granted leave to amend on August 5, and Plaintiffs filed the SAC on August 7.

threaten criminal sanctions and civil lawsuits against such jurisdictions.  First, Section 17 of Executive Order ("EO") 14,159 directs the Attorney General and Secretary of Homeland Security to "evaluate and undertake any lawful actions to ensure that so-called 'sanctuary' jurisdictions . . . do not receive access to Federal funds."  Dkt. No. 193 (SAC) ¶ 334 (quoting 90 Fed. Reg. 8443, 8446 (Jan. 20, 2025)).  It further directs these officials to pursue civil and criminal enforcement against so-called "sanctuary" jurisdictions.  *Id*.  Second, Section 2(a)(ii) of EO 14,218 directs all federal agencies to ensure that "Federal payments to States and localities do not, by design or effect, facilitate the subsidization or promotion of illegal immigration, or abet so-called 'sanctuary' policies that seek to shield illegal aliens from deportation."  *Id.* ¶ 341 (quoting 90 Fed. Reg. 10581 (Feb. 19, 2025)).  Finally, Section 3 of EO 14,287 instructs federal agencies to "identify appropriate Federal funds to 'sanctuary' jurisdictions, including grants and contracts, for suspension or termination" and reiterates that the Attorney General and Secretary of Homeland Security "shall pursue all necessary legal remedies and enforcement measures" against "sanctuary" jurisdictions.  *Id.* ¶ 344 (quoting 90 Fed. Reg. 18761 (Apr. 28, 2025)).  In a litany of public statements, the President and his administration have made clear that they intend to withhold critical federal funding and to prosecute "sanctuary" jurisdictions as a means of forcing these jurisdictions to assist with federal civil immigration enforcement.  *See, e.g., id.* ¶ 345 (quoting White House Fact Sheet reiterating the President's "promise to rid the United States of sanctuary cities" and "withhold all Federal Funding" from them); *id.* ¶ 346(f) (DOJ statement making it "crystal clear" that "sanctuary" jurisdictions "will be sued and stripped of federal funding"); *see generally id.* ¶¶ 345–46.

These Executive Orders have been implemented through a series of agencywide directives and grant conditions.  The Department of Justice ("DOJ"), through the February 5, 2025 Bondi Directive, purported to pause distribution of all agency funds in order to "ensure that" "sanctuary" jurisdictions "do not receive access to Federal funds from the Department."  SAC ¶¶ 367–68, 733.  DOJ has also aggressively pursued civil enforcement actions against states and localities with so-called "sanctuary" policies, including filing lawsuits against several Plaintiffs.  *See id.* ¶¶ 374–84.  Similarly, Secretary Noem directed the Department of Homeland Security ("DHS") to review all federal financial assistance in order to "cease providing federal funding to sanctuary jurisdictions."  *Id.* ¶ 386.

Pursuant to this directive, the Federal Emergency Management Agency ("FEMA") recommended that immigration conditions targeting sanctuary jurisdictions be placed on numerous grant programs that fund critical emergency-preparedness activities and have no connection to immigration enforcement. *Id.* ¶¶ 390–91. DHS then went further, imposing a series of immigration enforcement conditions in its agency standard terms and conditions applicable to "*all* new federal awards." *Id.* ¶ 393. Other agencies, including the Department of Housing and Urban Development ("HUD") and the Department of Transportation ("DOT"), have likewise implemented the challenged Executive Orders by requiring assistance with immigration enforcement as a condition on a wide spectrum of grants that fund critical economic development and safety-net services and transportation infrastructure projects. *Id.* ¶¶ 395–99.

Plaintiffs are fifty localities that have exercised their constitutionally protected choice to limit the use of their resources for federal civil immigration enforcement, and are therefore directly threatened by Defendants' funding and enforcement threats. SAC ¶¶ 77–323, 443–453. Plaintiffs rely heavily on federal funding—including DOJ, DHS, HUD, and DOT funding—to support critical public safety and social safety-net functions. The loss of this funding would have devastating consequences for Plaintiffs' ability to provide essential services for their tens of millions of residents. *Id.* ¶¶ 454–687. The federal administration's threats of prosecution have also impeded Plaintiffs' operations by creating fear and alarm among local officials charged with implementing Plaintiffs' "sanctuary" policies and in the communities they serve. *Id.* ¶¶ 691–96.

## II.    Procedural History

On April 24, 2025, the Court granted a preliminary injunction to the sixteen Plaintiffs in the First Amended Complaint ("FAC"), enjoining Defendants from withholding, freezing, or conditioning funds to those Plaintiffs on the basis of Section 17 of EO 14,159, Section 2(a)(ii) of EO 14,218, and the Bondi Directive. Dkt. No. 111 ("April 24 Order") at 5. The Court found that Plaintiffs' claims were justiciable and that Plaintiffs were likely to succeed on their separation of powers, Spending Clause, Fifth Amendment, Tenth Amendment, and APA claims. *Id.* at 4–5. On May 3, the Court entered a detailed order explaining the Court's reasoning for granting Plaintiffs' preliminary injunction motion. Dkt. No. 126 ("May 3 Order").

After the issuance of EO 14,287, Plaintiffs moved to enforce or modify the injunction to enjoin Section 3 of that Order. On May 9, the Court issued a further order clarifying the injunction. Dkt. No. 136 ("May 9 Order"). The Court found that, while the text of EO 14,287 required the "identification" of funds for suspension or termination, the context surrounding the Order—including statements from the President—raised the threat that the Order would in fact be used to categorically withhold funding from Plaintiffs. *Id.* at 7. As such, the Court clarified that its preliminary injunction applied to "any Executive Order or agency directive that purports to attempt to cut off federal funding from States or localities that meet the Government's definition of 'sanctuary' jurisdiction in the wholesale, overly broad and unconstitutional manner threatened by Section 17 of EO 14,159 and Section 2(a)(ii) of EO 14,218." *Id.* at 8.

On June 23, the Court entered an order addressing the application of the preliminary injunction to conditions requiring cooperation with immigration enforcement in agencywide standard terms issued by DHS and DOT, as well as to similar conditions attached to HUD Continuum of Care ("CoC") grants. Dkt. No. 147 ("June 23 Order"). The Court concluded that the DHS and DOT Standard Terms were inconsistent with the preliminary injunction. *Id.* at 3–7. With respect to the HUD CoC grant condition, the Court found that it may be inconsistent with the injunction, but gave the parties an opportunity to further brief the issue. *Id.* at 7–8.

On August 22, 2025, the Court entered a second preliminary injunction granting the thirty-four new Plaintiffs added in the SAC the same relief granted to the sixteen Plaintiffs in the FAC. Dkt. No. 225 ("August 22 Order") at 4. In that same order, the Court held that the preliminary injunction prevented Defendants from including certain grant conditions that implemented EO 14,218 in HUD CoC grants and several HUD formula grants. *Id.* at 5–14.

## LEGAL STANDARD

"To invoke a federal court's subject matter jurisdiction, a plaintiff needs to provide only 'a short and plain statement of the grounds for the court's jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting Fed. R. Civ. Proc. 8(a)(1)). A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if its allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under

Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)—i.e., there must be sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts need not accept conclusory allegations, a court must accept as true a plaintiff's well-pleaded allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

## ARGUMENT

## I.    Plaintiffs' Claims are Justiciable

Defendants assert the same justiciability arguments that the Court has already rejected and should reject again. As the Court previously found, those arguments "are no more persuasive now than they were in 2017"; Plaintiffs "have made an even stronger showing of Article III standing today than they did in 2017 . . . and [their] claims are ripe." May 3 Order at 31–32; *see generally id.* at 31–45. Defendants' arguments fail yet again: Plaintiffs have established injury-in-fact, they have pre-enforcement standing, and their Fifth Amendment claims are ripe.

### A.    Plaintiffs Have Established Injury in Fact

Defendants open their challenge to Plaintiffs' injury-in-fact allegations by claiming that "[t]he Court previously held that Plaintiffs failed to establish an injury in their FAC," and so the SAC should fail on similar grounds. MTD at 4 (quoting May 3 Order at 32). Defendants plainly misread the Court's May 3 Order. In fact, the Court found that "[t]he Cities and Counties have shown that they face concrete and imminent injury," May 3 Order at 40, and that Plaintiffs' showing of standing is "even stronger" than in 2017, *id.* at 31.

