BRETT SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
ELIANIS PEREZ
Assistant Director
LAUREN FASCETT
Senior Litigation Counsel
LINDSAY ZIMLIKI
ANGEL FLEMING
VICTORIA TURCIOS
CAROLINE MCGUIRE
*Trial Attorneys*
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　　　　Defendants. | CASE NO. 3:25-CV-1350 (WHO)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br><br>Hearing Date: November 5, 2025<br>Time:　　　　2:00 P.M. PST<br>Honorable William H. Orrick III |

# **TABLE OF CONTENTS**

I.   The Court Should Dismiss the Second Amended Complaint Under Rule 12(b)(1) For
     Lack of Jurisdiction Because Plaintiffs Fail to Establish Article III Standing. ...............................1

     A.   Plaintiffs fail to demonstrate Pre-Enforcement Standing. ....................................................1

     B.   Plaintiffs also fail to establish a concrete injury in fact. ......................................................3

     C.   Plaintiffs' Fifth Amendment claim is unripe for review. ......................................................3

II.  The Court Should Dismiss the SAC Under Rule 12(b)(6) for Failure to State a Claim. .................3

     A.   Defendants do not misconstrue Plaintiffs' separation of powers or spending
          clause claims; the claims are barred by *Dalton v. Specter* and the Court should
          dismiss them under 12(b)(6). ..................................................................................................3

     B.   Defendants do not ignore Ninth Circuit Precedent. ..............................................................6

     C.   Even assuming Plaintiffs' separation of powers and Spending Clause claims
          are not solely based on statutory violations, they fail to plead that the
          Executive Orders violate the Constitution. ............................................................................7

     D.   Plaintiffs fail to show that the EOs violate the Tenth Amendment. .....................................9

     E.   The Bondi and Noem Memoranda are not final agency action. ..........................................11

CONCLUSION .........................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
567 U.S. 387 (2012) ..................................................................................................... 11

*Babbitt v. United Farm Workers National Union, etc., et al.*,
442 U.S. 289 (1979) ...................................................................................................... 1

*Bennett v. Spear*,
520 U.S. 154 (1997) ..................................................................................................... 15

*California v. Azar*,
911 F .3d 558 (9th Cir. 2018) ..................................................................................... 13

*Charles C. Steward Mach. Co. v. Davis*,
301 U.S. 548 (1937) ...................................................................................................... 9

*City & Cnty. of San Francisco v. Trump*,
779 F. Supp. 3d 1077 (N.D. Cal. 2025) ....................................................................... 9

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ........................................................................... 7, 8, 13

*Common Cause v. Trump*,
506 F. Supp. 3d 39 (D.D.C. 2020) .............................................................................. 13

*Dalton v. Specter*,
511 U.S. 462 (1994) ...................................................................................................... 5

*Dep't of State v. Aids Vaccine Advoc. Coal.*,
No. 25A269, 2025 WL 2740571 (U.S. Sept. 26, 2025) ............................................ 6, 7

*DeVillier v. Texas*,
601 U.S. 285 (2024) ...................................................................................................... 5

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) ........................................................................................ 3

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ...................................................................................................... 5

*Freedom to Travel Campaign v. Newcomb*,
82 F.3d 1431 (9th Cir. 1996) ........................................................................................ 3

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980) ..................................................................................................... 15

*Glob. Health Council v. Trump,*
  No. 25-5097, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025)..................................... 4

*Glob. Health Council v. Trump,*
  No. 25-5097, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025)........................... 4, 5, 6, 7

*League of United Latin Am. Citizens v. Exec. Off. of the President,*
  780 F. Supp. 3d 135 (D.D.C. 2025)............................................................... 13

*Murphy Co. v. Biden,*
  65 F. 4th 1122 (9th Cir. 2023)..................................................................... 6

*National Federation of Independent Business v. Sebelius,*
  567 U.S. 519 (2012).................................................................................... 9

*Pennhurst State Sch. & Hosp. v. Halderman,*
  451 U.S. 1 (1981)........................................................................................ 8

*Sierra Club v. Trump,*
  929 F.3d 670 (9th Cir. 2019)...................................................................... 6

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
  739 F.2d 1415 (9th Cir. 1984)................................................................... 1

*Sierra Club v. Trump,*
  963 F.3d 874 (9th Cir. 2020)...................................................................... 6

*South Dakota v. Dole,*
  483 U.S. 203 (1987).................................................................................... 9

*State v. Dep't of Just.,*
  951 F.3d 84 (2d Cir. 2020)........................................................................ 10

*Steffel v. Thompson,*
  415 U.S. 452 (1974).................................................................................... 2

*Texas v. United States,*
  523 U.S. 296 (1998).................................................................................... 3

*Trump v. New York,*
  592 U.S. 125 (2020).................................................................................... 2

*TRW Inc. v. Andrews,*
  534 U.S. 19 (2001).................................................................................... 12

*Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n,*
  911 F.2d 261 (9th Cir. 1990).................................................................... 11

*United States v. Alabama*,
   691 F.3d 1269 (11th Cir. 2012) ............................................................................... 11

*United States v. Pickard*,
   100 F. Supp. 3d 981 (E.D. Cal. 2015) ...................................................................... 10

*United States v. South Carolina*,
   720 F.3d 518 (4th Cir. 2013) .................................................................................. 11

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ................................................................................................. 1

*Virginia v. American Booksellers, Inc.*,
   484 U.S. 383 ............................................................................................................ 2

*Whitman v. Am. Trucking Ass'n*,
   531 U.S. 457 (2001) ............................................................................................... 15

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ............................................................................................. 5, 6