Defendants next argue that "[a]ny alleged harm necessarily depends on future action by the agencies and Plaintiffs have not adequately alleged any such action has impacted them." MTD at 14. In support, Defendants cite one out-of-circuit case: *Louisiana ex rel. Landry v. Biden*, 64 F.4th 674 (5th Cir. 2023). But that case is inapposite. There, an executive order directed an interagency working group to produce "Interim Estimates" concerning the costs of greenhouse gases, and the plaintiffs alleged harms that "might arise from regulations molded by the Interim Estimates." *Id.* at 677, 681. The Fifth Circuit held that the plaintiffs had failed to establish injury-in-fact because the

executive order "does not *require* any action from federal agencies" and the alleged harms were based on "regulations that *may* result from the Interim Estimates." *Id.* at 681.  Here, in contrast, Plaintiffs allege—and the Court has held—that "[t]he text of the challenged provisions does not merely provide guidance to executive agencies on how to evaluate funds; it requires compliance" and "unambiguously command[s] action."  May 3 Order at 35, 43 (quoting *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018)); *see* SAC ¶¶ 333–44.  And here it is the Executive Orders themselves—not future actions that might be based on them—that harm Plaintiffs.  Indeed, as the Court noted, "[t]he 2025 Executive Orders need not even be actively enforced to cause the Cities and Counties irreparable harm" to their budgets, to their constitutional rights, and to the goodwill and well-being of their communities.  May 3 Order at 40–41.  This analysis, too, accords with Plaintiffs' allegations.  *See* SAC ¶¶ 454–687 (budgetary harms), 401–32 (constitutional harms) & 688–96 (community harms).  In any event, contrary to Defendants' assertion, Plaintiffs *have* in fact alleged that agencies have implemented the Executive Orders in a manner that deprives them of critical funding.  *See, e.g.*, SAC ¶¶ 347–400.

Defendants also argue that Plaintiffs' allegations "ignore [the Executive Orders'] clear directive to stay within the confines of the law."  MTD at 5.  But this Court has already found that "neither Executive Order's savings clause insulates it from judicial review. . . . The standardless use of the word 'evaluate' hardly matters given the clarity of the 2025 Executive Orders and the President and Attorney General's own statements. . . ."  May 3 Order at 43; *see also* May 9 Order at 5 ("[T]o give such weight to those clauses would require looking past the Orders' clear and specific language directing unlawful action, which I cannot do.");  SAC ¶¶ 346, 394, 397–99 (cataloguing Defendants' statements and actions regarding their intent to coerce "sanctuary" jurisdictions by depriving them of funding).  Plaintiffs' claims rest not on speculation about future illegal action, but on the unlawful directive in the Executive Orders and agency directives to target "sanctuary" jurisdictions for wide-scale defunding and enforcement actions.

### B.    Plaintiffs Have Pre-Enforcement Standing

Defendants ignore the Court's detailed determination that Plaintiffs have established each element of pre-enforcement standing, May 3 Order at 32–43, and instead repeat their argument that

"the challenged Executive Orders do not proscribe conduct, let alone conduct with an arguably constitutional interest." MTD at 5. But as this Court noted in granting the preliminary injunction, where "it is not fully clear what conduct is proscribed by a statute, a well-founded fear of enforcement may be based in part on a plaintiff's reasonable interpretation of what conduct is proscribed . . . even if a narrower reading of the statute is available." May 3 Order at 32 (citing *Virginia v Am. Booksellers Ass'n*, 484 U.S. 383, 392, 397 (1988)). "[T]aken alongside communications from executive agencies, and past litigation of these same issues"—all detailed in Plaintiffs' SAC, *see, e.g.*, SAC, ¶¶ 324–30, 346—"[t]he Cities and Counties' interpretation of the 2025 Executive Orders as proscribing their policies is reasonable." May 3 Order at 32–33. Defendants' argument also fails to account for Plaintiffs' extensive allegations of constitutional injury, including that the Executive Orders violate the Tenth Amendment by coercing Plaintiffs to abandon their local policies limiting cooperation with federal civil immigration enforcement. *See* SAC ¶¶ 401–13; *see also* May 3 Order at 37–40 (holding that Plaintiffs' conduct implicates their constitutional rights under the Tenth Amendment).

In a similar vein, Defendants again insist that pre-enforcement standing is "inapplicable" because "the Executive Orders merely constitute instructions" and "leave the evaluation of federal funding decisions open-ended." MTD at 5, 7. As noted above, this Court has specifically held that "[t]he text of the challenged provisions does not merely provide guidance to executive agencies on how to evaluate funds; it requires compliance" and "unambiguously command[s] action." May 3 Order at 35, 41 (quoting *City & Cnty. of S.F.*, 897 F.3d at 1239); *see also* SAC, ¶¶ 333–44. None of the three pre-enforcement standing cases cited by Defendants even address, let alone dispel, this conclusion. Indeed, the Ninth Circuit in *City and County of San Francisco* found that *American Booksellers Association* supported standing to challenge a materially similar Executive Order. *See* 897 F.3d at 1236 ("Like the plaintiffs in *American Booksellers*, the Counties have demonstrated that, if their interpretation of the Executive Order is correct, they will be forced to either change their policies or suffer serious consequences.").

Defendants also miss the mark in their effort to distinguish the Executive Orders challenged in this case from the 2017 Executive Order at issue in *City and County of San Francisco*. MTD at 6. That the Executive Orders here do not define "sanctuary" jurisdictions by specific reference to 8

U.S.C. § 1373—whereas the 2017 Order did—is an empty distinction.  "Additional agency directives, and communications from the Executive Branch make it clear that the term is meant to encompass jurisdictions, like the Cities and Counties, that limit the use of local resources to assist in federal immigration enforcement.  This is consistent with how the term was understood in 2017."  May 3 Order at 3; *id.* at 33 ("Communications from the Trump administration, and lawsuits already filed by the federal government against 'sanctuary' localities . . . further solidify the Cities and Counties' reasonable fear that they are targets of the 2025 Executive Orders"); *see also* SAC ¶¶ 443–453.  In other respects, too, the challenged Executive Orders are virtually identical to the 2017 Executive Order.  Just as their "2017 predecessor" threatened "all 'Federal funds,'" here "both the executive orders and the Bondi Directive, respectively, purport to condition *all* federal funding and federal payments and *all* DOJ funding on local assistance with federal immigration enforcement."  May 3 Order at 3, 51.  And the "savings clause that all action be taken '*consistent with applicable law*,'" MTD at 7, "does not insulate [the Executive Orders here] from judicial review any more than the inclusion of the phrase 'consistent with law' in EO 13,768 insulated *it* from judicial review."  May 3 Order at 47–48 (citing *City & Cnty. of S.F.*, 897 F.3d at 1239–40).  At bottom, the Ninth Circuit has "already ruled that an Executive Order that is nearly identical to those challenged today, accompanied by *fewer* credible threats of enforcement, created a sufficient threat of irreparable [budgetary] harm to satisfy pre-enforcement standing requirements."  May 3 Order at 42 (citing *City & Cnty. of S.F.*, 897 F.3d at 1245).

Finally, Defendants' mischaracterizations of the Bondi Directive and of Plaintiffs' budgetary harms fail to vitiate Plaintiffs' pre-enforcement standing.  Contrary to Defendants' reading, the Bondi Directive does not just ask for a "report," MTD at 7; it "freezes *all* DOJ funds to sanctuary jurisdictions."  May 3 Order at 35; *see also* SAC Ex. D (Dkt. No. 230) at p. 1 ("the Department of Justice shall pause the distribution of all funds'"").  And Defendants' assertion that Plaintiffs must identify specific "funding that has decreased solely because of an Executive Order," MTD at 8, misses the point of *pre*-enforcement standing, fails to account for the fact that some Plaintiffs may have been deterred from applying for certain grants prior to the Court's preliminary injunction, and overlooks the protective effect of the injunction, which has held such reductions at bay.

### C.    Plaintiffs' Fifth Amendment Claims Are Ripe

Defendants challenge the ripeness of Plaintiffs' Fifth Amendment claims.  Defendants' arguments are largely premised on their refrain that the Executive Orders do not command action and that what funding may be impacted remains speculative.  MTD at 9.  But, as explained at length above, in the SAC, and in the Court's prior orders, that assertion is belied by the plain language of the Orders and Defendants' actions and statements.  As this Court has made clear, "while the 2025 Executive Orders command executive agencies to identify sanctuary jurisdictions and ensure that they receive no federal funding, they provide no process for notifying jurisdictions about such a determination and no opportunity to be heard."  May 3 Order at 57.

Defendants also parse the distinction between facial and as-applied challenges.  MTD at 8–9.  But the appropriate inquiry remains whether the language of the Orders provides "fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008).  And, as the Court has held, Plaintiffs do not have fair notice of what specific actions or inactions make them "sanctuary" jurisdictions in the eyes of the federal government.  May 3 Order at 55.  The Orders and Bondi and Noem Directives instead tie "sanctuary" jurisdiction status—and the crippling funding and prosecution threats that come with such a designation—to entirely subjective assessments of whether a jurisdiction "seek[s] to interfere" with immigration enforcement (EO 14,159); "seek[s] to shield illegal aliens from deportation" "by design or effect" (EO 14,218); complies with an unspecified list of laws and "immigration-related directives" (Bondi Directive); and "honor[s] requests for cooperation" (Noem Directive).  *See* SAC ¶¶ 338, 341, 370–72, 387.  Plaintiffs' Fifth Amendment challenge is therefore ripe.[2]

---

[2] Defendants also raise a cursory challenge to Plaintiffs' standing to bring a Fifth Amendment due-process claim.  MTD at 8 n.4.  While the Ninth Circuit has not squarely addressed the question of whether a city has standing to bring a Fifth Amendment claim, it has held that other political subdivisions do have Fifth Amendment standing.  *See Bd. of Nat. Res. of State of Wash. v. Brown*, 992 F.2d 937, 942–43 (9th Cir. 1993) ("[W]e hold that school districts"—another political subdivision of the state—"are persons under the Fifth Amendment."); *see also City of Santa Clara v. Andrus*, 572 F.2d 660, 675 (9th Cir. 1978) (assuming that a city had Fifth Amendment standing and expressing doubt about the merits of the argument that municipalities are not persons under the Fifth Amendment).