**Statutes**

2 U.S.C. §§ 681 *et seq.* ............................................................................................... 4

5 U.S.C. § 701(a)(2) .................................................................................................. 15

5 U.S.C. § 704 .......................................................................................................... 11

8 U.S.C. § 1324(a)(l)(A)(iv) ..................................................................................... 12

8 U.S.C. § 1373 .............................................................................................. 7, 11, 12

8 U.S.C. § 1373(a) .............................................................................................. 12, 13

31 U.S.C. § 1301(a)(1)(A) ........................................................................................... 4

31 U.S.C. § 1341(a)(1)(A) ........................................................................................... 4

**Other Authorities**

Proclamation 13,768
   82 FR 8799, (January 25, 2017) ............................................................................... 7

Proclamation 14,218
   90 Fed. Reg. 8443 (Jan. 20, 2025). ........................................................................... 2

Proclamation 14159
   90 Fed. Reg. 8443(Jan. 20, 2025) ............................................................................. 2

Proclamation 14287
90 Fed. Reg. 18761 (April 28, 2025) ......................................................................................... 2

1

**ARGUMENT**[1]

2

**I.   The Court Should Dismiss the Second Amended Complaint Under Rule 12(b)(1) For Lack**
3   **of Jurisdiction Because Plaintiffs Fail to Establish Article III Standing.**[2]

4       **A.   Plaintiffs fail to demonstrate Pre-Enforcement Standing.**

5           As discussed in Defendants' motion to dismiss (Mot. to Dismiss), Plaintiffs' SAC fails to establish

6   pre-enforcement standing because the challenged Executive Orders do not forbid conduct plausibly related

7   to a constitutional right or guarantee. A plaintiff may demonstrate pre-enforcement standing by showing

8   "an intention to engage in a course of conduct arguably affected with a constitutional interest, *but*

9   *proscribed by a statute*, and [that] there exists a credible threat of prosecution thereunder." *Babbitt v.*

10  *United Farm Workers National Union, etc., et al.,* 442 U.S. 289, 298 (1979) (emphasis added).

11          Preliminarily, Defendants acknowledge that the Court previously found that "[t]he Cities and

12  Counties' interpretation of the 2025 Executive Orders as *proscribing* their policies is reasonable." May 3

13  Order at 33 (emphasis added). However, Defendants respectfully disagree. The challenged Executive

14  Orders do not *proscribe* conduct but merely instruct agencies to engage in deliberative processes regarding

15  their authority to add conditions to the disbursement of federal funds. Plaintiffs respond that "this Court

16  has already specifically held that 'the text of the challenged provisions does not merely provide guidance

17  to executive agencies on how to evaluate funds; it requires compliance' and 'unambiguously command[s]

18  action.'" Plaintiffs' Opposition to Mot. to Dismiss (Opp'n) at 15, Dkt. No. 231 (quoting Dkt. No. 126

19

20  _____

[1] For all filings, Defendants herein refer to the ECF stamped page numbers listed at the top right corner.

21
[2] Plaintiffs suggest that the Court should treat Defendants' motion to dismiss as a motion to reconsider

22  because Defendants raise arguments were previously raised at the preliminary injunction phase of the
litigation. Plaintiffs' Opposition to Mot. to Dismiss at 8. But it is not improper for Defendants to raise

23  arguments in their motion to dismiss, that were previously raised at the preliminary injunction stage. *See*
*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (Findings of fact and conclusions of law made by

24  a court granting a preliminary injunction are not binding at trial on the merits.); *Sierra On-Line, Inc. v.*
*Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984) (holding a preliminary injunction, "is not a

25  preliminary adjudication on the ultimate merits: it is an equitable device for preserving rights pending
final resolution of the dispute. The district court is not required to make any binding findings of fact; it

26  need only find probabilities that the necessary facts can be proved."). Further, Defendants' motion to
dismiss applies to Plaintiffs' SAC, Dkt. No. 193, which Plaintiffs filed after the Court issued its April 24th

27  preliminary injunction, Dkt. No. 111, and its May 9th clarifying order, Dkt. No. 136. Defendants also
must preserve all issues for appeal. Accordingly, this Court should not treat Defendants' motion to dismiss

28  as a motion to reconsider.

1

1    (Court's May 3 Order) at 35, 42). Plaintiffs further argue that Defendants' citation of *Babbit, Steffel v.*
2    *Thompson*, 415 U.S. 452 (1974) and *Virginia v. American Booksellers, Inc*., 484 U.S. 383, *certified*
3    *question answered sub nom. Commonwealth v. Am. Booksellers Ass'n, Inc.*, 236 Va. 168 (1988) are
4    unavailing because "[n]one of the three pre-enforcement cases cited by Defendants even address, let alone
5    dispel, [the Court's] conclusion." Opp'n at 15. But Defendants cite *Babbit*, *Steffel*, and *American*
6    *Booksellers*, to distinguish this case from those which involved instances of *proscribing* specific conduct.
7    *See* Mot. to Dismiss at 15–16. This proscription element of pre-enforcement standing is missing from
8    Plaintiffs' case. *Id.*; *see e.g.* Executive Order (E.O.) 14159 of January 20, 2025, Section 17, 90 Fed. Reg.
9    8443, 8447 (January 29, 2025) ("shall, to the maximum extent possible under law, evaluate and undertake
10   any lawful actions"); Executive Order 14,218 of February 19, 2025, 90 Fed. Reg. 10581 (Feb. 25, 2025)
11   ("ensure, consistent with applicable law, that Federal payments to States and localities do not, by design
12   or effect, facilitate the subsidization or promotion of illegal immigration, or abet so-called 'sanctuary'
13   policies that seek to shield illegal aliens from deportation…"). Further, the Court noted in its May 9th
14   Order, "some aspects of Section 3 [of EO 14287, 90 Fed. Reg. 18761 (April 28, 2025)] may resolve some
15   of the problems . . . pertaining to the overbreadth of [EOs 14,159 and 14,218] . . . if done in a
16   constitutionally targeted way, provide clarity." ECF No. 136 at 6.