1    **II.    Plaintiffs Have Alleged Plausible Claims for Relief**

2          Defendants' arguments for dismissal under Rule 12(b)(6) fare no better.  Once again,

3    Defendants largely repeat arguments that this Court has already rejected, without providing any

4    justification for why the Court should depart from its prior rulings.  And the few new arguments that

5    Defendants raise misstate Plaintiffs' allegations and ignore Ninth Circuit precedent.

6          **A.    Plaintiffs Adequately Plead a Facial Challenge**

7          Defendants argue that Plaintiffs have failed to state a facial challenge to the Executive Orders

8    because, in Defendants' view, the EOs "provide that when an agency takes steps to implement them, it

9    must only do so via appropriate lawful actions."  MTD at 9.  As discussed above, Defendants'

10   emphasis on the savings clauses is not well-founded.  The Court has found that the plain language of

11   EO 14,159 and EO 14,218—reinforced by Defendants' public statements and implementing actions—

12   demonstrates a clear command to executive agencies to withhold all federal funds from "sanctuary"

13   jurisdictions.  May 3 Order at 47–48; *see also* SAC ¶¶ 324–345 (allegations regarding Executive

14   Orders); *id.* ¶¶ 345–99 (allegations regarding Defendants' public statements); *id.* ¶¶ 347–400

15   (allegations regarding implementation of the Orders).  In those circumstances, the Court correctly

16   concluded, it would be inappropriate to credit the savings clause over the clear and specific language

17   of the Orders.  May 3 Order at 47–48 (citing *City & Cnty. of S.F.*, 897 F.3d at 1239–40).  The Court

18   also distinguished *Building and Construction Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C.

19   Cir. 2002), the case on which Defendants again rely, because the order at issue in that case did not

20   command agencies to take any actions.  *See* MTD at 10; May 3 Order at 48.  And while Defendants

21   again contend that "Congress frequently authorizes the Executive to impose discretionary conditions

22   on the receipt of federal grants," MTD at 10, the Court has already found that the Executive Orders

23   "do not purport to authorize agencies administering certain grant programs to impose discretionary

24   conditions on their receipt—they direct . . . a freeze on all federal funding to sanctuary jurisdictions."

25   May 3 Order at 49.

26         Likewise, while the Court has found that EO 14,287's text differs from EO 14,159 and EO

27   14,218, the Court noted—and Plaintiffs allege—that the "context surrounding this Executive Order

28   and its predecessors raises the threat" that EO 14,287 will be used for the same coercive and unlawful

purpose: "to cut off (or coercively threaten to cut off) all federal funds from so-called 'sanctuary' jurisdictions."  May 9 Order at 7 (discussing White House fact sheet accompanying EO 14,287); *see* SAC ¶ 345.

Defendants offer no justification for why the Court should reconsider its prior interpretation of the Executive Orders and agency directives.  The directive embodied in the Executive Orders—to categorically withhold funding from "sanctuary" jurisdictions as a coercive threat—has no "plainly legitimate sweep" because it lacks any constitutional basis.  *Moody v. NetChoice LLC*, 603 U.S. 707, 723 (2024) (cleaned up).  Instead, the Orders facially usurp Congressional power in violation of the separation of powers and the Spending Clause, and seek to coerce Plaintiffs to administer federal civil immigration law in violation of the Tenth Amendment.

**B.  Plaintiffs' Have Adequately Pleaded Violations of the Separation of Powers and Spending Clause**

**1.  *Dalton v. Specter* Does Not Bar Plaintiffs' Claims**

Defendants argue that Plaintiffs' separation of powers and Spending Clause claims are premised solely on statutory violations of the Impoundment Control Act ("ICA") and therefore cannot be brought as independent constitutional claims under *Dalton v. Specter*, 511 U.S. 462 (1994).  MTD at 12–13.  Defendants rely primarily on the D.C. Circuit's decision in *Global Health Council v. Trump*, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025), *amended and superseded*, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025).  But Defendants misconstrue Plaintiffs' claims and ignore controlling Ninth Circuit precedent.

At the outset, Plaintiffs' separation of powers and Spending Clause claims do not turn on whether Defendants complied with the procedures of the ICA, a statute that lays out the process by which the President may impound appropriated funds.  *Dalton* and *Global Health Council* are therefore inapposite.  In *Dalton*, the Supreme Court considered whether the alleged violation of a statute granting the President unbridled discretion over military base closures itself gave rise to a separation-of-powers violation and rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine."  511 U.S. at 471; *see also id.* at 472 (holding that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution").  In other

words, the *Dalton* Court rejected the argument that the President necessarily violates the Constitution anytime he violates a statute; the Court did not purport to foreclose the ability to bring constitutional claims when the President acts without statutory authority and in violation of the Constitution. And in *Global Health Council*, the D.C. Circuit similarly found that the allegation that the President "impound[ed] funds in violation of the 2024 Appropriations Act, the ICA and the Anti-Deficiency Act"—all statutes relevant to the impoundment at issue in that case— could not be asserted as a violation of separation-of-powers principles. 2025 WL 2326021, at *5–6.

But here, Plaintiffs' separation-of-powers claim does not arise from a statutory violation. Indeed, Congress has enacted no statute that would permit Defendants to do what they have done here—threaten wholesale defunding of "sanctuary" jurisdictions if those jurisdictions do not abandon their local policies. Rather, as Plaintiffs allege, the challenged Executive actions violate the separation of powers by purporting to legislate categorical immigration enforcement conditions on federal funding in the absence of any Congressional authorization for such conditions. SAC ¶¶ 419–21; 703–713. Likewise, Plaintiffs' Spending Clause claim rests on the allegation that these unauthorized immigration enforcement conditions are ambiguous, retroactive, imposed without regard to the purpose of the funding, and coercive. SAC ¶¶ 423–427; 717. None of these allegations is premised on the President's compliance *vel non* with the ICA. Indeed, the ICA allegation that Defendants point to in their brief, MTD at 12 (citing SAC ¶ 762), comes from Plaintiffs' APA cause of action.[3]

_____

[3] Defendants also argue in passing that Plaintiffs cannot assert an APA claim during the period in which statutory processes of the ICA run their course. MTD at 12 n.5. They rely solely on *Global Health Council.* As an initial matter, other courts have found that plaintiffs may state a claim under the APA based on agency conduct that violates the ICA. *See Oregon Council for Humanities v. U.S. DOGE Service* 2025 WL 2237478, at *23 (D. Or. Aug. 6, 2025) (collecting cases). And to the extent Defendants argue that Plaintiffs cannot maintain *any* APA action because of the ICA, *Global Health Council* does not support their argument. In fact, the D.C. Circuit panel issued a revised opinion on August 28, 2025 that limited its holding only to APA actions based on violations of the ICA. *See* 2025 WL 2480618, at *11 & n.17 (declining to reach question of whether APA review was available based on violation of Appropriations Act). While the Supreme Court recently entered a stay of a preliminary injunction in *Department of State v. AIDS Vaccine Advocacy Council* and indicated that the ICA may preclude an APA cause of action to enforce an appropriation, the Court stressed that its order "should not be read as a final determination on the merits." Order on Application for Stay, 606 U.S. ___, *Department of State v. AIDS Vaccine Advocacy Council*, No. 25A269 (Sept. 3, 2025). Here, in any event, Plaintiffs' APA claim is premised on multiple bases other than compliance with the ICA. *See* SAC ¶¶ 741–64.