17         Plaintiffs also claim that "Defendants' argument fails to account for their extensive allegations of
18   constitutional injury, including that the EOs violate the Tenth Amendment by coercing Plaintiffs to
19   abandon their local policies limiting cooperation with federal civil immigration enforcement." Opp'n at
20   15. But as discussed *infra* (Argument § II.D.), Plaintiffs do not allege a valid Tenth Amendment violation.

21         Lastly, the Executive Orders call for a review and contain savings clauses that all action be taken
22   "*consistent with applicable law*[.]" E.O. 14,218 § 2(a)(ii) (emphasis added); 90 Fed. Reg. at 10581; *see*
23   *also* E.O. 14,159 § 19; 90 Fed. Reg. at 8447, E.O. 14,287, §3; 90 Fed. Reg. 18761 ("…*as permitted by*
24   *law*, shall identify appropriate Federal funds…"). The same is true of the Bondi Memo and Noem Memos.
25   *See* Bondi Memo at 2; Noem Memo at 3. Since future Executive action "will reflect both legal and
26   practical constraints, making any prediction about future injury [is] just that—a prediction." *Trump v. New*
27   *York*, 592 U.S. 125, 133 (2020).

28

**B.        Plaintiffs also fail to establish a concrete injury in fact.**

As discussed in Defendants' Mot. to Dismiss, the Court previously found that "the Cities and Counties have not yet suffered a loss of funds or other enforcement action under the 2025 Executive Orders, . . . ." Dkt. No. 126 at 32. The same remains true of the SAC, and for this reason (in the absence of pre-enforcement standing), Plaintiffs fail to establish an injury in fact necessary to establish Article III jurisdiction. As previously explained, the Executive Orders do not terminate any particular fund or program; rather, they provide policy directives to federal agencies. *See* Mot. to Dismiss at 14–15. Here, Plaintiffs have not alleged any specific loss in funding to demonstrate an injury in fact. Instead, Plaintiffs' SAC is premised on purported budgetary uncertainty, as opposed to funding impact. *Id.*

Finally, Plaintiffs' allegation that agencies will take actions solely because of the Executive Orders' directives to freeze funding ignores the Executive Orders' directive to stay within the confines of the law. *Id.* at 5; *see also infra* (Argument § II.C). Where "contingent future events ... may not occur as anticipated, or indeed may not occur at all," Plaintiffs' claims are unripe for review. *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

**C.        Plaintiffs' Fifth Amendment claim is unripe for review.**

Because Plaintiffs allege no First Amendment rights, they are limited to an argument that the EOs are vague as applied to them. Defs' Mot. to Dismiss at 18-19. As discussed *supra* (Argument I.A.) and *infra* (Argument II.B.), Plaintiffs' fears that a yet-to-be-taken action by the Executive *might* be arbitrary and/or *might* lack fair notice is inherently speculative, and therefore not ripe for review. Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) (citing *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1441 (9th Cir. 1996) (concluding that vagueness of one provision of a regulation was not ripe for review due to insufficient facts).

**II.      The Court Should Dismiss the SAC Under Rule 12(b)(6) for Failure to State a Claim.**

**A.        Defendants do not misconstrue Plaintiffs' separation of powers or spending clause claims; the claims are barred by *Dalton v. Specter* and the Court should dismiss them under 12(b)(6).**

Plaintiffs argue that their claims do not turn on whether Defendants complied with the procedures in the Impoundment Control Act and therefore, *Dalton v. Specter* and *Global Health Council v. Trump*

1    are inapposite. Opp'n at 19. Specifically, they allege their claims are based upon "the Executive actions .

2    . . purporting to legislate categorical immigration enforcement conditions on federal funding in the absence

3    of any Congressional authorization for such conditions." Opp'n at 20 (citing SAC ¶¶ 419-21; 703-713).

4    But this dispute is fundamentally statutory because the alleged constitutional violation is predicated on

5    the underlying alleged statutory violations—failure to comply with the appropriation laws.

6           Indeed, Plaintiffs dedicate an entire section of the SAC to appropriations law, wherein they cite

7    the "framework of statutes [that] structures how Congress utilizes its appropriation power to authorize

8    federal funding." SAC at ¶¶ 437-442, Dkt. No. 193, citing the 31 U.S.C. § 1301(a)(1)(A)(requiring all

9    "[a]ppropriations shall be applied only to the objects for which the appropriations were made" and as

10   prohibiting "[f]ederal officers and employees [from] obligat[ing] or spend[ing] funds absent congressional

11   appropriation."), 31 U.S.C. § 1341(a)(1)(A), and the Impoundment Control Act of 1974, 2 U.S.C. §§ 681

12   *et seq*. (ICA) (requiring "the President to transmit to [ ] Congress a message [ ] request to rescind budget

13   authority (i.e., cancel a federal payment) or defer budget authority (i.e., pause a federal payment).").

14          Moreover, the SAC alleges that the EOs at issue in this case violate the appropriations laws by

15   "purporting to unilaterally withhold already-appropriated federal funding." *Id.* at ¶ 442 (emphasis added).