Even if Plaintiffs' allegations that Defendants usurped Congress's appropriations power could be read as implicating the ICA, Defendants' arguments still fail. The Ninth Circuit takes an "expansive view of the constitutional category of claims highlighted in *Dalton*." *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023) ("While an action taken by the President in excess of his statutory authority does not necessarily violate the Constitution, specific allegations regarding separation of powers may suffice." (cleaned up)), *cert. denied*, 144 S. Ct. 1111 (2024). The Ninth Circuit has held that plaintiffs state a viable constitutional claim where, as here, "the President violated separation of powers by directing [an agency head] to act in contravention of a duly enacted law" and where the President's actions lack "both statutory authority and background constitutional authority." *Murphy Co.*, 65 F.4th at 1130 (cleaned up). Indeed, in a case involving the President's misuse of appropriated funds in violation of Congress's appropriations power, the Ninth Circuit found that *Dalton* does not preclude a separation-of-powers claim. *Sierra Club v. Trump* ("*Sierra Club I*"), 929 F.3d 670, 696–97 (9th Cir. 2019) ("[T]o the extent Defendants did not have statutory authority to reprogram the funds, they acted in violation of constitutional separation of powers principles because Defendants lack any background constitutional authority to appropriate funds—making Plaintiffs' claim fundamentally a constitutional one."); *Sierra Club v. Trump* ("*Sierra Club II*"), 963 F.3d 874, 889-90 (9th Cir. 2020) (plaintiffs stated a viable constitutional cause of action where they alleged that defendants "not only exceeded their delegated authority, but also violated an express constitutional prohibition" contained in the Appropriations Clause), *vacated Biden v. Sierra Club*, 142 S. Ct. 46 (2021).[4] Defendants hardly

---

[4] After the Ninth Circuit declined to grant a stay of the district court's opinion in *Sierra Club I*, the Supreme Court granted a stay. 140 S. Ct. 1 (2019). Nevertheless, *Sierra Club I* remains controlling authority. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (Ninth Circuit panel opinion is controlling unless intervening Supreme Court authority is "clearly irreconcilable," a "high standard" requiring more than just "some tension" between the Ninth Circuit and Supreme Court opinions); *Doe v. Trump*, 284 F. Supp. 3d 1182, 1184–85 (W.D. Wash. 2018) (district court "is not at liberty to simply ignore binding Ninth Circuit precedent based on Defendants' divination of what the Supreme Court was thinking when it issued the stay orders").

The Ninth Circuit's decision in *Sierra Club II* was subsequently vacated by the Supreme Court after the change in administration and without reaching the merits of the Ninth Circuit's decision. As such, *Sierra Club II* remains persuasive authority. *See Roe v. Anderson*, 134 F.3d 1400, 1404 (9th Cir. 1998) (collecting cases).

In any event, the Ninth Circuit's decision in *Murphy*, which adopts the reasoning of *Sierra Club I* and *II*, is controlling precedent, and the Supreme Court denied certiorari in that case. 141 S. Ct. 1111 (2024).

acknowledge, let alone grapple with, this Ninth Circuit authority.  Moreover, during the first Trump Administration, both this court and the Ninth Circuit struck down a materially similar Executive Order to those challenged here on separation-of-powers grounds.  *See City & Cnty. of S.F.*, 897 F.3d at 1235 ("Absent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals. Because Congress did not authorize withholding of funds, the Executive Order violates the constitutional principle of the Separation of Powers.").

**2. Plaintiffs Have Adequately Alleged Separation-of-Powers and Spending Clause Violations**

Defendants' remaining separation of powers and Spending Clause arguments revert to the same assertions that this Court has already considered and rejected.  They once again ask the Court to read savings clauses in the Executive Orders, Bondi Directive, and Noem Directive in isolation, and contend that these savings clauses demonstrate that Defendants have not violated the separation of powers.  *See* MTD at 14–15 (discussing *Allbaugh*).  As discussed above, this Court has already found that these savings clauses do not override the clear, specific, and unlawful direction in the Executive Orders and agency directives to categorically condition or withhold funding to "sanctuary" jurisdictions.  *See* Argument, Part I.A–B, II.A, *supra*.  Likewise, Defendants point to language on the DHS website suggesting that not all DHS standard terms will apply to every DHS grant, and reference the March 20, 2025 FEMA memo recommending the application of immigration-related conditions to various FEMA grants.  MTD at 13–14.  But the plain language of the DHS Standard Terms continues to state that the terms will be applied to all new federal awards.  Indeed, the Court previously declined to credit the eleventh hour change to the DHS website or the March 20 FEMA Memo, and concluded that the DHS Terms clearly indicated Defendants' intent to apply the immigration-related conditions categorically.  June 23 Order at 4.

With respect to Plaintiffs' Spending Clause claims, Defendants again argue that the challenged Executive actions do not apply to all federal funds, MTD at 16–17—an argument that must be rejected for the reasons discussed above, Argument, Parts I.B, II.A, *supra*; *see* May 3 Order at 35, 47–49, 51. They also claim that the Executive actions are only forward looking.  But, as this Court noted in granting the preliminary injunction, "[t]he challenged orders and DOJ directive purport to apply to all

federal funds, both apportioned and future." May 3 Order at 50. For example, the Bondi Directive purported to freeze *all* DOJ funding pending DOJ's implementation of the Executive Orders. SAC ¶ 369; SAC Ex. D at p. 1. Likewise, the Noem Directive instructs components to "review *all* federal financial assistance awards" and instructs them to "cease providing federal funding to sanctuary jurisdictions." SAC Ex. F (Dkt. No. 230) at p. 2 (emphasis added). But even if the conditions were only forward-looking, they would still violate the Spending Clause because of the absence of any nexus and the coercive nature of the conditions (as discussed below), and because the conditions remain unconstitutionally ambiguous as to key terms, including, for example, the definitions of "sanctuary jurisdictions," "sanctuary policies," "abet[ting] sanctuary policies," "cooperating with and not impeding" immigration enforcement, and "joint requests for cooperation." *See, e.g.*, SAC ¶¶ 393– 400. Plaintiffs therefore cannot knowingly accept grants with these funding conditions because they are "unable to ascertain what is expected" of them. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Defendants offer no argument as to the fatal ambiguity of these conditions.

Defendants argue that they have identified sufficient statutory authority for the immigration enforcement conditions required by the Executive Orders. But they rely only on EO 14,218's invocation of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), a statute related to federal public benefits. MTD at 17–18. While PRWORA limits individuals' eligibility for certain federal public benefits, nothing in the statute allows the federal government to condition these benefits on state and local jurisdictions actively assisting in enforcing federal immigration laws—as the Court previously found. *See* August 22 Order at 10. Further, the plain terms of EO 14,218 rebut Defendants' argument—Section 2(a)(ii) of EO 14,218 (the only section of the EO at issue here) directs agencies to "ensure" that "Federal payments" do not "abet so-called 'sanctuary' policies that seek to shield illegal aliens from deportation"; the section is not cabined to the narrower category of federal public benefits at issue in PRWORA. And, in any event, Defendants invocation of one (inapplicable) statute does not address the fact that Defendants have implemented the Executive Orders expansively to impose immigration conditions on vast swaths of funding—including transportation and emergency preparedness funding and HUD formula grants— that have no nexus to immigration enforcement. SAC ¶¶ 385–400; June 23 Order at 4–7; Aug. 22

Order at 11–14.

Finally, Defendants argue that Plaintiffs have failed to allege that Defendants' categorical imposition of immigration enforcement conditions is coercive. MTD at 18. But Plaintiffs have amply alleged that they rely heavily on federal funding to support critical public safety and social welfare functions. SAC ¶¶ 454–687. The withdrawal of all funding—as the Executive Orders threaten—would devastate Plaintiffs' ability to fulfill their social safety-net functions. It would constitute a coercive "gun to the head," *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 581 (2012), leaving Plaintiffs no real choice but to accede to Defendants' demands that they shoulder the burden of enforcing federal civil immigration law. *See, e.g.*, SAC ¶¶ 454–55, 458–59, 465, 468, 469, 485–86, 498–500; May 3 Order at 51–54. Likewise, as this Court has found, the categorical conditioning of critical swaths of funding—including DHS and DOT grants—on immigration cooperation is similarly coercive. *See* June 23 Order at 2 n.4, 7; *see also* Memorandum & Order at 39–40, Dkt. No. 71, *State of Illinois v. FEMA*, No. 1:25-cv-00206 WES (D.R.I. Sept. 24, 2025) ("*Illinois* MSJ Order") (granting summary judgment and finding DHS standard terms to be unduly coercive, ambiguous, and not germane to emergency preparedness grants).

### C.    Plaintiffs Have Sufficiently Alleged that the Executive Orders Violate the Tenth Amendment

For many of the same reasons discussed above, Defendants cannot show that Plaintiffs' Tenth Amendment claim fails as a matter of law. As Plaintiffs allege, and this Court has found, the plain language of the challenged Executive actions clearly directs agencies to categorically deprive Plaintiffs of critical federal funding to provide necessary public safety and social safety-net services for their tens of millions of residents. This federal funding makes up a significant portion of Plaintiffs' budgets, *see, e.g.*, SAC ¶¶ 455, 459, 463, 469, 563, 575, 606, 636, 642, 655, 657, 669, and withholding this funding would leave Plaintiffs "no legitimate choice regarding whether to accept the government's conditions in exchange for those funds." *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 533 (N.D. Cal. 2017). Defendants suggest that only a small number of targeted funds will be affected, MTD at 19, but their conduct since the initiation of this litigation proves otherwise. For example, as this Court has noted, Defendants' efforts to condition all DHS grants and DOT grants on Plaintiffs'

assistance with immigration enforcement demonstrate an intent "to strongarm the Cities and Counties to abandon their policies or face critical infrastructure degradation" and an inability to prepare for natural and man-made disasters.  June 23 Order at 7; *id.* at 2 n.4 (the "challenged standard terms and conditions . . . coerce the Cities and Counties to change their so-called sanctuary policies"); *id.* at 4–5 (finding that the March 20 FEMA Memo underscored DHS's unlawful implementation of immigration enforcement conditions).