16   These purported violations form the basis of Plaintiffs' separation of powers and spending clause claims.

17   *See Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *7 (D.C. Cir. Aug. 28, 2025)

18   ("those alleged statutory violations must be the predicate acts for the constitutional claims because without

19   an appropriations statute there could be no improper impoundment.")[3]; *see also Glob. Health Council*,

20   No. 25-5097, 2025 WL 2709437, at *1 (D.C. Cir. Aug. 28, 2025) (J. Katsas, concurring) ("[T]he grantees'

21   claim that 'the President violated the separation of powers by refusing to spend mandatory congressional

22

23

_____

24   [3] The initial panel opinion, *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021 (D.C. Cir.
     Aug. 13, 2025), cited in Defendants' Mot. to Dismiss at 12, was unclear as to whether the DC Circuit had
25   held that the ICA precludes all APA suits to enforce statutory appropriations provisions, or only claimed
     to enforce the ICA itself. The amended opinion, issued simultaneously with a denial of en banc review,
26   *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2709437, clarified that the Court held the latter:
     the ICA bars APA suits to enforce the ICA. *Id.* 2025 WL 2709437 at *11. In a footnote, the amended
27   opinion stated that "we need not and do not decide whether the ICA precludes suits under the APA to
     enforce appropriations acts." *Id.* at n.17. Thus, Plaintiffs are precluded from bringing an APA claim insofar
28   as Plaintiffs seek to enforce the ICA.

appropriations for foreign aid'. . . turns on whether the relevant appropriations *were* mandatory, which makes it statutory for reviewability purposes under *Dalton v. Specter*[.]").

Further, *Dalton* and *Global Health Council* are both on point. *Dalton* held that claims that the President exceeded his statutory authority are not constitutional claims subject to judicial review under the exception recognized in *Franklin v. Massachusetts,* 505 U.S. 788, 799 (1992) (holding that there is no review of presidential action under the APA, but there can be judicial review of presidential action to determine whether it violates the Constitution). The Supreme Court stated in *Dalton* that its "cases did not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." 511 U.S. 462, 472 (1994). Instead, the Court often noted an important distinction between "claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Court also referenced past cases illustrating that unconstitutional and *ultra vires* are two separate categories, not one and the same. *Id.* (collecting cases).

In *Global Health Council*, "the grantees [sought] to pursue an implied equitable cause of action not arising under the APA." 2025 WL 2480618, at *6. Thus, the DC Circuit had to "determine the scope of any such cause of action, which depend[ed] on whether the underlying claim [was] properly characterized as statutory or constitutional." *Id. Dalton* provided the framework for resolving that question, and the Court held that *Dalton* forecloses private parties from bringing a constitutional cause of action when their constitutional argument overlaps with a claim that the President violated or exceeded his statutory authority. *Id.* at **6-9 (citing *DeVillier v. Texas*, 601 U.S. 285, 291 (2024) ("Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts.")).

Lastly, Plaintiffs argue that *Dalton* does not bar their claims that the Executive directives at issue in this case seek to withhold already appropriated federal funds because their separation of powers claim arises from the absence of statutory authority, not a statutory violation. Opp'n at 19-20. This argument is no doubt borrowed from the DC Circuit's finding in *Global Health*, that *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), is distinguishable from the *Global Health* plaintiffs' claims because it the "only basis of authority asserted" in *Youngstown* "was the President's inherent constitutional power as the Executive and the Commander in Chief of the Armed Forces." *Global Health*, 2025 WL 2480618 at *7

(internal quotation marks and citation omitted). But as *Global Health* also found in *Youngstown* there was "a conceded *absence* of *any* statutory authority" and no claim that "the President acted in excess of such authority." *Id.* Here, Defendants do not put forth a constitutional defense but instead maintain that no statutory violation has occurred. Thus, *Youngstown* is inapposite here, as it was in *Global Health*.

**B.    Defendants do not ignore Ninth Circuit Precedent.**

Plaintiffs also claim that Defendants ignore Ninth Circuit precedent. Opp'n at 14. Defendants acknowledge, as the DC Circuit did, that the Ninth Circuit took a more expansive view of *Dalton* in *Murphy Co. v. Biden*, 65 F. 4th 1122, 1130 (9th Cir. 2023). Mot. to Dismiss at 13, n.6, citing *Global Health Council*, 2025 WL 2480618, at *9, n.15. However, the DC Circuit explained that it did not find *Murphy* persuasive because it relied on *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019), in which the Ninth Circuit refused to grant a stay of an injunction preventing the government from reprogramming Department of Defense funds for border wall construction. Subsequently however, the Supreme Court granted a stay, saying the government had made "a sufficient showing at this stage that the plaintiffs have no cause of action." *Trump v. Sierra Club*, S.Ct. 1 (2019) (mem.). *Murph*y, 65 F.4th at 1130, also relied upon the merits' decision in *Sierra*, 963 F.3d 874, 887 (9th Cir. 2020), where a divided panel held that Sierra Club had "both a constitutional and an *ultra vires* cause of action." The Supreme Court promptly granted certiorari to address the cause of action issue. *See Trump v. Sierra Club*, 141 S. Ct. 618 (2020) (mem.). The Court eventually vacated the Ninth Circuit's judgment for mootness, *Biden v. Sierra Club*142 S. Ct. 46 (2021) (mem.), but overall, *Murphy*'s reliance upon *Sierra* makes it less persuasive in light of the Supreme Court's treatment of it.

Moreover, the Supreme Court's recent decision in the foreign aid cases further supports the holding in *Global Health. See Dep't of State v. Aids Vaccine Advoc. Coal.*, No. 25A269, 2025 WL 2740571 (U.S. Sept. 26, 2025). There, the Supreme Court held that "the Government, at this early stage, has made a sufficient showing that the Impoundment Control Act precludes respondents' suit, brought pursuant to the Administrative Procedure Act, to enforce the appropriations at issue here [and t]he Government has also made a sufficient showing that mandamus relief is unavailable to respondents." *Id.* Thus, the Supreme Court has clearly indicated its agreement with the holding in *Global Health*, and this Court should as well.