Defendants' assertion that Plaintiffs "only speculate" about enforcement actions against "sanctuary" jurisdictions also rings hollow.  MTD at 20.  As Plaintiffs describe in the SAC, DOJ has already sued numerous "sanctuary" jurisdictions, including several Plaintiffs.  SAC ¶¶ 374–84.  Those lawsuits challenge local policies that lawfully limit local assistance with enforcing federal immigration law.  *See* SAC ¶¶ 375–83.  Indeed, the Ninth Circuit has specifically held that policies like those challenged by the federal government are a lawful exercise of Tenth Amendment authority reserved to states and localities.  *See United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019) ("California has the right, pursuant to the anticommandeering rule, to refrain from assisting with federal efforts. . . . [T]he federal government was free to expect as much as it wanted, but it could not require California's cooperation without running afoul of the Tenth Amendment.").  And a district court recently dismissed the federal government's lawsuit against the State of Illinois, Cook County, and Chicago's "sanctuary" policies, *inter alia*, on anti-commandeering grounds.  *United States v. Illinois*, 2025 WL 2098688, at *27 (N.D. Ill. July 25, 2025) ("[T]he Sanctuary Policies reflect Defendants' decision to not participate in enforcing civil immigration law—a decision protected by the Tenth Amendment and not preempted by the INA.").  As Plaintiffs allege, these lawsuits and threats of criminal prosecution are wielded as a coercive threat to cow Plaintiffs and other local jurisdictions into abandoning their considered, and constitutionally protected, local policies.

### D.    Plaintiffs Sufficiently Allege a Violation of the APA

Finally, Defendants' arguments regarding Plaintiffs' APA cause of action once again rehash

1  claims that the Court has already rejected.[5]

2  **1.    The Bondi Directive and Noem Directive Are Final Agency Actions**

3  Plaintiffs have demonstrated that the Bondi Directive and Noem Directive constitute final

4  agency actions "mark[ing] the consummation of the agency's decision-making process" and by which

5  "rights and obligations have been determined" and "legal consequences will flow." *Bennett v. Spear*,

6  520 U.S. 154, 177–78 (1997); *see, e.g.*, SAC ¶¶ 367–69, 385–86, 744–45.  With respect to the Bondi

7  Directive, Defendants continue to advance a "disingenuous interpretation" of the Directive as merely

8  requiring an evaluation of grants.  May 3 Order at 58; *see* MTD at 20–21.  But as this Court has

9  explained, the clear instruction in the Bondi Directive—to "ensure, consistent with law, 'sanctuary

10  jurisdictions' do not receive access to Federal funds" and to "pause the distribution of all funds"—are

11  hallmarks of final agency action.  May 3 Order at 58–59 (quoting Bondi Directive at p. 1).[6]  Other

12  cases dealing with very similar actions by federal agencies under the Trump Administration have

13  likewise found final agency action.  *See New York v. Trump*, 769 F. Supp. 3d 119, 136-37 (D.R.I.

14  2025) (OMB Directive to freeze federal funding pursuant to executive order and administrative

15  agencies' actions to implement funding pause was final agency action).  Defendants do not dispute the

16  finality of the Noem Directive, and therefore waive any such argument.  In any event, just like the

17  Bondi Directive, the Noem Directive also announces the agency's final position to "cease providing

18  federal funding to sanctuary jurisdictions"—a decision that implicates Plaintiffs' ability to access

19  critical DHS funding that supports emergency preparedness and public safety functions.  *See, e.g.*,

---

[5] Plaintiffs' APA cause of action challenges the Bondi Directive and Noem Directive, not the Executive Orders.  SAC ¶¶ 433–36, 741–64.  Defendants also raise APA arguments as to the DHS Standard Terms, DOT Standard Terms, and HUD CoC grant conditions.  *See* MTD at 23–24.  Plaintiffs' APA cause of action does not challenge these terms and conditions as final agency actions. *See* SAC ¶¶ 741–64.  Rather, Plaintiffs have sought to enjoin these grant conditions as implementing the unlawful provisions of the Executive Orders and Bondi and Noem Directives.  As such, Defendants' APA arguments as to the DHS Standard Terms, DOT Standard Terms, and HUD CoC grant conditions do not warrant dismissal of the APA claims as alleged in the SAC.

[6] Defendants now assert that the pause on federal funding announced in the preamble of the Bondi Directive applies only to nongovernmental organizations, and not to Plaintiffs.  MTD at 21 n.9. This litigation position cannot be reconciled with the text of the Bondi Directive.  The announcement of a pause on the distribution of agency funds comes in the very next sentence after the Attorney General announces DOJ's policy of ensuring that "sanctuary" jurisdictions do not receive federal funds.  There is no reference anywhere in the preamble to freezing funds only as to nongovernmental organizations.

SAC ¶¶ 385–92, 541, 596, 608, 614, 674.

The cases that Defendants rely on are inapposite.  For example, as the Court explained in granting Plaintiffs' preliminary injunction, *FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980), is distinguishable because the FTC's issuance of a complaint laying out allegations against a company had no legal force or definitive impact on the company's daily operations, whereas the challenged directives do definitively impact Plaintiffs.  May 3 Order at 59.  *New Jersey Hospital Association v. United States*, 23 F. Supp. 2d 497, 500 (D.N.J. 1998), which similarly involved a settlement letter "merely indicat[ing] a belief . . . that plaintiff's member hospitals may have violated" the law, is likewise inapplicable.  *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997, 1008 (9th Cir. 2021), involved a challenge to an agency manual that did "not prescribe any action in any particular matter," and *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) involved a challenge to a report from the Secretary of Commerce that had "no direct consequences" and "serve[d] more like a tentative recommendation."  But here, the Directives unambiguously direct that "sanctuary" jurisdictions be denied access to agency funding and, in the case of the Bondi Directive, announce an immediate pause on the distribution of any funding.

## 2.    The Challenged Directives Are Not Committed to Agency Discretion

Likewise, Defendants are wrong that judicial review is precluded under 5 U.S.C. § 701(a)(2).  Plaintiffs' SAC challenges the decisions announced in the Bondi and Noem Directives to implement the Executive Orders and condition federal funding if the recipient is a "sanctuary" jurisdiction.  SAC ¶¶ 433–36, 741–64.  As Plaintiffs allege, these categorical directives are emphatically *not* an exercise of independent agency discretion.  *See, e.g.*, *New York*, 769 F. Supp. 3d at 137 (implementation of funding pauses "likely marked the consummation of each agency's decision to comply with" executive orders and "not to exercise its discretion.").  Indeed, far from any "complicated balancing of . . . factors which are peculiarly within [the agency's] expertise," MTD at 23 (citing *Lincoln v. Vigil*, 508 U.S. 182 (1993)), Plaintiffs plausibly allege that the agencies have not engaged in any reasoned decision-making or exercise of discretion, but rather have dutifully "parroted" the President's Executive Orders.  August 22 Order at 3–4; SAC ¶¶ 366–73, 385–92.  Furthermore, as the First Circuit recently found, an agency's action to implement a "broad categorical freeze[]" on funds pursuant to

executive fiat is *not* the kind of programmatic shift that other cases have found to be precluded from judicial review. *New York v. Trump*, 133 F.4th 51, 67-68 (1st Cir. 2025) (denying motion for stay). That conclusion applies equally here.

Defendants' cases are distinguishable, and none of them compels a different result. Plaintiffs do not challenge the allocation of a lump-sum appropriation, as in *Lincoln v. Vigil*, 508 U.S. 182 (1993). *See* MTD at 23–24. Nor are Plaintiffs' cases comparable to cases involving challenges to decisions not to fund a specific grant, *Policy & Research, LLC v. United States Department of Health and Human Services*, 313 F. Supp. 3d 62 (D.D.C. 2018),[7] or decisions about allocation of funding among recipients, *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002), or an agency's exercise of discretion as to the sanction imposed for a violation of administrative regulations, *Community Action of Laramie Cnty., Inc. v. Bowen*, 866 F.2d 347, 353 (10th Cir. 1989). Whereas those cases involved discretionary programmatic allocations or the exercise of prosecutorial discretion, here, Plaintiffs challenge Defendants' categorical decision to condition all funds to "sanctuary" jurisdictions pursuant to the Executive Orders and in the absence of any constitutional or statutory authority. While Defendants assert that this case "primarily involves discretionary grants," MTD at 24, that argument misses the point that Plaintiffs are not challenging individual grants, but an agencywide categorical policy.[8] *See New York*, 133 F.4th at 69 (declining to stay injunction on across-the-board funding freeze despite federal government's argument some grants were discretionary because the freeze was instituted pursuant to agency directive rather than independent discretion); Order on Preliminary Injunction at 13, Dkt. No. 45, *City of Fresno v. Turner*, No. 25-cv-07070-RS (N.D. Cal. Sept. 23, 2025) (Seeborg, J.) (concluding that *Lincoln* did not govern where plaintiffs "do not challenge singular agency grant decisions made while weighing various factors" but instead

---

[7] Defendants' citation to *Policy and Research LLC* is particularly inapposite because, in that case, the district court found that despite the presumptive non-reviewability of the agency's decision to stop funding a specific grant, the agency's own guidance and regulations provided law to apply and permitted judicial review. 313 F. Supp. 3d at 76.