1  No matter how Plaintiffs attempt to reframe their argument—their separation of powers and

2  spending clause claims are based upon the allegation that the Executive seeks to withhold already

3  appropriate funds, and as such the DC Circuit's holding in *Global Health* and the Supreme Court's

4  decision in *Aids Vaccine* are persuasive. This Court should dismiss these claims under Rule 12(b)(6).

5        **C.**     **Even assuming Plaintiffs' separation of powers and Spending Clause claims are not solely based on statutory violations, they fail to plead that the Executive Orders violate the Constitution.**

6

7        Plaintiffs argue dismissively that Defendants' "remaining separation of powers and Spending

8  Clause arguments revert to" asking the Court to "read savings clauses" in the challenged Executive

9  directives "in isolation, and contend that these savings clauses demonstrate that Defendants have not

10  violated the separation of powers." Opp'n at 22. While Defendants do not ask the Court to read the savings

11  clauses in isolation, they do ask that the Court not dismiss the savings clauses contained in the directives.

12        Plaintiffs' cite *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239-40 (9th Cir. 2018)

13  as support for their argument that the Orders' savings clauses are rendered meaningless by the rest of the

14  Orders' language. Opp. at 16-17, 22. But, the Executive Order at issue in *City and Cty. of San Francisco*,

15  *Enhancing Public Safety in the Interior of the United States*, 82 FR 8799, (January 25, 2017), directed that

16  "the Attorney General and the Secretary, in their discretion and to the extent consistent with law, shall

17  ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. § 1373 (sanctuary jurisdictions) are

18  not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes by the

19  Attorney General or the Secretary." The language in the 2017 Executive Order directly ordered agency

20  heads to take action that the Court found could never be found to be in accordance with law. Here, the

21  Executive Orders do not direct the agency heads to take action that could never be in accordance with law.

22  They ask the agency heads to engage in deliberative processes regarding their authority to add conditions

23  to the disbursement of federal funds. Mot. to Dismiss at 23-24. Unlike the 2018 Executive Order, these

24  Orders do not "unambiguously command[] action." *City & Cnty. of San Francisco*, 897 F.3d at 1240 (9th

25  Cir. 2018).

26        Further, Plaintiffs take issue with Defendants' reliance upon language DHS posted to its public

27  facing website that not all DHS Standard Terms will apply to every DHS grant. Opp'n at 15. They instead

28

wish to focus the Court's attention solely on the DHS Standard Terms. *Id.* But, as the Ninth Circuit noted in *City and Cty. of San Francisco*, "[i]t is a commonplace of statutory construction that the specific governs the general." 897 F.3d at 1239 (internal quotation marks and citations omitted). Here, DHS's website statement that not all Standard Terms will apply to all grants governs the application of the Standard Terms and clearly provides that they will not be applied en masse to all federal grants.

With respect to the Spending Clause claim, Plaintiffs argue the grant conditions violate the Spending Clause because they "remain unconstitutionally ambiguous as to key terms," including "sanctuary jurisdictions" and "sanctuary policies." Opp'n at 23. Yet Plaintiffs interpret the terms in the Orders at issue based on 2017 Executive Orderss and prior litigation, SAC ¶¶ 331-339, and assert that Defendants characterize "all jurisdictions with policies like those adopted by Plaintiffs" as sanctuary jurisdictions. SAC ¶ 81. Many Plaintiffs are also self-designated sanctuary jurisdictions. SAC, ¶¶ 82, 116, 118, 155, 157, 225, 231, 237, 246, 275, 278, 318. Thus, Plaintiffs' claims of unconstitutional vagueness are inconsistent with their own assertions and arguments. Further, they claim that they cannot "knowingly accept grants with these funding conditions because they are 'unable to ascertain what is expected of them.'" Opp'n at 23, citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). As noted above, Plaintiffs have shown a clear understanding of what it means to be a "sanctuary jurisdiction" or have even proclaimed themselves to be such. Further, *Pennhurst* arose in the context of imposing an unexpected condition for compliance: Congress goes too far when it surprises states with "post acceptance or 'retroactive' conditions." 451 U.S. at 25. That is not the case here, as the terms will be applied on a grant-by-grant basis and the Plaintiffs will know when they agree to such terms. Additionally, as set forth in Defendants' Motion, absent First Amendment concerns, Courts analyze vagueness challenges to statutes or laws as they are applied, rather than on their face. Mot. to Dismiss at 18-19. Plaintiffs fail to adequately allege that the Executive directives are vague as applied to them.

Plaintiffs challenge Defendants' reliance upon PWRORA as valid statutory authority for placing immigration related conditions on some federal grants. Opp'n at 23-24. They assert that nothing in PWRORA allows the federal government to condition public benefits on state and local jurisdictions actively assisting in enforcing federal immigration laws. However, Defendants rely upon PWRORA as one example of valid statutory authority for placing immigration related conditions on grants. Because

Plaintiffs' complaint is premature, speculative, and fails to identify specific grants programs, it is impossible for Defendants to list every possible statutory authority in existence. As the agencies have not yet completed reviewing grants upon which they can lawfully impose immigration related conditions, they have similarly not yet identified every possible valid statutory authority. This is yet another reason why Plaintiffs fail to adequately plead a Spending Clause violation.