[8] Nor is Defendants' representation factually accurate. In fact, the record shows that significant formula grants, in which Congress has specified how funding should be allocated, have been slated for immigration-enforcement conditions—further belying Defendants' assertion that they are engaged in individualized discretionary decisionmaking. *See* SAC ¶¶ 390–91; *id.* Ex. G at pp. 22–23.

challenged "agencies' unilateral imposition of the Grant Conditions . . . to vindicate the Executive's agenda"); *Illinois* MSJ Order at 28 (distinguishing *Lincoln* from a case, like this one, regarding whether agency "exceeded its statutory authority by adding immigration-related terms to all grants under its purview").

Finally, even if agency discretion were at issue, Plaintiffs would still be entitled to challenge Defendants' actions under the APA as being contrary to the Constitution and in excess of statutory authority. *See Vigil*, 508 U.S. at 195 (despite finding programmatic change committed to agency discretion by law, agency was still reviewable on grounds that it was contrary to constitutional right); *Community Action of Laramie County*, 866 F.2d at 352 (district court would have jurisdiction to determine whether agency violated federal statute or exceeded constitutional boundaries). Thus, Defendants' MTD should be denied as to Plaintiffs' APA claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Dated:  September 30, 2025

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
NANCY E. HARRIS
KARUN A. TILAK
Deputy City Attorneys

By: /s/ *Karun A. Tilak*
KARUN A. TILAK
Deputy City Attorney

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

1

TONY LOPRESTI
County Counsel
2
KAVITA NARAYAN
Chief Assistant County Counsel
3
MEREDITH A. JOHNSON
Lead Deputy County Counsel
4
STEFANIE L. WILSON
5
RAJIV NARAYAN
BILL NGUYEN
6
Deputy County Counsels

7
By:  */s/ Bill Nguyen*
BILL NGUYEN
8
Deputy County Counsel

9
Attorneys for Plaintiff
10
COUNTY OF SANTA CLARA

11

ROBERT TAYLOR
12
Portland City Attorney

13
By:  */s/ Naomi Sheffield*
NAOMI SHEFFIELD*
14
Chief Deputy City Attorney
1221 SW Fourth Avenue, Room 430
15
Portland, OR 97204
Tel: (503) 823-4047
16
Fax: (503) 823-3089
Naomi.Sheffield@portlandoregon.gov
17

*Admitted *pro hac vice*
18

Attorneys for Plaintiff
19
CITY OF PORTLAND

20

21

22

23

24

25

26

27

28

1

2

SHANNON BRADDOCK
King County Executive

3

By: /s/ David J. Hackett

4

DAVID J. HACKETT*
General Counsel to King County
Executive

5

Chinook Building
401 5th Avenue, Suite 800
Seattle, Washington, 98104

6

(206) 477-9483
David.hackett@kingcounty.gov

7

PAUL J. LAWRENCE*
Pacifica Law Group

8

1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404

9

(206) 245-1708
Paul.Lawrence@pacificalawgroup.com

10

11

*Admitted pro hac vice

12

Attorneys for Plaintiff
MARTIN LUTHER KING, JR. COUNTY

13

14

PATRICIA KING
New Haven Corporation Counsel

15

By: /s/ Patricia King

16

PATRICIA KING*
Office of the Corporation Counsel

17

City of New Haven
165 Church Street-4th Floor

18

New Haven, CT 06510
Tel:  203-946-7951

19

Cell: 203-668-9282
Fax:  203-946-7942

20

pking@newhavenct.gov

21

*Admitted pro hac vice

22

Attorney for Plaintiff

23

CITY OF NEW HAVEN

24

25

26

27

28

1

2

RYAN RICHARDSON
Oakland City Attorney

3      By: */s/ Ryan Richardson*
RYAN RICHARDSON

4      City Attorney
MARIA BEE

5      Chief Assistant City Attorney
JAMIE HULING DELAYE

6      Supervising City Attorney
H. LUKE EDWARDS

7      Deputy City Attorney
One Frank H. Ogawa Plaza, 6th Floor

8      Oakland, CA 94612
Tel: (510) 238-6629

9      Fax: (510) 238-6500
Email: RRichardson@OaklandCityAttorney.org

10

11     Attorneys for Plaintiff
CITY OF OAKLAND

12

13     JOHN I. KENNEDY
City Attorney

14

15     By: */s/ John I. Kennedy*
JOHN I. KENNEDY, City Attorney

16     1333 Park Ave, Emeryville, CA 94608-3517
Phone: 510-596-4381

17     Fax: 510-596-3724
Email: John.Kennedy@emeryville.org

18

19     Attorney for Plaintiff
CITY OF EMERYVILLE

20

21     NORA FRIMANN
City Attorney

22

23     By: */s/ Nora Frimann*
NORA FRIMANN, City Attorney
ELISA TOLENTINO, Chief Deputy City Attorney

24     200 E Santa Clara St
San José, CA 95113-1905

25     Tel: 408-535-1900
Fax: 408-998-3131

26     cao.main@sanjoseca.gov

27     Attorneys for Plaintiff
CITY OF SAN JOSÉ

28

1
2

HEATHER FERBERT
City Attorney

3

By: /s/ Mark Ankcorn
MARK ANKCORN, Senior Chief Deputy City Attorney
JULIE RAU, Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
Tel: (619) 533-5800

4
5
6
7

Attorneys for Plaintiff
CITY OF SAN DIEGO

8
9

SUSANA ALCALA WOOD
City Attorney

10
11

By: /s/ Andrea Velasquez
ANDREA VELASQUEZ
Supervising Deputy City Attorney
915 I St Fl 4, Sacramento, CA 95814-2621
Tel: 916-808-5346
Fax: 916-808-7455
Email: AVelasquez@cityofsacramento.org

12
13
14
15

Attorneys for Plaintiff
CITY OF SACRAMENTO

16
17

By: /s/ Anthony P. Condotti
Anthony P. Condotti, City Attorney
Catherine M. Bronson, Assistant City Attorney
Claire Hard, Deputy City Attorney
PO Box 481
Santa Cruz, CA 95061
Tel: 831-423-8383
Email: tcondotti@abc-law.com
chard@abc-law.com
cbronson@abc-law.com

18
19
20
21
22
23

Attorneys for Plaintiff
CITY OF SANTA CRUZ

24
25
26
27
28

1

2

SUSAN K. BLITCH
County Counsel

3

By: /s/ Susan K. Blitch

4

SUSAN K. BLITCH, County Counsel
HENRY BLUESTONE SMITH, Deputy County Counsel

5

168 W Alisal St Fl 3rd
Salinas, CA 93901-2439

6

Tel: 831-755-5045
Fax: 831-755-5283

7

Email: SmithHB@countyofmonterey.gov

8

Attorneys for Plaintiff
COUNTY OF MONTEREY

9

10

ANN DAVISON
Seattle City Attorney

11

By: /s/ Kerala Cowart

12

Kerala Cowart, Assistant City Attorney*
Ann Davison, Seattle City Attorney*

13

Dallas LePierre, Assistant City Attorney*
Rebecca Widen, Assistant City Attorney*

14

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050

15

Seattle, WA 98104
Tel: (206) 684-8200

16

E-mail: Kerala.Cowart@seattle.gov

17

*Admitted pro hac vice

18

Attorneys for Plaintiff
CITY OF SEATTLE

19

20

21

22

23

24

25

26

27

28

1

2

KRISTYN ANDERSON
City Attorney

3    By: */s/ Kristyn Anderson*

4

5

6

7

8

9

KRISTYN ANDERSON (MN Lic. 0267752)*
SARA J. LATHROP, Assistant City Attorney (MN Lic.
0310232)*
SHARDA ENSLIN, Assistant City Attorney (MN Lic.
0389370)*
350 South Fifth Street
Minneapolis, MN 55415
Tel: 612-673-3000
Email: kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov
sharda.enslin@minneapolismn.gov