Plaintiffs maintain they have adequately alleged the imposition of funding conditions is coercive, because they "rely heavily on federal funding." Opp'n at 24. But Plaintiffs have failed to establish that the contested terms impose conditions so severe as to constitute coercion. Plaintiffs describe generally the amount of federal funds they receive or expect to receive and speculate what funding *may* be impacted. Yet they cannot establish that any funds have been impacted, much less quantify *with specificity* the portion of their individual budgets that *would* be impacted. Courts look to the nature and size of a threatened funding loss and have not "'fix[ed] the outermost line' where persuasion gives way to coercion." *National Federation of Independent Business v. Sebelius* 567 U.S. 519, 585 (quoting *Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 591 (1937)).  Here, the loss of funds from any particular grant will represent a far smaller percentage of a city's overall budget. Thus, the facts of this case fall in the range of the inducements considered acceptable in *South Dakota v. Dole*, 483 U.S. 203, 206–07 (1987).

### D.    Plaintiffs fail to show that the EOs violate the Tenth Amendment.

Plaintiffs describe generally the amount of federal funds they receive or expect to receive, and speculate what funding *may* be impacted, but cannot establish that any funds have been actually impacted. Mot. to Dismiss at 19. And this is consistent with the Court's finding of pre-enforcement standing, because actual funding impact is not part of this litigation. Indeed, the Court premised its affirmative finding of standing based on Plaintiffs' "well-founded *fear* of enforcement," not of actual enforcement. *City & Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025).

In their opposition, Plaintiffs continue to lament, without specific support, that the Executive Orders "clearly direct[] agencies to categorically deprive Plaintiffs of critical federal funding," and that "[t]his federal funding makes up a significant portion of Plaintiffs' budgets[.]" Opp'n at 17. But throughout this argument, Plaintiffs are still unable to fill in the blanks with the facts necessary for the Court to conduct a meaningful Tenth Amendment analysis. Critical to evaluating whether there is "coercion,"

is what amount of funding would be impacted. *See State v. Dep't of Just.*, 951 F.3d 84, 116 (2d Cir. 2020) (analyzing what percentage of a local government budget may be impacted by federal withholding to evaluate plaintiffs' Tenth Amendment commandeering claims). Plaintiffs cite to their SAC to show that "federal funding makes up a significant portion of Plaintiffs' budgets, *see, e.g.*, SAC ¶¶ 455, 459, 463, 469, 563, 575, 606, 636, 642, 655, 657, 669." Dkt. No. 231 at 24. While Plaintiffs allege the maximum amount of federal funding they depend upon, only a handful state what percentage of their annual operating budget consists of federal funds. *Id.* The percentages range from 6% to 31%. *Id.* While perhaps a plaintiff could make a case that losing 30% of its budget could impose some harm, it would be much more difficult for a plaintiff to do so when it makes up only 6% of the budget. Moreover, as Plaintiffs can only speculate on future funding limitations but cannot identify any imminent or actual funding decrease with specificity, the Court cannot meaningfully assess whether the Executive Orders—which again only call for agencies to evaluate possible grant conditions—could have such a coercive effect as to violate the Tenth amendment.

Plaintiffs also argue, "Defendants suggest that only a small number of targeted funds will be affected, Mot. to Dismiss at 19, but their conduct since the initiation of this litigation proves otherwise." Opp'n at 24. To the contrary, Defendants argued that, at this stage in the litigation, it is "untenable to argue that *all* of [Plaintiff's] federal funding will be impacted." Mot. to Dismiss at 19. Further, as this litigation has unfolded, it has become clear that agencies are not categorically withholding funding. *Id.; see e.g.* Dkt. No. 151-10 at 3 ("DHS (through FEMA) identified only twelve programs to which immigration related conditions may apply and exempted many more programs from that condition."). In sum, Plaintiffs fail to state a claim upon which relief can be granted on their Tenth Amendment claim. *United States v. Pickard*, 100 F. Supp. 3d 981, 1011 (E.D. Cal. 2015) (rejecting a Tenth Amendment challenge to an agency policy statement because a policy statement "is a very different creature from a statute"; it does not bind States as would a statute).

Finally, Plaintiffs' mention of other unrelated enforcement actions is irrelevant. Opp'n at 25. Indeed, there is always a possibility that the Federal Government may sue a State or local government alleging that the defendant's laws or policies are constitutionally preempted. *See Arizona v. United States*, 567 U.S. 387 (2012); *United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012). This authority exists entirely independent of the Executive Order. *Id.*

1    Further, if such action occurs, the affected jurisdiction would have an opportunity at that time to challenge

2    its propriety and merits.

3              **E.**    **The Bondi and Noem Memoranda are not final agency action.**

4              Plaintiffs have not adequately pled that the February 5, 2025, Memorandum from Attorney General

5    Bondi ("Bondi Memo") and the February 19, 2025, Memorandum from Secretary Noem ("Noem

6    Memo")[4]—constitute reviewable final agency action. *See* 5 U.S.C. § 704 (APA review requires final

7    agency action); *Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261, 264 (9th Cir. 1990)

8    (Generally, "administrative orders are not final and reviewable 'unless and until they impose an obligation,

9    deny a right, or fix some legal relationship as a consummation of the administrative process.'").