10    *Admitted *pro hac vice*

11    Attorneys for Plaintiff
CITY OF MINNEAPOLIS

12

13    LYNDSEY OLSON
City Attorney

14

15    By: */s/ Lyndsey Olson*

16

17

18

19

20

LYNDSEY OLSON, City Attorney (MN Lic. #
0332288)*
ANTHONY G. EDWARDS, Assistant City Attorney
(MN Lic. # 0342555)*
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Tel: 651-266-8710
Fax: 651-298-5619
Email: Anthony.Edwards@ci.stpaul.mn.us

21    *Admitted *pro hac vice*

22    Attorneys for Plaintiff
CITY OF ST. PAUL

23

24

25

26

27

28

1

2          ERIN K. McSHERRY
           City Attorney

3     By: */s/ Erin K. McSherry*
           ERIN K. McSHERRY, City Attorney*
4          200 Lincoln Avenue
           Post Office Box 909
5          Santa Fe, NM 87504-0909
           (505) 955-6967
6          Email: mdmartinez@santafenm.gov

7          *Admitted pro hac vice*

8          Attorney for Plaintiff
           CITY OF SANTA FE
9

10    By: */s/ Erin Monju*
           ERIN MONJU*
11         KATHERINE COURTNEY (CA Bar No. 341165)
           NAOMI TSU*
12         JILL HABIG (CA Bar No. 268770)
           Public Rights Project
13         490 43rd Street, Unit #115
           Oakland, CA 94609
14         Tel: (510) 738-6788
           erin@publicrightsproject.org
15         katiec@publicrightsproject.org
           jill@publicrightsproject.org
16         naomi@publicrightsproject.org
17
           * Admitted *pro hac vice*
18
           Attorneys for Plaintiffs
19         CITIES OF MINNEAPOLIS, NEW HAVEN,
           PORTLAND, ST. PAUL, SANTA FE, SEATTLE,
20         ALBANY, ALBUQUERQUE, BEND, BOSTON,
           CAMBRIDGE, CHICAGO, COLUMBUS, CULVER
21         CITY, DENVER, ROCHESTER, and WILSONVILLE
           and COUNTIES OF ALLEGHENY, DANE,
22         HENNEPIN, MULTNOMAH, and PIERCE

23

24

25

26

27

28

1

2

DONNA R. ZIEGLER
County Counsel, County of Alameda

3

By: */s/ Jason M. Allen*
    K. SCOTT DICKEY
    Assistant County Counsel
    JASON M. ALLEN
    Senior Deputy County Counsel
    1221 Oak Street, Suite 450
    Oakland, California 94612
    Telephone: (510) 272-6700
    E-mails: scott.dickey@acgov.org
        jason.allen@acgov.org

4

5

6

7

8

Attorneys for Plaintiff
COUNTY OF ALAMEDA

9

10

ROBERT MAGEE*
Corporation Counsel

11

12

By: */s/ Robert Magee*
    City Hall, Room 106
    24 Eagle St
    Albany, NY 12207
    Tel: 518-434-5050
    Email: rmagee@albanyny.gov

13

14

15

16

*Admitted *pro hac vice*

17

Attorney for Plaintiff
CITY OF ALBANY

18

19

By: */s/ Lauren Keefe*
    LAUREN KEEFE, City Attorney (NM Lic. 14664)*
    DEVON P. KING, Deputy City Attorney (NM Lic. 148108)*
    One Civic Plaza NW
    PO Box 2248
    Albuquerque, NM 87103
    Telephone: 505-768-4500
    lkeefe@cabq.gov
    dking@cabq.gov

20

21

22

23

24

25

*Application for admission *pro hac vice* forthcoming

26

27

Attorneys for Plaintiff
CITY OF ALBUQUERQUE

28

EBONY M. THOMPSON
Baltimore City Solicitor

By: */s/ Christopher Sousa*
    Christopher Sousa (264874)
    Baltimore City Department of Law
    100 N. Holliday Street
    Baltimore, Maryland 21202
    410.396.3947
    christopher.sousa@baltimorecity.gov

    Attorneys for Plaintiff
    CITY OF BALTIMORE


    OFFICE OF THE CITY ATTORNEY FOR
    THE CITY OF BEND

By: */s/ Ian M. Leitheiser*
    Ian M. Leitheiser (OSB #993106)*
    *City Attorney*
    Elizabeth Oshel (OSB #104705)*
    *Senior Assistant City Attorney*
    Michael J. Gaffney (OSB #251680)*
    *Senior Assistant City Attorney*
    City of Bend
    PO Box 431
    Bend, OR 97709
    (541) 693-2128
    ileitheiser@bendoregon.gov
    eoshel@bendoregon.gov
    mgaffney@bendoregon.gov

    *Application for admission *pro hac vice* forthcoming

    Attorneys for Plaintiff
    CITY OF BEND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Benjamin L. Stock*
Benjamin L. Stock (SBN 208774)
Stephen A. McEwen (SBN 186512)
Eileen L. Ollivier (SBN 345880)
BURKE, WILLIAMS & SORENSEN, LLP
1999 Harrison Street, Suite 1650
Oakland, California 94612-3520
Tel:  510.273.8870    Fax:  510.839.9104
bstock@bwslaw.com
smcewen@bwslaw.com
eollivier@bwslaw.com

Attorneys for Plaintiff
CITY OF BENICIA

By: */s/ Farimah F. Brown*
Farimah F. Brown, City Attorney, SBN 201227
Katrina L. Eiland, Deputy City Attorney, SBN 275701
Laura Iris Mattes, Deputy City Attorney, SBN 310594
Stephen A. Hylas, Deputy City Attorney, SBN 319833
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6998
Facsimile: (510) 981-6960
keiland@berkeleyca.gov
lmattes@berkeleyca.gov
shylas@berkeleyca.gov

Attorneys for Plaintiff
CITY OF BERKELEY

ADAM CEDERBAUM
Corporation Counsel

By: */s/ Samuel Dinning*
SAMUEL DINNING (MA BBO# 704304)*
Chief of Staff & Policy
KATHERINE AUBUCHON-JONES (MA BBO# 705490)*
Senior Assistant Corporation Counsel
City of Boston Law Department
1 City Hall Plaza, Room 615
Boston, MA 02201
Telephone: 617-635-4034
samuel.dinning@boston.gov
katherine.jones@boston.gov

*Application for admission *pro hac vice* forthcoming
Attorneys for Plaintiff
CITY OF BOSTON

1

2

CITY OF CAMBRIDGE, LAW DEPARTMENT
MEGAN B. BAYER, CITY SOLICITOR

3

4

5

6

7

8

9

10

By: */s/ Megan B. Bayer*
    Megan B. Bayer (MA BBO No. 669494)*
    *City Solicitor*
    Sean M. McKendry (MA BBO No. 678844)*
    *Assistant City Solicitor*
    Sydney M. Wright (MA BBO No. 698565)**
    *Assistant City Solicitor*
    Cambridge City Hall, 3rd Floor
    795 Massachusetts Avenue
    Cambridge, MA 02139
    (617) 349-4121
    mbayer@cambridgema.gov
    smckendry@cambridgema.gov
    swright@cambridgema.gov

11

12

    *Admitted *pro hac vice*
    **Application for admission *pro hac vice* forthcoming

13

14

    Attorneys for Plaintiff
    CITY OF CAMBRIDGE

15

16

17

18

19

20

By: */s/ Stephen A. McEwen*
    Stephen A. McEwen (SBN 186512)
    Eileen L. Ollivier (SBN 345880)
    BURKE, WILLIAMS & SORENSEN, LLP
    1770 Iowa Avenue, Suite 240
    Riverside, CA  92507-2479
    Tel:  951.788.0100     Fax:  951.788.5785
    smcewen@bwslaw.com
    eollivier@bwslaw.com

21

22

    Attorneys for Plaintiff
    CITY OF CATHEDRAL CITY

23

24

25

26

27

28

1
2

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago

3      By:  */s/ Rebecca Hirsch*
4           Rebecca Hirsch (rebecca.hirsch2@cityofchicago.org)
            City of Chicago Department of Law
5           121 North LaSalle Street, Room 600
            Chicago, Illinois 60602
6           Tel: (313) 744-8143

7           Attorneys for Plaintiff
            CITY OF CHICAGO
8

9           CITY OF COLUMBUS, DEPARTMENT OF LAW
            ZACH KLEIN, CITY ATTORNEY
10

11     By:  */s/ Richard N. Coglianese*
            Richard N. Coglianese (0066830)
            Assistant City Attorney
12          77 N. Front Street, 4th Floor
            Columbus, Ohio 43215
13          (614) 645-0818 Phone
            (614) 645-6949 Fax
14          rncoglianese@columbus.gov

15          Attorneys for Plaintiff
            CITY OF COLUMBUS
16

17          OFFICE OF THE CORPORATION COUNSEL FOR
            DANE COUNTY
18

19     By:  */s/ Carlos A. Pabellon*
            Carlos A. Pabellon (WSB # 1046945)*
20          *Corporation Counsel*
            David R. Gault (WSB # 1016374)*
21          *Deputy Corporation Counsel*
            County of Dane
22          City-County Building, Room 419
            210 Martin Luther King, Jr. Blvd.
23          Madison, WI 53703
            (608) 266-4355
24          pabellon.carlos@danecounty.gov
            gault@danecounty.gov
25
26          *Admitted *pro hac vice*