10             Attorney General Bondi issued an internal memorandum to all Department employees, entitled

11   *Sanctuary Jurisdiction Directives*. Dkt. No. 22 at 110, Ex. D.[5] The Bondi Memo details that DOJ will,

12   *inter alia*, "exercise its own authority to impose any conditions of funding that do not violate applicable

13   constitutional or statutory limitations." *Id*. The Bondi Memo defines "sanctuary jurisdictions" as "state or

14   local jurisdictions that refuse to comply with 8 U.S.C. § 1373, refuse to certify compliance with § 1373,

15   or willfully fail to comply with other applicable immigration laws." *Id.* at 111-12. Additionally, the Bondi

16   Memo explains that "[c]onsistent with statutory authority and past practice, the Department will require

17   any jurisdiction that applies for certain Department grants to be compliant with 8 U.S.C. § 1373(a)" and

18   instructs that "the Associate Attorney General, in coordination with components that provide Department

19   grants, to report to the Attorney General the grants to which these requirements apply." Finally, the Bondi

20   Memo states that "to the extent consistent with applicable statutes, regulations, and terms, the Department

21   may seek to tailor future grants to promote a lawful system of immigration. . . ." *Id*.

22

---

23   [4]  Defendants have not waived any finality argument regarding the Noem Memo. Defendants challenged
     the Noem Memo in their Motion to Dismiss at 30 ("As to other directives, Plaintiffs have not identified

24   final agency action for review.") and at 32 ("The same is true of . . . [] the Department of Homeland
     Security, Dkt. No. 151-9 at 2-3. . . .").

25
     [5]  Plaintiffs' SAC challenges the February 5, 2025, memorandum from the Attorney General Bondi

26   entitled *Sanctuary Jurisdiction Directives*. SAC ¶ 366, Dkt. No. 193 at 73. However, they appear to have
     included the wrong exhibit as the attachment Exhibit D with their SAC. *See* Dkt. No. 151-7, Ex. D,

27   Memorandum entitled *General Policy Regarding Charging, Plea Negotiations, and Sentencing*. Thus,
     Defendants direct the Court to the correct Memorandum previously attached as Exhibit D to Plaintiffs'

28   First Amended Complaint. Dkt. No. 22 at 110-113, Ex. D.

The Noem Memo, entitled "Restricting Grant Funding For Sanctuary Jurisdictions" issued to DHS agencies and offices discusses how partnership between the federal Government and States and localities is an essential element of our national security and public safety mission. Dkt. No. 151-9. The Noem Memo then provides guidance including a description of "sanctuary jurisdictions" (e.g., "Jurisdictions that fail to comply with the information sharing requirements of 8 U.S.C. §§ 1373 and 1644. Jurisdictions that violate other relevant laws, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(l)(A)(iv), prohibitions on transporting or moving illegal aliens, *id*. § 1324(a)(l)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, *id*. § 1324(a)(l)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes."). The Noem Memo next advises that "[a]ll components are to review all federal financial assistance awards" and after said review, the components "must cease providing federal funding to sanctuary jurisdictions" only "to the extent consistent with relevant legal authorities and the applicable terms and conditions of each award."

For both Memoranda, Plaintiffs erroneously fixate on the general preamble paragraphs but ignore the specific and important language that follows. Yet, using statutory construction principles favoring the specific over the general, it is clear that the Memoranda do not constitute final agency action. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so constructed such that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 21 (2001). Just as a statute must be interpreted as a whole, giving effect to each word and "making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous," this Court cannot disregard the specific words outlining a review process and only calling for possible funding conditions consistent with legal and statutory authority. *See California v. Azar*, 911 F .3d 558, 569 (9th Cir. 2018); *see also City and Cty. of San Francisco*, 897 F.3d at 1239 ("It is a commonplace of statutory construction that the specific governs the general.") (internal quotation marks and citations omitted).

Similarly, Plaintiffs continue to ignore the specific savings clause language in both Memoranda that caveats that any assessment, and subsequent action, must be done in accordance with the law. Yet, a court "cannot ignore these repeated and unambiguous qualifiers imposing lawfulness and feasibility

1  constraints on implementing the memorandum." *Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C.

2  2020). And relatedly, the presumption of regularity may also influence how a court interprets an executive

3  order" or agency action. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F.

4  Supp. 3d 135, 176 (D.D.C. 2025).

5        For example, Section I of the Bondi Memo generally states that sanctuary jurisdictions should not

6  receive access to federal grants administered by the Department of Justice. Dkt. No. 22 at 111. But then

7  importantly, it outlines an on-going process as to how DOJ will "exercise its own authority" and specifies

8  that DOJ *will only* impose conditions on federal funding "*that do not violate applicable constitutional or*

9  *statutory limitations*." (emphasis added). *Id*. at 112. The Memo then calls for the creation of a report of

10 which DOJ grants may require compliance with 8 U.S.C. § 1373(a). *Id*. And the Memo references a mere

11 possibility that DOJ "*may* seek to tailor *future* grants." *Id*. Thus, despite Plaintiffs' sole, deliberate focus

12 on the general preamble rather than the clear specific language, including various savings clauses, the

13 specific language outlined above undercuts Plaintiffs' claim that "the Directives unambiguously direct

14 that sanctuary jurisdictions be denied access to funding."Opp'n at 27. Instead, the plain language advising

15 components to review federal funding and consider possible future tailoring of grants only "to the extent

16 consistent with applicable statutes, regulations, and terms" (Dkt. No. 22 at 112) counters against Plaintiffs'

17 claim of a "categorical decision to condition all funds" "in the absence of any constitutional or statutory

18 authority" (Opp'n at 28). After all, there would be no need for an evaluation process if the Government

19 was going to withhold funding wholesale.

20       Next, the Bondi Memo states that "[w]ithin 30 days, the Associate Attorney General, in

21 coordination with components [], will report to the Attorney General the grants to which [8 U.S.C.