27          Attorneys for Plaintiff
            COUNTY OF DANE
28

1
2

ASHLEY M. KELLIHER
Assistant City Attorney

3

By: */s/ Ashley M. Kelliher*

4

Ashley M. Kelliher (CO Bar No. 40220)*
Assistant City Attorney
Denver City Attorney's Office

5

201 West Colfax Avenue Denver, Colorado 80202
720-913-3137 (phone)

6

720-913-3190 (fax)
ashley.kelliher@denvergov.org

7
8

*Application for admission *pro hac vice* forthcoming

9

Attorney for Plaintiff
CITY AND COUNTY OF DENVER

10
11

By: */s/ Samantha W. Zutler*

12

Samantha W. Zutler (SBN 238514)
Eileen L. Ollivier (SBN 345880)
BURKE, WILLIAMS & SORENSEN, LLP

13

1 California Street, Suite 3050
San Francisco, CA 94111-5432

14

Tel:  415.655.8100    Fax:  415.655.8099
szutler@bwslaw.com

15

eollivier@bwslaw.com

16

Attorneys for Plaintiffs
CITIES OF HEALDSBURG and WATSONVILLE

17
18
19

MARY F. MORIARTY
Hennepin County Attorney

20

By: */s/ Rebecca Holschuh*

21

Rebecca L.S. Holschuh (MN Lic. #0392251)*
Brittany K. McCormick (MN Lic. #0395175)*
Assistant County Attorneys

22

300 South Sixth Street
Minneapolis, MN 55487

23

Tel: 612-673-3000
Rebecca.Holschuh@hennepin.us

24

Brittany.McCormick@hennepin.us

25
26

*Admitted *pro hac vice*

27

Attorneys for Plaintiff
COUNTY OF HENNEPIN

28

1

2

HYDEE FELDSTEIN SOTO
City Attorney of the City of Los Angeles

3

By: */s/ Michael J. Dundas*
Michael J. Dundas (CA Bar No. 226930)

4

Joshua M. Templet (CA Bar No. 267098)
Office of the Los Angeles City Attorney

5

200 North Main Street, Room 800
Los Angeles, California 90012

6

Tel: (213) 978-8100
mike.dundas@lacity.org

7

joshua.templet@lacity.org

8

Attorneys for Plaintiff
CITY OF LOS ANGELES

9

10

BRIAN E. WASHINGTON
County Counsel

11

12

By: */s/ Edward F. Sears*
Kate K. Stanford, Deputy County Counsel

13

Edward F. Sears, Deputy County Counsel
3501 Civic Center Drive, Suite 275

14

San Rafael, CA 94903
Tel: (415) 473-6117

15

kate.stanford@marincounty.gov
ned.sears@marincounty.gov

16

17

Attorneys for Plaintiff
COUNTY OF MARIN

18

19

By: */s/ Nira F. Doherty*
Nira F. Doherty (SBN 254523)

20

Stephen A. McEwen (SBN 186512)

21

Eileen L. Ollivier (SBN 345880)
BURKE, WILLIAMS & SORENSEN, LLP

22

1999 Harrison Street, Suite 1650
Oakland, California 94612-3520

23

Tel: 510.273.8780   Fax: 510.839.9104
ndoherty@bwslaw.com

24

smcewen@bwslaw.com
eollivier@bwslaw.com

25

26

Attorneys for Plaintiff
CITY OF MENLO PARK

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ B. Andrew Jones*
   B. Andrew Jones*
   Deputy County Attorney, Oregon State Bar No. 091786
   Multnomah County Attorneys Office
   501 SE Hawthorne Blvd, Suite 500
   Portland, OR, 97214
   Phone: (503)-988-3138
   Mobile: (971)-678-7526
   Fax: (503)-988-3377
   Email: andy.jones@multco.us

   *Application for admission *pro hac vice* forthcoming

   Attorney for Plaintiff
   MULTNOMAH COUNTY


By: */s/ Michelle Marchetta Kenyon*
   Michelle Marchetta Kenyon (SBN 127969)
   City Attorney
   Stephen A. McEwen (SBN 186512)
   Eileen L. Ollivier (SBN 345880)
   BURKE, WILLIAMS & SORENSEN, LLP
   1999 Harrison Street, Suite 1650
   Oakland, California 94612-3520
   Tel:  510.273.8780    Fax:  510.839.9104
   mkenyon@bwslaw.com
   smcewen@bwslaw.com
   eollivier@bwslaw.com

   Attorneys for Plaintiffs
   CITIES OF PACIFICA and ROHNERT PARK


By: */s/ Molly S. Stump*
   Molly S. Stump, City Attorney SBN 177165
   Caio A. Arellano, Chief Assistant City Attorney SBN 262168
   Mark J. Vanni, Assistant City Attorney SBN 267892
   City Of Palo Alto
   250 Hamilton Ave., 8th Floor
   Palo Alto, CA 94301
   Telephone: (650) 329-2171
   Facsimile: (650) 320-2646
   Email: Molly.Stump@PaloAlto.gov
   Caio.Arellano@PaloAlto.gov
   Mark.Vanni@PaloAlto.gov

   Attorneys for Plaintiff
   CITY OF PALO ALTO

1

2          By: /s/ Eric Danly
              Eric Danly
3             City Attorney
              City of Petaluma
4             11 English St, Petaluma, CA 94952-2610
              Telephone: 707-778-4402
5             E-Mail: EDanly@cityofpetaluma.org

6             Attorney for Plaintiff
              CITY OF PETALUMA
7

8             MARY E. ROBNETT
              Pierce County Prosecuting Attorney
9
           By: /s/ Kristal M. Cowger
10            KRISTAL M. COWGER, WSBA # 43079*
              JONATHAN R. SALAMAS, WSBA # 39781*
11            Deputy Prosecuting Attorneys / Civil
              930 Tacoma Avenue South, Suite 946
12            Tacoma, WA  98402-2102
              Ph: 253-798-7400 / Fax: 253-798-6713
13            kristal.cowger@piercecountywa.gov
              jonathan.salamas@piercecountywa.gov
14
              *Admitted pro hac vice
15
              Attorneys for Plaintiff
16            PIERCE COUNTY

17

18            DAVID ALESHIRE
              City Attorney
19
           By: /s/ Kimberly Y. Chin
20            SHANNON MOORE, Chief Assistant City Attorney
              KIMBERLY Y. CHIN, Senior Assistant City Attorney
21            450 Civic Center Plaza
              Richmond, CA  94804-1630
22            Tel: 510-620-6509
              Fax: 510-620-6518
23            Email: Shannon_Moore@ci.richmond.ca.us
              Email: Kimberly_Chin@ci.richmond.ca.us
24
              Attorneys for Plaintiff
25            CITY OF RICHMOND

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ John D. Nibbelin
JOHN D. NIBBELIN, County Counsel (SBN 184603)
Rebecca M. Archer, Chief Deputy Counsel (SBN
202743)
Lauren F. Carroll, Deputy County Counsel (SNB 333446)
500 County Center, 4th Floor
Redwood City, CA 94063
Telephone: 650-363-4757
jnibbelin@smcgov.org
rmarcher@smcgov.org
lcarroll@smcgov.org

Attorneys for Plaintiff
COUNTY OF SAN MATEO


By: /s/ Teresa L. Stricker
TERESA L. STRICKER, City Attorney (SBN 160601)
AUTUMN LUNA, Chief Assistant City Attorney (SBN
288506)
ADAM S. ABEL, Assistant City Attorney (SBN 148210)
HANNAH E. FORD-STILLE, Deputy City Attorney
(SBN 335113)
100 Santa Rosa Ave, Room 8
Santa Rosa, CA 95404
Telephone: (707) 543-3040
tstricker@srcity.org
aluna@srcity.org
aabel@srcity.org
hfordstille@srcity.org

Attorneys for Plaintiff
CITY OF SANTA ROSA


By: /s/ Joshua A. Myers
Robert H. Pittman, County Counsel (SBN 172154)
Joshua A. Meyers, Chief Deputy County Counsel (SBN
250988)
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Joshua.Myers@sonoma-county.org

Attorneys for Plaintiff
COUNTY OF SONOMA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Amanda Guile-Hinman*
Amanda R. Guile-Hinman, OSB #093706*
29799 SW Town Center Loop E
Wilsonville, OR 97070
guile@wilsonvilleoregon.gov
(503) 570-1509

*Admitted *pro hac vice*

Attorney for Plaintiff
CITY OF WILSONVILLE

**FILER'S ATTESTATION**

I, KARUN A. TILAK, am the ECF user whose identification and password are being used to file this OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.