22 § 1373(a)] applies." Dkt. No. 22 at 112. And "to the extent consistent with applicable [law], the

23 Department may seek to tailor future grants to promote a lawful system of immigration." *Id*. Importantly,

24 the Bondi Memo does not use the words "freeze" or "withhold," and it does not explicitly instruct DOJ

25 components to take any immediate action to terminate or withhold federal funding to state or local

26 governments like Plaintiffs. This text calling for an internal assessment process similarly contradicts

27 Plaintiffs' allegation of a final agency determination to unambiguously deny access to all funding.

28

Similarly, Plaintiffs deliberately misconstrue the Memo in claiming that "the Bondi Directive announce[s] an immediate pause on the distribution of any funding." Opp'n at 27. Only Section II uses the word "pause" and that entire section only applies to federal funding provided to *non-governmental organizations*; not to any Plaintiffs. Dkt. No. 22 at 112.[6] Further, Plaintiffs have never alleged that their funding was paused or terminated by the agencies, let alone as an immediate consequence of the Memo.

Turning to the Noem Memo, it begins with a general statement that "[i]f any government entity chooses to thumb its nose at the Department of Homeland Security's national security and public safety mission, it should not receive a single dollar of the Department's money." Dkt. No. 151-9 at 2. However, even in that sentence, the Secretary included an important caveat in that same sentence: "unless Congress has specifically required it." *Id*. Thereafter, the Noem Memo calls for the components to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions. Thus, like the Bondi Memo, the Noem Memo provides guidance and calls for a review process. And such processes must take place before any possible consequences could possibly flow to Plaintiffs. Therefore, the Noem Memo does not constitute final agency action.

In sum, the internal guidance in the Bondi and Noem Memoranda do not impose an obligation on or have a direct and immediate impact on Plaintiffs. They are not the end of any decision-making process, as they specifically provide that agency components should conduct a review of various funding and report back. This is further evidenced by Plaintiffs' SAC, filed almost six months after the Memoranda issued, where Plaintiffs still plead that they have not experienced any freeze or withholding of federal funds based on these Memoranda. *See generally* SAC, Dkt. No. 193.

Plaintiffs have not and cannot plead that any of their funding (current or future) was or will be terminated or withheld purely because of the Memoranda. Thus, Plaintiffs have failed to show that either Memorandum constitutes final agency action. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980) ("a threshold determination that further inquiry is warranted" does not constitute final agency action); *Bennett*

---

[6] Section II only applies to federal funding provided to non-governmental organizations. And even there, the Bondi Memo simply calls for the identification of all contracts, grants, or other agreements with such organizations that support or provide services to removable or illegal aliens. And under that limitation, calls for only a 60-day pause in the distribution of funds after complying with any notice and procedural requirements. Dkt. No. 22 at 112.

*v. Spear*, 520 U.S. 154, 177–78 (1997) (Agency action is final only if (1) it marks "the consummation of the agency's decision-making process"—it must not be merely tentative or interlocutory in nature, and (2) the "action must be one by which rights or obligations have been determined, or from which legal consequences flow.") (citations omitted); *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001) (To satisfy the first prong of the *Bennett* test, an agency must have "rendered its last word on the matter.").

Having established that Plaintiffs' claim that the Bondi and Noem Memoranda represent an "agencywide categorical policy" is false, and that the Memoranda do not constitute final agency action, the Court need not even reach whether the Memoranda are discretionary and thus precluded from APA review under 5 U.S.C. § 701(a)(2). Even so, the Memoranda also constitute discretionary, internal guidance advising their internal components to conduct various reviews of federal funding grants and assess whether any conditions are appropriate to add to those grant funds. And as Defendants explained in their Motion to Dismiss, agencies have broad discretion in creating, awarding, and terminating specific grants, and thus reviewing the terms and conditions set by agencies, as contemplated by Congress, is outside of the jurisdiction of the Court. Mot. to Dismiss at 32-34.[7] Thus, Plaintiffs' APA claims should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint with prejudice.

---

[7] Further, in their opposition, Plaintiffs highlight that their APA cause of action only challenges the Bondi Directive and Noem Directive; not the Executive Orders nor any other agency memorandum standard grant terms and conditions. *See* Opp'n at 26, citing SAC ¶¶ 433–36, 741–64. Plaintiffs emphasize that they "do not challenge agency terms and conditions (Opp'n at 26, n.5), they "do not challenge the allocation of a lump -sum appropriation" (Opp'n at 28), or "decisions not to fund a specific grant" or "decisions about allocation of funding among recipients" (*id*). and they are not challenging decisions about individual grants.

Dated: October 16, 2025                    Respectfully submitted,

                                           BRETT A. SHUMATE
                                           Assistant Attorney General
                                           Civil Division

                                           DREW C. ENSIGN
                                           Deputy Assistant Attorney General

                                           ELIANIS N. PEREZ
                                           Assistant Director

                                           LAUREN E. FASCETT
                                           Senior Litigation Counsel

                                           LINDSAY ZIMLIKI
                                           CAROLINE MCGUIRE
                                           ANGEL FLEMING
                                           VICTORIA TURCIOS
                                           Trial Attorneys

                                           */s/ Lindsay W. Zimliki*
                                           LINDSAY W. ZIMLIKI
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division
                                           Office of Immigration Litigation
                                           General Litigation and Appeals Section
                                           450 5th Street, NW
                                           Washington, D.C. 20530

                                           *Attorney for Defendants*

16

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this 16th day of October 2025, I electronically filed the foregoing with

3   the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link

4   of the same to all attorneys of record through the Court's CM/ECF system.

5

6                                          */s/ Lindsay W. Zimliki*
                                           Trial Attorney
7                                          United States Department of Justice
                                           Office of Immigration Litigation
8                                          General Litigation and Appeals Section
9                                          *Attorney for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A